George M. Lee (SBN 172982)
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone:  (415) 979-0500
Fax:     (415) 979-0511
Email: gml@seilerepstein.com

Attorneys for Plaintiffs
CHAD LINTON, PAUL MCKINLEY STEWART,
KENDALL JONES, FIREARMS POLICY FOUNDATION,
FIREARMS POLICY COALITION,
SECOND AMENDMENT FOUNDATION,
THE CALGUNS FOUNDATION and MADISON
SOCIETY FOUNDATION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD LINTON, an individual; PAUL MCKINLEY STEWART, an individual; KENDALL JONES, an individual; FIREARMS POLICY FOUNDATION; FIREARMS POLICY COALITION; SECOND AMENDMENT FOUNDATION; CALIFORNIA GUN RIGHTS FOUNDATION; and MADISON SOCIETY FOUNDATION, | Case No. 3:18-cv-07653-JD **PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Plaintiffs, | |
| vs. | |
| XAVIER BECERRA, in his official capacity as Attorney General of California; BRENT E. ORICK, in his official capacity as Acting Chief of the Department of Justice Bureau of Firearms; and ROBERT D. WILSON, in his official capacity as Deputy Attorney General, | |
| Defendants. | |

SEILER EPSTEIN LLP
Attorneys at Law

COME NOW plaintiffs CHAD LINTON, PAUL MCKINLEY STEWART, KENDALL

JONES, FIREARMS POLICY FOUNDATION, FIREARMS POLICY COALITION, SECOND

AMENDMENT FOUNDATION, CALIFORNIA GUN RIGHTS FOUNDATION, and

MADISON SOCIETY FOUNDATION (collectively, "Plaintiffs"), by and through their undersigned counsel, who hereby complain and allege as follows:

**INTRODUCTION**

1.      The question presented by this case is whether the State of California, through its chief law enforcement officers, can prevent current California residents who are not federally or otherwise prohibited from purchasing and possessing firearms if their previously-disqualifying offenses, which occurred in other states, have been vacated, and especially when their fundamental, individual rights have been fully restored to them by courts of competent jurisdiction in those respective states.  Asked differently: In their zeal to prohibit as many citizens from owning firearms as possible, may this State, its chief law enforcement officer, and those responsible for the enforcement of California's firearms laws and policies, ignore the judgments and pronouncements of the courts of other states because they do not prefer the policy outcome?  The only honest, constitutionally-grounded answer to these questions must be a resounding 'no'.

2.      Indeed, the State has no constitutionally-permissible interest in depriving individuals of their right to own, possess, and bear firearms for all lawful purposes, including self-defense in their homes, when any underlying convictions were remote, non-violent in nature, and adjudged to have been vacated or set aside in those other jurisdictions, as the alternative – and their laws, policies, practices, and customs challenged here – violate their rights under the Second Amendment.  Moreover, the State cannot simply decide to ignore the legal judgments of courts in other states, as such a policy violates the United States Constitution's Full Faith and Credit Clause, Privileges and Immunities Clause, and the Fourteenth Amendment's Privileges or Immunities Clause.

3.      Accordingly, Plaintiffs are bringing this challenge to the State of California's laws, policies, practices, and customs, as promulgated, implemented and enforced by the Defendants, which refuse to honor the judgments of other states that vacated or otherwise

**SEILER EPSTEIN LLP**
Attorneys at Law

– 2 –

exonerated those disqualifying convictions, and which otherwise refuse to honor the out-of-state restoration of an individual's firearms rights, and to the extent that it forms the basis of the Department's enforcement practices, California Pen. Code §§ 29800 and 30305 as applied.

**PARTIES**

4.     Plaintiff Chad Linton is a natural person who resides in the County of Placer, California.  Mr. Linton is a member and supporter of the Firearms Policy Coalition, Firearms Policy Foundation, the California Gun Rights Foundation, the Second Amendment Foundation and the Madison Society Foundation.

5.     Plaintiff Paul McKinley Stewart is a natural person who resides in the County of San Bernardino, California.  Mr. Stewart is a member and supporter of the Firearms Policy Coalition, Firearms Policy Foundation, the California Gun Rights Foundation, the Second Amendment Foundation and the Madison Society Foundation.

6.     Plaintiff Kendall Jones is a natural person who resides in the County of Sacramento, California.  Mr. Jones is a member and supporter of the Firearms Policy Coalition, Firearms Policy Foundation, the California Gun Rights Foundation, the Second Amendment Foundation, and the Madison Society Foundation.

7.     Plaintiff Firearms Policy Foundation ("FPF") is a non-profit membership organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California, with members residing both within and outside of this state, that serves to defend and advance constitutional rights through charitable purposes, with a focus on the fundamental, individual right to keep and bear arms.  FPF represents these members and supporters, who include California firearm retailers and consumers.  FPF brings this action on behalf of itself, its members, supporters, who possess all the indicia of membership, and similarly situated members of the public.

8.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a non-profit membership organization incorporated under the laws of Delaware with its principal place of business in

**SEILER EPSTEIN LLP**
Attorneys at Law

– 3 –

Sacramento, California, with members residing both within and outside of this state, that serves its members and the public through direct and grassroots advocacy, legal efforts, and education. The purposes of FPC include defending the United States Constitution and the People's rights, privileges and immunities deeply rooted in the Nation's history and tradition, especially the fundamental right to keep and bear arms.  FPC represents these members and supporters, who include California firearm retailers and consumers.  FPC brings this action on behalf of itself, its members, supporters, who possess all the indicia of membership, and similarly situated members of the public.

9.      Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including California.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.  SAF brings this action on behalf of itself, its members, supporters, who possess all the indicia of membership, and similarly situated members of the public.

