1  George M. Lee (SBN 172982)
       gml@seilerepstein.com
2  **SEILER EPSTEIN LLP**
   275 Battery Street, Suite 1600
3  San Francisco, CA 94111
   Phone: (415) 979-0500
4  Fax:    (415) 979-0511

5  Attorneys for Plaintiffs
   CHAD LINTON, PAUL MCKINLEY STEWART,
6  KENDALL JONES, FIREARMS POLICY FOUNDATION,
   FIREARMS POLICY COALITION,
7  SECOND AMENDMENT FOUNDATION,
   CALIFORNIA GUN RIGHTS FOUNDATION and MADISON
8  SOCIETY FOUNDATION

9

10                **UNITED STATES DISTRICT COURT**

11               **NORTHERN DISTRICT OF CALIFORNIA**

12

13  CHAD LINTON, et al.,                  | Case No. 3:18-cv-07653-JD

14          Plaintiffs,                   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

15

16          vs.

17  XAVIER BECERRA, in his official capacity as   **[FRCP 65]**
    Attorney General of California, et al.,

18                                        Date:      January 23, 2020
19          Defendants.                   Time:      10:00 a.m.
                                          Courtroom 11, 19th Floor
20                                        Judge:     Hon. James Donato

21

22

23

24

25

26

27

28

SEILER EPSTEIN LLP
Attorneys at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEILER EPSTEIN LLP
Attorneys at Law

## **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS .......................................................................................1

       A.  PLAINTIFF KENDALL JONES ......................................................................1

       B.  PLAINTIFF CHAD LINTON .........................................................................3

       C.  PLAINTIFF PAUL MCKINLEY STEWART ....................................................4

III.   ARGUMENT ........................................................................................................5

       A.  STANDARD ..............................................................................................5

       B.  PLAINTIFFS HAVE DEMONSTRATED A LIKELIHOOD OF PREVAILING ON THE MERITS ......6

           1.   Plaintiffs Will Prevail on their Second Amendment Claims. ..................6

           2.   Plaintiffs Will Prevail on Their Full Faith & Credit Clause Claims ......................9

       C.  PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IN THE
           ABSENCE OF INJUNCTIVE RELIEF. ...............................................11

           1.   All Plaintiffs Have Shown Unconstitutional Deprivation of Substantial Liberty
                Interests Protected by the Second Amendment. ....................................11

           2.   Plaintiff Jones Has Shown Irreparable Injury From Being Unable to Continue His
                Profession as a Law Enforcement Firearms Trainer. ............................12

           3.   Preliminary Injunctive Relief is Necessary to Prevent Enforcement Against Mr.
                Jones Pending the Disposition of this Action. .......................................13

       D.  THE BALANCING OF RELATIVE HARMS FAVORS INJUNCTIVE RELIEF. ..........................14

       E.  THE PUBLIC INTEREST FAVORS AN INJUNCTION. ..............................................15

IV.    CONCLUSION .....................................................................................................15

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIM. INJUNCTION | CASE NO. 3:18-cv-07653-JD

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166 (9th Cir. 2018)................15

4

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ....................................5

5

*Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ......................12, 13, 15

6

*Baker v. Gen. Motors Corp.*, 522 U.S. 222, 118 S.Ct. 657 (1998)..............................................10

7

*Barajas v. City of Anaheim*, 15 Cal.App.4th 1808 (1993)...........................................................13

8

*Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017).....................................................................7, 8

9

*Beecham v. United States*, 511 U.S. 368, 114 S.Ct. 1669 (1994).................................................7

10

*Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016)........................................................6

11

*Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007 (1998) ....................................................7

12

*Chalk v. U.S. Dist. Ct.*, 840 F.2d 701 (9th Cir. 1988)................................................................13

13

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S.Ct. 876 (2010) ..........................9

14

*Costa Mesa City Employees' Assn. v. City of Costa Mesa*, 209 Cal.App.4th 298 (2012)............13

15

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008) ..................................6, 7, 8

16

*Duncan v. Becerra*, 265 F.Supp.3d 1106 (S.D. Cal. 2017),
    *aff'd*, 742 F.App'x 218 (9th Cir. 2018)........................................................................7, 11, 15

17

18

*Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153 (9th Cir. 2011) .......................13

19

*Estin v. Estin*, 334 U.S. 541 (1948) ............................................................................................10

20

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ...........................................................7, 11

21

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017) ......................................................................8

22

*Grace v. District of Columbia*, 187 F.Supp.3d 124 (D.D.C. 2016)..............................................11

23

*Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 116 S.Ct. 873 (1996) .......................10

24

*McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010) .......................................6, 7

25

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) .............................................................11, 15

26

*Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339 (1940) ...............................................................10

27

*Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 56 S.Ct. 229 (1935)................................10

28

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) ...................................................11

*Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 59 S.Ct. 629 (1939)..10

**SEILER EPSTEIN LLP**
**Attorneys at Law**

*Pimentel v. Dreyfus*, 670 F.3d 1096 (9th Cir. 2012)............................................................5

*Sierra Forest Legacy v. Rey*, 577 F.3d 1015 (9th Cir. 2009) ......................................14

