1   XAVIER BECERRA
    Attorney General of California
2   ANTHONY R. HAKL
    Supervising Deputy Attorney General
3   MAUREEN C. ONYEAGBAKO
    Deputy Attorney General
4   State Bar No. 238419
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone:  (916) 210-7324
      Fax:  (916) 324-8835
7     E-mail:  Maureen.Onyeagbako@doj.ca.gov
    *Attorneys for Xavier Becerra, in his official capacity*
8   *as Attorney General of California, Brent E. Orick, in*
    *his official capacity as Acting Chief for the*
9   *Department of Justice Bureau of Firearms, and*
    *Robert D. Wilson, in his official capacity as Deputy*
10  *Attorney General*

11                   IN THE UNITED STATES DISTRICT COURT

12                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14

15
    **CHAD LINTON, an individual; PAUL**          3:18-cv-7653-JD
16  **MCKINLEY STEWART, an individual;**
    **KENDALL JONES, an individual;**
17  **FIREARMS POLICY FOUNDATION;**
    **FIREARMS POLICY COALITION;**
18  **SECOND AMENDMENT FOUNDATION;**              **DEFENDANTS' OPPOSITION TO**
    **CALIFORNIA GUN RIGHTS**                     **PLAINTIFFS' MOTION FOR**
19  **FOUNDATION; and MADISON SOCIETY**           **PRELIMINARY INJUNCTION**
    **FOUNDATION,**
20                                                Date:        February 13, 2020
                                  Plaintiffs,     Time:        10:00 a.m.
21                                                Dept:        11, 19th floor
                                                  Judge:       The Honorable James Donato
22       v.
                                                  Action Filed:  December 20, 2018
23  **XAVIER BECERRA, in his official capacity**
    **as Attorney General of California; BRENT**
24  **E. ORICK, in his official capacity as Acting**
    **Chief of the Department of Justice Bureau**
25  **of Firearms; and ROBERT D. WILSON, in**
    **his official capacity as Deputy Attorney**
26  **General,**

27                                  Defendants.

28

1

**TABLE OF CONTENTS**

2

**Page**

3 STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

4 INTRODUCTION ................................................................................................... 2

 FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

5  I. The Individual Plaintiffs and Their Felony Convictions ........................... 2

6   A. Plaintiff Linton ............................................................................. 2

7   B. Plaintiff Stewart ........................................................................... 3

   C. Plaintiff Jones .............................................................................. 3

8  II. Penal Code Sections 29800 and 30305 ..................................................... 4

9  III. Procedural Background .............................................................................. 4

10 LEGAL STANDARD .............................................................................................. 4

 ARGUMENT ........................................................................................................... 5

11  I. Plaintiffs Have Failed To Demonstrate Irreparable Harm ........................ 5

12   A. Plaintiffs Unreasonably Delayed Before Seeking a Preliminary
    Injunction ...................................................................................... 5

13   B. Plaintiffs' Claims of Irreparable Injury Are Vague and Conclusory ......... 6

14  II. Plaintiffs Are Not Likely to Prevail on the Merits .................................... 8

15   A. Plaintiffs Cannot Succeed on Their Second Amendment Claim
    Because the State Statutes Are Presumptively Lawful Regulations
16    that Survive Intermediate Scrutiny ............................................... 8

17    1. Penal Code Sections 29800 and 30305 Are Presumptively
     Lawful Regulations That Do Not Burden the Second
     Amendment ........................................................................ 9

18    2. The State Statutes Survive Intermediate Scrutiny ....................... 10

19   B. Plaintiffs Are Unlikely to Succeed Under the Full Faith and Credit
    Clause Because California Has the Police Power to Protect the
20    Welfare of Its Citizens and May Use Its Preferred Mechanism to Do
    So ................................................................................................ 12

21    1. The Orders Have No Effect in California Because the
     Issuing Courts Lacked Jurisdiction to Restore Firearms
22     Rights in California ............................................................. 12

23    2. In This Case, California Need Not Subordinate Its Laws to
     Conflicting Sister State Laws .............................................. 14

24  III. The Balance of Equities Favors Denial of Plaintiffs' Motion and Granting
    an Injunction Is Not in the Public Interest ............................................... 16

25  IV. Plaintiffs' Claims Fail Under the Alternate Sliding Scale Test ............................ 17

26 CONCLUSION ........................................................................................................ 17

27

28

i

Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. (3:18-cv-7653-JD)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Packers Ass'n. v. Indus. Accident Comm'n of Cal.*
    294 U.S. 532 (1935) ...................................................................................14

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011)..................................................................4, 5, 16, 17

*Arizona Dream Act Coalition v. Brewer*
    757 F.3d 1053 (9th Cir. 2014)...................................................................8

*Baker v. Gen. Motors Corp.*
    522 U.S. 222 (1998) ...........................................................................12, 14

*Binderup v. Attorney Gen. U.S.*
    836 U.S. 336 (3d Cir. 2016)..................................................................9

*Boardman v. Pac. Seafood Grp.*
    822 F.3d 1011 (9th Cir. 2016)...............................................................7

*Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*
    840 F.2d 701 (9th Cir. 1988).................................................................5

*Coal. for Econ. Equity v. Wilson*
    122 F.3d 718 (9th Cir. 1997).................................................................5, 16

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ...........................................................................9, 10

*Durfee v. Duke*
    375 U.S. 106 (1963) ...........................................................................12

*Fisher v. Keoloha*
    855 F.3d 1067 (9th Cir. 2017)...............................................................11

*Franchise Tax Bd. of Cal. v. Hyatt*
    538 U.S. 488 (2003) ...........................................................................14

*Fyock v. Sunnyvale*
    779 F.3d 991 (9th Cir. 2015).................................................................11

*Gamble v. United States*
    139 S. Ct. 1960 (2019) ........................................................................12, 13

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Goldie's Bookstore v. Superior Court*

