1  George M. Lee (SBN 172982)
       gml@seilerepstein.com
2  **SEILER EPSTEIN LLP**
   275 Battery Street, Suite 1600
3  San Francisco, CA 94111
   Phone: (415) 979-0500
4  Fax:    (415) 979-0511

5  Attorneys for Plaintiffs
   CHAD LINTON, PAUL MCKINLEY STEWART,
6  KENDALL JONES, FIREARMS POLICY FOUNDATION,
   FIREARMS POLICY COALITION,
7  SECOND AMENDMENT FOUNDATION,
   THE CALGUNS FOUNDATION and MADISON
8  SOCIETY FOUNDATION

9

10                    **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

12

13  CHAD LINTON, et al.,                    Case No. 3:18-cv-07653-JD

14              Plaintiffs,                 **PLAINTIFFS' REPLY MEMORANDUM IN**
                                            **SUPPORT OF MOTION FOR PRELIMINARY**
15                                          **INJUNCTION**
         vs.
16
                                            Date:     February 13, 2020
17  XAVIER BECERRA, in his official capacity as   Time:     10:00 a.m.
    Attorney General of California, et al.,  Courtroom 11, 19th Floor
18                                           Judge:    Hon. James Donato
            Defendants.
19

20

21

22

23

24

25

26

27

28

**SEILER EPSTEIN LLP**
**Attorneys at Law**

1

## TABLE OF CONTENTS

2   I.   ARGUMENT IN REPLY ............................................................................1

3
      A.   PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS. .......................1
4

5         1.   Plaintiffs' As-Applied Second Amendment Challenge is Appropriate. ..................1

6
          2.   Plaintiffs' Underlying Convictions Were Vacated and Cannot be Used by
7              Defendants to Deny Plaintiffs' Fundamental Rights. .................................................2

8
9     B.   DEFENDANTS HAVE NOT JUSTIFIED THE STATE'S REFUSAL TO PROVIDE FULL FAITH
           AND CREDIT TO THE JUDGMENTS OF ANOTHER STATE'S COURTS. .................................5
10

11        1.   Defendants Have Not Established a Jurisdictional Challenge to the State Court
12             Judgments.....................................................................................................................5

13        2.   There is No Subordination to Another State's Law by Honoring Foreign
14             Judgments.....................................................................................................................6

15
          3.   The State Cannot Purport to "Punish" an Individual for Crimes Committed in
16             Another State................................................................................................................8

17
      C.   DEFENDANTS HAVE PRESENTED NO CASE FOR HARM TO THE PUBLIC INTEREST IN
18         GRANTING AS-APPLIED RELIEF TO THESE INDIVIDUAL PLAINTIFFS............................10

19
20   II.   CONCLUSION ...............................................................................................11

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Adam v. Saenger*, 303 U.S. 59, 58 S.Ct. 454 (1938) ...................................................6

*Alaska Packers Ass'n v. Indus. Acc. Comm'n*, 294 U.S. 532, 55 S.Ct. 518 (1935) ......6

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ....................10

*Baker v. Gen. Motors Corp.*, 522 U.S. 222, 118 S.Ct. 657 (1998)................................7

*Cascadia Wildlands v. Scott Timber Co.*, 715 F. App'x 621 (9th Cir. 2017) ...............10

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008) ......................1, 9

*Estin v. Estin*, 334 U.S. 541 (1948) ..............................................................................7

*Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007) ..................................................7

*G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071 (6th Cir. 1994)....................10

*Gamble v. United States*, 139 S.Ct. 1960 (2019)........................................................8, 9

*Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994)..............................................3

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) .................................................11

*Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 64 S.Ct. 208 (1943)..........................7

*McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010) ...........................9

*Melendres v. Arpaio*, 965 F.3d 990 (9th Cir. 2012) ....................................................10

*Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339 (1940) ..................................................6

*Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 102 S.Ct. 1357 (1982)..................................................................6

*Nevada v. Hall*, 440 U.S. 410 (1979) ............................................................................6

*Pac. Employers Ins. Co. v. Indus. Accident Comm.*, 306 U.S. 493 (1939)....................6

*People v. Park*, 56 Cal.4th 782 (2013) ..........................................................................4

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ..................................................10

SEILER EPSTEIN LLP
Attorneys at Law

*Roberts v. City of Fairbanks*, --- F.3d ---, 2020 WL 356959,
    20 Cal. Daily Op. Serv. 488 (9th Cir. No. 18-35938, Jan. 22, 2020) ....................................3, 4

*Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City*,
    303 F.3d 959 (9th Cir. 2002) .........................................................................10

*Shuting Kang v. Harrison*, No. 3:18-CV-05399-JD,
    2019 WL 4645723 (N.D. Cal. Aug. 13, 2019) ..........................................................11

*State v. Brown*, 2 N. C. 100 (1794).........................................................................8

*U.S. v. Swanson*, 947 F.2d 914 (11th Cir. 1991) .........................................................3

*United States v. Fowler*, 198 F.3d 808 (11th Cir. 1999) ..............................................2, 3

*United States v. Phillips*, 827 F.3d 1171 (9th Cir. 2016)..................................................2

*United States v. Torres*, 789 F. App'x 655, 657 (9th Cir. 2020)..........................................1

*V.L. v. E.L.*, --- U.S. --- 136 S.Ct. 1017 (2016) ......................................................6, 7, 8

*Williams v. North Carolina*, 317 U.S. 287 (1942).........................................................7

## Statutes

18 U.S.C. § 921............................................................................................3

18 U.S.C. § 922(g)......................................................................................2, 3

28 U.S.C. § 1738.........................................................................................5

42 U.S.C. § 1983......................................................................................3, 7

Cal. Pen. Code § 29800 .............................................................................1, 2, 4, 5

Cal. Pen. Code § 30305 ...............................................................................1, 2, 5

Cal. Pen. Code §17(b).....................................................................................4, 5

## Other Authorities

Joseph Greenlee, *The Historical Justification for Prohibiting Dangerous Persons From
    Possessing Arms*, WYOMING LAW REVIEW, forthcoming (currently available at:
    https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3509040).................................2

SEILER EPSTEIN LLP
Attorneys at Law

iv

1

**I.    ARGUMENT IN REPLY**

2

**A.    PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS.**

3

**1.    Plaintiffs' As-Applied Second Amendment Challenge is Appropriate.**

4

Defendants' Opposition, which relies heavily on their characterization of Pen. Code

5

sections 29800 and 30305 as "longstanding prohibitions," misses the nature of plaintiffs' claims.

6

Firstly, plaintiffs seek to enjoin defendants' *policies and enforcement practices*[1] which prevent

7

them from keeping firearms, for all lawful purposes including but not limited to self-defense in

8

the home, on an as-applied basis, and not merely the statutes sitting alone.  And such as-applied

9

relief is both permissible and appropriate.

10

Plaintiffs are specifically bringing this motion as a necessary extension of their complaint

11

challenging "the State of California's laws, policies, practices, and customs, as promulgated,

12

implemented and enforced by the Defendants, which refuse to honor the judgments of other

13

states that vacated or otherwise exonerated those disqualifying convictions, and which otherwise

14

refuse to honor the out-of-state restoration of an individual's firearms rights, *and to the extent*

15

*that it forms the basis of the Department's enforcement practices*, California Pen. Code §§ 29800

16

and 30305 *as applied*.  (First Am. Complaint, ECF No. 36, ¶ 3, emphasis added.)  The relief

17

sought in this motion, likewise, is made on an as-applied basis.  (See Plaintiffs' Memo. at 15:3-6;

18

Proposed Order.)

19

Such as-applied relief is not foreclosed, even if it ultimately involves the purported

20

"longstanding prohibitions on the possession of firearms by felons" as mentioned in dicta by

21

*Heller*.  *See*, *United States v. Torres*, 789 F. App'x 655, 657 (9th Cir. 2020) (Lee J., concurring)

22

("I do not believe either the Supreme Court or the Ninth Circuit has explicitly held that felons are

23

categorically barred from bringing as-applied Second Amendment challenges to [18 U.S.C.] §

24

_____

25

[1]Plaintiffs requested the Department of Justice produce its written policies pertaining to the

26

treatment of out-of-state felony convictions that have been set aside or vacated in their respective
states of origin.  (Lee Supp. Decl., ¶ 3.)  The documents the defendants produced did not contain
any express written policy, but only included a document entitled, "Background Clearance Unit

27

[¶] DROS PROCEDURES" which the Department of Justice, Bureau of Firearms uses to process
background checks in connection with firearms purchases and transfers generally.  (Id., ¶ 4; Ex.

28

B.)  Defendants have otherwise taken the position that the Department's policy is simply a literal
interpretation of Penal Code § 29800(a), and therefore, produced a copy of the statute itself.

