George M. Lee (SBN 172982)
    gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:    (415) 979-0511

Attorneys for Plaintiffs
CHAD LINTON, PAUL MCKINLEY STEWART,
KENDALL JONES, FIREARMS POLICY FOUNDATION,
FIREARMS POLICY COALITION,
SECOND AMENDMENT FOUNDATION,
THE CALGUNS FOUNDATION and MADISON
SOCIETY FOUNDATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHAD LINTON, et al., | Case No. 3:18-cv-07653-JD |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| XAVIER BECERRA, in his official capacity as Attorney General of California, et al., | **[FRCP 56]** |
| Defendants. | Courtroom 11, 19th Floor |
| | Judge:    Hon. James Donato |

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND/OR PARTIAL SUMMARY JUDGMENT | CASE NO. 3:18-cv-07653-JD

**SEILER EPSTEIN LLP**
**Attorneys at Law**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ..........................................1

      A.    PLAINTIFF CHAD LINTON .........................................................................1

      B.    PLAINTIFF PAUL MCKINLEY STEWART .....................................................4

      C.    PLAINTIFF KENDALL JONES .....................................................................5

      D.    PROCEDURAL HISTORY............................................................................7

      E.    DEFENDANTS' POSITION .........................................................................7

III.  ARGUMENT ......................................................................................................9

A.    STANDARD ........................................................................................................9

B.    PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR CLAIM ALLEGING
      VIOLATION OF THE SECOND AMENDMENT.........................................................9

      1.    Defendants' Policy Amounts to an Improper Categorial Prohibition. ..................9

      2.    Under the Two-Part Test Stated in *Chovan*, Plaintiffs Are Entitled
            to Judgment Under Either Strict or Intermediate Scrutiny. ...............................10

            a.    Plaintiffs Are Not Felons Under the Laws of The State Where the
                  Convictions Occurred. ....................................................................13

            b.    No Public Safety Interest Exists for Barring Persons Formerly
                  Convicted of Non-Violent Felonies..................................................17

C.    PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR CLAIM ALLEGING VIOLATION
      OF THE FULL FAITH AND CREDIT CLAUSE. .......................................................19

D.    PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR CLAIM ALLEGING VIOLATION
      OF THE PRIVILEGES AND IMMUNITIES CLAUSE (ART. IV, § 2) AND THE PRIVILEGES
      OR IMMUNITIES CLAUSE (AMEND. XIV)...........................................................21

      1.    Defendants' Policies Violate Plaintiff Linton's Right to Travel to California
            Under Art. IV § 2 of the Constitution................................................................22

      2.    Defendants' Policies Violate All Individual Plaintiffs' Right to Travel to
            California Under the Fourteenth Amendment. ...................................................23

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND/OR PARTIAL SUMMARY JUDGMENT | CASE NO. 3:18-cv-07653-JD

SEILER EPSTEIN LLP
Attorneys at Law

1

IV.    CONCLUSION ...................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEILER EPSTEIN LLP**
**Attorneys at Law**

1

<u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 106 S.Ct. 2317 (1986)...........................24

4

*Baker v. Gen. Motors Corp.*, 522 U.S. 222, 118 S.Ct. 657 (1998)........................................20

5

*Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017)................................................................5, 11

6

*Beecham v. United States*, 511 U.S. 368, 114 S.Ct. 1669 (1994).................................................17

7

*Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016),
  *cert. denied* 137 S.Ct. 2323 (2017).......................................................................10, 18, 19

8

9

*Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007 (1998) .................................................17

10

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S.Ct. 876 (2010) .........................12

11

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008) ................................. *passim*

12

*Duncan v. Becerra*, 265 F.Supp.3d 1106 (S.D. Cal. 2017),
  *aff'd*, 742 F.App'x 218 (9th Cir. 2018) ...............................................................................11

13

14

*Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995 (1972)........................................................24

15

*Edenfield v. Fane*, 507 U.S. 761 (1993) .............................................................................18

16

*Estin v. Estin*, 334 U.S. 541 (1948) ....................................................................................20

17

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ........................................................18

18

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017) ...............................................................11

19

*Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173 (1999) ........................18

20

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*) ...............................17

21

*Italian Colors Rest. v. Becerra*, 878 F.3d 1165 (9th Cir. 2018) .............................................18

22

*Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883 (1982) .................................20

23

*Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 116 S.Ct. 873 (1996) ........................20

24

*McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010) ......................................9, 18

25

*Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076 (1974) ...............................24

26

*Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339 (1940) ........................................................20

27

*Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 56 S.Ct. 229 (1935)................................20

28

S EILER E PSTEIN LLP
Attorneys at Law

iv

SEILER EPSTEIN LLP
Attorneys at Law

*Pacific Employers Ins. Co. v. Industrial Accident Comm'n*,
  306 U.S. 493, 59 S.Ct. 629 (1939) ...................................................................20

*Padilla-Romero v. Holder*, 611 F.3d 1011 (9th Cir. 2010) ...........................13

*People v. Gilbreth*, 156 Cal.App.4th 53 (2007)......................................21, 25

*People v. Williams*, 49 Cal.App.4th 1632 (1996) .........................................21

*Rhode v. Becerra*, --- F.Supp.3d ---, 2020 WL 2392655 (S.D. Cal. Apr. 23, 2020) ...............17

*Roberts v. City of Fairbanks*, 947 F.3d 1191 (9th Cir. 2020)........................14

*Rogers v. Grewal*, No. 18-824, 2020 WL 3146706 (U.S. June 15, 2020)
  (Thomas, J., dissenting from denial of certiorari) ...........................................10

*Saenz v. Roe*, 526 U.S. 499, 119 S.Ct 1518 (1999) ..........................22, 23, 24

*Sannmann v. Department of Justice*, 47 Cal.App.5th 676 (2020) .................21

*Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322 (1969) ...........................24

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016) ........................................11

*Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156 (1948) ...............................22

*Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180, 117 S.Ct. 1174 (1997) ...............17

*United States v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010) ..............................12

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013)............................. *passim*

*United States v. Engstrum*, 609 F.Supp.2d 1227 (D. Utah 2009)....................12

*United States v. Fitzgerald*, 935 F.3d 814 (9th Cir. 2019) ............................21

*United States v. Fowler*, 198 F.3d 808 (11th Cir. 1999) ...............................17

*United States v. JP Morgan Chase Bank Account No. Ending 8215*,
  835 F.3d 1159 (9th Cir. 2016) ........................................................................9

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)............................18

*United States v. Phillips*, 827 F.3d 1171 (9th Cir. 2016)...............................10

*V.L. v. E.L.*, -- U.S. --, 136 S.Ct. 1017 (2016) ...........................................20

*Wells, Waters & Gases, Inc. v. Air Prods. & Chems., Inc.*, 19 F.3d 157 (4th Cir. 1994) ............13

*Williams v. North Carolina*, 317 U.S. 287 (1942)........................................20

v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND/OR PARTIAL SUMMARY JUDGMENT | CASE NO. 3:18-cv-07653-JD

*Zands v. Nelson*, 797 F.Supp. 805 (S.D. Cal. 1992) .................................................9

*Zetwick v. County of Yolo*, 850 F.3d 436 (9th Cir. 2017) ...................................9


**Statutes**

18 U.S.C. § 921(a) .................................................................................11, 17, 19

18 U.S.C. § 922(g) ..................................................................................... *passim*

28 U.S.C. § 1738 .................................................................................................21

Cal. Pen. Code § 17(b) ...........................................................................21, 23, 24

Cal. Pen. Code § 29800 ................................................................................ *passim*

Cal. Pen. Code § 30105 .......................................................................................2

Cal. Pen. Code § 31635 .......................................................................................6

Cal. Pen. Code § 460 .........................................................................................25

Cal. Pen. Code § 461 .........................................................................................25

Cal. Pen. Code § 484g ......................................................................................25

Cal. Pen. Code § 489 .........................................................................................25

Cal. Penal Code § 26710 ....................................................................................6

Cal. Penal Code § 30305 .............................................................................. *passim*

Cal. Veh. Code § 2800.2 ...................................................................................24

Rev. Code of Wash. 9.41.040 ............................................................................2


**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ...........................................................14

Bryan A. Garner, *Garner's Modern American Usage* (3d ed. 2009) ............13

Joseph Greenlee, *The Historical Justification for Prohibiting Dangerous Persons From Possessing Arms*, 20 Wyo. L. Rev. 249 (2020) ...........................................10

SEILER EPSTEIN LLP
Attorneys at Law

1

**Rules**

Fed. R. Civ. Pro. 30(b)(6) ................................................................................8