10.     Plaintiff California Gun Rights Foundation, formerly The Calguns Foundation ("CGF") is a non-profit membership organization incorporated under the laws of California with its principal place of business in Sacramento, California, with members residing both within and outside of this state, dedicated to promoting education for all of stakeholders about California and federal firearm laws, rights and privileges, and defending and protecting the civil rights of California gun owners.  CGF represents these members and supporters, who include California firearm retailers and consumers.  CGF brings this action on behalf of itself, its members, supporters, who possess all the indicia of membership, and similarly situated members of the public.

11.     Plaintiff Madison Society Foundation ("MSF") is a non-profit organization whose purpose is preserving and protecting the legal and constitutional right to keep and bear arms for its members and all responsible law-abiding citizens.  MSF believes that individual constitutional

rights should not be infringed to deny citizens their life, liberty, and pursuit of happiness.  MSF is headquartered in Stanislaus County, and the majority of its members are California residents.  The focus of MSF's litigation efforts is challenging violations of the right to keep and bear arms.

12.     Defendant Xavier Becerra is the Attorney General of the State of California, and is sued herein in his official capacity.  Under Article 5, § 13 of the California Constitution, Attorney General Becerra is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced."  Defendant Becerra is the head of the California Department of Justice ("DOJ"). The DOJ and its Bureau of Firearms regulate and enforce state law related to the sales, transfer, possession, and ownership of firearms.  The Attorney General and DOJ maintain an office in San Francisco, California.

13.     Defendant Brent E. Orick is the Acting Chief of the DOJ's Bureau of Firearms.  On information and belief, Defendant Orick reports to Attorney General Becerra, and he is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes, regulations and policies regarding prohibited persons, and the Armed Prohibited Persons System ("APPS") program.  Defendant Orick is sued in his official capacity.

14.     Defendant Robert D. Wilson is a Deputy Attorney General for the DOJ and its Bureau of Firearms.  On information and belief, Defendant Wilson reports to both Attorney General Becerra and DOJ Bureau of Firearms Chief Horan.  Upon information and belief, Defendant is responsible for formulation, issuance, and implementation of the policy or policies described below which prohibit Individual Plaintiffs and others similarly situated from purchasing or possessing firearms.  Defendant Wilson is sued in his official capacity.

15.     On information and belief, all of the Defendants, and each of them, are responsible in some manner for issuing, implementing, or enforcing the laws, policy or policies, practices, and customs complained of herein, namely, those which prohibit or prevent a person adjudicated in another state from acquiring a firearm in the State of California, where the underlying matter has been adjudged to be vacated, set aside, or expunged in the respective state

having jurisdiction, and particularly where courts of other states have expressly restored firearm rights to the respective citizen.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States.  The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983, since plaintiffs seek to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California, by and through its officers named herein, the rights, privileges or immunity secured by the Constitution of the United States and by Acts of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.  All Plaintiffs herein are seeking relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  To the extent that the court determines that Plaintiffs are asserting state law claims, this court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

17.     Venue is proper under 28 U.S.C. § 1391, as the venue rules of this State specifically would permit this action to be filed in San Francisco, since the Attorney General and California Department of Justice maintain an office within this Division; Cal. Code of Civ. Pro. § 401(1).

## BACKGROUND AND FACTS COMMON TO ALL COUNTS
### *Plaintiff Chad Linton*

18.     Plaintiff Chad Linton is a life-long permanent resident of California, having been born and raised here.

19.     On or about August 20, 1987, while young plaintiff Linton was enlisted and serving in the U.S. Navy, and stationed in the State of Washington, he made an error in judgment.  While on a motorcycle, driving intoxicated, and hurrying back to his base at Whidbey Island Naval Air Station, traveling at a high rate of speed, he travelled past a Washington State

Police car.  For a brief period of time, Plaintiff Linton considered whether he might be able to outrun and make it back to NAS Whidbey Island before the Washington State Patrol officer would be able to catch up to him, and he accelerated.  However, after a few moments, Plaintiff Linton reconsidered that idea, pulled over to the side of the highway, and voluntarily allowed the state trooper to catch up to him.  He was then arrested and did not resist in any way.

20.    Plaintiff Linton was charged in Washington State, Island County Superior Court, with attempting to evade a police vehicle, a "Class C felony"[1] under section 46.61.024 of the Revised Code of Washington ("RCW"), and with driving under the influence, charged as a misdemeanor.  He spent seven days in jail.

21.    On or about December 29, 1987, Plaintiff Linton entered pleas of guilty to both Count I (Attempting to Evade a Pursuing Police Vehicle, RCW 46.61.024) and Count II (Driving While Intoxicated, RCW 46.61.502).  Plaintiff Linton was sentenced to seven days in jail, with credit for all seven days served, as was required to complete community service, pay fines, and successfully complete all other terms of probation.  At the time of his sentencing, the Washington State court judge, who was sympathetic to Plaintiff Linton, told him that he would not want to see his military career destroyed over the incident.  He told Plaintiff Linton that if he successfully completed all terms of his probation, that the court would reduce the matter to a misdemeanor and have the matter discharged from his records.  Plaintiff Linton had no reason to believe that this had not occurred.  In fact, in 1988, Plaintiff Linton received a certificate of discharge, showing that he successfully completed his probation, and which included a statement that "the defendant's civil rights lost by operation of law upon conviction be HEREBY RESTORED."

22.    After being discharged from the Navy, Plaintiff Linton moved back to California

---

[1]The State of Washington classifies three types of felonies, based upon the seriousness of the crime.  RCW 9A.020.10.  For offenses occurring after July 1, 1984, the maximum sentence for a Class C felony is confinement in a state correctional institution for a period of five years, or by a fine fixed at $10,000, or both.  RCW 9A.020.21(1)(c).