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ................................................8, 12

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ........................................14

*United States v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010)............................................9

*United States v. Buttner*, 432 F. App'x 696 (9th Cir. 2011) ......................................14

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013).........................................7, 8

*United States v. Fowler*, 198 F.3d 808 (11th Cir. 1999) ............................................9

*V.L. v. E.L.*, -- U.S. --, 136 S.Ct. 1017, 1020 (2016)...............................................10

*Vanguard Outdoor, LLC v. City of L.A.*, 648 F.3d 737 (9th Cir. 2011) .......................15

*Williams v. North Carolina*, 317 U.S. 287 (1942).....................................................10

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365 (2008) ...........5, 14

**Statutes**

18 U.S.C. § 921..........................................................................................................6, 8

18 U.S.C. § 922...................................................................................................6, 7, 8, 9

28 U.S.C. § 1738..............................................................................................................10

Cal. Pen. Code § 11106 ...................................................................................................14

Cal. Pen. Code § 29800 ........................................................................................... *passim*

Cal. Pen. Code § 30105 .....................................................................................................3

Cal. Pen. Code § 30305 ........................................................................................... *passim*

Cal. Penal Code § 26710 ........................................................................................2, 12, 15

Revised Code of Wash. 9.41.040........................................................................................3

**Other Authorities**

Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)..................11

**SEILER EPSTEIN LLP**
Attorneys at Law

**Regulations**

11 Cal. Code Regs. § 4031 ...........................................................................................12


**Constitutional Provisions**

U.S. Const., Amend. II ....................................................................................... *passim*

U.S. Const., Art. IV, § 1 ..........................................................................................9, 10

**SEILER EPSTEIN LLP**
**Attorneys at Law**

## I.   INTRODUCTION

This action seeks to vindicate and restore fundamental rights, including the right to keep and bear arms.  The State, acting through the defendants' policies, practices and customs, deprives plaintiffs and others similarly situated on the grounds that once one is a convicted felon, he is always a convicted felon.  However, it is undisputed that those purportedly disqualifying felony convictions emanating from other states have been set aside, vacated or otherwise dismissed, and that plaintiffs' rights have been expressly restored to them.  Accordingly, there is no legal or equitable bar to the continuing deprivation of the plaintiffs' rights under the Second Amendment.  As plaintiffs have also made a showing of irreparable harm in the absence of injunctive relief, a preliminary injunction restoring their rights should issue, and defendants should be enjoined from enforcing Pen. Code §§ 29800 (prohibiting possession of firearms by a felon) or 30305 (ammunition) against them.

## II.   STATEMENT OF FACTS

This case involves three individual plaintiffs who were convicted in three different states, but who are now subject to defendants' common policy to deprive them and others like them from possessing firearms or ammunition.

### A.   PLAINTIFF KENDALL JONES

Plaintiff Kendall Jones has lived in the County of Sacramento, for over 39 years.  (Jones Decl., ¶ 1).  He was employed by the California Department of Corrections as a Correctional Officer for 30 years until his final retirement in 2014, and served as a firearms and use-of-force instructor for the Department.  Mr. Jones also worked as the Primary Armory Officer for the California State Prison Solano facility for over 19 years.  (Id.)  He is POST-certified and NRA-certified in the subjects of firearms, laws, self-defense, firearms safety and responsibility, and in his career received numerous letters of commendation and appreciation, both pertaining to his primary duties as a Correctional Officer, and also as a firearms and use-of-force instructor.  (Id., ¶ 3-4).  Since retirement, he has pursued the natural course of his career as a law enforcement firearms trainer, and in this capacity, he has personally trained thousands of peace officers and private citizens in the proper use of handguns, rifles, shotguns, less-lethal defensive weapons

SEILER EPSTEIN LLP
Attorneys at Law

1  (e.g., pepper spray) and use of force. (Id., ¶ 5).  Mr. Jones continues to expand his own training,

2  permitting him to provide training in all aspects of firearms and self-defense.  (Id., ¶¶ 5-7).

3   When he was 19 years old – over three decades ago – Mr. Jones was arrested in Houston,

4  Texas, from an incident involving the alleged misuse of a credit card.  Mr. Jones maintains that

5  he had used a credit card under mistaken pretenses.  (Jones Decl., ¶ 8).  Nevertheless, after being

6  charged with credit card fraud in 1980, the prosecutor made an offer to have the court set aside

7  and dismiss the matter, following a period of probation, if Mr. Jones agreed to plead guilty to a

8  single charge of "credit card abuse," a third degree felony under Texas law, which involved no

9  term of confinement.  (Id., ¶ 9).  In light of the prosecutor's offer by which the charges would be

10  set aside and dismissed, Mr. Jones accepted the deal, pled guilty to the charge offered, and

11  completed a three-year term of probation.  (Id.)  After successfully completing probation, on or

12  about August 22, 1983, per the agreement, the district court for the County of Harris, Texas,

13  permitted him to withdraw his plea of guilty, and set aside and dismissed the judgment of

14  conviction.  (Id., ¶ 10; Jones Ex. A).