4

    739 F.2d 466 (9th Cir. 1984)...................................................................................7

5

*Lands Council v. McNair*

    537 F.3d 981 (9th Cir. 2008) ..................................................................................5

6

*McColluch v. Maryland*

7

    4 Wheat. 316 (1819)...............................................................................................13

8

*Miller v Cal. Pac. Med. Ctr.*

    991 F.2d 536 (9th Cir. 1993)...................................................................................5

9

*Nevada v. Hall*

10

    440 U.S. 410 (1979) ..............................................................................................14

11

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*

12

    434 U.S. 1345 (1977) ..............................................................................................6

13

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*

    762 F.2d 1374 (9th Cir.1985)..................................................................................5

14

*Pac. Emp'rs Ins. Co. v. Indust. Accident Comm'n*

15

    306 U.S. 493 (1939) ..............................................................................................14

16

*Pena v. Lindley*

17

    898 F.3d 969 (9th Cir. 2018).................................................................................10

18

*People v. Scott*

    24 Cal.2d 774 (1944) ..............................................................................................9

19

*Rollins v. Dignity Health*

20

    338 F. Supp. 3d 1025 (N.D. Cal. 2018) .................................................................7

21

*Rosin v. Monken*

22

    599 F.3d 574 (7th Cir. 2010).................................................................................12

23

*Silvester v. Harris*

    843 F.3d 816 (9th Cir. 2016)............................................................................9, 10

24

*Stanley v. Univ. of S. Cal.*

25

    13 F.3d 1313 (9th Cir. 1994)...................................................................................5

26

*Strojnik v. Resort at Indian Springs, LLC*

27

    No. 19-cv-04616-SVK, 2019 WL 6913039 (N.D. Cal. Dec. 19, 2019) .................7

28

iii

1

## TABLE OF AUTHORITIES
### (continued)

Page

*Thomas v. Cty. of Los Angeles*
   978 F.2d 504 (9th Cir. 1992)...............................................................................5, 16

*Tracy Rifle and Pistol LLC v. Harris*
   118 F. Supp. 3d 1182 (E.D. Cal. 2015)......................................................................5

*Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar.*
   *Ass'n*
   455 U.S. 691 (1982) ......................................................................................................12

*United States v. Chovan*
   735 F.3d 1127 (9th Cir. 2013)...........................................................................8, 9, 10

*United States v. Fowler*
   198 F.3d 808 (11th Cir. 1999)....................................................................................11

*United States v. Meza-Rodriguez*
   798 F.3d 664 (7th Cir. 2015).......................................................................................11

*United States v. Torres*
   911 F.3d 1253 (9th Cir. 2019)...........................................................................9, 10, 11

*United States v. Vongxay*
   594 F.3d 1111 (9th Cir. 2010).......................................................................................9

*Williams v. State of N.C.*
   325 U.S. 226 (1945) ......................................................................................................12

*Winter v. Natural Resources Defense Council, Inc.*
   555 U.S. 7 (2008) ................................................................................... *passim*

**STATUTES**

Arizona Revised Statute
   § 13-905(D)......................................................................................................................15
   § 13-905(E) ......................................................................................................................15
   § 13-905(E)(3)..................................................................................................................15
   § 13-907 ....................................................................................................................14, 15
   § 13-907(A)......................................................................................................................15
   § 13-910(B)......................................................................................................................15

iv

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Penal Code
  § 922(g)(9) ...................................................................................10
  § 29800 ..................................................................................*passim*
  § 29800(a) ....................................................................................4
  § 29800(c) ...................................................................................10
  § 30305 ...............................................................................1, 4, 10
  § 30305(a)(1) .................................................................................4
  § 30305(c) ...................................................................................11

Texas Code of Criminal Procedure
  Article 42.12, § 20(b) .....................................................................15
  Article 42A.701 .............................................................................16

Washington Revised Code
  § 9.41.040(1) ................................................................................14
  § 9.41.040(2) ................................................................................14
  § 9.41.040(4) ................................................................................14
  § 9.41.040(4)(a) ............................................................................14
  § 9.94A.640(3)(a) ..........................................................................15

**OTHER AUTHORITIES**

Acts. 2015, 84th Leg., ch. 770 (H.B. 2299), § 3.01 .........................................15

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs Linton, Stewart, and Jones have sufficiently demonstrated immediate irreparable injury in the absence of preliminary injunction.

2.      Whether Plaintiffs Linton, Stewart, and Jones are likely to succeed on the merits of their Second Amendment or Full Faith and Credit Clause claims.

3.       Whether the balance of equities tips sharply in Plaintiff Linton's, Stewart's, and Jones's favor.

4.      Whether enjoining California Penal Code sections 29800 and 30305 is in the public interest.

5.      Whether serious questions going to the merits were raised on Plaintiff Linton's, Stewart's, and Jones's Second Amendment and Full Faith and Credit Clause claims.

/ / /

/ / /

/ / /

1

**INTRODUCTION**

Plaintiffs delayed filing the pending motion for preliminary injunction until December 19, 2019, just one day short of a full year after commencing this action. Neither the motion arguments nor the supporting declarations explain that delay. Nor do Plaintiffs point to any urgency that might explain their sudden motion for preliminary injunction. Nothing in the motion or supporting documents suggests a change in law or circumstances that might warrant interim injunctive relief. And nothing in the motion or supporting declarations shows that Plaintiffs have met their burden under the relevant factors in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), or the alternative sliding scale test for injunctive relief.