SEILER EPSTEIN LLP
Attorneys at Law

922(g)(1). While facial challenges to § 922(g)(1) are foreclosed, the door appears to remain ajar on whether someone can pursue an as-applied Second Amendment challenge in circumstances where the underlying felony is so minor or regulatory in nature and has no analogue in the Founding era.")  And in *United States v. Phillips*, 827 F.3d 1171 (9th Cir. 2016), the Ninth Circuit recognized that "there are good reasons to be skeptical of the constitutional correctness of categorical, lifetime bans on firearm possession by *all* felons."  827 F.3d at 1174 (emphasis original).  In *Phillips*, the court affirmed the defendant's conviction under section 922(g)(1), but noted the scholarly disagreement over whether the practice of lifetime bans on firearm ownership by felons was historically justified, and under what theory.[2]  827 F.3d at 1174 n.2.  Ultimately, though the court affirmed the conviction, it noted that "there may be some good reasons to be skeptical about the correctness of the current framework of analyzing the Second Amendment rights of felons."  *Id*. at 1176.

Defendants' asserted justification for sections 29800 and 30305, framed as if this were a facial challenge, misses the mark.  The offenses constituting plaintiffs' underlying convictions in other states were non-violent, equivalent to "wobblers" in the State of California, and did not involve the imposition of a prison sentence.  Moreover, plaintiffs are not felons, as their convictions were set aside, vacated and dismissed in their respective states of origin. But even were they to be considered prior felons, plaintiffs have rebutted any presumptions in defendants' favor and shown that defendants cannot unconstitutionally continue to restrict their fundamental rights.

## 2.   Plaintiffs' Underlying Convictions Were Vacated and Cannot be Used by Defendants to Deny Plaintiffs' Fundamental Rights.

To the ultimate point of their Second Amendment claim, plaintiffs' convictions were adjudged to have been vacated, expunged, and/or set aside under the laws of those states by courts of competent jurisdiction.  Defendants' Opposition claims that plaintiffs have cited *United States v. Fowler*, 198 F.3d 808 (11th Cir. 1999) "for the proposition that they can [automatically]

---

[2]*See*, Joseph Greenlee, *The Historical Justification for Prohibiting Dangerous Persons From Possessing Arms*, WYOMING LAW REVIEW, forthcoming (manuscript currently available online at: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3509040).

SEILER EPSTEIN LLP
Attorneys at Law

possess firearms in California because federal law does not prohibit possession." (Opp. at 11:16-18). But plaintiffs clearly and expressly cited *Fowler* <u>not</u> for any implication that federal law supersedes California law, but for the proposition that the felony conviction there was deemed to have been *nullified*. And if nullified, in essence, it was voided or invalidated for purposes of prohibiting the possession of firearms.

*Fowler* was a criminal case, in which the defendant had been convicted of the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), a statute not at issue in the present case, but after he had received a certificate granting him restoration of his civil rights. 198 F.3d at 809. The Eleventh Circuit, following its precedent in *U.S. v. Swanson*, 947 F.2d 914 (11th Cir. 1991), held that the *federal* prohibition did not apply, and reversed the conviction. See also, 18 U.S.C. § 921(a)(20)(B). In examining Alabama law, the court in *Fowler* stated that a restoration of "all civil and political rights," without limitation, meant that it *nullified* "any and all legal incapacities," including the right to possess firearms." *Fowler*, 198 F.3d at 809–10.

Most recently, the Ninth Circuit itself has touched upon this issue, indirectly. In *Roberts v. City of Fairbanks*, --- F.3d ---, 2020 WL 356959, 20 Cal. Daily Op. Serv. 488 (9th Cir. No. 18-35938, Jan. 22, 2020), the Court considered the specific question of whether plaintiffs in a § 1983 case may recover damages if the convictions underlying their claims were vacated pursuant to a settlement agreement. According to the majority opinion, "[t]he answer depends on whether such a vacatur serves to invalidate the convictions and thus renders the related § 1983 claims actionable notwithstanding *Heck*."[3] The Court considered whether the plaintiffs' convictions had been "declared invalid by a state tribunal" by virtue of a settlement agreement which would thus allow them to sue for damages under § 1983. 2020 WL 356959 at *6. The Court stated: "Because all convictions here were vacated and underlying indictments ordered dismissed, there remains no outstanding criminal judgment nor any charges pending against Plaintiffs." 2020 WL 356959, at *6. And in so holding that the plaintiffs were not barred by *Heck* from pursuing §

---

[3] *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994). In *Heck*, the Supreme Court adopted a version of the common law's favorable-termination rule for § 1983 damages cases that "call into question the lawfulness of conviction or confinement," and stated that a plaintiff could

3

SEILER EPSTEIN LLP
Attorneys at Law

1    1983 claims, the Court observed: "According to Black's Law Dictionary, the definition of

2    'vacate' is 'to nullify or cancel; make void; *invalidate*.' Black's Law Dictionary 1782 (10th ed.