**Constitutional Provisions**

U.S. Const., Amend. II ......................................................................... *passim*

U.S. Const., Amend. XIV ................................................................22, 23

U.S. Const., art. IV, § 1 ...................................................................19, 21

U.S. Const., art. IV, § 2 ...................................................................22, 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEILER EPSTEIN LLP**
**Attorneys at Law**

## I.   INTRODUCTION

This action seeks to vindicate and restore the fundamental right to keep and bear arms, a right which the State is denying individual plaintiffs Linton, Stewart and Jones. The State, acting through the defendants' continuing policies, practices and customs, deprives plaintiffs and others similarly situated on the grounds that once one is a convicted felon, he is always a convicted felon. However, those purportedly disqualifying felony convictions emanating from other states have been set aside, vacated or were otherwise dismissed, and plaintiffs' rights have been expressly restored to them there. Accordingly, there is no legal or equitable bar to the continuing deprivation of the plaintiffs' rights under the Second Amendment here. Individual plaintiffs Linton, Stewart and Jones are entitled to declaratory and injunctive relief from the enforcement of Cal. Pen. Code §§ 29800 (prohibiting possession of firearms by a felon) and/or 30305 (ammunition) against them. Summary judgment, or in the alternative, partial summary judgment as to each claim, should be entered in favor of all plaintiffs herein. For purposes of this motion, the organizational plaintiffs Firearms Policy Foundation, Firearms Policy Coalition, Inc., Second Amendment Foundation, Inc., California Gun Rights Foundation, and Madison Society Foundation, are moving on behalf of plaintiffs Linton, Stewart and Jones, each of whom are members. The relief that all plaintiffs seek in this motion is for judgment that would provide relief to individual plaintiffs Linton, Stewart and Jones.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   PLAINTIFF CHAD LINTON

In 1987, while plaintiff Chad Linton was serving in the U.S. Navy, and stationed at NAS Whidbey Island, Washington, he tried – albeit briefly – to outrun a Washington State Police officer and make it back to base. He reconsidered the idea, and was arrested without resistance. (Linton Decl., ¶ 7). Mr. Linton was charged and pled guilty to attempted evasion, a Class C felony under the Revised Code of Washington, and driving while intoxicated, a misdemeanor. (Id., ¶ 8). He spent seven days in jail. (Id.) In 1988, he successfully completed his probation, and received a certificate of discharge, and reasonably believed, based upon statements made by the

SEILER EPSTEIN LLP
Attorneys at Law

1  Washington State court judge that the matter had been dismissed from his records. (Id., ¶ 9).

2  After leaving the service, Mr. Linton moved back to California, where he raised a family

3  and remained a law-abiding citizen. In 2015, he attempted to make a firearm purchase but was

4  surprised to learn that California DOJ denied the purchase, due to the Washington State

5  conviction. (Linton Decl., ¶ 13). Mr. Linton hired a Washington attorney who re-opened the

6  criminal proceedings, withdrew the guilty plea, and entered a retroactive not-guilty plea. (Id.)

7  The court then issued its "Order on Motion Re: Vacating Record of Felony Conviction," in

8  which it specifically found that the crime for which Mr. Linton was convicted was not a violent

9  offense. (Id., ¶ 14; Linton Exh. A, p. 2). The court granted the motion to vacate the conviction,

10 set aside the guilty plea, and released plaintiff from all penalties and disabilities resulting from

11 the offense. On April 18, 2016, the Island County Superior Court also issued a separate Order

12 Restoring Right to Possess Firearms pursuant to Revised Code of Washington 9.41.040(4).

13 (Linton Decl., ¶ 15; Linton Exh. B).

14 Mr. Linton underwent a Personal Firearms Eligibility Check ("PFEC"), pursuant to Cal.

15 Pen. Code § 30105(a), to confirm his eligibility to purchase and/or possess a firearm, which

16 indicated he was eligible. (Linton Decl., ¶ 16; Linton Exh. C). In 2018, Mr. Linton attempted to

17 purchase a rifle, but was again denied. (Linton Decl., ¶ 17; Linton Exh. D). He then underwent a

18 "Live Scan" fingerprint-based background check request with the DOJ directly, which again

19 showed the presence of no felony convictions.  (Linton Decl., ¶ 18).

20 Mr. Linton's attorney began discussions with the California DOJ to correct his status as a

21 "prohibited person" here. His counsel provided the DOJ with the Washington court orders

22 vacating the felony conviction and restoring his firearm rights. (Linton Decl., ¶ 19; Richards

23 Decl., ¶ 4). In response, the DOJ informed Mr. Linton that "the [felony] entry in question cannot

24 be found on your California criminal history record, therefore, no further investigation is

25 required[,]" and that his fingerprints "did not identify any criminal history maintained by the

26 Bureau of Criminal Information and Analysis." (Linton Decl., ¶ 20; Linton Exs. F and G). Based

27 upon these letters, Mr. Linton attempted to purchase a revolver in March 2018, but was again

28 denied. (Linton Decl., ¶ 21). Then, on April 3, 2018, agents from the DOJ's Armed Prohibited

**SEILER EPSTEIN LLP**
Attorneys at Law

1    Persons System (APPS) enforcement program came to Mr. Linton's home, and seized several

2    firearms that he had acquired and owned throughout the years, including an antique, family-

3    heirloom shotgun that was once owned by his grandfather. (Id., ¶ 22). All of these firearms were

4    acquired through legal purchases or transfers, through federally-licensed firearm dealers (FFLs),

5    and pursuant to DOJ background checks. Mr. Linton's wife showed the DOJ agents the

6    Washington State court orders that vacated the felony conviction, and restored Mr. Linton's gun

7    rights. These agents sought guidance from defendant Wilson, who purportedly advised that the

8    Washington court orders would have no effect here, and ordered seizure of the firearms. (Id.)

9         Mr. Linton's attorney, Adam Richards, spoke with Mr. Wilson, who informed him that he

10   had personally reviewed the records in question, and stated "the Department's position" was that

11   they would not honor the out-of-state orders which vacated or dismissed Mr. Linton's case.

12   (Richards Decl., ¶ 5). Mr. Wilson stated that this was routinely how the Department handled

13   such out-of-state felony convictions that had been set aside or vacated. (Id.)

14        Earlier this year, Mr. Linton moved with his family to Nevada. (Linton Decl., ¶ 3.) A

15   substantial factor that motivated their move was that California still considers him to be a

16   "felon," prohibited from owning or purchasing firearms. (Id.) That he cannot exercise an

17   important and fundamental constitutional right was an important reason why they moved. (Id.)

18   Nevertheless, he continues to maintain a residential interest in California, including a recurring

19   annual lease on property located in Placer County. (Id., ¶ 4.) He built a cabin on that property,

20   but as it is so remote, and abundant with wildlife, feels unprotected in that area without at least

21   the option of having appropriate firearms available or at hand if needed. (Id.) Otherwise, he

22   continues to have family here, and would like to be able to possess or handle firearms or

23   ammunition for recreational purposes, such as target shooting, while he is visiting. (Id., ¶ 5). He

24   intends to return eventually, but feels he cannot do so until this matter is resolved. (Id., ¶ 6).

25        In this case, Department of Justice representative Gilbert Matsumoto testified, among

26   other subjects discussed below, as to the basis for Mr. Linton's denial of his attempts to purchase

27   a firearm, and his prohibited status. (Matsumoto Depo. (Lee Decl. Exh. A) at 71:8-17). The sole

28   basis for his denial was the 1987 felony conviction from Washington State. (Matsumoto Depo. at

SEILER EPSTEIN LLP
Attorneys at Law

3

74:21 - 75:13). However, the FBI records which the Department accessed when it made the

determination to deny Mr. Linton a firearm shows "zero felonies." (Matsumoto Depo. at 79:16 -

80:5; Lee Decl. Exh. E at p. 015). The disposition of the prior felony conviction shows up as

"vacated," which meant that there were "zero felonies" as far as the State of Washington was

concerned. (Matsumoto Depo. at 80:8-25; Lee Decl. Exh. E, p.015). However, a handwritten

notation by the DOJ analyst duly followed California's policy (discussed below) in noting "Not

recognized [in] CA!" (Matsumoto Depo. at 81:2-15; Lee Decl. Exh. E, p. 015).

**B.     PLAINTIFF PAUL MCKINLEY STEWART**

In 1976, when plaintiff Stewart was 18 years old, and living in Arizona, he succumbed to

a crime of opportunity, and stole some lineman's tools from a telephone company truck.