SEILER EPSTEIN LLP
Attorneys at Law

in 1988. Since moving back to California, Plaintiff Linton has undergone multiple background checks and fingerprint-based "Live Scan" database queries of law enforcement records, in connection with licensing, none of which revealed the presence of a felony conviction in another state. Plaintiff Linton also reasonably relied upon the statements made by the trial judge in Washington State, in believing that the attempted evading charge had been reduced to a non-prohibiting misdemeanor, and that the restoration of rights upon successful completion of probation entitled him to own firearms legally.

23. Since returning to California permanently, Plaintiff Linton has been and remains a law-abiding citizen, has married, and has raised a family. He has not been arrested, and would not otherwise be prohibited from owning firearms, under state or federal law. In fact, since moving back to California, he legally purchased and owned several firearms, having passed all necessary background checks that cross-referenced state and federal databases.

24. On or about December 26, 2015, Mr. Linton attempted to make a purchase of a handgun. Plaintiff was denied the purchase by the State of California – but not the federal government – and informed by the California DOJ that he was prohibited from taking possession of the handgun due to the existence of a prior felony, and specifically that the disqualifying offense was the Washington State matter dating back to 1987, which he believed had been reduced to a misdemeanor. Nevertheless, based upon the DOJ's denial of the firearm purchase, Plaintiff Linton hired an attorney in the State of Washington who, on Plaintiff's behalf, re-opened the criminal proceedings, withdrew the guilty plea, and entered a not-guilty plea, which was entered retroactively.

25. Pursuant to Plaintiff Linton's efforts, on March 21, 2016, the Superior Court of the State of Washington, Island County, on Plaintiff's motion, issued its final Order on Motion Re: Vacating Record of Felony Conviction, a copy of which is attached as **Exhibit A**, in which the court specifically found that the offense for which plaintiff Linton was convicted was not a violent offense under Washington State law. Accordingly, the Superior Court granted the motion to vacate conviction records related to the underlying offense, set aside the guilty plea,

– 8 –

and released plaintiff from all penalties and disabilities resulting from the offense.  (Exhibit A, p. 2.)

26.     On April 18, 2016, the Superior Court of the State of Washington, Island County, further issued, upon Plaintiff's petition, an Order Restoring Right to Possess Firearms pursuant to Revised Code of Washington (RCW) 9.41.040(4).  A copy of this order is attached as **Exhibit B.**  As part of that petition, and order, the court found that Plaintiff Linton was qualified, pursuant to RCW 9.41.040(4), to have the right to possess firearms restored to him, and accordingly, ordered "that Petitioner Chad Linton's civil rights and right to possess firearms are FULLY RESTORED pursuant to RCW 9.41.040(4)."  (*Id*.)  The court further ordered the Washington State Patrol to transmit a copy of its Order to the Federal Bureau of Investigation.

27.     In addition, in order to determine whether he was prohibited from owing or purchasing firearms under the State of California's and Defendant DOJ's laws, policies, practices, and customs, on or about October 25, 2016, Plaintiff Linton voluntarily underwent a Personal Firearms Eligibility Check ("PFEC") pursuant to Cal. Pen. Code § 30105(a) to confirm his eligibility to purchase and/or possess a firearm.  Based upon this check, the California DOJ's Bureau of Firearms informed him that Plaintiff was eligible both to possess and purchase firearms, based upon a search of California's records.  The PFEC form indicated, however, that the actual purchase of a firearm would involve the search of a federal database by the DOJ.  A copy of Plaintiff Linton's PFEC results, dated October 25, 2016, is attached hereto as **Exhibit C**.

28.     Based upon the court orders from the State of Washington, and the PFEC results, on October 30, 2018, Plaintiff Linton attempted to purchase a rifle that was, and is, legal for a person to own and possess in California.  Plaintiff Linton was once again denied his right to purchase the rifle.  On or about November 7, 2016, the California DOJ informed Plaintiff Linton that he was ineligible to purchase or possess firearms pursuant to its review of state and/or federal records which purported to show that plaintiff was a "Felon: Any person who has been convicted of a felony under the laws of the United States, of the State of California, or of any other state, government, or country."  A true and correct copy of the DOJ's letter denying

SEILER EPSTEIN LLP
Attorneys at Law

– 9 –

Plaintiff Linton the right to purchase a firearm is attached hereto as **Exhibit D**.  However, the only felony conviction Plaintiff Linton had ever suffered was the Washington State conviction, which by that time had already been set aside, vacated, and for which his firearms rights specifically had been restored to him by the Washington court.  (Exhibits A and B.)

29.    After this firearm denial, Plaintiff Linton requested and underwent a "Live Scan" fingerprint-based background check request with the DOJ directly.  On or about November 10, 2016, the results of that Live Scan were returned to him and showed the presence of no felony convictions.

30.    In an effort to remedy the conflicts and access his rights, on or about February 2, 2017, Plaintiff Linton, through his attorney, Adam Richards, wrote the DOJ to contest its determination regarding his status as a prohibited person.  In furtherance of this claim of inaccuracy and/or incompleteness, Plaintiff's counsel provided the DOJ with the Washington Court's Order vacating Plaintiff's felony conviction (Exhibit A), as well as the Order restoring his firearm rights (Exhibit B).  A copy of Plaintiff Linton's counsel's letter to the DOJ dated February 2, 2017, is attached hereto as **Exhibit E**.  The DOJ did not respond to this request and communication, at all.

31.    Plaintiff's counsel Richards made a second request to the DOJ to correct Plaintiff Linton's record, on November 11, 2017.  On or about January 30, 2018, in apparent response to attorney Richards's letter, the DOJ sent a letter to Plaintiff Linton directly, stating that "the entry in question cannot be found on your California criminal history record, therefore, no further investigation is required."  A copy of the California DOJ's letter to Plaintiff Linton dated January 30, 2018, is attached as **Exhibit F**.  In addition, on about March 6, 2018, the DOJ sent Plaintiff Linton an additional record stating that "as of the date of this letter, your fingerprints did not identify any criminal history maintained by the Bureau of Criminal Information and Analysis."  A copy of the DOJ's letter dated March 6, 2018, is attached as **Exhibit G**.