15  Mr. Jones then moved to California and pursued a career in law enforcement with the

16  State of California.  (Jones Decl., ¶ 11).  For thirty years, he legally and necessarily owned and

17  possessed firearms, as a part of his profession, for personal protection, recreation and other

18  lawful purposes.  (Id.)  Since retiring in 2014, Mr. Jones has had a career as a law enforcement

19  firearms and use-of-force trainer, drawing upon 30 years of training and experience in the field.

20  To continue in this field and chosen profession, of course, he is required to own, possess, handle

21  and use firearms and ammunition.  (Id.)

22   He previously acquired and held a Certificate of Eligibility ("COE") to possess firearms

23  and ammunition under Cal. Penal Code § 26710, a necessary requirement to becoming or

24  maintaining status as a certified firearm instructor under current DOJ policy.  (Jones Decl., ¶ 13).

25  In fact, even at present, Mr. Jones is listed on the Department of Justice's website as one of its

26  Certified Instructors eligible to provide training specified by Pen. Code § 31635(b).  (Jones

27  Decl., ¶ 12; Jones Ex. B).  But in 2018, after he submitted his renewal application for his COE,

28  which he had held since 2010, the DOJ informed him that his application was being delayed.

SEILER EPSTEIN LLP
Attorneys at Law

1   (Jones Decl., ¶ 14.)  After Mr. Jones initiated a record review request, the Department informed

2   him on February 23, 2019 that he was "not eligible to own, possess or have under [his] custody

3   or control any firearm[,]" and denied him the renewed COE. (Id.; Jones Ex. C).

4   **B.   PLAINTIFF CHAD LINTON**

5        In 1987, while plaintiff Chad Linton was serving in the U.S. Navy, and stationed at NAS

6   Whidbey Island, Washington, he tried – albeit briefly – to outrun a Washington State Police

7   officer and make it back to base.  He reconsidered the idea, and was arrested without resistance.

8   (Linton Decl., ¶ 3).  Mr. Linton was charged and pled guilty to attempted evasion, a Class C

9   felony under the Revised Code of Washington, and driving while intoxicated, a misdemeanor.

10  (Id., ¶ 4).  He spent seven days in jail.  (Id.)  In 1988, he successfully completed his probation,

11  and received a  certificate of discharge, and reasonably believed, based upon statements made by

12  the Washington State court judge that the matter had been dismissed from his records.  (Id., ¶ 5).

13       Mr. Linton moved back to California, where he has been and remains a law-abiding

14  citizen.  (Id., ¶ 6-8).  In 2015, he attempted to make a firearm purchase but was surprised to learn

15  that he was denied by the California DOJ due to the Washington State conviction.  (Id., ¶ 9).  Mr.

16  Linton hired a Washington attorney who re-opened the criminal proceedings, withdrew the guilty

17  plea, and entered a retroactive not-guilty plea.  (Id.)  The court then issued its "Order on Motion

18  Re: Vacating Record of Felony Conviction," in which it specifically found that the crime for

19  which Mr. Linton was convicted was not a violent offense.  (Linton Decl., ¶ 10; Linton Ex. A).

20  The court granted the motion to vacate the conviction, set aside the guilty plea, and released

21  plaintiff from all penalties and disabilities resulting from the offense.  On April 18, 2016, the

22  Island County Superior Court also issued an Order Restoring Right to Possess Firearms pursuant

23  to Revised Code of Washington  9.41.040(4).  (Linton Decl., ¶ 11; Linton Ex. B).

24       Mr. Linton underwent a Personal Firearms Eligibility Check ("PFEC"), pursuant to Cal.

25  Pen. Code § 30105(a), to confirm his eligibility to purchase and/or possess a firearm, which

26  indicated he was eligible both to possess and purchase firearms. (Linton Decl., ¶ 12; Linton Ex.

27  C).  In 2018, Mr. Linton attempted to purchase a rifle, but was again denied.  (Linton Decl., ¶ 13;

28

3

1   Linton Ex. D).  Mr. Linton then underwent a "Live Scan" fingerprint-based background check

2   request with the DOJ directly, which again showed the presence of no felony convictions.

3   (Linton Decl., ¶ 14).

4           Mr. Linton's counsel began discussions with the California DOJ to correct his status as a

5   "prohibited person" here.  Counsel provided the DOJ with the Washington court orders vacating

6   the felony conviction and restoring plaintiff's firearm rights.  (Linton Decl., ¶ 15).  In response,

7   the DOJ informed plaintiff that "the [felony] entry in question cannot be found on your

8   California criminal history record, therefore, no further investigation is required[,]" and that his

9   fingerprints "did not identify any criminal history maintained by the Bureau of Criminal

10  Information and Analysis." (Linton Decl., ¶ 16; Linton Exs. F and G).  Based upon these letters,

11  Mr. Linton attempted to purchase a revolver in March 2018, but was again denied.  (Linton

12  Decl., ¶ 17).  Then, on April 3, 2018, DOJ agents of the Armed Prohibited Persons System

13  (APPS) enforcement program, came to Mr. Linton's home, and seized several firearms that he

14  had acquired and owned throughout the years, including an antique, family-heirloom shotgun

15  that was once owned by his grandfather.  (Id., ¶ 18).  All of these firearms were acquired through

16  legal purchases or transfers, through federally-licensed firearm dealers (FFLs), and pursuant to

17  DOJ background checks.  Mr. Linton's wife showed the DOJ agents the Washington State court

18  orders that vacated the felony conviction, and restored Mr. Linton's gun rights.  These agents

19  sought guidance from defendant Wilson, who purportedly advised that the Washington court

20  orders would have no effect here, and ordered seizure of the firearms.  (Id., ¶¶ 18-20).