Plaintiffs have failed to offer admissible evidence showing irreparable injury in the absence of enforcement of California Penal Code sections 29800 and 30305, which prohibit possession of firearms and ammunition by persons convicted of felonies. Plaintiffs are also not entitled to interim injunctive relief because they have not met their burden of showing a likelihood of success on the merits. Their Second Amendment claim fails because California Penal Code sections 29800 and 30305 are presumptively valid regulations that survive the intermediate-scrutiny test. Plaintiffs also are not likely to succeed on the Full Faith and Credit Clause claim because the sister state orders at issue have no effect in California and because California need not subordinate its own laws to those of other states. Not surprisingly, the balance of equities does not tip in Plaintiffs' favor and an injunction would be against the public interest because it would put firearms in the hands of convicted felons, thereby threatening public safety. Plaintiffs' failure to meet their burden on the *Winter* factors also means that they cannot satisfy the sliding scale test. Accordingly, this Court should deny Plaintiffs' motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

I.   THE INDIVIDUAL PLAINTIFFS AND THEIR FELONY CONVICTIONS

   A.   **Plaintiff Linton**

In 1987, Plaintiff Linton sustained a felony conviction for attempting to evade a police vehicle, and a misdemeanor conviction for driving under the influence, in Washington state. (First Am. Compl. ¶¶ 20–21, Dec. 2, 2019, ECF No. 36.) In 1988, he moved to California, after

2

1   completing probation.  (*Id.* ¶ 22.)  In 2015, Linton attempted to purchase a handgun in California

2   but was barred from doing so because of his felony conviction.  (*Id.* ¶ 24.)  In 2016, upon

3   application by Linton, a Washington court set aside Linton's guilty plea, purportedly vacating the

4   record of his felony conviction, and releasing Linton from all penalties and disabilities in

5   Washington.  (*Id.* ¶¶ 25–26 & Exs. A, B.)  Thereafter, between 2016 and 2018, Linton attempted

6   to purchase firearms in California, but was prohibited from doing so because of his felony

7   conviction.[1]  (*Id.* ¶¶ 27–32.)  In April 2018, with knowledge that Linton was already in

8   possession of firearms, DOJ agents seized several firearms from Linton's home.  (*Id.* ¶ 33.)

9       **B.    Plaintiff Stewart**

10      In 1976, an Arizona court convicted Plaintiff Stewart of first degree burglary, a felony.

11  (First Am. Compl. ¶ 41.)  Stewart moved to California around 1988, after completing his

12  probation.  (*Id.* ¶¶ 42–43.)  In December 2015, Stewart attempted to purchase a firearm in

13  California but could not complete the purchase because of his prior felony conviction.  (*Id* ¶¶ 44–

14  46.)[2]  In 2016, upon application from Stewart, an Arizona court set aside his felony conviction,

15  restoring his firearms rights in Arizona only.  (*Id.* ¶ 47 & Ex. I.)  In 2018, Stewart attempted to

16  purchase a firearm in California again without success.  (*Id.* ¶¶ 49–51 & Ex. J.)

17      **C.    Plaintiff Jones**

18      In 1980, Plaintiff Jones pled guilty to and was convicted of "credit card abuse," a felony in

19  Texas.  (First Am. Compl. ¶ 55.)  In 1983, the Texas court discharged the conviction after Jones

20  completed probation.  (*Id.* ¶ 56.)  Thereafter, Mr. Jones moved to California and worked for the

21  State of California for nineteen years until retiring in 2014.  (*Id.* ¶¶ 54, 57.)  During that time, he

22  worked as a correctional officer and was certified as a firearms instructor.  (*Id.* ¶¶ 57–59.)  In

23  2018, he applied to the California Department of Justice for renewal of his Certificate of

24      [1] Paragraph 28 of the amended complaint states that Linton attempted a purchase on
    October 30, 2018, but given the subsequent details listing dates in 2016, this appears to be a
25  typographical error and should be October 30, 2016.  (First Am. Compl. ¶ 28.)

26      [2] There appears to be another typographical error in the amended complaint, making it
    unclear in what year Stewart attempted the purchase.  It is currently alleged as 2015, but he
27  alleges receiving notice of his "undetermined" status in 2014 and 2016.  (First Am. Compl.
    ¶¶ 44–46.)

28

3

Eligibility as a firearms instructor.  (*Id.* ¶ 61.)  In 2019, the Department of Justice informed Jones that he was not eligible to own or possess a firearm.  (*Id.*)

## II.  PENAL CODE SECTIONS 29800 AND 30305[3]

California exercises its police powers by restricting who can possess firearms.  Under California Penal Code section 29800, "[a]ny person who has been convicted of . . . a felony under the laws of the United States, the State of California, or any other state . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."  Cal. Penal Code § 29800(a).  Section 30305 similarly provides that "[n]o person prohibited from owning or possessing a firearm [under § 29800] . . . shall own, possess, or have under custody or control, any ammunition or reloaded ammunition."  *Id.* § 30305(a)(1).

## III.  PROCEDURAL BACKGROUND

Plaintiffs Linton and Stewart commenced this action on December 18, 2018.  (ECF No. 1.) Defendants moved to dismiss the complaint (ECF No. 12), and filed an answer after the Court determined that the motion raised "issues best addressed in summary judgment proceedings" (ECF Nos. 26, 28).  Plaintiffs conducted discovery thereafter and, on November 15, 2019, moved for leave to file a First Amended Complaint, adding Plaintiff Jones.  (ECF No. 30.)  This Court granted the motion and Defendants answered the amended complaint.  (ECF Nos. 35, 37.)  As mentioned above, Plaintiffs filed the pending motion for preliminary injunction on December 19, 2019.  (ECF No. 38.)

## LEGAL STANDARD

Preliminary injunction "is an extraordinary remedy never awarded as of right."  *Winter*, 555 U.S. at 24.  To prevail, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Id.* at 20 (brackets added).  Alternatively, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th

---

[3] All future statutory references are to the California Penal Code, unless otherwise stated.

4

Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (internal quotations and modification omitted)).  But even under this alternative sliding scale test, a plaintiff must demonstrate all four *Winter* factors.  *Id.* at 1131–32, 1135.

A plaintiff's burden is particularly heavy in cases like this one seeking to enjoin a state statute because "a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."  *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992) ("[A] strong factual record is necessary").