3    2014)[.]"  2020 WL 356959, at *6 (emphasis original).

4        These cases support plaintiffs' contention here that their underlying convictions, having

5    been set aside and/or vacated, means they were nullified and invalidated.

6        Defendants have claimed that their policy is simply a straightforward and literal reading

7    of Cal. Penal Code § 29800(a) which states: "[a]ny person who has been convicted of . . . a

8    felony under the laws of the United States, the State of California, or any other state . . . and who

9    owns, purchases, receives, or has in possession or under custody or control any firearm is guilty

10   of a felony."  But to say that theirs is a literal reading of section 29800, and that "once convicted,

11   forever convicted," ignores that the State itself disregards prior felony convictions under these

12   statutes, under certain circumstances.  Certain felony convictions, i.e., "wobblers" suffered in the

13   State of California, upon the successful completion of probation, may subsequently be reduced to

14   misdemeanors pursuant to Penal Code § 17(b), and then dismissed.  This is commonly done "on

15   application of the defendant." Pen. Code § 17(b)(3).  As the California Supreme Court explained

16   in *People v. Park*, 56 Cal.4th 782 (2013), in its present form, section 17(b)(3) allows the court to

17   reduce a wobbler felony conviction to a misdemeanor at the time probation is granted or at a

18   later time – for example, when the defendant has successfully completed probation.  56 Cal.4th

19   at 793.  And thus, under the statutory language, a wobbler "becomes a misdemeanor" for all

20   purposes under section 17(b)(3), subject to the trial court's discretion.  *Id*.

21       The Department of Justice recognizes this post-conviction transmutation of a felony

22   conviction to a misdemeanor, by a court, to allow the purchase/possession of firearms.  (See Lee

23   Supp. Decl., Exhibit B, p. 081: "A reduction to a misdemeanor pursuant to PC Section 17

24   restores the person's right to possess a firearm.")  But to say that the felony conviction never

25   existed at all, and therefore does not bar firearms ownership, is simply to accept a legal fiction.

26   Perhaps the State is willing to accept this legal fiction because it is required to, under the plain

27

28   satisfy this requirement, among others, by showing that the conviction was "declared invalid by a
     state tribunal authorized to make such determination."  512 U.S. at 483.

*SEILER EPSTEIN LLP*
*Attorneys at Law*

language of section 17(b).  Perhaps it does so begrudgingly.  However, a California court's

reduction of a felony conviction to a misdemeanor, and its subsequent dismissal, is not a denial

that a felony conviction existed in the first place, and it certainly merits no greater inherent

authority than another state's court's decision to subsequently vacate, set aside and dismiss a

felony conviction under its own laws.  In both cases, the person "has been convicted" of a felony,

a metaphysical fact which the State cannot simply choose to deny when it chooses to.

Plaintiffs have thus established entitlement to relief from defendants' enforcement of

Penal Code §§ 29800 and 30305 as applied to their individual circumstances. Defendants'

policies and enforcement practices are an absolute, total prohibition on the possession of firearms

and ammunition by persons convicted of certain crimes that were later vacated by the appropriate

courts in other states.  As plaintiffs have demonstrated a likelihood of prevailing on the merits of

their Second Amendment claim, preliminary injunctive relief should be granted in their favor.

**B.     DEFENDANTS HAVE NOT JUSTIFIED THE STATE'S REFUSAL TO PROVIDE FULL FAITH AND CREDIT TO THE JUDGMENTS OF ANOTHER STATE'S COURTS.**

Plaintiffs have established that they will prevail on their claims under the Full Faith and

Credit Clause, art. IV § 1 of the Constitution, and its enabling statute, 28 U.S.C. § 1738.  In

response, defendants claim that the state courts lacked jurisdiction, and that honoring those

judgments would somehow require California to "subordinate" its laws to the laws of other

states. Neither argument has merit.