(Stewart Decl., ¶ 3). When the police came to his residence to investigate, Mr. Stewart gave up

the tools and offered no resistance to his arrest. (Id.) Mr. Stewart was found guilty of first degree

burglary, a felony, in the County of Yuma, Arizona. He was sentenced to three years of

probation, and the Court imposed a suspended sentence. (Id., ¶ 4). He successfully completed his

probation in 1978, and believed that the felony conviction had been dismissed. (Id., ¶ 4-5).

Since moving to California in 1988, Mr. Stewart has been a law-abiding citizen, and has

remained steadily and gainfully employed. (Stewart Decl., ¶ 6). In 2015, he attempted to

purchase a pistol for self defense in the home, which was denied due to the presence of a felony

conviction. (Id., ¶ 7). A Live Scan fingerprint background check showed a lingering conviction,

but did not reflect whether it was a felony. It also stated that it was "undetermined" whether he

was eligible to purchase firearms. (Id., ¶ 8).

Mr. Stewart filed an application to restore his firearm rights and to set aside his judgment

of guilt with the Superior Court of Yuma County, Arizona, which issued an order restoring his

firearm rights, and specifically set aside the judgment of guilt. (Stewart Decl., ¶ 10; Stewart Exh.

A). Believing the matter would be automatically updated in any background search, Mr. Stewart

attempted to make another firearm purchase on February 10, 2018, which the DOJ also denied.

(Stewart Decl., ¶ 12). Mr. Stewart had several telephone conversations with DOJ officials, who

informed him that the Arizona felony conviction disqualified him from possessing or purchasing

4

**SEILER EPSTEIN LLP**
*Attorneys at Law*

1    firearms, notwithstanding the Arizona court's order. (Id., ¶ 14).

2         Department of Justice representative Matsumoto testified as to the basis for Mr. Stewart's

3    firearm denial. (Matsumoto Depo. at 89:25 - 90:6; Lee Decl. Exh. D, ¶¶ 7-8). Mr. Stewart's

4    DROS[1] denial, which occurred in 2018, was based solely upon his 1976 burglary conviction

5    from Arizona. (Matsumoto Depo. 91:6-24). Mr. Stewart's criminal history record indicates the

6    1976 burglary conviction, but a set-aside order was granted on August 11, 2016.  (Matsumoto

7    Depo. 92:11-19; Lee Decl. Exh. F). But again, a DOJ analyst had noted that the set-aside order[2]

8    was not recognized in California. (Matsumoto Depo. at 93:6-11; Lee Decl. Exh. F). Mr.

9    Stewart's restoration of rights had no effect in California because, in the Department's view,

10   only a governor's pardon would be recognized. (Matsumoto Depo. at 94:25 - 95:11).

11   **C.    PLAINTIFF KENDALL JONES**

12        Plaintiff Kendall Jones has lived in the County of Sacramento, for over 39 years. (Jones

13   Decl., ¶ 1). He was employed by the California Department of Corrections as a Correctional

14   Officer for 30 years until his final retirement in 2014, and served as a firearms and use-of-force

15   instructor for the DOC. Mr. Jones also worked as the Primary Armory Officer for the California

16   State Prison Solano facility for over 19 years. (Id, ¶ 3). He is POST-certified and NRA-certified

17   in the subjects of firearms, laws, self-defense, firearms safety and responsibility, and in his career

18   received numerous letters of commendation and appreciation, both pertaining to his primary

19   duties as a Correctional Officer, and also as a firearms and use-of-force instructor. (Id., ¶ 3-4).

20   Since retirement, he has pursued the natural course of his career as a law enforcement firearms

21   trainer, and in this capacity, he has personally trained thousands of peace officers and private

22   citizens in the proper use of handguns, rifles, shotguns, less-lethal defensive weapons (e.g.,

23   pepper spray) and use of force. (Id., ¶ 5).

24        When he was 19 years old – over three decades ago – Mr. Jones was arrested in Houston,

25

26   [1] DROS stands for "Dealer Record of Sale," the system through which all firearm sales and
     transfers are regulated. *Bauer v. Becerra*, 858 F.3d 1216, 1218-1219 (9th Cir. 2017). The DROS
27   system is administered by the Department of Justice, and these functions are not delegable to a
     local law enforcement agency. (Matsumoto Depo. at 30:16 - 31:2).

28   [2] The Arizona Terminology Page uses the term "13-907," a code which means the set-aside of a
     conviction. (Lee Decl. Exh. J at p. 216; Matsumoto Depo. at 94:7-24).

SEILER EPSTEIN LLP
Attorneys at Law

5

1   Texas, from an incident involving the alleged misuse of a credit card. Mr. Jones maintains that

2   he had used a credit card under mistaken pretenses. (Jones Decl., ¶ 8). Nevertheless, after being

3   charged with credit card fraud in 1980, the prosecutor made an offer to have the court set aside

4   and dismiss the matter, following a period of probation, if Mr. Jones agreed to plead guilty to a

5   single charge of "credit card abuse," a third degree felony under Texas law, which involved no

6   term of confinement. (Id., ¶ 9). In light of the prosecutor's offer by which the charges would be

7   set aside and dismissed, Mr. Jones accepted the deal, pled guilty to the charge offered, and

8   completed a three-year term of probation. (Id). After successfully completing probation, on or

9   about August 22, 1983, per the agreement, the district court for the County of Harris, Texas,

10  permitted him to withdraw his plea of guilty, and set aside and dismissed the judgment of

11  conviction. (Id., ¶ 10; Jones Exh. A).

12      Mr. Jones then moved to California and pursued a career in law enforcement with the

13  State of California. (Jones Decl., ¶ 11). For thirty years, he legally and necessarily owned and

14  possessed firearms, as a part of his profession, for personal protection, recreation and other

15  lawful purposes. (Id., ¶ 12). Since retiring in 2014, Mr. Jones has had a career as a law

16  enforcement firearms and use-of-force trainer, drawing upon 30 years of training and experience

17  in the field.  To continue in this field and chosen profession, of course, he is required to own,

18  possess, handle and use firearms and ammunition. (Id.)

19      He previously held a Certificate of Eligibility ("COE") to possess firearms and

20  ammunition under Cal. Penal Code § 26710, a necessary requirement to becoming or

21  maintaining status as a certified firearm instructor under current DOJ policy. (Jones Decl., ¶ 13).

22  In fact, even at present, Mr. Jones is listed on the Department of Justice's website as one of its

23  Certified Instructors eligible to provide training specified by Pen. Code § 31635(b). (Jones Decl.,

24  ¶ 12; Jones Exh. B). But in 2018, after he submitted his renewal application for his COE, which

25  he had held since 2010, the DOJ informed him that his application was being delayed.  (Jones

26  Decl., ¶ 14.) After Mr. Jones initiated a record review request, the Department informed him on

27  February 23, 2019 that he was "not eligible to own, possess or have under [his] custody or

28  control any firearm[,]" and denied him the renewed COE. (Id.; Jones Exh. C).

SEILER EPSTEIN LLP
Attorneys at Law

Mr. Matsumoto testified that the sole basis for the denial of Mr. Jones's COE was the felony conviction from Texas. (Matsumoto Depo. at 100:14 – 101:1). The criminal history records, however, showed that the disposition of that court case was that the matter was "dismissed" and that under a heading called "provision," the matter was "set aside." (Id., at 101:18 – 102:14; Lee Decl. Exh G at p. 2). Mr. Matsumoto indicated, however, that California would not honor a set aside order from Texas. (Matsumoto Depo. at 102:21 – 103:1).

**D.    PROCEDURAL HISTORY**

Plaintiffs filed this action to challenge the firearms prohibition imposed by Pen. Code §§ 29800 and 30305, as applied to Messrs. Linton and Stewart, on December 20, 2018. Organizational plaintiffs Firearms Policy Foundation, Firearms Policy Coalition, Inc., Second Amendment Foundation, Inc., California Gun Rights Foundation, and Madison Society Foundation joined individual plaintiffs Linton and Stewart, to vindicate their members' rights, and on also behalf of all similarly-situated members of those organizations.

Defendants filed a motion to dismiss (ECF No. 12) on February 22, 2019. After a hearing, on August 23, 2019 this Court terminated the motion to dismiss on the grounds that the motion "raises issues best addressed in summary judgment proceedings," and directed plaintiffs to file this motion by June 22, 2020. (ECF No. 26).

On November 15, 2019, plaintiffs filed their motion for leave to file an amended complaint, to add plaintiff Kendall Jones to these proceedings, asserting a similar claim. (ECF No. 30). Plaintiffs filed their First Amended Complaint (ECF No. 36) on December 2, 2019.