32.    Based upon the letters from the DOJ (Exhibits F and G) which appeared to be responsive to his attorney's letters, on March 20, 2018, Plaintiff Linton reasonably believed that

**SEILER EPSTEIN LLP**
Attorneys at Law

the confusion had been cleared up, that the DOJ's records had been corrected, and he then attempted to purchase a .357 revolver, for self-defense in the home.  But Plaintiff Linton was again denied this purchase by the DOJ.  On or about March 27, 2018, the DOJ sent Plaintiff Linton a letter stating that the attempted firearm purchase was denied due to the presence of a prior felony conviction—again, the only possible such matter being the now-vacated Washington matter.

33.     On or about April 3, 2018, agents of the California Department of Justice, Bureau of Firearms, operating as a unit of their Armed Prohibited Persons System (APPS) enforcement program, came to Plaintiff Linton's home, and seized several firearms that Plaintiff Linton had acquired and owned throughout the years, including an antique, family-heirloom shotgun that was once owned by his grandfather.  All of these firearms were acquired through legal purchases or transfers, through federally-licensed firearm dealers (FFLs), and pursuant to DOJ DROS ("Dealer's Record of Sale") background checks.  Over the years, Plaintiff Linton had passed many other background checks, and Live Scan fingerprint-based checks in connection with professional licensing, none of which turned up the presence of any felony convictions, and in conjunction with the trial judge's statements at his sentencing in 1987, Plaintiff had reasonably believed that the matter had been reduced to a misdemeanor and vacated at the time of discharge. At the time of the DOJ's entry into Plaintiff's home and seizures, Plaintiff Linton's wife showed the DOJ agents the Washington State court orders that vacated the felony conviction, and restored Plaintiff his gun rights (Exhibits A and B).  On information and belief, the DOJ agents sought approval from Defendant Deputy Attorney General Robert Wilson to return the firearms to Plaintiff, but Defendant Wilson denied this request.

34.     On information and belief, after the DOJ agents left, there was a continuing debate within the DOJ as to whether Plaintiff Linton maintained prohibited status.  On information and belief, one DOJ agent expressed the opinion that the "felony prohibition has been removed for the following subject," and that they "believe he is not prohibited due to the felony being vacated."  Plaintiff Linton was shown a copy of this e-mail that appeared to indicate

that the DOJ agents sided with Plaintiff Linton.  Nevertheless, they were not permitted to restore to him the firearms that were taken.  On information and belief, defendant Wilson, supervising or otherwise instructing the agents, considered the situation, and made the decision not to release the firearms to him.

35.     In June 2018, Plaintiff Linton was supplied with the results of the FBI fingerprint search, which showed that the felony conviction from Washington State had been vacated, and that Plaintiff's firearms rights had been restored to him.  In addition, on or about August 16, 2018, Plaintiff Linton underwent another PFEC to make sure, and the results once more likewise said that he was "eligible to purchase or possess firearms."

36.     In order to test the DOJ's response, sometime in September 2018, Plaintiff Linton attempted to make a simple purchase of a .22 rifle from a local, California-licensed FFL.  On or about September 7, 2018, the DOJ sent both Plaintiff Linton and the FFL notice that he was "prohibited" from owning firearms and refused to allow release of the .22 rifle to Plaintiff, thus once more denying Plaintiff Linton his fundamental rights.

37.     On September 24, 2018, Plaintiff's counsel, Adam Richards, spoke with Defendant Wilson about this ongoing inability of DOJ to reconcile and correct its records with the (already-provided) records showing that the Washington State felony had been vacated and firearms rights were restored to Plaintiff.  Plaintiff's counsel was surprised to hear Defendant Wilson express the policy that DOJ would continue to consider Plaintiff to be a "prohibited person" and barred from owing or acquiring firearms pursuant to Pen. Code § 29800, as a result of the vacated Washington State conviction (for which Plaintiff's firearms rights had been restored).  Defendant Wilson acknowledged that the DOJ had received, but that it was expressly refusing to honor the Washington State Court's findings that Plaintiff's felony conviction had been vacated and that Plaintiff's firearms rights had been restored to him.  During this phone call, Defendant Wilson stated that the only remedy that Plaintiff Linton had would be in the form of a pardon from the President of the United States.  Defendant Wilson thus expressed the Defendants' policy that, notwithstanding the restoration of his firearm rights in Washington

State, according to the laws and DOJ's policies, practices, and customs, such order of a court in a different state had no effect whatsoever and would not be honored here. A copy of Plaintiff Linton's counsel's December 4, 2018 confirming letter to Defendant Robert D. Wilson is attached as **Exhibit H**.

38.     Defendants did not respond to the request of Plaintiff's counsel, or reverse their decision, or policy, within the time period requested or otherwise, and Plaintiff Linton is therefore forced to file this action to vindicate his rights.

### *Plaintiff Paul McKinley Stewart*

39.     Plaintiff Paul McKinley Stewart has been a resident of the County of San Bernardino, California, for over 30 years. He was a resident of Riverside County for several years before that.

40.     On June 6, 1976, when Plaintiff Stewart was 18 years old, he succumbed to a crime of opportunity while he was living in the State of Arizona. Seeing an unlocked telephone company truck in a commercial yard, Plaintiff Stewart hopped a fence, reached into the truck, and stole some lineman's tools. He was seen by someone and reported to the police. When the police went to his residence, Plaintiff Stewart gave up the tools and offered no resistance to his arrest.