21  C.   **PLAINTIFF PAUL MCKINLEY STEWART**

22          In 1976, when plaintiff Stewart was 18 years old, and living in Arizona, he succumbed to

23  a crime of opportunity, and stole some lineman's tools from a telephone company truck.

24  (Stewart Decl., ¶ 3).  When the police came to his residence to investigate, Mr. Stewart gave up

25  the tools and offered no resistance to his arrest.  (Id.)  Mr. Stewart was found guilty of first

26  degree burglary, a felony, in the County of Yuma, Arizona.  He was sentenced to three years of

27  probation, and the Court imposed a suspended sentence.  (Id., ¶ 4).  He successfully completed

**SEILER EPSTEIN LLP**
Attorneys at Law

his probation in 1978, and believed that the felony conviction had been dismissed.  (Id., ¶ 4-5).

Since moving to California in 1988, Mr. Stewart has been a law-abiding citizen, and has remained steadily and gainfully employed.  (Stewart Decl., ¶ 6).  In 2015, he attempted to purchase a pistol for self defense in the home, which was denied due to the presence of a felony conviction.  (Id., ¶ 7).  A Live Scan fingerprint background check showed a lingering conviction, but did not reflect whether it was a felony.  It also stated that it was "undetermined" whether he was eligible to purchase firearms.  (Id., ¶ 8).

Mr. Stewart filed an application to restore his firearm rights and to set aside his judgment of guilt with the Superior Court of Yuma County, Arizona, which issued an order restoring his firearm rights, and specifically set aside the judgment of guilt.  (Stewart Decl., ¶ 10; Stewart Ex. A).  Believing the matter would be automatically updated in any background search, Mr. Stewart attempted to make another firearm purchase on February 10, 2018, which the DOJ also denied. (Stewart Decl., ¶ 12).  Mr. Stewart had several telephone conversations with DOJ officials, who informed him that the Arizona felony conviction disqualified him from possessing or purchasing firearms, notwithstanding the Arizona court's order. (Id., ¶ 14.)

### III.   ARGUMENT

#### A.   STANDARD

A plaintiff seeking preliminary injunctive relief must establish that he is likely to succeed on the merits, is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365 (2008). A stronger showing of one element may offset a weaker showing of another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit also uses the "serious questions" approach under which an injunction may be ordered when plaintiff demonstrates serious questions going to the merits and the balance of hardships tips sharply in plaintiff's favor, in addition to meeting the other elements of the *Winter* test. *Id*. at 1131-32. "[A]t an irreducible minimum," the party seeking an injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012).

SEILER EPSTEIN LLP
Attorneys at Law

5

**B.**   **PLAINTIFFS HAVE DEMONSTRATED A LIKELIHOOD OF PREVAILING ON THE MERITS.**

**1.**   **Plaintiffs Will Prevail on Their Second Amendment Claims.**

In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), the Supreme Court affirmed an individual right to possess a firearm "unconnected with militia service." 554 U.S. at 582. At the core of the Second Amendment is the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 634-35. And in *McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010), the Court held that Second Amendment right as recognized in *Heller* was a right fundamental to our system of ordered liberty. 561 U.S. at 778, 791. At the same time, the Court explained that its recognition of an individual right to bear firearms would not "cast doubt on longstanding prohibitions on the possession of firearms by felons[,]" among other restrictions. *Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786. The total prohibition defendants are enforcing against plaintiffs is not "longstanding," and even if it were, plaintiffs are not of a class of persons the Founders understood to be prohibited from possessing arms—i.e., violent and otherwise dangerous persons. *Binderup v. Attorney General*, 836 F.3d 336, 348 (3d Cir. 2016). Nor is there any history or tradition of such a prohibition.

But if one was at some time a felon, does that mean he is *always* a convicted felon, for purposes of the right to own firearms? As a matter of our Nation's history, prohibited persons could have their rights restored once they were no longer considered dangerous. Moreover, 18 U.S.C. § 922(g)(1), the federal statute prohibiting possession of a firearm by convicted felons generally, is subject to an important and relevant qualification, that further defines what it means to have been previously convicted of such disqualifying crimes:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter*, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921, subdiv. (a)(20)(B) (emphasis added). The first sentence of this provision, "the choice-of-law clause," defines the rule for determining "[w]hat constitutes a conviction," and the second sentence, "the exemption clause," is likewise to be determined according to the state

SEILER EPSTEIN LLP
Attorneys at Law

1    where the conviction originated as well.  *Beecham v. United States*, 511 U.S. 368, 114 S.Ct. 1669

2    (1994); *Caron v. United States*, 524 U.S. 308, 313, 118 S.Ct. 2007 (1998).