Further, because "[t]he basic function of a preliminary injunction is to preserve the *status quo*," *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988), injunctions, like the one requested here that go beyond "maintaining the status quo *pendente lite*," are "particularly disfavored."  *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal citation and quotation marks omitted); *see also Tracy Rifle and Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1194–95 (E.D. Cal. 2015) (injunction would alter the status quo where it would prevent enforcement of a statute).

## ARGUMENT

### I.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE IRREPARABLE HARM

#### A.   Plaintiffs Unreasonably Delayed Before Seeking a Preliminary Injunction

A "plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir.1985); *see Miller v Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (delay in seeking an injunction is "relevant in determining whether relief is truly necessary").

Here, Plaintiffs Linton and Stewart (along with the organizational plaintiffs) filed the original complaint on December 20, 2018.  (ECF No. 1.)  They did not file their motion for preliminary injunction until 364 days later, on December 19, 2019.  (ECF No. 38.)  This long period of time reflects an unreasonable delay.

During the 364 days that followed the filing of the complaint, Plaintiffs actively litigated this case.  For example, they opposed Defendants' motion to dismiss (ECF No. 17), filed a joint

5

1    case management statement (ECF No. 25), conducted discovery, and moved for leave to file an

2    amended complaint (ECF Nos. 30, 32).  Yet nothing in the declarations from Plaintiffs Linton or

3    Stewart explains any meaningful change of circumstances since the filing of the complaint, much

4    less any change that constitutes irreparable harm.  In fact, Plaintiff Linton's declaration offers no

5    facts about events since filing the original complaint.  (Linton Decl., Dec. 19, 2019, Stewart

6    Decl., Dec. 19, 2019, ECF No. 38-3.)  Plaintiff Stewart's declaration is similarly silent on facts

7    about events since the filing of the original complaint.  At best, Stewart states that after

8    February 27, 2018, he "had several telephone conversations with DOJ representatives regarding

9    the firearms denial." (ECF No. 38-4, ¶ 14.)  Yet that statement is hardly an explanation of the

10   delay accompanying the instant motion, and in any event the same allegation appears in the

11   original complaint.  (ECF No. 1 at ¶¶ 49–50.)  Thus, it does not reveal any new circumstances.

12        The motion for preliminary injunction as to Plaintiff Jones is also tainted by delay.  Jones

13   was the last plaintiff to join this action, but the record shows that he "engaged counsel" in

14   October of 2019.  (ECF No. 30 at 4.)  Presumably counsel and Jones communicated in some

15   fashion well before that date.  In any event, no motion for preliminary injunction came until

16   December 18, 2019, more than a month after Jones engaged counsel to join a case that was

17   already about a year old at the time.  Additionally, Jones's entry into this case by way of a motion

18   for leave to file an amended complaint was based on the representation that the addition of a new

19   plaintiff would not require any adjustments to the anticipated schedule of the case and "will not

20   result in any prejudicial delay."  (*Id*. at 6.)  Relying on Jones's allegations to justify an injunction

21   ceasing the operation of a state statute—which as a matter of law results in prejudice to the people

22   of the state—would be at odds with those representations.  *See New Motor Vehicle Bd. v. Orrin*

23   *W. Fox Co.*, 434 U.S. 1345, 1351 (1977) ("It also seems to me that any time a State is enjoined by

24   a court from effectuating statutes enacted by representatives of its people, it suffers a form of

25   irreparable injury.")

26        **B.     Plaintiffs' Claims of Irreparable Injury Are Vague and Conclusory**

27        In addition to being late, Plaintiffs' claims of the mere "possibility" of injury are

28   insufficient to support an injunction.  *Winter*, 555 U.S. at 24.  Plaintiffs Linton and Stewart

6

1    simply assert without explanation that they are "suffering and . . . continuing to suffer irreparable

2    injury as a result of the Department's determination" and that they are "being deprived of the

3    ability to exercise a fundamental constitutional right."  (ECF No. 38-3, ¶ 21, ECF No. 38-4, ¶ 15.)

4    Conclusory statements like these fall well short of the "immediate threatened injury" that is a

5    prerequisite to preliminary injunctive relief.  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011,

6    1022 (9th Cir. 2016).

7         Jones's claim that he is "no longer able to legally defend myself with the use of a firearm"

8    (ECF No. 38-2, ¶ 17) is also conclusory.  Nor does Jones explain his apparent fear of arrest and

9    prosecution as part of the Department of Justice's Armed Prohibited Persons (APPS) program.  It

10   is not clear that Jones is even subject to APPS enforcement; he does not indicate that he owns a

11   firearm (i.e., that he is "armed").  (*Id.* ¶ 19.)  And Jones offers no admissible facts substantiating

12   the bald accusation that the Department of Justice "retaliates against citizens like myself who

13   exercise their rights to petition the courts to restore firearms rights."[4]  (*Id.*)

14        Jones emphasizes that he retired in good standing from the State of California after more

15   than nineteen years of service.  (Jones Decl. ¶¶ 3. 12, Dec. 19, 2019, ECF No. 38-2.)  He contends

16   that as a result of the firearms prohibition, he has had to discontinue all further firearms

17   instruction and training, and "I am thus being permanently deprived of my career and livelihood

18   that I have literally been training for, for over 30 years." (*Id.* ¶ 16, see also Pls.' Mot. 12.)  But

19   even if this suggestion of some sort of monetary damage were sufficient to establish irreparable

20   harm—it usually is *not* sufficient, *see Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 471

21   (9th Cir. 1984)—a retirement after nineteen years of government service suggests that Plaintiff

22

23        [4] Defendants object to Plaintiffs' request for judicial notice of the complaint in *James v. Granger*, No. 1:13-cv-00983-AWI-SKO (N.D. Cal. June 26, 2013).  Plaintiffs improperly offer it for the truth of its contents to support the contention that the Department of Justice retaliated against plaintiff James because he filed a state court writ petition challenging his status as a prohibited person.  (*See* Lee Decl. ¶¶ 5–5 & Ex. A, Dec. 19, 2019, ECF No 38-5; *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018) ("courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed") (internal citation and quotation marks omitted)).  The *James* complaint is unverified and represents the plaintiff's version of events only.  Further, the *James* complaint is not relevant to the Court's consideration of the instant motion.  *Strojnik v. Resort at Indian Springs, LLC*, No. 19-cv-04616-SVK, 2019 WL 6913039, at *3 (N.D. Cal. Dec. 19, 2019) (declining judicial notice of document irrelevant to court's consideration of motion).