**1.     Defendants Have Not Established a Jurisdictional Challenge to the State Court Judgments.**

Defendants' Opposition, citing a trio of Supreme Court cases, suggests the "jurisdictional

exception" to the Full Faith and Credit Clause's requirement that a state honor the judgments of

its sister states applies here.  Defendants misstate what that exception is.

The jurisdictional question arises where a court calls into question whether the court from

which the judgment originated had subject matter or personal jurisdiction over the relevant

parties in the first place.  See, *Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health*

*Ins. Guar. Ass'n*, 455 U.S. 691, 705, 102 S.Ct. 1357, 1366 (1982) ("[B]efore a court is bound by

1   the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign

2   court's decree. If that court did not have jurisdiction over the subject matter or the relevant

3   parties, full faith and credit need not be given.")  And thus, "before a court is bound by [a]

4   judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign

5   court's decree." *V.L. v. E.L.*, --- U.S. --- 136 S.Ct. 1017, 1020 (2016) (citing *Adam v. Saenger*,

6   303 U.S. 59, 62, 58 S.Ct. 454 (1938)).  But, the Court in *V.L.* continued, "[t]hat jurisdictional

7   inquiry […] is a limited one. '[I]f the judgment on its face appears to be a 'record of a court of

8   general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless

9   disproved by extrinsic evidence, or by the record itself.'" *V.L. v. E.L.*, 136 S.Ct at 1020 (citing

10  *Milliken v. Meyer*, 311 U.S. 457, 462, 61 S.Ct. 339, 342 (1940)).  Thus, the Court has adopted a

11  presumption that when a court of general jurisdiction renders a judgment, it has jurisdiction to

12  render that judgment.  *Milliken*, 311 U.S. at  462.

13          Here, there is no actual question that the courts of Washington, Arizona and Texas had

14  both subject matter and personal jurisdiction to render final judgments over their own criminal

15  proceedings. Defendants have not brought that into question, nor have they provided any

16  evidence calling their jurisdiction into question.  The jurisdictional exception to the Full Faith

17  and Credit Clause simply does not apply.

18          **2.      There is No Subordination to Another State's Law by Honoring Foreign
                     Judgments.**
19

20          Defendants also assert that the Full Faith and Credit Clause does not compel a state to

21  subordinate its laws to the "conflicting" laws of another state.  (Opp. at p. 14.)  Yet,

22  confoundingly, defendants continue to support this claim by citing the same three cases which

23  pertain to the *legislative acts* of other states, and not court judgments.  See, *Pac. Employers Ins.*

24  *Co. v. Indus. Accident Comm.*, 306 U.S. 493 (1939) (involving conflicting workers'

25  compensation statute); *Nevada v. Hall*, 440 U.S. 410 (1979) (the Clause did not require

26  California to apply a statutory defense limiting tort damages against the State of Nevada); *Alaska*

27  *Packers Ass'n v. Indus. Acc. Comm'n*, 294 U.S. 532, 548, 55 S.Ct. 518, 524 (1935) ("It follows

28  that not every statute of another state will override a conflicting statute of the forum by virtue of

    the full faith and credit clause") (all cited in defendants' Opp. at 14.)  And thus, defendants

**SEILER EPSTEIN LLP**
Attorneys at Law

6

1    continue to conflate the two concepts, wholly ignoring the recognized difference between

2    legislative enactments and judgments. The challenge here involves the State's refusal to honor

3    the court *judgments* of other states, not their legislative enactments. *Baker v. Gen. Motors Corp.*,

4    522 U.S. 222, 233, 118 S.Ct. 657 (1998) ("Regarding judgments, however, the full faith and

5    credit obligation is exacting. A final judgment in one State, if rendered by a court with

6    adjudicatory authority over the subject matter and persons governed by the judgment, qualifies

7    for recognition throughout the land.") *See also*, *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430,

8    437, 64 S.Ct. 208 (1943) ("The full faith and credit clause and the Act of Congress implementing

9    it have, for most purposes, placed a judgment on a different footing from a statute of one state,

10   judicial recognition of which is sought in another").

11        The Supreme Court has expressly *rejected* any idea that a state may disregard the full

12   faith and credit obligation simply because the state finds the policy behind the out-of-state

13   judgment abhorrent to its own public policies. Again, there is no "roving public policy

14   exception" to the full faith and credit due judgments. *Baker*, 522 U.S. at 233; *Estin v. Estin*, 334

15   U.S. 541, 546 (1948); *Williams v. North Carolina*, 317 U.S. 287 (1942); *V.L. v. E.L.*, 136 S.Ct. at

16   1020.