On December 19, 2019, plaintiffs filed a motion for preliminary injunction, to enjoin enforcement of Pen. Code §§ 29800 and 30305 against individual plaintiffs Jones, Linton and Stewart pending disposition of this matter. On May 21, 2020, this Court denied plaintiffs' motion. (ECF No. 46).

**E.    DEFENDANTS' POSITION**

The defense in this matter has been to deny that there is any official policy regarding the treatment of out-of-state convictions that have been set aside, vacated, or dismissed. Instead, defendants have insisted that they are simply applying the language of Penal Code § 29800(a) in

SEILER EPSTEIN LLP
Attorneys at Law

SEILER EPSTEIN LLP
Attorneys at Law

1   concluding that "[a]ny person who has been convicted of […] a felony under the laws […] of

2   any other state" is prohibited from owning a firearm.

3      Gilbert Matsumoto was produced as the Department of Justice's Rule 30(b)(6) deposition

4   witness on certain categories, including the Department's policy regarding the treatment of

5   former felons whose convictions have been set aside or vacated in their respective states of

6   origin. (Matsumoto Depo. at 16:1-9; 23:20-24:4; Lee Decl. Exh. D). Mr. Matsumoto denied that

7   there is any written or unwritten policy on this topic (Matsumoto Depo. 24:5-24). Instead, as Mr.

8   Matsumoto succinctly states the State's position, it is simply a matter of following the state's

9   codes. (Id., at 24:5-11). Defendants' position is that theirs is simply a straightforward reading of

10  Pen. Code § 29800, i.e., if a person is convicted in another state of a felony, California would

11  prohibit that person from acquiring a firearm irrespective of whether the felony conviction was

12  set aside or vacated. (Matsumoto Depo. at 55:17 - 56:5).

13     However, defendants have also produced in this litigation a DOJ document entitled

14  "Background Clearance Unit DROS Procedures," marked in this litigation as Exhibit 005. (See

15  Exh. 005 (Lee Decl., Exh. C); Matsumoto Depo. at 25:9-15). This is a document that DOJ

16  analysts follow to determine and individual's eligibility to own or possess firearms in California.

17  (Matsumoto Depo. at 26:9-19). This document is part of a larger "training binder," which was

18  reviewed by staff, supervisors, and the DOJ's attorneys for use by the Department's Background

19  Clearance Unit. (Id., at 27:2-16). Defendants deny that this document is either reflective of a

20  policy statement, or a memorandum (See Defendants' Response to Request for Admission No.

21  10 (Lee Decl. Exh. B) at 5:10-13 ("Defendants deny that Exhibit 005 is a memorandum and deny

22  that Exhibit 005 constitutes a 'policy.' Penal Code § 29800 serves as the guiding principle on

23  treatment of out-of-state felony convictions and possession of firearms in California.")

24     This document provides, in a section entitled "Other States," that "the laws of that state

25  where the conviction occurred apply." (Lee Decl. Exh. C at p. 080). But that is not the actual

26  policy or practice that the Department follows in honoring or respecting another state court's

27  final judgment. Instead, the Department's analysis is simple: if one was convicted in another

28  state of any felony, period, they will be prohibited from having a firearm here unless they have a

SEILER EPSTEIN LLP
Attorneys at Law

1  governor's pardon from that state. (Matsumoto Depo. at 33:8 - 34:1).

2  Under the heading of "Pardons / Civil Liability Relief – Other States," Exhibit 005

3  otherwise and succinctly states the policy here as follows: "A person convicted of a felony in

4  another state whose civil disabilities were removed under the laws of that state (similar to PC

5  section 12023.4) is prohibited from possessing handguns in California (AG Opinion No. 67-100.

6  DAG Winkler, 7/26/1967)." (Lee Decl. Exh. C, at p. 082).

7

8  **III.  ARGUMENT**

9  **A.  STANDARD**

10  "Summary judgment is appropriate when, viewing the evidence in the light most

11  favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v.*

12  *County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (citing *United States v. JP Morgan Chase*

13  *Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). Where the plaintiff is the

14  moving party seeking summary judgment, he or she must adduce admissible evidence on all

15  matters as to which he or she bears the burden of proof. *Zands v. Nelson*, 797 F.Supp. 805, 808

16  (S.D. Cal. 1992).

17  **B.  PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR CLAIM ALLEGING VIOLATION OF**
**THE SECOND AMENDMENT.**
18

19  **1.  Defendants' Policy Amounts to an Improper Categorial Prohibition.**

20  In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), the Supreme

21  Court affirmed an individual right to possess a firearm "unconnected with militia service." 554

22  U.S. at 582. At the core of the Second Amendment is the right of "law-abiding, responsible

23  citizens to use arms in defense of hearth and home." *Id*. at 634-35. And in *McDonald v. City of*

24  *Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010), the Court held that Second Amendment right as

25  recognized in *Heller* was a right fundamental to our system of ordered liberty. 561 U.S. at 778,

26  791. At the same time, the Court explained that its recognition of an individual right to bear

27  firearms would not "cast doubt on longstanding prohibitions on the possession of firearms by

28  felons[,]" among other restrictions. *Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786. The

9

total prohibition defendants are enforcing against plaintiffs here is not "longstanding" in relative

terms, and even if it were, plaintiffs are not of a class of persons the Founders understood to be

prohibited from possessing arms—i.e., violent and otherwise dangerous persons. *Binderup v.*

*Attorney General*, 836 F.3d 336, 348 (3d Cir. 2016), *cert. denied* 137 S.Ct. 2323 (2017). Nor is

there any history or tradition of such a prohibition.

But if one was at some time a felon, does that mean he is always a convicted felon, for

purposes of the right to own firearms? As a matter of our Nation's history, prohibited persons

could have their rights restored once they were no longer considered dangerous. As noted in

*United States v. Phillips*, 827 F.3d 1171 (9th Cir. 2016), "there are good reasons to be skeptical

of the constitutional correctness of categorical, lifetime bans on firearm possession by *all*

felons." 827 F.3d at 1174 (emphasis original). In *Phillips*, although the Ninth Circuit affirmed

the defendant's conviction under 18 U.S.C. § 922(g)(1), it noted the scholarly disagreement over

whether the practice of lifetime bans on firearm ownership by felons was historically justified,

and under what theory. See, Joseph Greenlee, *The Historical Justification for Prohibiting*

*Dangerous Persons From Possessing Arms*, 20 W<small>YO.</small> L. R<small>EV.</small> 249 (2020) (manuscript currently

available online at: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3509040).

Here, defendants' enforced prohibition here has no longstanding historical predicate and

broadly restricts the constitutionally protected rights of plaintiffs for all purposes relating to

firearms. Like the ban struck down in *Heller*, it threatens citizens with substantial criminal

penalties. *Heller*, 554 U.S. at 634. The law thus fails *Heller*'s categorical analysis.

**2.  Under the Two-Part Test Stated in *Chovan*, Plaintiffs Are Entitled to Judgment Under Either Strict or Intermediate Scrutiny.**

Assuming *arguendo* that an interest-balancing test is appropriate, even under the two-step

approach articulated within this Circuit in *United States v. Chovan*, 735 F.3d 1127, 1136 (9th

Cir. 2013), plaintiffs are entitled to judgment in their favor. Under this two-step approach,[3] the

S<small>EILER</small> E<small>PSTEIN</small> LLP
Attorneys at Law

---

[3] The validity of this two-step approach adopted by a majority of the Circuits is questionable. As Justice Thomas recently remarked, directly speaking of *Chovan* and similar cases, "the courts of appeals' test appears to be entirely made up. The Second Amendment provides no hierarchy of 'core' and peripheral rights." *Rogers v. Grewal*, No. 18-824, 2020 WL 3146706, at *3 (U.S. June 15, 2020) (Thomas, J., dissenting from denial of certiorari).

court must first ask "whether the challenged law burdens conduct protected by the Second Amendment," and, if so, then determines the "appropriate level of scrutiny." In *Chovan*, the court considered challenge to 18 U.S.C. § 922(g)(9), which imposes a lifetime firearms ban on domestic violence misdemeanants. At the first step, the Ninth Circuit found that section 922(g)(9)'s lifetime prohibition *did* burden rights protected by the Second Amendment. 735 F.3d at 1137. Therefore, it cannot reasonably be disputed that defendants' policies here similarly burden conduct protected by the Second Amendment, and that we must go beyond the first step.