41.     On or about August 3, 1976, Plaintiff Stewart was found guilty of a first degree burglary, a felony, in the County of Yuma, Arizona. He was immediately sentenced to three years of probation, and the Court imposed a suspended sentence during the probation period. That court's sentencing order specifically stated: "If in all respects you obey this order at the end of three years, or sooner upon the recommendation of your probation officer the judgment of guilty as well as this order may be vacated ant the case dismissed. This action will restore to you all rights lost by this conviction except that notwithstanding such dismissal the conviction may be considered if you are again convicted of another offense."

42.     On or about October 5, 1978, Plaintiff Stewart successfully completed his

probation and believed the matter was dismissed.  His belief was further enforced by a statement he had with his probation officer at the time, who told him that the felony conviction had been dismissed due to his successful completion of probation.

43.     Since moving to San Bernardino County in or around 1988, Plaintiff Stewart has lived an honest life.  He has married, raised a family, and is a father to two grown and successful children.  He has remained steadily and gainfully employed.

44.     On or about December 28, 2015, Plaintiff Stewart, believing he was not prohibited, attempted to purchase a pistol for self-defense in his home from a local gun dealer. With no reason to believe he was prohibited from doing so, Plaintiff Stweart also attempted to purchase additional firearms while waiting for DOJ's DROS clearance on the pistol purchase.

45.     On or about January 1, 2014, the DOJ sent Plaintiff Stewart a letter regarding the attempted firearm purchase, informing him that his status was still "undetermined" and that the firearm purchase would be delayed.  Eventually, Plaintiff Stewart was told he was disqualified from purchasing or possessing any firearms due to the presence of a prior felony conviction.

46.     Plaintiff Stewart requested a Live Scan fingerprint-based background check for a copy of his criminal records.  On or about March 28, 2016, Plaintiff Stewart received the results of the FBI criminal records check, which indicated the presence of a conviction in Arizona, but did not indicate whether it was classified as a felony or not.  The FBI letter said that the matter was "undetermined" as to whether he was eligible to purchase or possess firearms.

47.     On or about May 13, 2016, Plaintiff Stewart filed with the Superior Court of Yuma County, Arizona, an application to restore his civil rights, including his firearm rights, and to set aside his judgment of guilt.  On or about August 11, 2016, that Court issued an order restoring his firearm rights, and specifically set aside the judgment of guilt.  A copy of the Court's order of August 11, 2016, is attached as **Exhibit I**.

48.     On or about February 2, 2018, the Arizona Department of Public Safety further sent Plaintiff Stewart additional documentation showing that the felony conviction had been set aside and that his records had been so corrected.

SEILER EPSTEIN LLP
Attorneys at Law

49.     Following the Arizona Superior Court's order, and believing the matter would be automatically updated in any background search, on or about February 10, 2018, Plaintiff Stewart attempted to purchase a firearm from a local firearms store in Redlands, California.  This firearm purchase was also denied by DOJ.

50.     On or about February 27, 2018, the DOJ sent Plaintiff Stewart a letter indicating that his attempt to purchase a firearm had again been denied on the basis of a prior felony conviction.  A copy of the DOJ's letter dated February 27, 2018, is attached as **Exhibit J**.

51.     Subsequently, Plaintiff Stewart had several telephone conversations with the DOJ regarding the firearms denial.  He was informed that the Arizona felony conviction disqualified him from exercising his right to purchase or possess firearms, notwithstanding the Arizona Court's order vacating the felony conviction, and restoring his firearm rights, about which he made the DOJ aware.

52.     On information and belief, the same laws and policies, practices, and customs that were used to deny Plaintiff Linton his rights, in the face of valid court orders from other states that specifically (a) set aside, vacated or otherwise dismissed the felony convictions, and (b) restored the subjects' firearm rights, were determined to be of no application to the purchase of firearms in California, and operated to deny Plaintiff Stewart the same.

53.     On information and belief, Defendants, and each of them, are responsible for issuing, implementing, and enforcing the laws, policies, practices, and customs that denied Plaintiff Stewart the right to purchase, possess, and keep a firearm in his home for self-defense.

### *Plaintiff Kendall Jones*

54.     Plaintiff Kendall Jones has been a resident of the County of Sacramento, California, for over 39 years.  At all times while residing in California, plaintiff Jones has been a law-abiding citizen.  In fact, plaintiff Jones successfully pursued and finished a career in law enforcement, having worked as a corrections officer for the California Department of Corrections from 1984-2014 before honorably retiring.

**SEILER EPSTEIN LLP**
Attorneys at Law

55.     In 1980, while he was 19 years old, and a resident of the State of Texas, plaintiff Jones was arrested arising from an incident involving the alleged misuse of a credit card. On or about August 22, 1980, Plaintiff Jones was made an offer by the prosecution by which the charges would be set aside and dismissed, following a period of probation, if he were to plead guilty to a single charge of "credit card abuse," a third degree felony under Texas law and which involved no term of confinement.  Plaintiff Jones accepted this deal, pled guilty to the charge as offered, and completed a three-year term of probation under community supervision.

56.     Having successfully completed the term of Plaintiff Jones's community supervision probation, on or about August 22, 1983, the district court for the County of Harris, Texas, permitted Plaintiff Jones to withdraw his plea of guilty, set aside and dismiss the judgment of conviction.  A true and correct certified copy of the Texas court's FULL TERMINATION ORDER OF THE COURT DISMISSING THE CAUSE in Plaintiff Jones's case is attached hereto as **Exhibit K**.  See, Texas Code of Crim. Procedure art. 42.12 section 20(b) ("If the judge discharges the defendant under this section, the judge may set aside the verdict or permit the defendant to withdraw the defendant's plea, and shall dismiss the accusation, complaint, information or indictment against the defendant, *who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which the defendant has been convicted* or to which the defendant has pleaded guilty[]") (emphasis added).  And by operation of this set-aside and dismissal, Plaintiff Jones is eligible to own and possess firearms under federal law.  See, 18 U.S.C. § 921(a)(20).