3          The State's enforced prohibition here has no longstanding historical predicate and

4    broadly restricts the constitutionally protected rights of plaintiffs for all purposes relating to

5    firearms. And like the ban struck down in *Heller*, it threatens citizens with substantial criminal

6    penalties. *Heller*, 554 U.S. at 634. Because the challenged law fails *Heller*'s categorical analysis,

7    the plaintiffs have a high likelihood of success on the merits.  But even under the two-step

8    approach first articulated within this Circuit in *United States v. Chovan*, 735 F.3d 1127, 1136

9    (9th Cir. 2013), plaintiffs will prevail. [1]  Under this two-step approach, the court must first ask

10   "whether the challenged law burdens conduct protected by the Second Amendment," and, if so,

11   then determines the "appropriate level of scrutiny." In *Chovan*, the court considered a

12   misdemeanant's challenge to 18 U.S.C. § 922(g)(9), which imposes a lifetime firearms ban on

13   domestic violence misdemeanants. At the first step, the Ninth Circuit found that section

14   922(g)(9)'s lifetime prohibition did burden rights protected by the Second Amendment.  735

15   F.3d at 1137.  Therefore, it cannot reasonably be disputed that defendants' policies here similarly

16   burden conduct protected by the Second Amendment.

17         At the second step, a court is to measure "'how severe the statute burdens the Second

18   Amendment right. 'Because *Heller* did not specify a particular level of scrutiny for all Second

19   Amendment challenges, courts determine the appropriate level by considering '(1) how close the

20   challenged law comes to the core of the Second Amendment right, and (2) the severity of the

21   law's burden on that right.'"  *Duncan v. Becerra*, 265 F.Supp.3d 1106, 1119 (S.D. Cal. 2017)

22   (granting preliminary injunction), *aff'd*, 742 F.App'x 218 (9th Cir. 2018) (quoting *Bauer v.*

23   *Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017)).  "Guided by this understanding, [the] test for the

24   appropriate level of scrutiny amounts to 'a sliding scale.'  […]  'A law that imposes such a

25   
_____

26   [1]Plaintiffs preserve and maintain their position that such a test, and tiered scrutiny, are inappropriate for categorical bans, including that at issue here. *Heller*, 554 U.S. at 634, 635 ("We know of no other enumerated constitutional

27   right whose core protection has been subjected to a freestanding 'interest-balancing' approach"; "[t]he Second Amendment . . . is the very *product* of an interest balancing by the people"); *Ezell v. City of Chicago*, 651 F.3d 684,

28   703 (7th Cir. 2011) ("Both *Heller* and *McDonald* suggest that broadly prohibitory laws restricting the core Second Amendment right—like the handgun bans at issue in those cases, which prohibited handgun possession even in the home—are categorically unconstitutional.").

SEILER EPSTEIN LLP
Attorneys at Law

7

1    severe restriction on the fundamental right of self defense of the home that it amounts to a

2    destruction of the Second Amendment right is unconstitutional under any level of scrutiny.' […]

3    Further down the scale, a 'law that implicates the core of the Second Amendment right and

4    severely burdens that right warrants strict scrutiny. Otherwise, intermediate scrutiny is

5    appropriate.'" *Bauer*, 858 F.3d at 1222 (citing *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir.

6    2016), and *Chovan*, 735 F.3d at 1138).

7            In this case, if tiered scrutiny is used at all, strict scrutiny should apply to the defendants'

8    policies at issue, i.e., those which prohibit now non-felons formerly convicted in other states for

9    non-violent crimes notwithstanding the set-aside/dismissal of those convictions.  In *Chovan*, the

10   court noted that the statute there at issue, 18 U.S.C. § 922(g)(9), contained exemptions for

11   convictions that have been set expunged, pardoned or set aside, or for those who have had their

12   civil rights restored in section 921(a)(33)(B)(ii), and thus, the majority opinion held that while

13   section 922(g)(9) substantially burdened Second Amendment rights, the burden was "lightened"

14   by those exceptions, and applied intermediate scrutiny.  *Chovan*, 735 F.3d at 1138; *Fisher v.*

15   *Kealoha*, 855 F.3d 1067, 1071 n.2 (9th Cir. 2017). However, in the present case, the very fact

16   that the State refuses to recognize these set-aside exceptions that might otherwise "lighten" the

17   burden makes the burden more severe, and warrants strict scrutiny.