1    Jones receives a pension and other benefits from the State of California.  Nothing in his

2    declaration reflects his financial obligations, how often he works as an instructor, how much

3    money he might earn with each training job, or whether he had any jobs or courses as a certified

4    instructor lined up before he received notice of his firearms eligibility status.  His declaration also

5    fails to establish that Mr. Jones is unable to obtain other forms of employment.

6         Consequently, the comparison of Mr. Jones to the immigrants in *Arizona Dream Act*

7    *Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014), falls flat.  The plaintiffs in that case were at

8    risk of losing their right to work because of an Arizona law prohibiting the issuance of state

9    identification, including driver's licenses to those immigrants.  *Id.* at 1068 ("Plaintiffs' ability to

10   drive is *integral* to their ability to work—after all, eighty-seven percent of Arizona workers

11   commute to work by car. . . . Plaintiffs' lack of driver's licenses has prevented them from

12   applying for desirable entry-level jobs, and from remaining in good jobs where they faced

13   possible promotion.") (emphasis added).  Plaintiff Jones's status as a retiree further distinguishes

14   him from the *Arizona* plaintiffs who were starting out their careers.  *Id.* ("The irreparable nature

15   of Plaintiffs' injury is heightened by Plaintiffs' young age and fragile socioeconomic position.

16   Setbacks early in their careers are likely to haunt Plaintiffs for the rest of their lives.").

17        For all of these reasons, Plaintiffs have failed to show imminent irreparable injury in the

18   absence of a preliminary injunction.  The Court therefore should deny Plaintiffs' motion.

19   **II.    PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE MERITS**

20        **A.    Plaintiffs Cannot Succeed on Their Second Amendment Claim Because the**
              **State Statutes Are Presumptively Lawful Regulations that Survive**
21            **Intermediate Scrutiny**

22        The Ninth Circuit employs a two-step analysis to analyze whether a law violates the Second

23   Amendment.  *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).  The analysis

24   "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and

25   (2) if so, directs courts to apply an appropriate level of scrutiny."  *Id.*  As discussed below, the

26   Second Amendment analysis here need not move beyond the first factor and falls short even upon

27   review of the second factor.  Hence, Plaintiffs' motion should be denied.

28

8

1      **1.      Penal Code Sections 29800 and 30305 Are Presumptively Lawful Regulations That Do Not Burden the Second Amendment**

2

3      "A law does *not* burden Second Amendment rights, if it . . . falls within one of the

4      presumptively lawful regulatory measures identified in *Heller*[.]"  *United States v. Torres*,

5      911 F.3d 1253 (9th Cir. 2019) (emphasis in original; original internal quotation marks and

6      citation omitted).  Among the examples of presumptively lawful regulations are the "longstanding

7      prohibition on the possession of firearms by felons and the mentally ill."  *Id.* (quoting *District of*

8      *Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008)).  "These measures comport with the

9      Second Amendment because they affect individuals or conduct unprotected by the right to keep

10     and bear arms."  *Id.* at 1258 (quoting *Binderup v. Attorney Gen. U.S.*, 836 U.S. 336, 343

11     (3d Cir. 2016) (en banc)).

12     Here, California Penal Code sections 29800 and 30305 are presumptively lawful

13     regulations that prohibit possession of firearms and ammunition by felons.  These statutes are

14     longstanding prohibitions whose predecessor, the 1917 Dangerous Weapons Control Act, was

15     intended to "minimize the danger to public safety arising from the free access to firearms that can

16     be used for violence."  (See Defs.' Mem. Supp. Mot. to Dismiss 13, Feb. 22, 2019, ECF No. 12

17     (quoting *People v. Scott*, 24 Cal.2d 774, 782 (1944)).)

18     Analogous support comes from the Federal Firearms Act of 1938, which restricted firearm

19     possession for individuals convicted of a "crime of violence," the definition for which included

20     mayhem and burglary.  *Chovan*, 735 F.3d at 1137.   Plaintiffs Linton's and Stewart's convictions

21     for attempting to evade a police officer and first degree burglary fall squarely into this category.

22     Thus, these California laws, which limit firearm and ammunition possession by felons, are

23     presumptively lawful under *Heller*.  *Heller*, 554 U.S. at 626; *Silvester v. Harris*, 843 F.3d 816,

24     831 (9th Cir. 2016) (prohibition on felons in possession of firearms is a presumptively lawful

25     regulation under *Heller*); *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (federal

26     statute prohibiting felons from possessing firearms did not violate Second Amendment under

27     *Heller*).

28

9

1    Because Sections 29800 and 30305 are presumptively lawful and, thus, do not burden

2    conduct protected by the Second Amendment, Plaintiffs are not likely to prevail on the merits of

3    their Second Amendment claim.

4                    **2.    The State Statutes Survive Intermediate Scrutiny**

5    The appropriate level of scrutiny in the Second Amendment analysis "depend[s] on (1) how

6    close the law comes to the core of the Second Amendment right, and (2) the severity of the law's

7    burden on the right."  *Chovan*, 735 F.3d at 1138 (internal citation and quotation marks omitted).