17        In *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007), the Tenth Circuit held that

18   Oklahoma's refusal to recognize adoptions "by more than one individual of the same sex from

19   any other state or foreign jurisdiction" was unconstitutional, and required Oklahoma to issue an

20   amended birth certificate listing as parents both members of a California same-sex couple who

21   legally adopted a child born in Oklahoma. *Id*. at 1141-42. The Tenth Circuit granted relief in an

22   action brought under section 1983. The "public policy" codified by Oklahoma statute was

23   plainly meant to prevent recognition of adoptions by same-sex couples. *Finstuen*, 496 F.3d at

24   1148. And although the State of Oklahoma was understandably squeamish about expressly

25   restating those "public policy" goals on appeal, it did contend "that requiring Oklahoma to

26   recognize an out-of-state adoption judgment would be tantamount to giving the sister state

27   control over the effect of its judgment in Oklahoma." *Id*. at 1153. The court rejected that

28   argument, and held that Oklahoma's "refusal to recognize final adoption orders of other states

SEILER EPSTEIN LLP
Attorneys at Law

7

1   that permit adoption by same-sex couples" was unconstitutional.  *Id.  See also*, *V.L. v. E.L.*, 136

2   S.Ct. at 1020 (the Full Faith and Credit Clause required Alabama to recognize a same-sex

3   couple's adoption order awarding the petitioner custody in Georgia).

4       Defendants here cast the State's policy as an extension of its police power.  (Opp. at

5   12:22-24.)  But no matter how the State frames it, ultimately, it is attempting to cram a public

6   policy exception into a constitutional prohibition the Supreme Court has made very clear.  Public

7   policy is simply not a reason to deny a person legal rights that have expressly been adjudicated

8   elsewhere, no matter how much California, Oklahoma, Alabama, or any other state might detest

9   the outcome.  Defendants' generalized complaint about the supposed subordination of the State's

10  public policy is therefore and simply not relevant.

11      **3.      The State Cannot Purport to "Punish" an Individual for Crimes Committed
               in Another State.**

12

13      Defendants cite *Gamble v. United States*, 139 S.Ct. 1960 (2019) for the proposition that

14  different sovereigns have the right "to punish the same offense."  (Opp. at 12:25-27.)  Firstly, we

15  do not see how application of the dual sovereignty rule, as applied to the double jeopardy clause

16  of the Fifth Amendment, has anything to do with this case.  *Gamble* addressed, exclusively, the

17  dual-sovereignty doctrine in its traditional context of an offense punished by both the national

18  and state governments, i.e., the "dual sovereigns" at issue, as a principle of federalism.  There

19  was no consideration as to whether the two sovereigns at issue were wholly separate states.  And

20  the one case that the majority opinion in *Gamble* cited that touches upon two states (or

21  territories) punishing a thief for the same offense of stealing a horse, *State v. Brown*, 2 N. C. 100,

22  101 (1794), seemed to actually *support* Gamble's position, as that case seemingly rejected

23  concurrent state jurisdiction in concluding that successive prosecutions for the same offense was

24  against natural justice,' and "'therefore [it could] not believe it to be law.'"  *Gamble*, 139 S.Ct. at

25  2005 (Gorsuch, J., dissenting).

26      In their Opposition, defendants framed their laws, policies and enforcement practices as

27  *punitive* in nature, and concede that they seek to "*punish*" people like Messrs. Linton, Stewart

28  and Jones for crimes committed in other states.  Indeed, the very words used by the Attorney

General are troubling: "even though a sister state may have chosen to set aside a conviction in

SEILER EPSTEIN LLP
Attorneys at Law

1  that state and restore an individual's ability to possess a firearm in that state, California

2  independently retains its lawful authority to draft its own criminal laws, regulate firearms, and

3  provide for the protection of its citizens."  (Opp. at 13:22-25, citing *Gamble*, 139 S.Ct. at 1965.)

4  Defendants appear to admit that their prohibition on the possession of firearms – a deprivation of

5  an enumerated, fundamental constitutional right – is a form of retributive justice applied against

6  plaintiffs and others like them for crimes committed (and vacated) long ago *in other*

7  *jurisdictions*.