At the second step, a court is to measure "'how severe the statute burdens the Second Amendment right. 'Because *Heller* did not specify a particular level of scrutiny for all Second Amendment challenges, courts determine the appropriate level by considering '(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right.'" *Duncan v. Becerra*, 265 F.Supp.3d 1106, 1119 (S.D. Cal. 2017), *aff'd*, 742 F.App'x 218 (9th Cir. 2018) (quoting *Bauer v. Becerra*, 858 F.3d at 1222). "Guided by this understanding, [the] test for the appropriate level of scrutiny amounts to 'a sliding scale.' [...] 'A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny.' [...] Further down the scale, a 'law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. Otherwise, intermediate scrutiny is appropriate.'" *Bauer*, 858 F.3d at 1222 (citing *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016), and *Chovan*, 735 F.3d at 1138).

In this case, if tiered scrutiny is to be used at all, strict scrutiny should apply to the defendants' policies at issue, i.e., those which prohibit former felons convicted in other states for non-violent crimes notwithstanding the set-aside/dismissal of those convictions. In *Chovan*, the court noted that section 922(g)(9) contained exemptions for convictions that have been set expunged, pardoned or set aside, or for those who have had their civil rights restored in section 921(a)(33)(B)(ii), and thus, held that while section 922(g)(9) substantially burdened Second Amendment rights, the burden was "lightened" by those exceptions, and applied intermediate scrutiny. *Chovan*, 735 F.3d at 1138; *Fisher v. Kealoha*, 855 F.3d 1067, 1071 n.2 (9th Cir. 2017).

SEILER EPSTEIN LLP
Attorneys at Law

11

1    In the present case, however, the very fact that the State refuses to recognize these set-aside

2    exceptions that might otherwise "lighten" the burden makes the burden more severe, and thus,

3    strict scrutiny is warranted.

4         The net effect of defendants' policy is to deprive plaintiffs Linton, Stewart and Jones of

5    their ability to exercise a fundamental constitutional right to purchase/possess a firearm for

6    lawful purposes, including for self-defense in the home. (Linton Decl., ¶¶ 4, 25; Stewart Decl., ¶

7    15; Jones Decl., ¶¶ 17-18). Beyond that, it has subjected them to substantial hardships arising

8    from the loss of the right. In Mr. Linton's case, California Department of Justice Agents came to

9    his home and seized firearms that he had legally purchased, including an antique family heirloom

10   that had once belonged to his grandfather. (Linton Decl., ¶ 22). And for Mr. Jones, a retired

11   correctional officer, he routinely dealt with and was threatened on occasion by some of the

12   state's most violent convicted criminals. (Jones Decl., ¶ 17). Thus, there is no question that the

13   defense policies place a substantial burden on "core" Second Amendment conduct, i.e., the right

14   to keep and bear arms in the home for self-defense. *Heller*, 554 U.S. at 635. Accordingly, the

15   defendants' policies should be evaluated under strict scrutiny, that is, to require defendants to

16   show that their policies are narrowly tailored to achieve a compelling state interest, and that no

17   less restrictive alternative exists to achieve the same ends. *United States v. Alvarez*, 617 F.3d

18   1198, 1216 (9th Cir. 2010) (citing *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340,

19   130 S.Ct. 876, 898 (2010)). *See also*, *United States v. Engstrum*, 609 F.Supp.2d 1227, 1231 (D.

20   Utah 2009) (applying strict scrutiny to § 922(g)(9)).

21        Even under intermediate scrutiny, however, defendants' policy and/or treatment of out-

22   of-state felony convictions fails to pass constitutional muster. Under intermediate scrutiny, the

23   government's stated objective justifying the law or regulation must be "significant, substantial,

24   or important" and it must show a "reasonable fit between the challenged regulation and the

25   asserted objective." *Chovan*, 735 F.3d at 1139. Assuming that the prohibition on the possession

26   of firearms by *actual* felons is an "important government interest" in furtherance of reducing

27   gun-related violence, it has no application here and is therefore not a "reasonable fit" for two

28   reasons discussed below: First, the restrictions do not apply to them because they are not actually

SEILER EPSTEIN LLP
Attorneys at Law

12

considered to be felons by the states in which their convictions originated, as a categorical matter. Second, any public safety interest in reducing potential gun violence does not apply to *non-violent* felonies when the courts of those states have deemed them not to exist.

### a. Plaintiffs Are Not Felons Under the Laws of The State Where the Convictions Occurred.

Defendants' primary defense, that they are simply applying a literal reading of Pen. Code § 29800(a), is not dispositive of the matter, for the individual plaintiffs here, Linton, Stewart and Jones, are not *necessarily* considered felons under the statute itself. Pen. Code § 29800(a)[4] states: "[a]ny person who has been convicted of […] a felony under the laws […] of any other state" is prohibited from owning a firearm. The statute's use of the *present* perfect tense ("has been convicted") is ambiguous, in that it can either be read to refer to an event in the past, or a condition continuing through the present. See, *Padilla-Romero v. Holder*, 611 F.3d 1011, 1013 (9th Cir. 2010) (noting ambiguity of present perfect tense, citing *Wells, Waters & Gases, Inc. v. Air Prods. & Chems., Inc.*, 19 F.3d 157, 163 (4th Cir. 1994), and Bryan A. Garner, *Garner's Modern American Usage*, 802–03 (3d ed. 2009)).

Putting aside grammatical construction, however, if we take the Department's position at face value, that the Department considers "[t]he laws of that particular state where the conviction occurred apply" (Lee Decl. Exh. C, at p. 080), that cannot be a one-way street as DOJ representative Matsumoto suggests. (See, Matsumoto Depo. at 33:8 – 34:1; 69:20 – 70:1). Mr. Matsumoto explained that in following this rule that "the laws of the particular state where the conviction occurred apply," a DOJ analyst is required to look at the laws of that particular state (as a part of their "due diligence"), in examining the meaning of certain words and phrases, such as whether the conviction was "set aside." (Matsumoto Depo. at 36:16 - 37:10). But this is simply lip-service, for we learned that even if the other states' definitions consider a vacated or set-aside conviction to have nullified it in the first instance, the State simply reverts to its

---

[4] Pen. Code § 30305, pertaining to possession of ammunition, states: "No person prohibited from owning or possessing a firearm under Chapter 2 (commencing with Section 29800) […] shall own, possess, or have under custody or control, any ammunition[.]" Therefore, as applied here, any prohibition of the plaintiffs' possession of ammunition is dependent upon their status as prohibited persons under section 29800(a).

SEILER EPSTEIN LLP
Attorneys at Law

13

1    fallback position which is that section 29800 simply prohibits *all* persons conviction of felonies,

2    irrespective of whether it was deemed nullified. (Matsumoto Depo. at 70:12-23).

3          In Plaintiff Linton's case, the final order on his case was on a "motion to vacate" the

4    felony conviction, which was granted. (Linton Exh. A, pp. 1-2). And his criminal records, upon

5    which the DOJ relied, specifically indicated that the final disposition of the conviction was that it

6    had been "vacated." (Matsumoto Depo. 80:8-15). Mr. Matsumoto said that DOJ procedure would

7    be to consult the Washington Terminology page of the "FBI binder," a binder the FBI prepared

8    and updates in administering the National Instant Criminal Background Checks System

9    ("NICS") program, and to look up the definition of "vacate" as used in Washington (Matsumoto

10   Depo. at 83:5-25; 84:17-24; Lee Decl. Exh. L at p. 255), to determine that the term "vacate"

11   means the felony conviction still exists for firearm purposes. (Matsumoto Depo. at 85:5-12). This

12   was the described process, notwithstanding that as far as the State of Washington was concerned,

13   there were "zero felonies" on Mr. Linton's record. (Id. at 80:3-25). And moreover, this

14   conclusion files in the face of the common understanding of what a "vacated" conviction is, as

15   the Ninth Circuit recently affirmed. *See*, *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1198 (9th

16   Cir. 2020) ("Because all convictions here were vacated and underlying indictments ordered

17   dismissed, there remains no outstanding criminal judgment nor any charges pending against

18   Plaintiffs. [...] According to Black's Law Dictionary, the definition of 'vacate' is 'to nullify or

19   cancel; make void; invalidate[.]'" (citing Black's Law Dictionary 1782 (10th ed. 2014)). But

20   really, this doesn't matter, for as shown below with respect to the treatment of Messrs. Stewart

21   and Jones's convictions, the "terminology" used by another state's criminal justice system is

22   only followed when it actually *confirms* the existence of a felony conviction, but not the other

23   way around.