57.     Since that time, Plaintiff Jones moved to California and has successfully pursued a career in law enforcement with the State of California.  During his career, plaintiff Jones necessarily and legally owned and possessed firearms, as a part of his profession, for personal protection, recreation and sport.  Currently, Plaintiff Jones is an instructor in the use of force and firearm trainer as his chosen current profession, which necessarily requires him to own and possess firearms and to handle firearms and ammunition.

58.     Plaintiff Jones received Peace Officers' Standards and Training (POST)

– 16 –

certification since 1997, and has continued in his new profession as a firearms, self-defense and use of force trainer for peace officers and other citizens.  Plaintiff Jones has personally trained thousands of peace officers and private citizens in the proper use of handguns, rifles, shotguns, and less lethal options involving the use of force.  Plaintiff Jones has received specialized training with handguns, rifles and shotguns, and has received NRA-training and proficiency as a part of his chosen, post-law enforcement profession.

59.     Having successfully held Certificates of Eligibility ("COE") to own/possess firearms and/or ammunition under Cal. Penal Code § 26710, a necessary requirement to becoming or maintaining status as a  certified firearm instructor under current DOJ policy. (See form BOF 037, available at:

https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/bof_037.pdf ("All applicants for Certified Instructor must have a valid Certificate of Eligibility (COE).")

60.     In fact, at the current time, Plaintiff Jones is listed on the DOJ's website as one of its Certified Instructors eligible to provide training specified by Pen. Code § 31635(b).   A true and correct excerpt from the DOJ's current list of instructors authorized to provide "Comparable Firearm Safety Training" which includes Plaintiff Jones is attached hereto as **Exhibit L**.

61.     Sometime in 2018, Plaintiff Jones submitted his application to the California DOJ for renewal of his COE which he had held without incident since 2010.  Sometime in or around February 2018, the DOJ informed Plaintiff Jones that the COE application was being delayed. Plaintiff Jones then initiated a record review request pursuant to Pen. Code § 11126 and 11 Cal. Code Regs. § 4040(b).  On or about February 23, 2019, the DOJ Bureau of Firearms informed Plaintiff Jones that according to the Department's records, he was "not eligible to own, possess or have under [his] custody or control any firearm[,]" and denied Plaintiff a Certificate of Eligibility.  A true and correct copy of the DOJ's letter of February 23, 2019 is attached hereto as **Exhibit M**.

62.     On information and belief, the same laws and policies, practices, and customs that were used to deny Plaintiffs Linton and Stewart their rights, in the face of valid court orders from

other states that specifically set aside, vacated or otherwise dismissed the felony convictions, and restored the subjects' firearm rights, were determined to be of no application to the purchase of firearms in California, and operated to deny Plaintiff Jones the same.

63.     On information and belief, Defendants, and each of them, are responsible for issuing, implementing, and enforcing the laws, policies, practices, and customs that denied Plaintiff Jones the right to purchase, possess, and keep a firearm in his home for self-defense and for his chosen profession as a law enforcement and civilian firearms trainer.

64.     Plaintiff Jones has suffered and is continuing to suffer irreparable injury as a result of the DOJ's determination, through policies issued and implemented by defendants, that Plaintiff is prohibited from owning, possessing or handling firearms and ammunition.  After over thirty years of faithful service in a career in law enforcement, Plaintiff Jones is now unable to pursue his career as a firearms instructor and trainer as a result of the defendants' policies.

65.     Furthermore, Plaintiff Jones reasonably fears arrest and prosecution as a result of defendants' policies and practices as they pertain to the Department of Justice's Armed Prohibited Persons (APPS) enforcement program.  Armed agents of the California DOJ have been known to show up at the homes of persons of whom the DOJ became aware is on their "list" of allegedly prohibited persons, such as Plaintiff Linton above, to intimidate and coerce such persons into giving up important rights, including the right to keep and bear arms guaranteed by the United States Constitution.  Furthermore, the California Department of Justice has been known to retaliate against citizens who exercise their right to petition the courts to restore their firearm rights by sending armed agents to their homes.  See, e.g., *James v. Granger*, E.D. Cal. No. 1:13-cv-00983.  Accordingly, both preliminary and permanent injunctive relief is appropriate.

66.     As to all claims for relief set forth below, all Plaintiffs are seeking relief from all Defendants named herein.

//

//

SEILER EPSTEIN LLP
Attorneys at Law

**SEILER EPSTEIN LLP**
Attorneys at Law

1

**CLAIMS FOR RELIEF**

2

**COUNT I: VIOLATION OF U.S. CONST., AMEND. II**

3
4

67.     Plaintiffs incorporate by reference paragraphs 1 through 66 as if fully set forth herein.

5
6
7
8
9

68.     The Second Amendment to the United States Constitution states, in pertinent part, that "the right of the people to keep and bear arms, shall not be infringed."  The Second Amendment further "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

10
11
12
13

69.     As the Court subsequently held in *McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010): "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those *fundamental* rights necessary to our system of ordered liberty."  130 S.Ct. at 3043 (emphasis added).

14
15
16
17
18
19

70.     Individual Plaintiffs are now responsible, law-abiding citizens with no history of violent behavior or conduct that would suggest that they pose any elevated threat or danger to others.  The felony convictions that they were charged with, and found guilty of, were punishable by imprisonment, or by probation.  Neither of the Individual Plaintiffs were sentenced to a term in prison, and all Individual Plaintiffs successfully completed the terms of their probation.

20
21
22
23
24
25

71.     Individual Plaintiffs, now permanent residents of California, desire and intend to purchase, possess, and keep firearms for self-defense, and for the defense of their families, primarily self-defense within their homes.  However, Individual Plaintiffs are prevented from purchasing, inheriting, obtaining and keeping firearms, for lawful purposes, on account of the laws of the State of California and Defendants' policies, practices, and customs described herein, that are being applied to them.