18           The effect of defendants' policies is to deprive persons like plaintiffs Linton, Stewart and

19   Jones of their ability to exercise a fundamental constitutional right to purchase/possess a firearm

20   for lawful purposes, including for self-defense in the home.  (Linton Decl., ¶ 21; Stewart Decl., ¶

21   15; Jones Decl., ¶ 17).  Indeed, in Mr. Linton's case, California Department of Justice Agents

22   came to his home and seized firearms that he had legally purchased, including an antique family

23   heirloom that had once belonged to his grandfather.  (Linton Decl., ¶ 18).  And in Mr. Jones's

24   case, a deprivation of the right to a firearm is particularly problematic, among other reasons,

25   because of his status as a retired correctional officer, who routinely dealt with and was threatened

26   on occasion by some of the state's most violent convicted criminals.  (Jones Decl., ¶ 17.)  Thus,

27   there is no question that the defense policies place a substantial burden on "core" Second

28   Amendment conduct, i.e., the right to keep and bear arms in the home for self-defense.  *Heller*,

**SEILER EPSTEIN LLP**
*Attorneys at Law*

8

554 U.S. at 635.  Accordingly, the defendants' policies should be evaluated under strict scrutiny, that is, requiring defendants to show that their policies are narrowly tailored to achieve a compelling state interest, and that no less restrictive alternative exists to achieve the same ends. *United States v. Alvarez*, 617 F.3d 1198, 1216 (9th Cir. 2010) (citing *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340, 130 S.Ct. 876, 898 (2010)). *See also,*, *United States v. Engstrum*, 609 F.Supp.2d 1227, 1231 (D. Utah 2009) (applying strict scrutiny to § 922(g)(9)).

Plaintiffs here have shown that they are now responsible, law-abiding citizens with no history of violent behavior or conduct that would suggest that they pose any elevated threat or danger to others.  None of the individual plaintiffs was sentenced to a term in prison, and all successfully completed the terms of their probation.  The crimes for which they were convicted are each more than thirty years old, were for non-violent, lesser-classified felonies, and did not involve the use of force.  The sentences imposed upon the plaintiffs were minor, and more to the ultimate point, their convictions were adjudged to have been vacated, expunged, and/or set aside under the laws of those states by courts of competent jurisdiction.  Federal law does not otherwise prohibit them from possessing firearms.  Their convictions are therefore deemed to have been nullified.  See, e.g., *United States v. Fowler*, 198 F.3d 808, 809–10 (11th Cir. 1999) (under Alabama law, restoration of all civil and political rights nullifies any and all legal incapacities, including the right to possess firearms).  Therefore, California cannot prohibit their exercise of this fundamental and important right to keep and bear arms.

**2.    Plaintiffs Will Prevail on Their Full Faith & Credit Clause Claims.**

As an alternative to their Second Amendment claim, plaintiffs have also shown that they will prevail, as a matter of law, on their claim under the Constitution's Full Faith and Credit Clause.  At its core, this case presents the question of whether California is required to honor the judgments of courts in other states that have set aside or vacated plaintiffs' underlying felony convictions, and expressly restored their Second Amendment rights to them.  Article IV, section 1 of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."  "That Clause requires each State to recognize and give effect to valid judgments rendered by the courts of its

SEILER EPSTEIN LLP
Attorneys at Law

sister States." *V.L. v. E.L.*, -- U.S. --, 136 S.Ct. 1017, 1020 (2016).  The Supreme Court has explained that the "animating purpose" of this Clause was:

> to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.

*Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232, 118 S.Ct. 657, 663 (1998) (quoting *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 277, 56 S.Ct. 229 (1935)).

    *Baker* made it clear to distinguish the Clause's command as between legislative acts of other states, and state court judgments.  Specifically, the Court stated that the Clause "does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'"  *Baker*, 522 U.S. at 232 (citing *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501, 59 S.Ct. 629, 632 (1939)).  The Court further clarified: "Regarding judgments, however, the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land."  *Baker*, 522 U.S. at 233 (citing *Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 373, 116 S.Ct. 873 (1996)).

    Importantly, the Court held that there is no "roving public policy exception" to the full faith and credit due judgments, and that the Clause orders submission even to the hostile policies reflected in the judgment of another state.  *Baker*, 522 U.S. at 233.  See also, *Estin v. Estin*, 334 U.S. 541, 546 (1948); *Williams v. North Carolina*, 317 U.S. 287 (1942) (requiring North Carolina to recognize change in marital status effected by Nevada divorce decree contrary to the laws of North Carolina); *V.L. v. E.L.*, 136 S.Ct. at 1020 (a state may not disregard the judgment of a sister state because it deems it to be wrong on the merits) (citing *Milliken v. Meyer*, 311 U.S. 457, 462, 61 S.Ct. 339 (1940)).

    In the present case, defendants' policies  refuse to honor the judgments of the states from which the convictions originated.  These policies, therefore, violate both the Constitution's Full Faith and Credit Clause, and its enabling statute, 28 U.S.C. § 1738.

SEILER EPSTEIN LLP
Attorneys at Law

C.     **PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF INJUNCTIVE RELIEF.**

1.     **All Plaintiffs Have Shown Unconstitutional Deprivation of Substantial Liberty Interests Protected by the Second Amendment.**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.")  The Ninth Circuit has applied the First Amendment's "irreparable if-only-for-a-minute" rule to cases involving other rights and, in doing so, has held a deprivation of these rights represents irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997).

"The same is true for Second Amendment rights. Their loss constitutes irreparable injury." *Duncan*, 265 F.Supp.3d at 1135.  "The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages. […]  'The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence—and psychic comfort—that comes with knowing one could protect oneself if necessary.'" *Id.* (citing *Grace v. District of Columbia*, 187 F.Supp.3d 124, 150 (D.D.C. 2016) and *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011)).  "Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury." *Duncan*, 265 F.Supp.3d at 1135. *See also*, *Ezell*, 651 F.3d at 700 (a deprivation of the right to arms is "irreparable," with "no adequate remedy at law").