8    "*Heller* tells us that the core of the Second Amendment is 'the right of law-abiding, responsible

9    citizens to use arms in defense of hearth and home.'"  *Id.* (quoting *Heller*, 554 U.S. at 635).

10   "Although not dispositive, there has been 'near unanimity in the post-*Heller* case law that, when

11   considering regulations that fall within the scope of the Second Amendment, intermediate

12   scrutiny is appropriate.'"  *Torres*, 911 F.3d at 1262 (quoting *Silvester*, 843 F.3d at 823); *Pena v.*

13   *Lindley*, 898 F.3d 969, 977 (9th Cir. 2018) (citing cases).

14   Here, intermediate scrutiny (at most) is the appropriate level of scrutiny because sections

15   29800 and 30305 do not implicate the core Second Amendment right.  *See Chovan*, 735 F.3d at

16   1138 ("Section 922(g)(9) does not implicate this core Second Amendment right because it

17   regulates firearm possession for individuals with criminal convictions.").  These statutes regulate

18   firearm and ammunition possession for individuals with criminal convictions.  Plaintiffs assert

19   that they are "responsible, law-abiding citizens with no history of violent behavior or conduct that

20   would suggest they pose any elevated threat or danger to others" (Pls.' Mot. 9), however, they do

21   not fall within the core right because of their prior convictions.  *See Chovan*, 735 F.3d at 1138

22   ("we believe [Chovan] is not within the core right identified in *Heller* . . . by virtue of [his]

23   criminal history").

24   As for "the severity of the law's burden on the right," any burden imposed by

25   sections 29800 and 30305 is lessened by section 29800's exemption for persons with certain

26   federal felony convictions.  Cal. Penal Code § 29800(c).  Section 30305 also contains exceptions,

27   such as for a person who finds or takes ammunition from a person committing a crime against

28   him or for a person possessing ammunition for the sole purpose of delivering it to law

                                                        10

1    enforcement for disposition.  § 30305(c).  For this reason as well, nothing more than intermediate

2    scrutiny applies to the Second Amendment claim here.  *Torres*, 911 F.3d at 1263 (citing *Fisher v.*

3    *Keoloha*, 855 F.3d 1067 (9th Cir. 2017)).

4         Next, sections 29800 and 30305 survive intermediate scrutiny because they "promote a

5    substantial government interest that would be achieved less effectively absent the regulation."

6    *Torres*, 911 F.3d at 1263 (quoting *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015)

7    (internal quotation marks omitted)).  These laws work to ensure public safety, which has been

8    recognized as an important government interest.  *Torres*, 911 F.3d at 1263–64 (citing cases

9    recognizing important government interests in crime control and public safety).  Additionally,

10   "the government has [a] strong interest in preventing people who already have disrespected the

11   law . . . from possessing guns."  *Id.* at 1264 (quoting *United States v. Meza-Rodriguez*, 798 F.3d

12   664, 673 (7th Cir. 2015)).  Convicted felons are less likely to obtain firearms and ammunition and

13   threaten public safety during enforcement of sections 29800 and 30305.  Thus, the government

14   interests "would be achieved less effectively" were it not for those statutes.  *Id.* (quoting *Fyock*,

15   779 F.3d at 1000).

16        Plaintiffs misplace their reliance on *United States v. Fowler*, 198 F.3d 808, 809–10 (11th

17   Cir. 1999), for the proposition that they can possess firearms in California because federal law

18   does not prohibit possession.  (Pls.' Mot. 9.)  The federal law prohibiting felons from possessing

19   firearms contains an express exemption that, unless otherwise ordered, a previous conviction is

20   not a predicate substantive offense if the offender has had his civil rights restored.  *Fowler*,

21   198 F.3d at 809.  But California firearm eligibility requires both federal and state eligibility.

22   California does not have an analogous exemption for sister state orders and Plaintiffs offer no

23   other authority requiring the state to make such an exemption.    Thus, federal eligibility is not, in

24   and of itself, determinative.

25        For these reasons, Plaintiffs cannot prevail on their Second Amendment claim and their

26   motion should be denied.

27

28

1

**B.      Plaintiffs Are Unlikely to Succeed Under the Full Faith and Credit Clause Because California Has the Police Power to Protect the Welfare of Its Citizens and May Use Its Preferred Mechanism to Do So**

2

3

**1.      The Orders Have No Effect in California Because the Issuing Courts Lacked Jurisdiction to Restore Firearms Rights in California**

4

5          California is required to recognize sister state judgments in order to implement res judicata

6   principles.  *See Baker v. Gen. Motors Corp.* 522 U.S. 222, 233 (1998).  But there is a caveat to

7   this otherwise strict rule:  "a judgment of a court in one State is conclusive upon the merits in a

8   court in another State only if the court in the first State had power to pass on the merits—had

9   jurisdiction, that is, to render the judgment."  *Durfee v. Duke*, 375 U.S. 106, 110 (1963); *accord*

10  *Baker*, 522 U.S. at 233.  "The Constitution did not mean to confer [upon the States] a new power

11  or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and

12  things within their territory."  *Williams v. North Carolina.*, 325 U.S. 226, 228 (1945) (Nevada

13  court could not nullify power of North Carolina to grant a divorce) (citation and quotation marks

14  omitted).  Thus, "[i]f [the court rendering judgment] did not have jurisdiction over the subject

15  matter or the relevant parties, full faith and credit need not be given."  *Underwriters Nat. Assur.*

16  *Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705 (1982); *accord*

17  *Rosin v. Monken*, 599 F.3d 574, 577 (7th Cir. 2010) ("Illinois need not dispense with its preferred

18  mechanism for protecting its citizenry by virtue merely of a foreign judgment that envisioned less

19  restrictive requirements' [*sic*] being imposed on the relevant sex offender.  Illinois, as a state of

20  the Union, has police power over the health and welfare of its citizens.")  The courts in

21  Washington, Arizona, and Texas have no jurisdiction to restore Plaintiffs' firearm rights in

22  California and excuse Plaintiffs from complying with California law.  California retains the police

23  power to protect the welfare of its citizens and may use its preferred mechanism for doing so,

24  which includes enforcing its restrictions on who may possess firearms within its borders.