8       If we take defendants at their word, and they actually see their role in depriving an

9  individual of an enumerated constitutional right as a justifiable "punishment" for crimes

10  committed in other states, we must further ask: What is the adjudicative process that they use to

11  separately "punish" these crimes? What tribunal, or even mere administrative process, or other

12  fact-finding procedure is used to justify this continuing, separate punishment?  What process is

13  due to the presumed offender before important constitutional rights here can be categorically and

14  totally denied?

15       If they are, indeed, punishing plaintiffs and others like them, then that startling reality

16  even more begs the relief plaintiffs' motion seeks.  But even if defendants were being

17  hyperbolic, and are not actually "punishing" plaintiffs and similarly situated individuals, they are

18  relying solely on the fact of conviction, while wholly discarding the subsequent determinations

19  setting aside, vacating or dismissing those convictions.  If defendants are true to their own

20  policies, that "[t]he laws of that particular state where the conviction occurred apply" in

21  interpreting foreign criminal records (Lee Supp. Decl., Exhibit B, p. 1), then they cannot choose

22  to accept the one fact of prior conviction while ignoring the fact that the convictions were

23  vacated, set aside, and dismissed.

24       The right recognized in *Heller* is not a "second-class right, subject, subject to an entirely

25  different body of rules than the other Bill of Rights guarantees[.]"  *McDonald v. City of Chicago*,

26  561 U.S. 742, 780, 130 S.Ct. 3020, 3044 (2010).  The State of California cannot choose to accept

27  another state's judicial determination of guilt, and wholly ignore subsequent action that rendered

28  the conviction nullified and void.

9

SEILER EPSTEIN LLP
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.    DEFENDANTS HAVE PRESENTED NO CASE FOR HARM TO THE PUBLIC INTEREST IN GRANTING AS-APPLIED RELIEF TO THESE INDIVIDUAL PLAINTIFFS.**

Defendants claim that granting plaintiffs the relief requested will harm the public interest. (Opp. at 16.)  Defendants specifically suggest that the State will be hampered and burdened by requiring the Department of Justice to allow the purchase and possession of firearms by all convicted felons "who […] happened to convince some authority outside of California that he ought to have access to firearms."  (Opp. at 16:21-22.)  Defendants' suggestion it will suffer such hardships is imagined.  Again, plaintiffs are quite clearly and expressly seeking *as-applied relief* in this motion.  (See Memo. in support of motion at 15:3; 11:26-28.)  Plaintiffs were mindful of the admonition of this Court at the hearing on defendants' motion to dismiss on August 22, 2019 that it would be unlikely to grant relief on a class-wide basis.  Accordingly, plaintiffs very specifically sought and seek preliminary injunctive relief on an as-applied basis.

On the other hand – and putting aside defendants' casual shrugging off well-established authority supporting injunctive relief to prevent the threatened loss of Mr. Jones's livelihood or career – "it is always in the public interest to prevent the violation of a party's constitutional rights[.]" *Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)); *Melendres v. Arpaio*, 965 F.3d 990, 1002 (9th Cir. 2012); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.")  Since important and fundamental constitutional rights are at stake, for all of the plaintiffs, a preliminary injunction is in the public interest.

At the very least, plaintiffs have raised "serious questions" that go to the merits of their claims, and the balance of hardships (i.e., the deprivation of rights for an extended period of time, the possible loss of livelihood, career and liberty interests), as measured against the relative hardships to the State in having to re-furnish the plaintiffs' right to possess firearms and ammunition, militates sharply in the plaintiffs' favor under *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  *See also, Cascadia Wildlands v. Scott Timber Co.*, 715 F. App'x 621, 624 (9th Cir. 2017).

10

This Court should further dispense with the filing of a bond if it concludes that there is no realistic likelihood of harm to defendants from enjoining their conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003); *Shuting Kang v. Harrison*, No. 3:18-CV-05399-JD, 2019 WL 4645723, at *2 (N.D. Cal. Aug. 13, 2019).

## II.   CONCLUSION

For the foregoing reasons, and as set forth in their motion, this Court should grant plaintiffs' motions.

Dated: February 3, 2020                         SEILER EPSTEIN LLP


                                                /s/ George M. Lee
                                                George M. Lee

                                                Attorneys for Plaintiffs

SEILER EPSTEIN LLP
Attorneys at Law

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIM. INJUNCTION | CASE NO. 3:18-cv-7653-JD