24          For example, in Plaintiff Stewart's case, the Arizona court granted his application to set

25   aside the judgment of guilt, and included a "dismissal of the Information/Indictment" in restoring

26   his rights to him. (Stewart Decl., ¶ 10; Stewart Exh. A). His criminal history record also shows,

27   however, that the 1976 burglary conviction had been set aside on August 11, 2016.  (Matsumoto

28   Depo. at 92:11-19; Lee Decl. Exh. F). Mr. Matsumoto again described the process in which he

SEILER EPSTEIN LLP
Attorneys at Law

14

1   consulted "the FBI Binder" to look at the specific terminology that state uses in determining the

2   disposition of the offense. (Matsumoto Depo. at 94:2-14). And his conclusion, ratifying the

3   decision of the DOJ analyst, was that a set aside order was not recognized in California. (Id. at

4   93:6-11). Mr. Stewart's restoration of rights had no effect in California because, in the

5   Department's view, only a governor's pardon would be a recognized restoration of his firearm

6   rights. (Id., at 94:25 - 95:11). But the "Arizona Terminology Page" provides that if the 13-907

7   (set aside) order occurred after July 3, 2015, and was not for a "serious offense," (which does not

8   include third degree burglary) then it "[r]emoves both federal and AZ state prohibitions for this

9   offense," speaking *nothing* of whether the felony continues to exist. (Lee Decl., Exh. J at p. 217).

10  And further, the Arizona Terminology Page further provides that the term "dismissed" (as used

11  in the order) means "[t]his is not a conviction." (Id., at p. 215).

12         And most pointedly, in Plaintiff Jones's case, the Texas court's order after his successful

13  period of probation stated: "It is therefore the order of the court that the defendant be and is

14  hereby permitted to withdraw his plea of guilty, the indictment against the defendant be and at

15  the same is hereby dismissed and the Judgment of Conviction be hereby set aside as provided by

16  law." (Jones Decl., ¶ 10; Jones Exh. A). Mr. Matsumoto agreed that the criminal records they

17  consulted indicated that the final disposition of Mr. Jones's case was that it was "dismissed" with

18  a further descriptor that the conviction had been "set aside." (Matsumoto Depo. at 101:18 –

19  102:14; Lee Decl., Exhs. G at p. 2, and Exh. I at p. 162). And again, Mr. Matsumoto testified that

20  they would look at the NICS terminology for the State of Texas to determine what "set aside"

21  means to determine his eligibility. (Matsumoto Depo. at 102:24 – 103:10). But in consulting the

22  "Texas Terminology Page" of that binder, both of the terms "dismissed" and "set aside" are

23  expressly stated to mean "This is not a conviction." (Id., at 105:5-25; Lee Decl. Exh. K, at pp.

24  228, 231).[5] And therefore, none of this actually matters, because notwithstanding this somewhat

25  pointless exercise in attempting to determine whether a felony still exists under Texas law, it

26  _____

27  [5] Indeed, the "Texas Terminology Page" states that "Set Aside" means where "[a] judge
    discharges the defendant from community supervision and sets aside the verdict or permits the

28  defendant to withdraw his plea and dismisses the charge. […] This is not a conviction." (Lee
    Decl., Exh. K at p. 231). This is precisely what happened in Mr. Jones's case.

SEILER EPSTEIN LLP
Attorneys at Law

SEILER EPSTEIN LLP
Attorneys at Law

1   doesn't *really* matter to the Department, as they simply fall back to their position that Penal Code

2   § 29800 prevents anyone convicted of a felony in another state to be prohibited. (Matsumoto

3   Depo. at 105:2 – 107:3).

4         When asked the natural question that follows, which is why bother to consult the NICS

5   binder at all if those state-specific terminologies ultimately do not matter to the Department of

6   Justice, his answer was unsatisfactory. "We only use it for reference. It's only reference

7   material." (Matsumoto Depo. at 107:4-12.)

8         In fact, the Department had already gone through the meaningless exercise of trying to

9   determine whether Mr. Jones was prohibited *under Texas law* from owning a firearm by virtue of

10  his conviction. The FBI analyst's answer to the DOJ's inquiry was, "The completion of

11  probation in Texas followed up by a subject receiving a conviction set aside is not a ROR *but it*

12  *does remove the conviction*. The DOA would no longer be prohibiting for firearms purposes."

13  (Lee Decl. Exh. H at p. 160, emphasis added). But the DOJ simply ignored this finding. All of

14  this suggests that these purported efforts to determine whether a conviction exists under another

15  state's law are simply designed to confirm the Department's preordained result. For if another

16  state considers the conviction to exist, the Department can rely upon that fact to justify their

17  result, but if the other state considers the conviction *not* to exist, then the Department merely

18  falls back to the literal language of Pen. Code § 29800 to deny the right. This is simply a "heads-

19  I-win, tails-you-lose" game, in which no matter what another state says, here in California, once

20  you are a felon, you are always a felon.[6]

21        The better view, taking the State's policy at its word, is that if "the laws of that particular

22  state where the conviction occurred apply" (Lee Decl. Exh. C at p. 080), then it must not only

23  consider the fact of conviction itself, but the fact of a vacated, set aside or dismissed conviction

24  as well. This is supported by federal law interpreting the federal statute prohibiting the federal

25

26  _____

27  [6]And, as discussed in the argument regarding the treatment of California felony convictions with respect to the Privileges and Immunities Clause, *infra* at pp. 21-25, this isn't even true. For

28  California "deems" a felony conviction not to exist, when it clearly did, when considering post-conviction felony wobblers reduced to misdemeanors to restore firearms rights to felons convicted here (Matsumoto Depo. at 69:7-17). But California is unwilling to do so when it

16

statute prohibiting possession of a firearm by convicted felons generally, 18 U.S.C. § 922(g)(1), which contains an important and relevant qualification:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. *Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction* for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921, subdiv. (a)(20)(B) (emphasis added). The courts have held that the second sentence, "the exemption clause," is to be determined according to the state where the conviction originated as well. *Beecham v. United States*, 511 U.S. 368, 114 S.Ct. 1669 (1994); *Caron v. United States*, 524 U.S. 308, 313, 118 S.Ct. 2007 (1998); *see also*, *United States v. Fowler*, 198 F.3d 808, 809–10 (11th Cir. 1999).

### b. No Public Safety Interest Exists for Barring Persons Formerly Convicted of Non-Violent Felonies.

Under intermediate scrutiny, where the state has asserted a generalized public safety concern about keeping firearms out of the hands of dangerous individuals, any generally-stated concern about reducing potential violence simply has no application here. Under intermediate scrutiny, a district court must determine whether the government has "base[d] its conclusions upon substantial evidence." *Rhode v. Becerra*, --- F.Supp.3d ---, 2020 WL 2392655, at *19 (S.D. Cal. Apr. 23, 2020) (citing *Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180, 196, 117 S.Ct. 1174 (1997)); *Heller v. District of Columbia*, 670 F.3d 1244, 1259 (D.C. Cir. 2011) (*Heller II*) (the government bears the burden of presenting "meaningful evidence, not mere assertions, to justify its predictive judgments."). To carry this burden, the government must not only present evidence, but "substantial evidence" drawn from "reasonable inferences" that actually support its proffered justification. *Turner Broad. Sys., Inc.*, 520 U.S. 180, 195 (1997). And in the related First Amendment context, the government is typically put to the evidentiary test to show that the harms it recites are not only real, but "that [the speech] restriction will in fact alleviate them to a

---

comes to convictions deemed not to exist under the laws of other states. (*Id.*, at 70:18-23; 110:20-23).

SEILER EPSTEIN LLP
Attorneys at Law

1    material degree." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1177 (9th Cir. 2018) (citing

2    *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999) (quoting

3    *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)). This same evidentiary burden should apply

4    with equal force to Second Amendment cases, where equally fundamental rights are similarly at

5    stake. *See*, *Ezell v. City of Chicago*, 651 F.3d 684, 706–07 (7th Cir. 2011) ("Both *Heller* and

6    *McDonald* suggest that First Amendment analogues are more appropriate, and on the strength of

7    that suggestion, we and other circuits have already begun to adapt First Amendment doctrine to

8    the Second Amendment context") (citing *Heller*, 554 U.S. at 582, 595, 635; *McDonald*, 130

9    S.Ct. at 3045). *See also*, *United States v. Marzzarella*, 614 F.3d 85, 89 n.4 (3d Cir. 2010) ("[W]e

10   look to other constitutional areas for guidance in evaluating Second Amendment challenges. We

11   think the First Amendment is the natural choice.").