26
27
28

72.     Defendants' policies that have been adopted, and are being enforced, which operate to deny these plaintiffs, and others similarly-situated to them, the ability or right to purchase, possess, and keep firearms within their home, and which are based upon the imposition

– 19 –

of non-violent felony convictions occurring in other states, notwithstanding that (a) those prior

felony convictions were vacated, set aside, or were otherwise adjudged to have been exonerated

by courts of those state, and (b) those other states specifically adjudged plaintiffs to be permitted

a restoration of their firearm rights.

73.     The crimes for which the Individual Plaintiffs had been convicted are all more

than ten (10) years old, were for non-violent, lesser-classified felonies, and did not involve the

use of force.  The sentences imposed upon the plaintiffs were minor, and their convictions were

eventually adjudged to have been vacated, expunged, or set aside under the laws of those states

by a court of competent jurisdiction.  Notwithstanding the non-violent nature of those

convictions, and the subsequent restoration of plaintiffs' rights, the laws and Defendants'

policies, practices, and customs described herein, as applied to Individual Plaintiffs, amount to a

total and permanent deprivation of their fundamental, individual right to keep and bear arms and

ammunition, as guaranteed by the Second Amendment, and are therefore an infringement upon

those rights.  The circumstances surrounding the Individual Plaintiffs' convictions are therefore

and should be distinguishable from those persons that have been historically excluded from the

right to keep and bear arms.

74.     The State of California's laws and Defendants' policies cannot be justified, and

therefore fail to satisfy any level or mode of scrutiny at all, let alone the heightened scrutiny that

is required to deprive individuals of such fundamental rights, as established by the Supreme

Court in *Heller*, 554 U.S. at 628, n. 27.  The challenged laws and policies unquestionably burden

conduct and activity protected by the Second Amendment, as they result in a complete

prohibition of firearm possession, for any and all purposes, including self-defense within the

home.  This burden is severe because it completely eviscerates the right, or a core exercise of the

right, with no actual means to restore those rights, absent – according to Defendants – a

presidential pardon.

75.     Defendants' policy of permanently depriving Individual Plaintiffs the right to

keep and bear arms, under such circumstances, violates the Second Amendment.  To the extent

1    that Cal. Pen. Code §§ 29800 (prohibiting possession of a firearm by a felon) and 30305

2    (prohibiting possession of ammunition by a felon) is applied to Individual Plaintiffs, and other

3    members of the Organizational Plaintiffs and similarly-situated members of the public, it is

4    unconstitutional.

5         WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below.

6

7                    **COUNT II: VIOLATION OF U.S. CONST., Art . IV § 1**

8                            **Full Faith and Credit Clause**

9         76.    Plaintiffs incorporate by reference paragraphs 1 through 75 as if fully set forth

10   herein.

11        77.    Article IV, section 1 of the United States Constitution provides that "Full Faith

12   and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of

13   every other State."  "That Clause requires each State to recognize and give effect to valid

14   judgments rendered by the courts of its sister States."  *V.L. v. E.L.*, 136 S. Ct. 1017, 1020 (2016).

15   The purpose of this Clause is "to alter the status of the several states as independent foreign

16   sovereignties, each free to ignore obligations created under the laws or by the judicial

17   proceedings of the others, and to make them integral parts of a single nation."  *Id.* (citing

18   *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 277, 56 S.Ct. 229 (1935)).

19        78.    The Full Faith and Credit Clause, and its enabling statute (28 U.S.C. § 1738)

20   create a rule of preclusive effect of final, binding adjudications from one state court in another

21   court.  "A final judgment in one State, if rendered by a court with adjudicatory authority over the

22   subject matter and persons governed by the judgment, qualifies for recognition throughout the

23   land." *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233, 118 S.Ct. 657, 664 (1998)

24        79.    Moreover, there is no "roving public policy exception" to the full faith and credit

25   due judgments, and the Full Faith and Credit Clause orders submission, even to the hostile

26   policies reflected in the judgment of another state.  *Baker*, 522 U.S. at 233.

27        80.    Defendants' policies, which amount to a refusal to honor the expungements, set-

28

SEILER EPSTEIN LLP
Attorneys at Law

– 21 –

aside, and/or vacation of felony convictions in other states, and their refusal to honor the

restoration of firearm rights expressly adjudicated by the courts of the other states, and their

refusal to restore firearm rights to such individuals, including the Individual Plaintiffs herein,

violate the Constitution's Full Faith and Credit Clause, and its enabling statute, 28 U.S.C. §

1738.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below.

### COUNT III: VIOLATION OF U.S. CONST., Art . IV § 2; Amend. XIV, § 1
**Privileges and Immunities Clause**
**(Against All Defendants)**

81.     Plaintiffs incorporate by reference paragraphs 1 through 80 as if fully set forth

herein.

82.     The State of California honors and permits a process by which persons convicted

of certain, less serious felony offenses within this state may have their firearms rights reinstated.

Specifically, this process generally allows certain persons convicted of qualifying offenses,

namely, certain "wobbler" offenses [i.e., offenses that can be charged either as a felony or a

misdemeanor] that did not involve the use of a dangerous weapon, or for which the person was

not sentenced to a term in state prison, to apply for reduction of a felony "wobbler" to a

misdemeanor, pursuant to Cal. Penal Code § 17(b).  Furthermore, under such circumstances, a

person convicted of a felony in California may also seek and obtain expungement of a criminal

record under Pen. Code § 1203.4.  An application for a reduction of a felony conviction to a

misdemeanor may be made and granted at any time, even after the sentence was served or

probation completed.

83.     By virtue of a post-conviction reduction of a felony to a misdemeanor utilizing

Pen. Code § 17(b), many if not most felony offenses so reduced may also result in a restoration

of civil rights, including the right to possess and obtain firearms by those previously convicted in

California courts and prohibited from purchasing or possessing firearms.