Plaintiffs have shown that they are being deprived of the ability to possess firearms for lawful purposes, including self-defense in the home.  All plaintiffs would exercise their rights in the absence of defendants' policies and therefore require injunctive relief to vindicate and restore their rights.  (Linton Decl., ¶ 21; Stewart Decl., ¶ 15; Jones Decl., ¶ 17).  Defendants' enforcement of Pen. Code § 29800(a) (prohibiting possession of firearm by convicted felons) or § 30305(a)(1) (ammunition) should be enjoined as to them.

SEILER EPSTEIN LLP
Attorneys at Law

11

### 2.   Plaintiff Jones Has Shown Irreparable Injury From Being Unable to Continue His Profession as a Law Enforcement Firearms Trainer.

In addition to the pure constitutional injuries alone, plaintiff Jones has also demonstrated significant and ongoing harm as a result of defendants' policies, and their denial of his Certificate of Eligibility under Pen. Code § 26710.[2]  Mr. Jones is simply unable to pursue his long-trained for career as professional a firearms instructor.  (Jones Decl., ¶¶ 3-7, 16).  He has had to discontinue all further firearms instruction, training and classes, and is thus being deprived of a career and livelihood that he has been training for, for over 30 years.  (*Id.*, ¶ 16).  Until defendants are restrained and enjoined, temporarily, preliminarily and permanently, he will continue to be deprived of his ability to make a living in this field.  (*Id.*)  And furthermore, his inability to own/possess or even handle firearms or ammunition, resulting in his inability to be a firearms trainer, is causing severe injury to his professional reputation as a firearms instructor and trainer, within the law enforcement and civilian training communities.  (*Id.*)  Furthermore, there is severe humiliation and embarrassment associated with being a "prohibited person," even after 30 years of service in law enforcement.  (*Id.*)

In *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014), the Ninth Circuit considered a challenge by individual DACA recipients, regarding Arizona's enactments that would have deprived them of state driver's licenses.  The plaintiffs sought a preliminary injunction preventing Arizona officials from enforcing their policy.  The district court found that plaintiffs were likely to succeed on the merits of their equal protection claim, but that they had not shown a likelihood of irreparable harm sufficient to justify preliminary injunctive relief.  The Ninth Circuit reversed, and on this point, specifically found that plaintiffs had shown "ample evidence" that defendants' policies caused them irreparable harm.  757 F.3d at 1068.  The Court continued: "In particular, Plaintiffs' inability to obtain driver's licenses likely causes them irreparable harm by limiting their professional opportunities. Plaintiffs' ability to drive is integral

---

[2]A Certificate of Eligibility, issued by the California DOJ, confirms a person's eligibility to lawfully possess and/or purchase firearms under state and federal law. *Silvester*, 843 F.3d at 825–26 (citing Pen. Code § 26710 and 11 Cal. Code Regs. § 4031(g)).

SEILER EPSTEIN LLP
Attorneys at Law

to their ability to work[...]. Plaintiffs' lack of driver's licenses has, in short, diminished their opportunity to pursue their chosen professions. This 'loss of opportunity to pursue [Plaintiffs'] chosen profession[s]' constitutes irreparable harm." *Arizona Dream Act Coal.*, 757 F.3d at 1068 (citing *Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) and *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 709–10 (9th Cir. 1988)).

It is otherwise well-established that the threatened loss of livelihood or career supports the irreparable harm to justify injunctive relief, under both federal and state standards.  See, e.g., *Enyart*, 630 F.3d at 1165 (the plaintiff "demonstrated irreparable harm in the form of loss of opportunity to pursue her chosen profession[]"); *Barajas v. City of Anaheim*, 15 Cal.App.4th 1808, 1812 n.2 (1993) ("[p]laintiffs have no adequate remedy at law in our view; loss of their livelihoods, in whole or in part, would be extremely difficult to evaluate in terms of damages[]"); *Costa Mesa City Employees' Assn. v. City of Costa Mesa*, 209 Cal.App.4th 298, 308 (2012) ("losing a job, and the income it entails, amounts to irreparable harm.")

Finally, the Court should consider both the ongoing humiliation and embarrassment, not to mention the professional stigma that Mr. Jones is enduring as a "prohibited person," after a stellar, 30-year career in law enforcement and firearms training, which is now impairing his profession.  (Jones Decl., ¶ 16).  *See*, *Chalk*, 840 F.2d at 709 (irreparable injury found in psychological distress arising from loss of job); *Enyart*, 630 F.3d at 1165 (discussing professional stigma).

All of these facts show irreparable injury to Mr. Jones arising from defendants' policies.

### 3.      Preliminary Injunctive Relief is Necessary to Prevent Enforcement Against Mr. Jones Pending the Disposition of this Action.