25          By way of analogy, the Supreme Court's decision in *Gamble v. United States*,

26  139 S. Ct. 1960 (2019), discusses the interests and rights of different sovereigns to punish the

27  same offense.  There, Gamble argued that double jeopardy attached to a federal indictment for

28  being a felon in possession of a firearm because he had already been convicted in state court for

1  being in possession of a firearm by a person previously convicted of a crime of violence.

2  *Id.* at 1964.  The Supreme Court examined a series of cases and concluded that the Double

3  Jeopardy Clause honored the formal differences between distinct criminal codes of different

4  sovereigns.  *Id.* at 1966–67.  Relevant here is the Court's recognition of the fact that states can

5  have different interests and that a single offense can be punished separately by different

6  sovereigns.  *Id.* at 1966 ("A single act may be an offence or transgression of the laws of two

7  sovereigns, and hence punishable by both[.]") (internal quotation marks and citation omitted).

8      These principles are not limited to the double jeopardy context because the Court

9  recognized that these differences underlie the foundation of our legal system.  *Gamble*, 139 S. Ct.

10 1968 ("the States and the Nation have different 'interests' and 'right[s]'") (quoting *McColluch v.*

11 *Maryland*, 4 Wheat. 316, 431, 436 (1819)).  Nor are these principles limited to the state-federal

12 dichotomy.  The Court provided examples where the powers of state and federal governments

13 often overlap and result in two layers of regulation, such as in taxation and the regulation of

14 gambling and sales of alcohol.  *Id.* at 1968–69.  Additionally, a state may legalize activity that

15 federal law prohibits, such as the sale of marijuana.  *Id.* at 1969.  The Court reflected that "while

16 our system of federalism is fundamental to the protection of liberty, it does not always maximize

17 individual liberty at the expense of other interests."  *Id.*

18     Just as with the federal-state dichotomy, states are separate sovereigns with their own

19 interests to vindicate.  Protecting those interests may result in overlapping regulations that may

20 not maximize individual liberty.  *See, e.g., Gamble*, 139 S. Ct. at 1969 ("So while our system of

21 federalism is fundamental to the protection of liberty, it does not always maximize individual

22 liberty at the expense of other interests.").  Thus, even though a sister state may have chosen to

23 set aside a conviction in that state and restore an individual's ability to possess a firearm in that

24 state, California independently retains its lawful authority to draft its own criminal laws, regulate

25 firearms, and provide for the protection of its citizens.  *Id.* at 1965.

26

27

28

1

2

> **2.      In This Case, California Need Not Subordinate Its Laws to Conflicting Sister State Laws**

3     Similarly, under the Full Faith and Credit Clause laws of a sister state, as compared to sister

4     state court judgments, are owed a different amount of credit.  *Franchise Tax Bd. of Cal. v. Hyatt*,

5     538 U.S. 488, 4949 (2003) (Supreme Court "precedent differentiates the credit owed to laws

6     (legislative measures and common law) and to judgments.") (quoting *Baker*, 522 U.S. at 232).

7     The Full Faith and Credit Clause does not compel "a state to substitute the statutes of other states

8     for its own statutes dealing with a subject matter concerning which it is competent to legislate."

9     *Pac. Emp'rs Ins. Co. v. Indust. Accident Comm'n*, 306 U.S. 493, 501 (1939); *accord Nevada v.*

10    *Hall*, 440 U.S. 410, 422 (1979) ("[T]he Full Faith and Credit Clause does not require a State to

11    apply another State's law in violation of its own legitimate policy."); *Alaska Packers Ass'n. v.*

12    *Indus. Accident Comm'n of Cal.*, 294 U.S. 532, 547 (1935) ("Prima facie every state is entitled to

13    enforce in its own courts its own statutes, lawfully enacted.").  Therefore, a conflicting sister state

14    statute prevails only when the interests of the foreign state are superior to those of the forum state,

15    *Alaska Packers Ass'n.*, 294 U.S. at 547–48, which Plaintiffs have not established here.

16    For example, RCW 9.41.040(4), the Washington statute that applies to Plaintiff Linton,

17    provides in relevant part: "Notwithstanding any other provisions of this section, if a person is

18    prohibited from possession of a firearm under subsection (1) or (2) of this section … the

19    individual may petition a court of record to have his or her right to possess a firearm restored [.]"

20    Subsections (1) and (2) address Washington's prohibition against certain offenders possessing

21    firearms.  (Wash. Rev. Code § 9.41.040(4)(a).)  The most reasonable interpretation of subsection

22    (4) is that it lifts only Washington's statutory prohibition on firearms possession, and does not

23    restore possession rights in other states.  Under this interpretation, the order restoring Linton's

24    rights to possess firearms would not create any conflict with California law, and the Full Faith

25    and Credit Clause would not bar California from enforcing sections 29800 and 30305 against

26    Linton.

27    Arizona Revised Statute 13-907, which applies to Plaintiff Stewart, outlines requirements

28    for setting aside a judgment of a convicted person and restoring firearms rights, and makes no

14

1   mention of other states.  It provides, in relevant part, that certain persons "convicted of a criminal

2   offense, on fulfillment of the conditions of probation or sentence and discharge by the court, may

3   apply to the court to have the judgment of guilt set aside."  *Id.* § 13-907(A).  But a set aside does

4   not relieve the individual from penalties imposed by certain state government agencies and a

5   conviction that is set aside may still be "[u]sed as a prior conviction."  *Id.* § 13-905(D),

6   (E).   Additionally, "[t]he restoration of the right to possess a firearm is in the discretion of the

7   judicial officer."  *Id.* § 13-910(B).  Thus, it is reasonable to infer that ARS section 13-907 lifts

8   only Arizona's statutory prohibition on firearms possession, and not prohibitions in other states.