12           In *Binderup v Attorney General*, the Third Circuit, sitting en banc, held that 18 U.S.C. §

13   922(g)(1) could not bar the plaintiffs from firearm possession as a result of their earlier

14   disqualifying state law misdemeanor convictions. 836 F.3d at 356-57. In a well-considered

15   opinion, the en banc court held that section 922(g)(1) violated the Second Amendment as applied

16   to those individual plaintiffs based on different triggering state law offenses. 836 F.3d at 340-41.

17   In that case, the plaintiffs' rights to possess firearms was expressly restored to them by a state

18   court, but they continued to be barred under federal law, section 922(g)(1). *Id*. at 340. The Third

19   Circuit applied the two-part test under *Marzzarella*, a test now expressly adopted in this Circuit

20   by *Chovan*. The first step put the burden on the plaintiffs to show that a presumptively lawful

21   regulation burdened their Second Amendment rights. *Binderup* held that a challenger must clear

22   two hurdles: "[H]e must (1) identify the traditional justifications for excluding from Second

23   Amendment protections *the class of which he appears to be a member*, […] and then (2) present

24   facts about himself and his background that distinguish his circumstances from those of persons

25   in the historically barred class[.]" *Binderup*, 836 F.3d at 347 (emphasis added). That burden lay

26   upon the plaintiffs and was described as a necessarily strong showing. *Id*.

27           The Third Circuit held that if the plaintiff was able to distinguish the seriousness of his

28   disqualifying federal conviction from "serious crimes" at this first step, the next step required the

SEILER EPSTEIN LLP
Attorneys at Law

18

SEILER EPSTEIN LLP
Attorneys at Law

1   government to show that the regulation as applied satisfied intermediate scrutiny. *Binderup*, 836

2   F.3d at 356. The court further instructed district courts within that circuit to require the

3   government to make the showing as to whether a person should be disarmed for life, which turns,

4   in part, on the likelihood that a challenger would commit crimes in the future. *Id*. at 354 n.7.

5   Here, plaintiffs Linton, Stewart and Jones have shown here that they are now responsible,

6   law-abiding, peaceable citizens with no history of violent behavior or conduct that would suggest

7   that they pose any elevated threat or danger to others. The Washington State Court found Mr.

8   Linton's underlying offense not to be a violent offense under Washington State law. (Linton Exh.

9   A at p. 2). And likewise, by granting the set-aside order under Arizona law, the Arizona courts

10  did not consider Mr. Stewart's offense to be a "Serious Offense" (Ariz. Terminology Page, Lee

11  Decl. Exh. J at p. 217), thereby allowing the removal of his firearms prohibition there. None of

12  the individual plaintiffs was sentenced to a term in prison, and all successfully completed the

13  terms of their probation. The crimes for which they were convicted are each more than thirty

14  years old, were for lesser-classified felonies, and did not involve the use of force or violence.

15  The sentences imposed upon the plaintiffs were minor, and more to the ultimate point, their

16  convictions were adjudged to have been vacated, dismissed and/or set aside under the laws of

17  those respective states. None of these individual plaintiffs is prohibited from owning firearms in

18  the states where the convictions originated, or under federal law.  18 U.S.C. § 921(a)(20)(B).

19  Under either a categorical approach reviewed under *Heller*, or applying a tiered (strict or

20  intermediate) scrutiny analysis under *Chovan*, plaintiffs Linton, Stewart and Jones have shown

21  they are entitled to judgment in their favor on the grounds that sections 29800 and 30305, as

22  applied to them, violate the Second Amendment.

23  **C.    PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR CLAIM ALLEGING VIOLATION OF**

24  **THE FULL FAITH AND CREDIT CLAUSE.**

25  The core question presented here is whether California is required to honor the judgments

26  of courts in other states that have set aside or vacated the plaintiffs' underlying felony

27  convictions, and expressly restored their Second Amendment rights to them. Article IV, section 1

28  of the United States Constitution provides that "Full Faith and Credit shall be given in each State

to the public Acts, Records, and judicial Proceedings of every other State." "That Clause requires

19

each State to recognize and give effect to valid judgments rendered by the courts of its sister

States." *V.L. v. E.L.*, -- U.S. --, 136 S.Ct. 1017, 1020 (2016). The Supreme Court has explained

that the "animating purpose" of this Clause was:

> to alter the status of the several states as independent foreign sovereignties, each
> free to ignore obligations created under the laws or by the judicial proceedings of
> the others, and to make them integral parts of a single nation throughout which a
> remedy upon a just obligation might be demanded as of right, irrespective of the
> state of its origin.

*Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232, 118 S.Ct. 657, 663 (1998) (quoting *Milwaukee*

*County v. M.E. White Co.*, 296 U.S. 268, 277, 56 S.Ct. 229 (1935)).

    *Baker* made it clear to distinguish the Clause's command as between legislative acts of

other states, and state court judgments.  Specifically, the Court stated that the Clause "does not

compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject

matter concerning which it is competent to legislate.'" *Baker*, 522 U.S. at 232 (citing *Pacific*

*Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501, 59 S.Ct. 629, 632 (1939)).

The Court further clarified: "Regarding judgments, however, the full faith and credit obligation

is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over

the subject matter and persons governed by the judgment, qualifies for recognition throughout

the land." *Baker*, 522 U.S. at 233 (citing *Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S.

367, 373, 116 S.Ct. 873 (1996), and *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 485, 102

S.Ct. 1883, 1899 (1982)).

    Importantly, the Court held that there is no "roving public policy exception" to the full

faith and credit due judgments, and that the Clause orders submission even to the hostile policies

reflected in the judgment of another state. *Baker*, 522 U.S. at 233. See also, *Estin v. Estin*, 334

U.S. 541, 546 (1948); *Williams v. North Carolina*, 317 U.S. 287 (1942) (requiring North

Carolina to recognize change in marital status effected by Nevada divorce decree contrary to the

laws of North Carolina); *V.L. v. E.L.*, 136 S.Ct. at 1020 (a state may not disregard the judgment

of a sister state because it deems it to be wrong on the merits) (citing *Milliken v. Meyer*, 311 U.S.

457, 462, 61 S.Ct. 339 (1940)).

    Here, the criminal cases of Messrs. Linton, Stewart, and Jones ended in final judgments

SEILER EPSTEIN LLP
Attorneys at Law

that conclusively terminated those matters. (Linton Exhs. A and B; Stewart Exh. A; Jones Exh. A). These are judgments of other states, in that they constituted the full and final disposition of those matters. They are judgments that must be honored without regard or reference to policy. Defendants' policies refusing to honor these judgments of other states, therefore, violate the Constitution's Full Faith and Credit Clause, and its enabling statute, 28 U.S.C. § 1738.

**D.    PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR CLAIM ALLEGING VIOLATION OF THE PRIVILEGES AND IMMUNITIES CLAUSE (ART. IV, § 2) AND THE PRIVILEGES OR IMMUNITIES CLAUSE (AMEND. XIV).**

As noted above, the Department's position, which purports to follow Pen. Code § 29800 literally, is not even faithfully applied *here*. For California has its own process in place by which persons who have suffered felony convictions, where the crimes are wobblers and are subsequently reduced to misdemeanors pursuant to Pen. Code § 17(b), will have their firearms rights restored to them. A "wobbler" is an offense that is chargeable, or in the discretion of the court, punishable as either a felony or a misdemeanor; that is, they are punishable either by a term in state prison or by imprisonment in county jail or by fine. *Sannmann v. Department of Justice*, 47 Cal.App.5th 676, 679 n.2 (2020) (citing *People v. Park*, 56 Cal.4th 782, 789 (2013)). "We point out that when a prior offense is a "wobbler," a plea or verdict does not establish whether it is a felony; rather the sentence does." *People v. Williams*, 49 Cal.App.4th 1632, 1639 n.2 (1996); *see also*, *United States v. Fitzgerald*, 935 F.3d 814, 816 (9th Cir. 2019) (a court must look to how the defendant was actually punished). And as the Department itself acknowledges, "[a] reduction to a misdemeanor pursuant to PC Section 17 restores the person's right to possess a firearm." (Lee Decl. Exh. C at p. 081). *See also*, *People v. Gilbreth*, 156 Cal.App.4th 53, 57-78 (2007) (reversing conviction for possession of a firearm by a felon). Mr. Matsumoto testified that this manner in which some former felons in California have their firearms rights restored to them here is "frequent." (Matsumoto Depo. at 67-22 – 68:15).