84.     Defendants' policies, practices, and customs are to honor the reduction of certain

SEILER EPSTEIN LLP
Attorneys at Law

qualifying offenses committed in California, where a reduction to a misdemeanor has been adjudged by a Superior Court within this state, pursuant to Pen. Code § 17(b).  Under such circumstances, the California Department of Justice, and its Bureau of Firearms, which administers firearm purchase and transfer applications within this State, will not prevent a person previously convicted of a felony wobbler from obtaining and keeping firearms for lawful purposes, including self-defense, if such offense is reduced to a misdemeanor, post-conviction, pursuant to Pen. Code § 17(b), and if the offense otherwise qualifies.  Otherwise, a person convicted of a felony *in any jurisdiction* cannot own, purchase, receive, or have in his or her possession, custody or control any firearm.  Pen. Code § 29800.

85.     However, the State of California will only honor the reduction of these qualifying felony convictions utilizing the statutes and the process described above.  As shown throughout this complaint, California refuses to honor the comparable process utilized by other states, including the States of Washington, Arizona, and Texas, shown above, even where the courts of those jurisdictions expressly have set aside the felony convictions and have restored, by order of the court or by operation of law, firearms rights to such persons who have successfully completed their terms of probation.  Accordingly, Defendants' refusal to honor the set-aside or vacation of those felony convictions, and/or restoration of firearm rights, by courts of those other states, amounts to unlawful discrimination, favoring California's citizens, since persons convicted of felonies in other states, in essence, have no actual means to seek judicial restoration of their firearms rights here, or otherwise comparable to the process of reduction under those mechanisms (including Pen. Code § 17(b)) described above.

86.     Article IV, section 2, clause 1 of the United States Constitution requires that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  The purpose of this Clause is to prevent a state from treating a citizen of another state as an alien, or discriminating against him or her in favor of its own citizens.  "The primary purpose of this clause, like the clauses between which it is located—those relating to full faith and credit and to interstate extradition of fugitives from justice—was to help fuse into one

Nation a collection of independent, sovereign States. It was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct. 1156, 1162 (1948).

87.     Furthermore, the Privileges and Immunities Clause provides important protections for non-residents who enter the state to obtain employment, or for any other purposes, including the right to travel and become a permanent resident of the state.  *Saenz v. Roe*, 526 U.S. 489, 502, 119 S.Ct. 1518, 1526 (1999).  The right to travel is further protected by the opening words of the Fourteenth Amendment to the United States Constitution, which states: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States[.]"  *Id*.

88.     The laws of the State of California, and the policies, practices, and customs of the California Department of Justice, as issued, implemented, and enforced by Defendants, and each of them, which refuse to recognize that felony convictions have been vacated or set aside by courts in other states, and ignore the express findings of those states' courts that have restored a person's firearm rights, discriminates against citizens from the other states of the Union, and in favor of California residents, by denying those persons, including the Individual Plaintiffs herein and those similarly-situated to them, any means of judicial recourse to obtain felony expungements and to seek a restoration of their firearm rights, even though such a path is available to persons convicted of similar, less serious, and qualifying felonies within this state. Accordingly, these policies of Defendants, and each of them, violates the constitutional rights of those persons convicted outside of California, now residing here, including the Individual Plaintiffs as these policies are applied to them.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below.

//

//

//

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants, and pray for relief as follows:

1.      For declaratory judgment and relief, pursuant to 28 U.S.C. § 2201, that Defendants' policy of refusing to honor the set-aside and vacation of felony convictions, and restoration of firearm rights by the courts of the other states, is unconstitutional as applied to Individual Plaintiffs and others similarly-situated to them, and violates the Second Amendment, and likewise, that Pen. Code §§ 29800 and 30305, as applied to Individual Plaintiffs and others similarly-situated to them, is unconstitutional;

2.      For declaratory judgment and relief, pursuant to 28 U.S.C. § 2201, that Defendants' policy of refusing to honor the set-aside and vacation of felony convictions, and restoration of firearm rights by the courts of the other states, is unconstitutional as applied to Individual Plaintiffs and others similarly-situated to them, is unconstitutional and violates the Full Faith and Credit Clause;

3.      For declaratory judgment and relief, pursuant to 28 U.S.C. § 2201, that Defendants' policy of refusing to honor the set-aside and vacation of felony convictions, and restoration of firearm rights by the courts of the other states, is unconstitutional as applied to Individual Plaintiffs and others similarly-situated to them, is unconstitutional and violates the Privileges and Immunities Clause (Art. IV, § 2), and the Privileges or Immunities Clause of the Fourteenth Amendment;

4.      For temporary, preliminary and permanent injunctive relief, consistent with declaratory relief sought herein, enjoining Defendants, and their officers, agents and employees, from enforcing their laws, policies, practices, and customs of refusing to honor the set-aside and vacation of felony convictions, and restoration of firearm rights by the courts of the other states, insofar as it applies or may apply to any and all plaintiffs or their members, and from otherwise enforcing or administering the Armed Prohibited Persons (APPS) program, or similar enforcement programs, or acting in concert with other law enforcement agencies to enforce or

administer similar programs, that would (a) operate to deprive Plaintiffs of fundamental rights guaranteed by the U.S. Constitution and the California Constitution, and (b) operate to retaliate against Plaintiffs for exercising their right to file this action;

5.      For costs of suit, including attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law; and

6.      For all such relief to which Plaintiffs may be justly entitled, which the Court may deem to be just and proper.

Dated: December 2, 2019               **SEILER EPSTEIN LLP**


/s/ George M. Lee
George M. Lee

Attorneys for Plaintiffs

**SEILER EPSTEIN LLP**
**Attorneys at Law**