Mr. Jones further requires preliminary injunctive relief to prevent enforcement by the Department of Justice's Armed Prohibited Persons (APPS) enforcement program.  (Jones Decl., ¶ 19). Without relief from Pen. Code §§ 29800(a)(1) and 30305(a)(1), Mr. Jones reasonably fears arrest.  First, as has already been shown in this case, armed agents from the APPS enforcement program have already come to plaintiff Linton's home to seize firearms he purchased after

SEILER EPSTEIN LLP
Attorneys at Law

passing background checks, and which the Department had known about for many years.[3]  (See Linton Decl., ¶ 18).  This seizure came only after Mr. Linton's counsel attempted to convince defendant Wilson to correct the Department's records, based upon the restoration of Mr. Linton's firearms rights in Washington.  (Id., ¶¶ 15-16; Linton Exs. E-G).  And when litigants bring cases to challenge their status as prohibited persons, it is not unheard of for the Department to turn its enforcement arms loose on them.  (See Decl. of George M. Lee and Req. for Jud. Notice, ¶¶ 4-6, Ex. A.)

For these additional reasons, and as he is likely to prevail on the merits, plaintiff Jones requires preliminary injunctive relief from the Department's enforcement of Pen. Code §§ 29800 and 30305, by and through its APPS program.

**D.   THE BALANCING OF RELATIVE HARMS FAVORS INJUNCTIVE RELIEF.**

The third requirement under *Winter* is that the balance of equities tips in the moving party's favor.  *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*, 129 S. Ct. at 376).  To assess this prong, the court must "balance the interests of all parties and weigh[s] the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).

Here, the balancing of relative harms manifestly favors the plaintiffs. As stated above, plaintiffs have been deprived of important and fundamental constitutional rights, and in Mr. Jones's case, faces the loss of a career for which he has trained for over 30 years.  In contrast, there is no risk of harm to the State to allow any of them to purchase, own or possess firearms or ammunition.  Before the defendants' enforcement these policies, plaintiffs Linton and Jones owned firearms, peaceably, for many years.  In Mr. Linton's case, he has lived in California for over 30 years, possessing firearms until last year, when armed DOJ agents stormed his house to confiscate them.  (Linton Decl., ¶ 18).  Again, defendants had *long* known about these firearms, because they were purchased after background checks, and were duly registered.  And in Mr. Jones's case, he has actually provided valuable service to the State in training thousands of peace

---

[3]The Penal Code requires firearms dealers to transmit basic identifying information about the firearm and its purchaser to the California Department of Justice, which the Department stores in a firearms database.  *United States v. Buttner*, 432 F. App'x 696, 696–97 (9th Cir. 2011); Pen. Code § 11106.

SEILER EPSTEIN LLP
Attorneys at Law

1   officers in his thirty-year career as a law enforcement/civilian firearms trainer, for which he has

2   received numerous letters of commendation.  (Jones Decl., ¶¶ 4-5).

3       On an as-applied basis, a preliminary injunction should therefore issue in favor of

4   individual plaintiffs Linton, Stewart and Jones, enjoining defendants from denying them firearm

5   purchases, and eliminating their status as "prohibited persons."  The Department should further

6   be enjoined from denying plaintiffs Certificates of Eligibility under Pen. Code § 26710.  In the

7   Ninth Circuit, a plaintiff may also obtain a preliminary injunction under a "sliding scale"

8   approach by raising "serious questions" going to the merits of plaintiff's claims and showing that

9   the balance of hardships tips "sharply" in his or her favor. *A Woman's Friend Pregnancy Res.*

10  *Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018).  As the plaintiffs here have raised serious

11  questions, and have shown that a balance of the hardships tips sharply in their favor, preliminary

12  injunctive relief is appropriate.

13  **E.    THE PUBLIC INTEREST FAVORS AN INJUNCTION.**

14      By establishing a likelihood that defendants' policies violate the Constitution, plaintiffs

15  have also established that both the public interest and the balance of the equities favor a

16  preliminary injunction.  "'[I]t is clear that it would not be equitable or in the public's interest to

17  allow the state ... to violate the requirements of federal law, especially when there are no

18  adequate remedies available." […]  On the contrary, the public interest and the balance of the

19  equities favor "prevent[ing] the violation of a party's constitutional rights." *Arizona Dream Act*

20  *Coal.*, 757 F.3d at 1069 (citing *Melendres*, 695 F.3d at 1002).  This applies equally to Second

21  Amendment rights as well.  "The public interest favors the exercise of Second Amendment rights

22  by law-abiding responsible citizens. And it is always in the public interest to prevent the

23  violation of a person's constitutional rights."  *Duncan*, 265 F.Supp.3d at 1136.

### IV.    CONCLUSION

25      Plaintiffs respectfully request that this Court grant preliminary injunctive relief to prevent

26  defendants from continuing to deprive them of important constitutional rights, and to prevent

27  them from enforcing Pen. Code §§ 29800 and 30305 based upon their non-violent, out-of-state

28  felony convictions that have been set aside and vacated in their respective states of origin.

SEILER EPSTEIN LLP
Attorneys at Law

Dated: December 19, 2019             **SEILER EPSTEIN LLP**


                                     /s/ George M. Lee
                                     George M. Lee

                                     Attorneys for Plaintiffs