9       The law surrounding the discharge of Plaintiff Jones's conviction did not restore his

10   firearms rights in California either.  The complaint quotes from Texas Code of Criminal

11   Procedure, article 42.12, § 20(b), purporting that a discharged conviction under that statute

12   releases the defendant from all penalties and disabilities resulting from the crime of which the

13   defendant was convicted.  (First Am. Comp. ¶ 56.)  Article 42.12 was repealed on January 1,

14   2017 (Acts. 2015, 84th Leg., ch. 770 (H.B. 2299), § 3.01) (eff. Jan. 1, 2017), and it is not clear

15   whether the version that Plaintiffs quote was in effect at the time of Plaintiff Jones's discharge in

16   August 1983.  Either way, the text of the order makes clear that the judge's decision to discharge

17   the conviction was discretionary and did not purport to restore firearm rights in other states.

18   (Ex. K at 1 ["It appears to the Court, after considering the recommendation of the defendant's

19   probation officer, and other matters and evidence to the effect that the defendant has satisfactorily

20   fulfilled the conditions of probation . . . ."].)  Consequently, the Full Faith and Credit Clause

21   would not require California to enforce the sister state law or order in a manner inconsistent with

22   sections 29800 and 30305.

23       And, in any event, a conviction that is vacated or set aside in the sister states may still be

24   used for other purposes, including as a prior conviction in a subsequent prosecution in those

25   states.  *See* Wash. Rev. Code § 9.94A.640(3)(a) ("Nothing in this section affects or prevents the

26   use of an offender's prior conviction in a later criminal prosecution[.]"); Ariz. Rev. Stat. § 13-

27   905(E)(3) ("A conviction that is set aside may be: 1.  Used as a conviction if the conviction would

28   be admissible had it not been set aside. 2. Alleged as an element of an offense. 3.  Used as a prior

15

1    conviction."); Tex. Crim. Pro. art. 42A.701 (proof of the discharged or dismissed conviction or

2    plea of guilty shall be made known to the judge if the defendant is convicted of a subsequent

3    offense, and proof of the conviction may be considered in issuing, renewing, denying, or revoking

4    a license to provide child-care services).  California cannot be forced to subordinate its own laws

5    to the laws of other states that themselves recognize the convictions.  In short, this Court may not

6    strike down California's laws under the Full Faith and Credit Clause simply because they conflict

7    with other states' statutes.  *See, e.g., Thomas*, ("[T]he Full Faith and Credit Clause does not

8    require a State to subordinate its own compensation policies to those of another State.").

9    **III.    THE BALANCE OF EQUITIES FAVORS DENIAL OF PLAINTIFFS' MOTION AND**

10   **GRANTING AN INJUNCTION IS NOT IN THE PUBLIC INTEREST**

11         Even if Plaintiffs were able to meet their burden of demonstrating a likelihood of success

12   on the merits and irreparable harm, the public interest weighs against a preliminary injunction.

13   Injunctive relief will not be granted public interests in favor of granting an injunction are

14   outweighed by other public interests against issuing the injunction.  *Alliance for the Wild Rockies*,

15   632 F.3d at 1138 (emphasis in original).  Further, "it is clear that a state suffers irreparable injury

16   whenever an enactment of its people or their representatives is enjoined."  *Coal. for Econ. Equity*,

17   122 F.3d at 719.

18         Enjoining enforcement of sections 29800 and 30305 would significantly harm the public

19   interest because it would require the Department of Justice to allow the purchase and possession

20   of firearms by convicted felons—a group that includes not only the litigants in this case but

21   potentially any convicted felon who has happened to convince some authority outside of

22   California that he ought to have access to firearms.  This outcome would threaten public safety

23   across the state and frustrate California's exercise of its police powers.  In this case, the balance

24   of equities and public interest considerations weigh heavily against any injunctive relief.

25   / / /

26   / / /

27   / / /

28   / / /

16

IV.   **PLAINTIFFS' CLAIMS FAIL UNDER THE ALTERNATE SLIDING SCALE TEST**

Alternatively, "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies*, 632 F.3d at 1134–35.  Even under this alternative test, a plaintiff must demonstrate all four *Winter* factors.  *Id.* at 1131–32, 1135.

Plaintiffs are not entitled to interim injunctive relief because they have not satisfied the four *Winter* factors, as discussed above.  In addition to failing to raise serious questions going to the merits of the Second Amendment and Full Faith and Credit Clause claims, nothing in Plaintiffs' motion suggests that a balance of hardships tips sharply in Plaintiffs' favor.  Indeed, the balancing test cuts sharply against Plaintiffs because Plaintiffs seek relief beyond the status quo, which would threaten public safety by granting convicted felons access to firearms.  On these facts, injunctive relief is not warranted under the sliding scale test.

## CONCLUSION

Based on the foregoing, Plaintiffs have not met their burden and their motion for injunctive relief should be denied.

Dated:  January 27, 2020                    Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General


*/s/ Maureen C. Onyeagbako*
MAUREEN C. ONYEAGBAKO
Deputy Attorney General
*Attorneys for Xavier Becerra, in his official capacity as Attorney General of California, Brent E. Orick, in his official capacity as Acting Chief for the Department of Justice Bureau of Firearms, and Robert D. Wilson, in his official capacity as Deputy Attorney General*

SA2019100119
14376548.docx

17

# CERTIFICATE OF SERVICE

Case Name: **Linton, Chad, et al v. Xavier**         No.    **3:18-cv-7653-JD**
              **Becerra**

I hereby certify that on <u>January 27, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>January 27, 2020</u>, at Sacramento, California.

<table>
<tr><td>Eileen A. Ennis</td><td><i>/s/ Eileen A. Ennis</i></td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

SA2019100119
14376761.docx