In other words, California engages in the fiction that certain felony convictions incurred here are "deemed" not to have occurred in the first place, when they are subsequently reduced to misdemeanors pursuant to Pen. Code § 17(b). (Matsumoto Depo. at 69:7-17). But when it comes to convictions suffered in *other* states, subsequent action deeming the conviction not to exist is

SEILER EPSTEIN LLP
Attorneys at Law

21

1    simply ignored. (Id., at 69:20 – 70:1; 70:18-23). And while the Department gives lip service to

2    the precept that "the laws of the particular state where the conviction occurred apply," ultimately

3    it does not matter, for California simply disregards any other state's post-conviction nullification

4    of the conviction, relying on its fallback position that Pen. Code § 29800 controls absolutely

5    when it comes to *out-of-state* former felons, as discussed at length above. This is simply

6    discrimination, favoring non-violent California felons who are able to have their firearms rights

7    restored to them, while ignoring the rights of non-violent former felons convicted in other states

8    who have no remedy absent a gubernatorial or "presidential pardon." (Richards Decl., ¶ 5).

9         This disparate and favorable treatment of California former felons, who have a path to

10   regaining a fundamental constitutional right, while denying *any* path to out-of-state former

11   felons, violates the Privileges and Immunities Clause, art. IV, § 2 of the Constitution, and the

12   Privileges or Immunities Clause of the Fourteenth Amendment, because the policy violates, in

13   differing respects, the constitutional right to travel as set forth in *Saenz v. Roe*, 526 U.S. 499, 119

14   S.Ct 1518 (1999), as follows.

15       **1.**    **Defendants' Policies Violate Plaintiff Linton's Right to Travel to California**

16               **Under Art. IV § 2 of the Constitution.**

17        The Privileges and Immunities Clause, also known as the "Comity Clause," states, "The

18   Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several

19   States." U.S. Const., art. IV, § 2, cl. 1. "The primary purpose of this clause, like the clauses

20   between which it is located—those relating to full faith and credit and to interstate extradition of

21   fugitives from justice—was to help fuse into one Nation a collection of independent, sovereign

22   States. It was designed to insure to a citizen of State A who ventures into State B the same

23   privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct.

24   1156 (1948).

25        In *Saenz*, the Court's most substantive case reaffirming the constitutional right to travel,

26   the Court considered a challenge to a California statute limiting the welfare benefits available to

27   new residents of the state. 526 U.S. at 492. Through Justice Stevens's majority opinion affirming

28   the Ninth Circuit in enjoining the statute, the case largely stands for and affirms a constitutional

right to travel. In discussing this right, the majority noted that a right to travel, "firmly embedded

SEILER EPSTEIN LLP
Attorneys at Law

SEILER EPSTEIN LLP
Attorneys at Law

in our jurisprudence[,]" embraces at least three different components. *Id*. at 498-99. The first component is the right of a citizen to enter and leave another state. The second component is the right to be treated "as a welcome visitor rather than an unfriendly alien when temporarily present in the second state. This second component is protected by the Privileges and Immunities Clause of Art. IV, § 2 of the Constitution. "Thus, by virtue of a person's state citizenship, a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." 526 U.S. at 501.

This "second component" applies to plaintiff Linton, as he currently resides in Nevada. His move to Nevada this year was done for mixed motives, but a very real and substantial factor that motivated his move was because California still considers him to be a "felon," prohibited from owning or purchasing firearms." (Linton Decl., ¶ 3.) That he cannot exercise an important and fundamental constitutional right available to other law-abiding citizens, until this matter may be resolved, was an important reason for moving. (Id.) However, he continues to have a residential interest here, including a longstanding mining claim (i.e., an annual lease) in a remote property in Placer County. (Id., ¶ 4.) Though he wishes to return to California to live someday, he is unwilling to surrender his constitutional rights in order to do so. (Id., ¶ 6.)

Defendants' policies which effectively allow persons convicted of felony wobblers in California to regain their firearms rights, by engaging in the legal fiction that a § 17(b) reduction deems the felony conviction not to have occurred, while refusing to honor other states' final judgments that those convictions were similarly nullified, violates Plaintiff Linton's right to reenter the state without forfeiting a substantial liberty interest.

### 2. Defendants' Policies Violate All Individual Plaintiffs' Right to Travel to California Under the Fourteenth Amendment.

Returning to *Saenz*, the "third component" of the right to travel, as Justice Stevens discusses in the majority opinion, is the right of a newly arrived citizen to the same privileges and immunities enjoyed by citizens of that same state, a right protected not only by the new arrival's status as a state citizen, but also by his or her status as a citizen of the United States. 526 U.S. at 502. This is a right that is protected by the Privileges or Immunities Clause of the

23

1  Fourteenth Amendment. Therefore, the Court concluded, the statute at issue unconstitutionally

2  discriminated between established and newly-arrived residents of California. *Id*. at 505. And this

3  discriminatory treatment of residents under this component was subject to strict scrutiny. *Id*.

4  (citing *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331 (1969) (any classification

5  which serves to penalize the exercise of that right, unless shown to be necessary to promote a

6  compelling governmental interest, is unconstitutional.)) In *Saenz*, which was ultimately decided

7  under this third component of the right to travel, California had imposed a durational residency

8  requirement on welfare benefits by limiting those benefits during a recipient's first year of

9  California residency to the amount that the recipient would have received in the state of his prior

10  residence. 526 U.S. 489. The Court held that the statute unconstitutionally discriminated between

11  old and newly arrived residents of California. *Id*., at 505.

12       Under a third-component claim involving the right to travel, strict scrutiny should apply.

13  *Shapiro*, 394 U.S. at 634. A statute that unreasonably burdens the right to travel is subject to

14  strict scrutiny and will be struck down as unconstitutional "unless shown to be necessary to

15  promote a compelling governmental interest." *Memorial Hosp. v. Maricopa County*, 415 U.S.

16  250, 262, 94 S.Ct. 1076 (1974); *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 904–05,

17  n.4, 106 S.Ct. 2317 (1986). The heavy burden of justification is on the State, and the court will

18  closely scrutinize the challenged law in light of its asserted purposes. *Dunn v. Blumstein*, 405

19  U.S. 330, 343, 92 S.Ct. 995 (1972).

20       Here, defendants' policies which allow the restoration of firearm rights to persons

21  convicted of less serious, non-violent felonies in California, while denying any recourse or

22  remedy (except a "presidential pardon" – *see* Richards Decl., ¶ 5), is discriminatory and cannot

23  withstand such scrutiny. There is no reason for the State to permit a § 17(b) reduction to a

24  misdemeanor here, which would allow the restoration of Second Amendment rights, while

25  purporting to apply an inflexible, literal application of Pen. Code § 29800 to anyone convicted

26  elsewhere, when the offenses were substantially the same. For example, a prior felony conviction

27  for evading a police officer under California Vehicle Code § 2800.2 cannot form the basis for a

28  felon in possession of a firearm charge, where the underling conviction had been reduced to a

SEILER EPSTEIN LLP
Attorneys at Law

24

misdemeanor. *Gilbreth*, 156 Cal.App.4th at 57. Yet, Plaintiff Linton, who was convicted of an analogous crime in Washington State, has absolutely no recourse or remedy except a "presidential pardon" (Richards Decl., ¶ 5). This is simply a policy that favors persons convicted of non-violent felonies in California, over people convicted of similar crimes in other states.

Plaintiff Stewart was convicted of third degree burglary in Arizona, a Class C felony. In California, the analogous crime would be second degree (commercial) burglary, a wobbler under Pen. Code §§ 460 and 461. A person convicted of that crime in California could thus have the conviction reduced to a misdemeanor, and have their firearms rights restored.

And Plaintiff Jones was convicted of "credit card abuse," a third degree felony under Texas law. And while there is no such crime in California, the closest analogue might be fraudulent use of a credit card, Pen. Code § 484g, a wobbler. Pen. Code § 489.

Had plaintiffs been convicted here of similar crimes 30 years ago, they doubtless would be able to have their rights restored to them. But because the convictions emanated from other states, the Department applies section 29800(a) literally without regard to any subsequent action. The issue here is the disparate treatment of citizens. And thus, no matter what justification the State may use to attempt to prohibit felons from owning firearms in the first place, that is not our concern with regard to this claim. Any public safety justifications regarding sections 29800(a) and 30305 do not address the disparity in treatment, and the lack of remedies available to persons convicted here, as opposed to any other state. Either Pen. Code §§ 29800 and 30305 are applied evenly, or they are not, and if not, strict scrutiny demands the State to justify why that is.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully submit that summary judgment should be entered in their favor on all claims. In the alternative, partial summary judgment should be entered in their favor on each count respectively.

Dated: June 22, 2020              **SEILER EPSTEIN LLP**

/s/ George M. Lee
George M. Lee
Attorneys for Plaintiffs

**SEILER EPSTEIN LLP**
Attorneys at Law