George M. Lee (SBN 172982)
    gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:     (415) 979-0511

Attorneys for Plaintiffs
CHAD LINTON, PAUL MCKINLEY STEWART,
KENDALL JONES, FIREARMS POLICY FOUNDATION,
FIREARMS POLICY COALITION,
SECOND AMENDMENT FOUNDATION,
THE CALGUNS FOUNDATION and MADISON
SOCIETY FOUNDATION

**SEILER EPSTEIN LLP**
**Attorneys at Law**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD LINTON, et al., | Case No. 3:18-cv-07653-JD |
| Plaintiffs, | **DECLARATION OF GEORGE M. LEE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| XAVIER BECERRA, in his official capacity as Attorney General of California, et al., | **[FRCP 56]** |
| Defendants. | Courtroom 11, 19th Floor<br>Judge:     Hon. James Donato |

## DECLARATION OF GEORGE M. LEE

I, George M. Lee, declare as follows:

1.      I am an attorney at law, in good standing, duly licensed to practice law in this State.  I am admitted to the Northern District of California. I counsel of record for plaintiffs Chad Linton et al. in the above matter. I have personal knowledge of the facts stated herein, and if called as a witness, I could competently testify to these facts.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SEILER EPSTEIN LLP**
Attorneys at Law

2.     This declaration is made in support of the plaintiffs' motion for summary judgment, or in the alternative, for partial summary judgment, and to authenticate the exhibits referenced therein.

3.     True and correct excerpts from the deposition of Gilbert M. Matsumoto, who was produced by the California Department of Justice pursuant to FRCP 30(b)(6) on June 5, 2020, as referenced in plaintiffs' motion, are attached hereto as **Lee Exhibit A**.

4.     A true and correct copy of Defendants' Responses to Plaintiffs' First Set of Requests for Admissions, Set One, dated and served on January 13, 2020, is attached hereto as **Lee Exhibit B**.

5.     A true and correct copy of the document marked in this litigation and referenced at the deposition of Mr. Matsumoto as <u>Exhibit 005</u> is attached hereto as **Lee Exhibit C**.

6.     A true and correct copy of the document marked in this litigation and referenced at the deposition of Mr. Matsumoto as <u>Exhibit 006</u> is attached hereto as **Lee Exhibit D**.

7.     A true and correct copy of a document constituting plaintiff Chad Linton's criminal history records from the State of Washington, produced by the defendants in this litigation as AGO_LINTON_014-016, is attached hereto as **Lee Exhibit E**. This document was taken from the larger set of documents marked as <u>Exhibit 011</u> at Mr. Matsumoto's deposition.

8.     A true and correct copy of a document taken from plaintiff Paul McKinley Stewart's criminal history and firearm purchase denial records, produced by the defendants in this litigation as AGO_LINTON_068, is attached hereto as **Lee Exhibit F**. This document was taken from the larger set of documents marked as <u>Exhibit 014</u> at Mr. Matsumoto's deposition.

9.     A true and correct copy of the document marked in this litigation and referenced at the deposition of Mr. Matsumoto as <u>Exhibit 016</u> is attached hereto as **Lee Exhibit G**.

10.     A true and correct copy of an email produced by the defendants in this litigation on June 5, 2020, and labeled AGO_LINTON_160-161 is attached hereto as **Lee Exhibit H**.

11.     A true and correct copy of an email produced by the defendants in this litigation on June 5, 2020, and labeled AGO_LINTON_162 is attached hereto as **Lee Exhibit I**.

12.     A true and correct copy of a document entitled "Arizona Terminology Page"

2

produced in this litigation by the defense on June 5, 2020, and labeled AGO_LINTON_214-217 is attached hereto as **Lee Exhibit J**. These pages were taken from the larger set of documents marked as <u>Exhibit 017</u> at Mr. Matsumoto's deposition.

13.     A true and correct copy of a document entitled "Texas Terminology Page" produced in this litigation by the defense on June 5, 2020, and labeled AGO_LINTON_227-232 is attached hereto as **Lee Exhibit K**. These pages were taken from the larger set of documents marked as <u>Exhibit 017</u> at Mr. Matsumoto's deposition.

14.     A true and correct copy of a document entitled "Washington Terminology Page" produced in this litigation by the defense on June 5, 2020, and labeled AGO_LINTON_251-255 is attached hereto as **Lee Exhibit L**. These pages were taken from the larger set of documents marked as <u>Exhibit 017</u> at Mr. Matsumoto's deposition.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 22, 2020

GEORGE M. LEE

SEILER EPSTEIN LLP
Attorneys at Law

LEE EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3
 4   CHAD LINTON, et al.,            )
                                     )
 5              Plaintiffs,          )
                                     )
 6              vs.                  )Case No.
                                     )3:18-cv-07653-JD
 7   XAVIER BECERRA, in his          )
     official capacity as Attorney   )
 8   General of California, et al.,  )
                                     )
 9              Defendants.          )
     _____)
10
11
12
13
14
15
16    VIDEOCONFERENCE DEPOSITION OF GILBERT M. MATSUMOTO
17              Friday, June 5, 2020
18                 Volume I
19
20
21
22   Reported by:
     CARLA SOARES
23   CSR No. 5908
24   Job No. 4083222
25   Pages 1 - 119
```

                                                    Page 1

1      Q    So Mr. Matsumoto, you understand you've been

2  designated as the person to testify as to certain

3  categories.

4          Do you understand that?

5      A    Yes, I do.

6      Q    And you are here on behalf of the Department

7  of Justice to testify as to each of the ten categories

8  that are listed in the subjects of testimony?

9      A    Yes.

10     Q    Okay.  Now, we'll get more specific as we go,

11 but what have you generally done to educate yourself as

12 to each of these ten categories in a general sense?

13     A    I reviewed the case -- I reviewed the three

14 cases, Linton, Stewart, and Jones, and did my own

15 research on them.

16     Q    Okay.  Did you -- in order to be assured that

17 you are the person most qualified, did you -- what

18 documents did you review?

19     A    The documents that Maureen Onyeagbako provided

20 me.  She provided me a binder with forms, exhibits.  So

21 I reviewed them.

22     Q    Okay.

23          MS. ONYEAGBAKO:  We provided the -- we

24 provided Mr. Matsumoto with copies of the complaint,

25 answer, discovery responses, and the documents that were

1      Q    Were you actually qualified to testify as an

2   expert witness or --

3      A    Yes.

4      Q    Okay.  In what subjects were you qualified as

5   an expert?

6      A    How to determine eligibility -- eligibility

7   status of a person trying to own or possess a firearm in

8   the state of California.

9      Q    All right.  Any other subjects that you were

10  qualified to testify as an expert in?

11     A    Just the background process.

12     Q    Okay.  So let's start with the issues that

13  you're here to testify about pursuant to the deposition

14  notice.  And again, Exhibit 6, 006, is the deposition

15  notice that sets forth all the categories.

16         So Category No. 1 has you testifying --

17         MS. ONYEAGBAKO:  Can you put that back up in

18  front of us, if you wouldn't mind?

19         MR. LEE:  Okay.

20     Q    Category 1 has you testifying as the person

21  qualified to testify regarding the Department's policy

22  or policies in denying out-of-state former felons the

23  ability to purchase and/or possess firearms in the state

24  of California when those felony convictions have been

25  set aside or vacated in their respective states of

Page 23

1    origin.

2              Are you prepared to testify to that category

3    today?

4        A    Yes.

5        Q    So firstly, is there a written policy that is

6    described in this Category 1, which is a policy

7    regarding the denial of out-of-state former felons whose

8    felony convictions have been set aside or vacated in

9    their respective states of origin?

10       A    We just -- we just follow the penal codes or

11   the welfare institution codes, health and safety codes.

12       Q    Do I understand from your answer, does that

13   mean no, there is no actual written policy that

14   specifically pertains to this subject?

15       A    No.

16       Q    So just so it's clear, no, there is no written

17   policy?

18       A    No, there is no written policy.

19       Q    Okay.  And have you undertaken efforts to look

20   for a written policy?

21       A    No, I have not.

22       Q    Is there an unwritten policy that you're aware

23   of that pertains to the subject that we've talked about?

24       A    Not that I know of.

25              MR. LEE:  So I'm going to pull up and refer to

1    Exhibit -- what we've previously marked in this case as

2    Exhibit 5, 005.

3              (Exhibit 5 was marked for identification

4         and is attached hereto.)

5    BY MR. LEE:

6         Q    And let's see if -- can you see Exhibit 5 on

7    the screen?

8         A    Yes.

9         Q    At the bottom, we have it indicated on the

10   footer as Exhibit 005.  Are you able to see that?

11        A    Yes, I can.

12        Q    Okay.  So this is a document that is entitled

13   "Background Clearance Unit DROS Procedures."

14             Do you see that?

15        A    Yes, I do.

16        Q    Okay.  What is this document?  And feel free,

17   by the way, to -- if you're able to pull Exhibit 5 up,

18   feel free to peruse the whole thing.

19             What is Exhibit 5?

20             MS. ONYEAGBAKO:  Give us just a moment,

21   please, Counsel.  I'm pulling up for us the written --

22   the paper copy.

23             Can you just show us where Exhibit 5 ends,

24   just so I'm sure?

25             MR. LEE:  Well, it ends at page 94,

                                            Page 25

1    AGO LINTON 094.

2              MS. ONYEAGBAKO:  Okay.  You can take time to

3    review it.

4              I've given him the hard copy.

5              MR. LEE:  Okay.  He has the hard copy in front

6    of him?

7              THE WITNESS:  Yes, I do.

8    BY MR. LEE:

9         Q    Can you tell us what Exhibit 5 is or what this

10   document is?

11        A    This document is used to determine a basic

12   firearms eligibility check.

13             The first page you're looking at is the

14   different databases we search to see if the subject has

15   any criminal history.

16        Q    Okay.  And this is for purposes of determining

17   a person's eligibility to own or possess firearms in

18   California?

19        A    That is correct.

20        Q    Is this document part of a larger document,

21   either in a binder or something else that's part of a

22   larger set of policies or procedures?

23        A    No.

24             MS. ONYEAGBAKO:  Objection.  Lack of

25   foundation.

                                        Page 26

```
 1   BY MR. LEE:
 2        Q    Okay.  Let me ask it this way, just more
 3   basically then:  Is this document, Exhibit 5, part of a
 4   larger collection of documents that you might find in a
 5   binder?
 6        A    Yes.
 7        Q    What is the larger document that this comes
 8   from?
 9        A    It's our training binder.
10        Q    And who prepares -- who prepared this
11   particular document?
12        A    It's reviewed first by staff, and it's
13   verified by the supervisor.  And then it goes to our
14   attorneys, and they review it to make sure everything is
15   okay.  Then it comes back to the dealer's record of sale
16   unit, and then we train.
17        Q    Okay.  And it's -- you mentioned it's prepared
18   by the supervisor.  The supervisor of what unit?
19        A    The background clearance unit.
20        Q    What is the background clearance unit?
21        A    It's the -- the background clearance unit is
22   the unit that processes the dealer's record of sale.
23        Q    All right.  And dealer record of sale, we also
24   call it DROS; is that correct?
25        A    That is correct.
```

Page 27

1    Are you specifically asking me just for DROS only or all

2    firearms transactions?

3         Q    I'm asking you what DROS is at the moment.

4         A    Oh, DROS?  Just one system.

5         Q    And what does that system pertain to?

6         A    Consolidated firearms information system.

7    CFIS.

8         Q    Okay.  So you're saying DROS consists of CFIS

9    or --

10        A    That's the database that is being used to

11   process the dealer's record of sale.

12        Q    Okay.  So when a DROS transaction is

13   initiated, it accesses the CFIS database in order to

14   determine initial background eligibility; is that --

15        A    Yes.

16        Q    Okay.  And this is a system that is -- the

17   DROS system is a system that's administered by the

18   California Department of Justice; is that correct?

19        A    That's correct.

20        Q    And the background check itself is also

21   administered by the Department of Justice?

22        A    Using the system, the DROS system, yes.

23        Q    Okay.  And to your knowledge, is that -- is

24   that function delegable to a local law enforcement

25   agency?

                                          Page 30

1        A    The DROS system?   No.   It's only -- Department
2    of Justice only.

3        Q    Okay.  Now, this document, which is
4    Exhibit 005, you've indicated it's a training document?

5        A    Yes.

6        Q    Is it -- training of who?

7        A    New -- new employees to the firearms -- Bureau
8    of Firearms.

9        Q    Bureau of Firearms is a division within the
10   Department of Justice?

11       A    Yes.

12       Q    And what employees specifically would be
13   trained with this document, which is Exhibit 005?

14       A    Employees that are hired or -- in the dealer's
15   record of sale section.

16       Q    Would those employees have a title, like
17   analyst or --

18       A    Criminal identification specialist 2.

19       Q    And what would a criminal identification
20   specialist 2 do?

21       A    In the DROS unit?

22       Q    Yes.

23       A    Determine eligibility of the person applying
24   to own or possess a firearm in California.

25       Q    Okay.  And this document, Exhibit 005, would

Page 31

1    prohibitive as far as a firearm right is concerned.  But

2    what does this particularly mean when it says, "The laws

3    of that particular state where the conviction occurred

4    apply"?

5         A    An out-of-state agency.  An example would be

6    Nevada, Arizona, New York, New Jersey.  It has to be a

7    territory within the United States.

8         Q    Right.  But I guess what I'm looking at is --

9    from your answer -- is what does it mean as far as when

10   it says that "The laws of that state where the

11   conviction occurred apply"?

12             Does that mean that -- if what you're saying

13   is that the law of that particular state doesn't matter

14   as far as the prohibition is concerned, does this -- is

15   that somewhat at odds with what this document says?

16             MS. ONYEAGBAKO:   Objection.   Asked and

17   answered.

18   BY MR. LEE:

19        Q    You can answer.

20             MS. ONYEAGBAKO:   Do you know?

21             THE WITNESS:   It's -- it's based -- on that

22   particular other state, we're basing it on Penal Code

23   29800, where if you're convicted in another state of a

24   felony, you will be prohibited in California unless you

25   have a governor's pardon that restores your firearm

Page  33

1    rights.

2    BY MR. LEE:

3         Q    Okay.  Then what is the purpose of this

4    statement that "The laws of that particular state where

5    the conviction occurred apply"?  Is that not a true

6    statement then?

7              MS. ONYEAGBAKO:  Objection.  Repetitive, asked

8    and answered, and lacks foundation.

9    BY MR. LEE:

10        Q    You can answer.

11        A    Oh, okay.  Sorry.  Can you rephrase that

12   question again?  Sorry.

13        Q    Yes.

14             So does that mean that this particular

15   statement doesn't really apply?  When this document says

16   that "The laws of that particular state where the

17   conviction occurred apply," and you're saying that

18   without a gubernatorial pardon from that state that the

19   person is still prohibited pursuant to the California

20   penal code, does that render this statement meaningless?

21             MS. ONYEAGBAKO:  Objection.  Calls for a legal

22   conclusion, lacks foundation, asked and answered.

23             THE WITNESS:  Regarding that statement, like I

24   said, these procedures are being revised because there

25   was renumbering of some of the penal codes so that

Veritext Legal Solutions
866 299-5127

1          We have a binder with the federal laws of all

2     the -- not the federal laws.  We call it the FBI binder,

3     the federal binder, that has, like, terminology of the

4     state or restoration rights of another state or a

5     set-aside.

6          We would have to review them before we could

7     make our decision.

8     BY MR. LEE:

9        Q    Okay.  Help me understand this then:  This

10    document, Exhibit 5, says "The laws of that particular

11    state where the conviction occurred apply."

12         Are you saying that that is not the current

13    DOJ policy?

14       A    We don't have a policy.  We follow the penal

15    codes.

16       Q    But are you saying that "The laws of the

17    particular state where the conviction occurred apply" is

18    not the case, that that is not what the DOJ's -- the DOJ

19    does not -- strike.

20         Let me ask it this way:  Are you saying that

21    the laws of the particular state where the conviction

22    occurred does not apply?

23       A    No, I didn't say that.  Where the laws of that

24    state, say Arizona -- we do our research.  We do our due

25    diligence to check.

Page 36

1                   Example:   An individual arrested for a felony,

2       we would contact that state to see if it was reduced, to

3       see if it was reduced to a misdemeanor or if there's

4       anything -- any other disposition that might appear on

5       their -- his criminal history record from that state.

6                   Like, if we saw a set-aside, we would look it

7       up in the terminology page for that state, and then we

8       would see what the terminology page requires us to do.

9       Then we would look into the restoration of rights.   Then

10      we would make our determination.

11          Q    But I guess I'm just not understanding what

12      you mean, then, when -- or what the Department means

13      when -- when it trains its individuals that the laws of

14      the particular state where the conviction occurred

15      apply.

16                  You're saying -- maybe -- is your testimony

17      that that is not an absolute rule, that that's -- that

18      California does its own determination?

19          A    No.   No.   We do our due diligence.   We would

20      treat anybody, regardless if they're applying in

21      California or Arizona, the same.

22                  We do our due diligence in determining if

23      they're eligible.   We check to see if it was reduced to

24      a misdemeanor.   We check to see if he has his civil

25      rights restored.   We check set-aside.   We check all that

                                                        Page 37

1    because we treat out-of-state individuals just like
2    California individuals.  Same way.  It doesn't change.
3         Q   Can you tell me the process that an analyst or
4    the DOJ employee goes through to review the laws of that
5    particular state where the conviction occurred to
6    determine how it applies?
7         A   The process would be, first we would do his
8    background.  And if there's a conviction that appears in
9    that state, we would do our research.  We would contact
10   the state first to see if it was reduced.  Or if there's
11   no disposition, we would contact that state to determine
12   if there was a conviction or not.
13        Then we -- if there was, we would determine if
14   it's an offense that can be reduced to a misdemeanor.
15   Then if there's no other information that's on the FBI
16   record, we would make our determination.
17        So if I saw a misdemeanor on that record, I
18   would approve them.
19        Q   Do you -- so as part of your job -- ordinary
20   job duties when you're not testifying, do you actually
21   participate in the approval or denial process?
22        A   Yes.
23        Q   Are you a supervisor?
24        A   Yes, I am.
25        Q   So you look to see whether or not it -- so if

                                                    Page 38

```
1              MR. LEE:  Yes.  I apologize.

2      Q   So understanding there may be some other

3  disqualifying misdemeanors, such as a misdemeanor crime

4  of domestic violence, for example, but putting aside

5  those specific prohibiting misdemeanors, generally

6  speaking, if a felony -- a garden variety felony --

7  let's say a burglary -- is reduced to a misdemeanor in

8  another state, you're saying generally that that would

9  not be disqualifying for firearms ownership?

10             MS. ONYEAGBAKO:  Objection.  Lacks foundation,

11 misstates the witness's testimony.

12             THE WITNESS:  If it was reduced to a

13 misdemeanor, and it doesn't have any type of subsequent

14 action, like a set-aside or civil rights restored, yes.

15 BY MR. LEE:

16     Q   What is -- why would a set-aside of a

17 misdemeanor be disqualified?

18     A   It depends on the terminology of that state.

19 Sometimes a set-aside does not restore firearm rights.

20     Q   Why would a restoration of rights in a state

21 be disqualifying in California?

22     A   Because 29800, a felony conviction in another

23 state would need a presidential pardon, and it must

24 state "firearm rights restored."  And restoration of

25 rights in California -- California is one of the states
```

Page 41

1    that doesn't honor restoration of rights given by other

2    states.

3         Q   Right.  But what I think I'm trying to

4    understand is, generally speaking, you look to the laws

5    of another state, and you look at the court records of

6    another state, right?

7         A   Yes.

8         Q   If necessary.

9             And if it shows, for example, that in another

10   state, a felony conviction was subsequently reduced to a

11   misdemeanor and then disposed of that way, is that

12   person generally qualified to own firearms in

13   California?

14            MS. ONYEAGBAKO:  Objection.  Lacks foundation,

15   irrelevant.

16            THE WITNESS:  It depends if the offense is

17   reduceable.

18   BY MR. LEE:

19        Q   Well, if it's reduced to a misdemeanor, let's

20   assume that it's reduceable.  I'm giving you the

21   situation where it actually was reduced to a misdemeanor

22   by a court in another state.

23            MS. ONYEAGBAKO:  Objection.  Relevance.  This

24   case does not involve misdemeanors.

25            MR. LEE:  It does, and relevance is not a

Page 42

```
 1    proper objection.
 2            MS. ONYEAGBAKO:  Objection.  Also lacks
 3    foundation.
 4            You can answer.
 5            MR. LEE:  Madam Reporter, can you read the
 6    question back, please?
 7            (Record read as follows:
 8             "Question:  Well, if it's reduced to a
 9         misdemeanor, let's assume that it's reduceable.
10         I'm giving you the situation where it actually was
11         reduced to a misdemeanor by a court in another
12         state.")
13            MS. ONYEAGBAKO:  Same objections.
14    BY MR. LEE:
15        Q   In that situation, it was reduced to a
16    misdemeanor so therefore it is reduceable.  So is that
17    person disqualified from owning firearms in California?
18        A   No.
19        Q   Okay.  That's -- I think I'm just trying to
20    establish that baseline understanding.
21            So that's how you would look at the laws of
22    another state; is that what you're saying?
23        A   Yes.
24        Q   But whether or not the other state actually
25    set aside the conviction or dismissed the felony
```

Page 43

1    conviction or dismissed the case, that doesn't matter

2    for purposes of California if it was a felony

3    conviction; is that correct?

4         A    That is correct.

5         Q    The analyst that's applying the training

6    that's set forth in this particular document, are they

7    supposed to -- what sources are they supposed to consult

8    with to determine whether the laws of any particular

9    state apply?

10        A    Our national instant gun check system federal

11   binder.

12        Q    Okay.  So that's a binder that's kept at the

13   DOJ, and you refer to it as the federal binder or the

14   FBI binder?

15        A    Federal binder.

16        Q    Federal binder.  Okay.

17             What does the federal binder consist of?

18        A    The laws, some of the offenses, domestic --

19   what could be considered domestic violence, state

20   prohibitors, terminology pages, restoration of rights

21   pages.  That's about it that I can think of right now.

22        Q    All right.  I think you did produce some of

23   those pages last night, which are contained in

24   Exhibit 17.  But we'll return to that issue later.

25             For now, I'd like to stick with Exhibit 005.

                                                  Page 44

```
1   If you could turn to page 082 of that document if you
2   have it in front of you.
3          A   Yes, I do.
4          Q   Okay.  So where it says "Pardons," at the very
5   top it says, "Pardons/Civil Liability Relief - Other
6   States."
7              Do you see that?
8          A   Yes, I do.
9          Q   The first paragraph says that "A person
10  convicted of a felony in another state who has a
11  governor's pardon from that state is prohibited from
12  possessing a firearm in California, unless the pardon
13  expressly restores the right to receive and possess
14  firearms.  Rights are not restored if the conviction
15  involved the use of a dangerous weapon."
16             Do you see that?
17         A   Yes, I do.
18         Q   So is that a policy of the Department of
19  Justice?
20         A   No, it's just an opinion.
21         Q   Well, it's an opinion that gets applied,
22  right?
23         A   Yes.
24         Q   And hopefully it gets applied consistently?
25         A   Yes, it does.
```

Page 45

1        Q     And it gets applied uniformly to anyone who

2    falls within the -- that situation, right?

3        A     Correct.

4        Q     And the Department strives to apply that

5    opinion evenly?

6        A     Evenly to everybody.   Treat everybody the

7    same.

8        Q     Right.   And to minimize any exceptions to

9    that?

10       A     Correct.

11       Q     So is that not a policy?

12             MS. ONYEAGBAKO:   Objection.   Asked and

13    answered.

14             THE WITNESS:   No.   No.

15    BY MR. LEE:

16       Q     And help me understand why that is not a

17    policy.

18       A     Because when we do background checks,

19    everything is either based on penal codes or federal

20    codes.   When we do background checks, it's penal codes

21    or federal codes.   That's it.

22             Basically this form is just like a reference,

23    for reference, if they run into certain situations.

24    That's why we tell them if they're not sure, consult

25    your supervisor.

Page 46

1          Q   Right.  It's a -- it's an item of reference

2    that needs to be applied to everybody in the situation,

3    right?

4          A   Correct.

5          Q   And analysts who are applying it aren't

6    generally allowed to deviate from that, right?

7          A   No.

8          Q   So again, that doesn't indicate to you that

9    that's a policy?

10          MS. ONYEAGBAKO:  Objection.  Asked and

11    answered.

12          THE WITNESS:  No.

13    BY MR. LEE:

14          Q   And that's because -- and the basis for your

15    answer is because there's a penal code that overrides --

16          A   No, I didn't say there was a penal code that

17    overrides.  I said we -- when we do the background

18    check, we follow certain penal codes, health and safety

19    codes, welfare institution codes, or based on federal

20    codes.

21          Q   Okay.  And I'm asking you all this because, A,

22    I think we need to establish whether it's a policy or

23    not, but also, I need to be able to understand how to

24    refer to this.

25              I mean -- okay.  So you're saying it's a point

Page  47

```
1      of reference.  If I referred to it as a guideline, is
2      that fair?
3             A   That's fair.
4             Q   Okay.  So this is a guideline that a person
5      convicted of a felony is prohibited from possessing a
6      firearm in California unless the pardon restores the
7      right to receive and possess firearms.
8                 It makes reference to an Attachment 4.
9             Do you see that in the document?
10            A   Yes.
11            Q   What is Attachment 4?
12            A   Excuse me.  Okay.  I see Attachment 4.
13            Q   Okay.  And it starts at page -- I think it
14     starts at page 086.
15            A   Yes, it does.
16            Q   So is this the way that this document actually
17     appears in the training materials?
18            A   Yes, it does.
19            Q   Okay.  And so there's no subsequent pages to
20     this; is that --
21            A   No.
22            Q   I mean, exactly how it looks is how it
23     appears?
24            A   Yes, it does.
25            Q   Okay.  So -- and this Attachment 4 is -- looks
```

Page 48

1          A    Yes.

2          Q    And as far as you're aware, is there any

3    updated Attorney General opinion that pertains to

4    pardons from governors from other states that refers to

5    the right to possess a firearm instead of a privilege?

6          A    Just what was in our federal binder under

7    pardons and restorations.

8          Q    All right.  But this Exhibit 005 doesn't

9    reference that, does it?

10         A    No.

11         Q    And there are portions of this document,

12   Attachment 4, which is at page 086, that are crossed

13   out.

14              Do you see that?

15         A    Yes, I do.

16         Q    Do you know why those portions are crossed

17   out?

18         A    I'm not aware.  I wasn't around in '83, so I'm

19   not aware.

20         Q    Understood.

21              So again, returning to page -- I believe it

22   was 082, in the next paragraph, it says, "A person

23   convicted of a felony in another state whose civil

24   disabilities were removed under the laws of that state

25   (similar to PC Section 12023.4) is prohibited from

Page 50

1   possessing handguns in California."

2        Do you see that?

3     A   Yes.

4     Q   What does this mean?

5        MS. ONYEAGBAKO:  Objection.  Calls for a legal

6   conclusion.

7   BY MR. LEE:

8     Q   Well, let me ask it this way:  What

9   information is this intended to convey to the trainee

10  recipient of this material?

11    A   This is kind of like the restoration of rights

12  page where it specifically states California doesn't

13  honor restoration of rights given by other states unless

14  there's a governor's pardon and, you know, firearm

15  rights are restored.

16    Q   So you didn't agree that it was a policy with

17  regard to the prior sections.  I assume that's the same

18  here, that this does not reflect a policy of the

19  Department of Justice?

20    A   No.

21    Q   But is it fair to call this, likewise, a

22  guideline?

23    A   Yes.

24    Q   Okay.  So does this reflect the Department of

25  Justice's guidelines generally that the California

                                        Page 51

1    Department of Justice does not recognize a restoration

2    of firearms order from another state?

3          A   Yes.

4          Q   And the paragraph that this document

5    references is Attachment 5, right?

6          A   I see Attachment 5.   Yes.

7          Q   And if you're able to flip down to it,

8    Attachment 5 is, likewise, an Attorney General opinion

9    from 1967.

10         A   That is correct.

11         Q   And again, paragraph -- I'm sorry --

12   Attachment 7 is only a portion of a document.

13             Do you agree?

14         A   I agree.

15         Q   And the entirety of that document doesn't --

16   isn't actually attached to the training materials that

17   are part of this document; is that correct?

18         A   That's correct.

19         Q   Now, this Attachment 7 doesn't actually

20   reference Attorney General Opinion 67100, or at least it

21   doesn't appear on the face of that attachment.

22             Is there any reason for you to dispute that

23   this is part of Attorney General Opinion No. 67100?

24             MS. ONYEAGBAKO:  Which attachment are you

25   referring to?

Page 52

```
 1    you're aware of that resembles what you might call a

 2    guideline regarding the Department's treatment of

 3    out-of-state felony convictions that have either been

 4    set aside or vacated?

 5         A    No, not on -- no.

 6         Q    All right.  So these portions of Exhibit 5 are

 7    the only direct discussion of this -- of these topics

 8    that you are aware of; is that fair?

 9         A    That's fair.

10         Q    And in preparing for your deposition today as

11    the 30(b)(6) designee on behalf of the Department, did

12    you see any other internal document that described how

13    the Department is supposed to treat out-of-state felony

14    convictions that have been set aside or vacated?

15         A    No.

16         Q    So returning to Exhibit 006, which is the

17    deposition notice --

18         A    Okay.

19         Q    -- Category 2, you're here to testify as to

20    the Department's treatment and interpretation of

21    out-of-state felony convictions for purposes of

22    determining whether a person is entitled to purchase or

23    possess firearms in the state of California.

24              And we touched on this a little bit earlier in

25    your testimony, but what preparation did you undertake
```

Page 54

```
 1    specifically to testify on that category?
 2         A    I did my research on the case -- on the cases
 3    regarding out-of-state convictions.
 4         Q    All right.  What do you mean by your research?
 5         A    I looked at the denial, what the denial was
 6    based on; I looked at our federal book dealing with
 7    out-of-state with that particular state; and looked at
 8    the terms that were on his out-of-state criminal history
 9    record.
10         Q    When you say "his," you're talking about --
11         A    An applicant or a client.
12         Q    -- the plaintiff?
13         A    The plaintiff.  That's better.
14         Q    Okay.  Did you do anything else to prepare
15    yourself to testify as to this category?
16         A    No.  No, I did not.
17         Q    Now, as we understand it -- and you've touched
18    on this earlier -- the Department's position with regard
19    to this topic is that -- is primarily a straightforward
20    reading of the statute, which is Penal Code Section
21    29800; is that fair?
22         A    That's fair.
23         Q    And can you articulate what that position is?
24         A    If an individual is convicted in another state
25    for a felony, California would prohibit that person
```

Page 55

1   applying for the firearm.
2        Q    Okay.  And it doesn't matter whether or not
3   that conviction -- felony conviction was set aside in
4   another state or vacated?
5        A    No.
6        Q    And it wouldn't matter if that person had
7   their firearms rights restored in connection with that
8   felony conviction being set aside?
9        A    No.
10       Q    And that is based on a simple straightforward
11  reading of Section 29800?
12       A    And the California page explaining restoration
13  of rights given by other states requires a governor's
14  pardon that specifically states his firearm rights are
15  restored.
16       Q    And what is that document that you're
17  referencing?
18       A    It was provided in one of your cases that
19  you're working on.  It's the California pardons and
20  restorations.  It's one of the documents.
21       Q    Okay.  You've produced in this case -- well,
22  strike that.
23            You're saying that there's an exception when
24  the -- there has been a gubernatorial pardon from
25  another state that expressly restored the person's

Page 56

1    what's in the state and the NICS check.

2          Q    I see.  So it does consult with the -- it does

3    consult the NICS database in order to look at

4    convictions nationwide?

5          A    Correct.  That is correct.

6          Q    Okay.  So you're saying that this page,

7    AGO LINTON 119, comes from the FBI?

8          A    Yes.

9          Q    And why is this -- strike.

10         Is this page, AGO LINTON 119, is this a

11   California Department of Justice policy?

12         A    It's not a policy.  It's just a reference.

13   It's for reference.  All 50 states have the same thing,

14   same type of -- this is NICS.  Like, for Texas, Texas

15   has one.  All the U.S. territories in the U.S., they all

16   have this.

17         Q    You're saying this is not a policy of the

18   California Department of Justice?

19         A    No.  It's an opinion.

20         Q    But it's an opinion that is followed, right?

21         A    Correct.

22         Q    And it's an opinion that provides guidance?

23         A    Yes.

24         Q    And it's an opinion that gets applied to

25   people who fall within its parameters?

Page 59

```
 1        A    Yes.
 2        Q    And it's an opinion that gets applied to
 3   people who fall within its parameters evenly?
 4        A    Evenly.
 5        Q    And without exception?
 6        A    No exceptions.
 7        Q    Okay.  So -- but you're hesitating on calling
 8   it a policy?
 9        A    I don't call it a -- I just call it an opinion
10   and use it as a reference.
11        Q    Okay.  It's an opinion that gets followed; is
12   that fair?
13        A    That's fair.
14        Q    Okay.  So aside from Penal Code 29800 --
15   actually, let me just back up for a second.
16             (Exhibit 8 was marked for identification
17        and is attached hereto.)
18   BY MR. LEE:
19        Q    So we've marked as Exhibit 008 another
20   document that has been produced in this case.  It's a
21   two-page document that was produced by the defense in
22   this case.  It's AGO LINTON 095 through 096.
23             MS. ONYEAGBAKO:  Can you give us a moment,
24   please?
25             MR. LEE:  Sure.
```

Page 60

```
 1    BY MR. LEE:

 2         Q    Is that true?

 3         A    No.

 4         Q    All right.  So then I must have misunderstood

 5    your testimony because we started down this by saying,

 6    you know, is there anything that resembles a DOJ policy

 7    regarding the treatment of out-of-state felony

 8    convictions?

 9              The DOJ's policy is -- if I understand it --

10    is that out-of-state felony convictions is not -- that

11    are set aside or vacated in another state don't lift the

12    firearms prohibition, and that's based solely on Section

13    29800 and the one page of the FBI binder that's LINTON

14    page 119.

15              Is that a fair recitation of what we've

16    testified to so far?

17         A    Yes.

18              MS. ONYEAGBAKO:  I'm sorry, Counsel.  I didn't

19    hear the question.  I think you started out with the

20    DOJ's policy; is that correct?

21              MR. LEE:  I lost the question in all of that.

22              I think I was asking the witness how

23    California treats out-of-state felony convictions that

24    have been set aside or vacated in another state.

25              And the witness says that California does not
```

Page 62

1     recognize a felony conviction that has been set aside or

2     vacated in another state.

3            Q    Is that fair?

4            A    That's fair.

5            Q    And the basis for that, you indicated, sir, is

6     Section 29800, a plain reading of Section 29800, which

7     is marked as Exhibit 8, and the one page from the FBI

8     binder that pertains to pardons; is that correct?

9            A    That's correct.

10           Q    All right.  And is there any other source that

11    you're aware of that formulates the DOJ's policy on that

12    topic?

13           MS. ONYEAGBAKO:  Sorry for interrupting, but

14    objection.  Lacks foundation.

15           THE WITNESS:  It's not a policy.  It's a penal

16    code that we're following.  It says Penal Code 29800, so

17    we're following the penal code.  It's not policy.

18    BY MR. LEE:

19           Q    Well, does Penal Code Section 29800 reference

20    out-of-state felony convictions that have been set aside

21    or vacated?

22           A    Yes.

23           Q    In what respect?

24           A    Under 29800, a person that is convicted of a

25    felony in another state is prohibited in the state of

                                                    Page 63

```
1    California unless he has a governor's pardon that

2    specifically states his firearm rights are restored.

3         Q    But 29800 doesn't specifically mention a

4    situation where the felony conviction was set aside or

5    vacated, right?

6         A    That's correct.

7         Q    So the Department has to issue its own

8    separate policy on that subject; is that correct?

9              MS. ONYEAGBAKO:   Objection.   Lacks foundation.

10             THE WITNESS:   I wouldn't consider it policy.

11   I would consider it just following the penal codes.   We

12   just follow what the penal codes say.

13   BY MR. LEE:

14        Q    Okay.   So your testimony, then, is that there

15   is no DOJ policy that pertains to the treatment of

16   out-of-state felony convictions that have been set aside

17   or vacated in their respective state because it's just

18   simply a matter of reading 29800?

19        A    Yes.

20        Q    And the pardons issue, that might be an

21   exception, but that comes from the one page of the FBI

22   binder?

23        A    That is correct.

24        Q    Now, 29800(a)(1) obviously applies to

25   convictions that occur in California itself, right?
```

Page 64

```
 1          A    That is correct.
 2          Q    But there is an exception to this rule; is
 3    that true?
 4          A    (a)(1)?
 5          Q    Well, where the felony conviction was later
 6    reduced to a misdemeanor.
 7          A    (a)(1), that deals with outstanding warrants
 8    and felonies in the state of California or any other
 9    state.
10          Q    What I'm saying is that for firearms
11    prohibition purposes, there's an exception to
12    29800(a)(1), and that's where a felony conviction was
13    subsequently reduced to a misdemeanor, right?
14               MS. ONYEAGBAKO:  Objection.  Foundation.
15               THE WITNESS:  If that offense is a reduceable
16    charge.
17    BY MR. LEE:
18          Q    Okay.  Well, let's turn to Exhibit 5 again
19    then, and specifically look at page 081.
20               MS. ONYEAGBAKO:  I've got it.  I have it in
21    front of me now.
22    BY MR. LEE:
23          Q    Okay.  Do you see where it says "Subsequent
24    Action - California Law," the heading?
25          A    Page 81?
```

Page 65

1  wouldn't honor it.

2  BY MR. LEE:

3      Q   When you say "straight felony," you're talking

4  about something that is a straight felony that is not a

5  wobbler?

6      A   That is correct.

7      Q   Okay.  So you're saying that even if the

8  person got a 17(b) reduction on a straight felony, if it

9  wasn't a wobbler, that doesn't restore the person's

10  rights?

11      A   Yes.  We would prohibit him.

12      Q   But there are -- but there are situations in

13  California where a person is convicted of a wobbler, and

14  it's subsequently reduced to a 17 -- to that misdemeanor

15  pursuant to Section 17, correct?

16      A   Correct.

17      Q   And in those situations, that does restore a

18  person's right to possess a firearm, correct?

19      A   It depends on the offense.  If it's domestic

20  violence -- if it's domestic violence, it doesn't

21  matter.

22      Q   Right.  So putting aside those exceptions that

23  are listed here and that need to be updated because the

24  penal code sections need to be updated, but putting

25  aside those prohibiting misdemeanor sections, there are

Page 67

1    circumstances under which a person convicted of a felony

2    conviction, if it's a wobbler and reduced to a

3    misdemeanor pursuant to Section 17, that person gets

4    their rights restored, right?

5        A    Yes.

6        Q    And that's how -- generally speaking, that's

7    how some people in California have their firearms rights

8    restored to them even after they technically suffered a

9    felony conviction, right?

10            MS. ONYEAGBAKO:   Objection.   Foundation.

11            THE WITNESS:   Yes.

12   BY MR. LEE:

13       Q    Okay.   And it's frequent, right?   Would you

14   agree with me?

15       A    I agree.

16       Q    Okay.   So -- but in that situation, that

17   doesn't change the fact that that person was convicted

18   of a felony at some point, right?   Would you agree?

19       A    Yes, I agree.

20       Q    So looking at Section 29800, again, that's

21   reflected in Exhibit 8, that doesn't tell the whole

22   story, though, does it?

23       A    No.

24       Q    Because there are situations where a person

25   has been convicted of a felony under the State of

                                          Page 68

```
 1    California, but if the circumstances are correct, or if
 2    the circumstances warrant it, such as it's a wobbler,
 3    it's reduced to a misdemeanor, and it's not a
 4    disqualifying misdemeanor, that person gets their
 5    firearms rights back, right?
 6         A    That's correct.
 7         Q    It's just that California deems those felony
 8    convictions to have been misdemeanors; is that generally
 9    your understanding?
10              MS. ONYEAGBAKO:   Objection.   Vague as to -- I
11    think you said these misdemeanors?
12              MR. LEE:   I think I said California deems
13    those convictions to have been misdemeanors.
14              THE WITNESS:   Once the 17 PC has been granted?
15    BY MR. LEE:
16         Q    Correct.
17         A    Yes.
18         Q    Okay.   So that's under 17 of the California
19    penal code.
20              So for purposes of another state, such as
21    Arizona, Washington or Texas, it doesn't matter whether
22    or not the laws of that state deem the felony conviction
23    not to have occurred, right?
24         A    Yes.
25         Q    Yes, you're agreeing it doesn't matter?
```

Veritext Legal Solutions
866 299-5127

1          A    I'm agreeing it doesn't matter.

2          Q    Right.  That person is going to be prohibited

3     in California no matter what the court of that state

4     deems it to be?

5          A    I would say -- I would say no.  Because it

6     depends on that -- if it's updated to his criminal

7     history records, if it just shows felony, and it says

8     set-aside or civil rights restored, reduced to a

9     misdemeanor, that's how we contact them.

10         Q    Right.  I'm not talking about a reduction to a

11    misdemeanor situation.

12              I'm talking about a felony conviction from

13    another state that -- a felony conviction from another

14    state that has been set aside or vacated, right?  That

15    straightforward situation, subsequently set aside or

16    vacated from another state, not reduced to a

17    misdemeanor.

18              So what I'm saying is that it doesn't matter

19    whether that other state deems that felony conviction

20    not to have occurred, right?  From the DOJ's perspective

21    it's irrelevant?

22         A    Yes, under 29800.  That's what we're basing

23    our prohibition on.

24              MR. LEE:  All right.  Do you want to take a

25    break before we move on to the next categories?

                                              Page 70

```
 1              MS. ONYEAGBAKO:  Yeah, I need to take a break.

 2              MR. LEE:  Okay.  Let's just take ten minutes.

 3              MS. ONYEAGBAKO:  Okay.  Thank you.

 4              (Recess, 10:36 a.m. - 10:56 a.m.)

 5              MR. LEE:  Back on the record.

 6        Q    Mr. Matsumoto, right?

 7        A    That's correct.

 8        Q    Okay.  So you're also here to testify --

 9    returning to the deposition notice, which is

10    Exhibit 006, you're here to testify as to Categories 5

11    and 6, and these are categories that generally pertain

12    to the interpretation of Mr. Linton's criminal history

13    and the basis for his denial of his attempt to purchase

14    firearms.

15              Are you prepared to testify to those

16    categories today?

17        A    Yes.

18        Q    And what documents did you review to prepare

19    yourself to testify as to these categories regarding

20    Mr. Linton's eligibility to purchase or possess

21    firearms?

22        A    The documents that were submitted by

23    Ms. Onyeagbako regarding the case.

24              MR. LEE:  Okay.  And I have marked these and

25    included them in the exhibit folder, but I did mess up.
```

                                                      Page 71

```
 1              MS. ONYEAGBAKO:  Okay.  Great.  Right.  But
 2   they're not -- but there may be gaps in that numbering.
 3              MR. LEE:  Correct.
 4              MS. ONYEAGBAKO:  And just to clarify, it was
 5   in the afternoon, not last night.
 6              I just want to make sure so I can put the
 7   papers in front of the witness.
 8              MR. LEE:  Right.
 9              THE WITNESS:  Mr. Lee, I have the documents in
10   front of me.
11   BY MR. LEE:
12       Q   Okay.  And I just want to make sure, again, in
13   being able to testify as to the categories regarding
14   Mr. Linton's eligibility, you didn't go outside of any
15   of the documents that are in front of you?
16       A   No.
17       Q   Okay.  So Mr. Linton began receiving denials
18   of his attempted firearms purchases beginning in 2015;
19   is that correct?
20       A   That's correct.
21       Q   What was the basis for the denials?
22       A   A felony conviction appearing on his
23   out-of-state criminal history record.
24       Q   Was that a felony conviction from Washington
25   State that occurred in 1987?
```

Page 74

1      A    That is correct.

2      Q    And so let's make sure.

3           Aside from the Washington State felony

4    conviction in 1987, was there anything else on

5    Mr. Linton's criminal history that you saw that

6    disqualified him from being able to purchase a firearm?

7      A    California, he only has an application for

8    beverage control.  So he would be -- that California

9    record, he'd be okay, but Washington felony conviction.

10     Q    Right.  I'm just making sure that there wasn't

11   any other conviction out there that you're aware of that

12   would otherwise disqualify him.

13     A    Not that I'm aware of.

14     Q    Okay.  So if you turn to -- on Exhibit 11,

15   specifically to page AGO LINTON 012, I think you have it

16   up on the screen, too.

17     A    Okay.

18     Q    All right.  So this is a document that says

19   "USNA Denial."

20          Do you see that?

21     A    Yes.

22     Q    What is USNA?

23     A    This is an ammunition denial.

24     Q    Ammunition?

25     A    Yes.

                                        Page 75

```
1          A    Yes, I do.

2          Q    Do you know what that would be, what the

3     redacted portion is?

4          A    Yes.

5          Q    What is it, generally speaking?

6          A    It's the FBI number.

7          Q    Oh, I see.  That's associated with Mr. Linton?

8          A    That is correct.

9          Q    Okay.  So it's some type of identifier that

10    identifies Mr. Linton or is connected to Mr. Linton

11    somehow?

12         A    Yeah.  It's a federal investigation record.

13         Q    Okay.

14         A    His out-of-state record.

15         Q    All right.  Understood.

16              So if you can turn to pages -- sticking in

17    Exhibit 011 for a minute -- pages that are marked 014

18    through 016.

19         A    Okay.

20         Q    Can you tell us what pages 014 through 016

21    are?

22         A    That is his Federal Bureau of Investigation

23    record for the State of Washington.

24         Q    Are these records that the California DOJ

25    accessed when it made the determination to deny
```

Page 79

1   Mr. Linton?

2         A   Yes.

3         Q   Now, according to this printout, on page 015,

4   it says -- it shows zero felonies, right?

5         A   Yes.

6         Q   And one gross misdemeanor; is that correct?

7         A   That's correct.

8         Q   Now, under the column of "Disposition," if you

9   scroll down a little bit -- and I don't know if you can

10  see my highlighting -- but are you able to see the

11  highlighting that says "Disposition"?

12        A   Yes, I can.

13        Q   Okay.  So here it says "Vacated."

14            Do you see that?

15        A   Under "Status"?  Yes.

16        Q   Yes.  Okay.  So as far as the State of

17  Washington is concerned, there were zero felonies on

18  Mr. Linton's record at the time this printout was

19  created.  Would you agree?

20        A   Zero felonies?  You're saying there's zero

21  felonies on his record?

22        Q   Based on this printout.  As far as the State

23  of Washington was concerned, there were zero felonies.

24        A   For the State of Washington?

25        Q   Yes.

Page 80

```
 1          A    For the State of Washington, yes.
 2          Q    All right.  Now, where it says "Status:
 3    Vacated," do you see the handwritten notation "Not
 4    recognized CA," exclamation mark?
 5          A    Yes.
 6          Q    And that's on page 015?
 7          A    Yes.
 8          Q    Do you know whose handwriting that is?
 9          A    No, I don't.
10          Q    Is it typical for an analyst to make
11    handwritten notations on an FBI printout?
12          A    Yes.
13          Q    Is it likely that the analyst who looked at
14    this issue is the one that made this notation?
15          A    Yes.
16               MS. ONYEAGBAKO:  Objection.  Calls for
17    speculation.
18    BY MR. LEE:
19          Q    Okay.  Let me just ask you this way:  If you
20    had to figure out who made that handwritten notation,
21    how would you go about doing that?
22          A    I'd probably ask the supervisor of the
23    background clearance unit.
24          Q    Okay.  Would that be Ms. -- I think you said
25    it was Sanchez?
```

Page 81

1        A    Or Chia or Cheri or Rachel.  One of the three.

2    It's one of the three I would ask.

3        Q    Okay.  Did you actually talk to the person who

4    made the determination that Mr. Linton was not eligible

5    to purchase or own firearms?

6        A    No.  I don't know who it is.  I don't know the

7    analyst who denied it.

8        Q    Right.  But you did your own independent

9    review; is that correct?

10       A    That's correct.

11       Q    And after your own independent review of these

12   records, you agree with that assessment that he's

13   denied?

14       A    Yes, I do.

15       Q    And the basis is what's indicated in this

16   handwritten notation, that vacated felony conviction is

17   not recognized in California?

18       A    No.  I did my own research, and this is an

19   example where, on the out-of-state records, that you

20   need to do your due diligence.  Because if that

21   "vacated" was there, I would see felony conviction.  But

22   since I see this "vacated," I would look into NICS

23   terminology to see what "vacated" means.

24       Q    Okay.  So you actually did reference what the

25   term "vacated" means in NICS?

Page 82

```
 1        A    Yes.
 2        Q    And was that -- is that available in
 3   Exhibit 017 somewhere?
 4        A    No.
 5        Q    Okay.   So what is the -- where would you find
 6   the definition of "vacated" in -- as far as NICS is
 7   concerned?
 8        A    In the Washington State terminology page.
 9        Q    Okay.   Is that available in Exhibit 17?
10        A    No.  Oh, wait.  Excuse me.
11             Can you hold on for a minute, please?
12        Q    Sure.  Take your time.
13        A    Yes, I have the document in front of me.
14        Q    Okay.  Is the terminology page that you're
15   referring to, is that found at the very last page of
16   that document, which is AGO LINTON 255?
17        A    That's correct.
18        Q    And -- let's see if I can do this correctly.
19             So this is a page -- Exhibit AGO LINTON 255,
20   it's a Washington terminology page, right?
21        A    Yes.
22        Q    Where does this page come from?
23        A    National instant gun check system.   NICS.
24        Q    The FBI binder?
25        A    The FBI binder.
```

Page 83

```
 1        Q    Is the FBI binder something that's updated
 2   regularly?
 3        A    Yes.
 4        Q    And it is -- is this, as far as you're aware,
 5   updated as of March 15, 2019?
 6        A    Yes.
 7        Q    And when you -- strike.  Let me ask some more
 8   foundational questions.
 9             Is this updated by the FBI?
10        A    Yes.
11        Q    And is it transmitted to agencies -- state
12   agencies around the country?
13        A    I would assume.
14        Q    Okay.  Is this -- this isn't something that's
15   prepared specifically for California, in other words?
16        A    No.
17        Q    So walk me through the process of what you
18   mean by -- when you say you'd do your due diligence and
19   look up the word "vacated."
20        A    So what I reviewed is the FBI record.  I see,
21   hey, felony conviction, then I saw a status, "vacated."
22             So that told me I needed to look under the
23   Washington terminology to know what "vacated" means in
24   Washington.
25             So that was -- page 255 was the page I went
```

Page 84

1    to.

2         Q    And then what did you do?

3         A    Then I read the application of the

4    terminology, and then I made my decision.

5         Q    That the term "vacated" means that the felony

6    conviction still exists for firearms possession

7    purposes?

8         A    Yes.

9         Q    Okay.  And that it is not deemed to be -- to

10   not have existed; it still exists?

11        A    It still exists through the criminal justice

12   agencies, but not to the public.

13        Q    Right.

14             So under this chart, it says -- under

15   "Application of Terminology," "Offenses prior to July 1,

16   1984, with dismissed probation is not a conviction

17   unless the offense is an enumerated felony."

18             Do you see that?

19        A    Yes, I do.

20        Q    What does "enumerated felony" mean?

21        A    Enumerated felony could be something similar

22   to an offense in California, like a burglary.  It's kind

23   of like the same type of offense that occurred in

24   that -- we'll say Washington that may occur in

25   California.

                                              Page 85

1    who's reviewing this to determine eligibility, is

2    there -- are you required to interpret what this page

3    from a binder means?

4         A   Yes.

5         Q   And in your -- could you interpret this to

6    mean that a felony offense vacated after 7-1-84 is

7    prohibiting unless the firearms rights are restored, and

8    if the firearms rights are restored, then it is vacated?

9              MS. ONYEAGBAKO:  Objection.  Vague as to

10   "interpret."

11             THE WITNESS:  Based on interpretation, if I

12   saw that, I would still prohibit him because California

13   doesn't honor restoration of rights, firearm rights,

14   unless he has a governor's pardon.

15   BY MR. LEE:

16        Q   Okay.  So consistent with your training, your

17   understanding, and the Department's policy, the firearms

18   rights restoration provision of this definition is not

19   relevant because California doesn't recognize

20   restoration of firearms rights, period, unless it's a

21   gubernatorial pardon?

22        A   If it's out of state.

23        Q   Out of state?

24        A   Yes.

25        Q   Okay.  Returning to Mr. Stewart -- returning

1    to the deposition notice, you're also here to testify on

2    Category 7 and 8, and these pertain to Mr. Stewart's

3    criminal history and his denials of attempts to purchase

4    firearms.

5              Do you see that?

6       A    Yes.

7       Q    And what documents did you review to prepare

8    yourself to testify as to these subjects?

9       A    The NICS documents, the terminology page, the

10   national instant gun check system terminology page, the

11   restoration of rights page, the felony and misdemeanor

12   page, and the pardons and restorations page.

13      Q    And that's from the NICS binder?

14      A    That's from the NICS binder.

15      Q    And did you specifically review Mr. -- strike

16   that.

17              Did you also specifically review Mr. Stewart's

18   criminal history?

19      A    Yes, I did.

20              (Exhibit 14 was marked for identification

21        and is attached hereto.)

22   BY MR. LEE:

23      Q    And that is reflected in Exhibit 014?

24      A    I have it in front of me, Mr. Lee.

25      Q    Okay.  So aside from the documents that we've

                                          Page 90

1    discussed that you mentioned you referenced and the

2    criminal history reflected in Exhibit 014, are there any

3    other documents that you referenced to determine

4    Mr. Stewart's eligibility?

5         A    Just the documents in front of me.

6         Q    Okay.  So Mr. Stewart received a DROS denial

7    in 2018.

8              Do you see that?

9         A    Yes, I do.

10        Q    And what was the basis for the -- his denial?

11        A    A felony burglary offense in another state.

12        Q    Is this a 1976 felony burglary from Arizona?

13        A    That is correct.

14        Q    Looking at Mr. Stewart's criminal history, was

15   there any other disqualifying conviction that prevents

16   Mr. Stewart from owning a firearm in California?

17        A    His California record would be okay.  His

18   out-of-state -- that's what we would base our denial on,

19   his FBI record in the state of Arizona.

20        Q    And that reflects just -- the only

21   disqualifying conviction -- just to make sure we're on

22   the same page, the only disqualifying conviction is that

23   1976 felony burglary from Arizona, right?

24        A    That is correct.

25        Q    If you could turn to page AGO LINTON 068, and

                                                  Page 91

1    that's part of Exhibit 14.

2         A    I'm looking at it right now.

3         Q    So again, here under the "Notification

4    Comments," there's a redacted portion, but that would be

5    his -- Mr. Stewart's FBI number, right?

6         A    That is correct.

7         Q    And that's why it's redacted for -- presumably

8    for privacy or identifying information?

9         A    Yes.

10        Q    Okay.  I do have some questions, though.

11             It says -- the rest of that comment says,

12   "1976 Fel Burg Conv," presumably for felony burglary

13   conviction, and it says "13-907 Granted 8-11-16."

14             Do you see that?

15        A    Yes, I do.

16        Q    What is 13-907?

17        A    13-907, I think in Arizona, it's a set-aside

18   order.  If you look under the terminology page, it would

19   tell you what 13-907 is.

20        Q    Okay.  So your understanding is that 13-907

21   refers to some -- some type of code, not necessarily a

22   penal code, but some type of provision in Arizona law?

23        A    That is correct.

24        Q    And what does -- it says, "Not Recognized in

25   CA/AT."

                                              Page 92

```
1              Do you see that?

2        A    Yes, I do.

3        Q    What is CA/AT?

4        A    The way I read this is CA is California, AT is

5   analyst.

6        Q    So is it your understanding that this was a

7   notation that was made by the analyst saying that, in

8   essence, that felony -- for a 1976 felony burglary

9   conviction, a 13-907 was granted in 2016 but not

10  recognized in California?

11       A    Yes, that's correct.

12       Q    And do you know who that analyst was that

13  prepared this?

14       A    Yes.

15       Q    Who is that person?

16       A    Amanda Thomas.

17       Q    Did you speak to Amanda in preparing for the

18  deposition?

19       A    No.

20       Q    That's what AT stands for then?  It's Amanda

21  Thomas?

22       A    Yes, that's correct.

23       Q    Okay.  All right.  I thought it meant, like,

24  something technician or something.

25       A    Oh.
```

Page 93

```
 1        Q    Okay.  All right.  Understood.
 2             So one of the steps that you went through
 3   independently is -- to verify the accuracy of this -- is
 4   that you looked at the Arizona terminology page that's
 5   reflected in Exhibit 17; is that correct?
 6        A    That is correct.
 7        Q    And looking at the Arizona terminology page,
 8   did you look up what code 13-907 is?
 9        A    Yes, I did.
10        Q    What is 13-907?
11        A    For Arizona, I think that's the set-aside -- a
12   set-aside order.  It explains it on one of the
13   terminology pages in Arizona.  It's probably explained
14   during the pardon and restoration of rights section.
15        Q    Okay.  So turning to -- flipping to Exhibit 17
16   under AGO LINTON 216 --
17        A    Okay.
18        Q    Do you have that in front of you?
19        A    Yes, I do.
20        Q    -- does this tell you what 13-907 is?
21        A    Yes.
22        Q    So does this suggest that a 13-907 is a
23   set-aside of a conviction?
24        A    Yes.
25        Q    All right.  But flipping back to the analyst's
```

Page 94

1    notation, the set-aside of conviction was granted in

2    2016 but not recognized in California; is that correct?

3          A    That is correct.

4          Q    And the reason why it's not recognized is

5    firearms rights restored has no effect in California?

6          A    This would fall under the restoration of

7    rights.

8          Q    What do you mean?

9          A    Where the subject would need a governor's

10   pardon that would specifically grant his firearm rights

11   restored.

12         Q    And do you know, by the way -- I don't know

13   that I asked you this -- do you know what the

14   distinction is -- why there is a distinction between a

15   governor's pardon that recognizes a restoration of

16   rights and a court order that recognizes a restoration

17   of rights?

18             MS. ONYEAGBAKO:  Objection to the extent it

19   calls for a legal conclusion.  The witness is not a

20   lawyer.

21             MR. LEE:  Understood.

22         Q    Do you have your own independent understanding

23   of why there is a distinction?

24         A    No.

25         Q    So based on your review of the records, do you

Page 95

```
 1   agree with the analyst's conclusion that Mr. Stewart is
 2   prohibited from owning firearms in California?
 3        A   Yes, I do.
 4        Q   And that's because --
 5        A   -- of the restoration of rights.
 6        Q   In other words, the restoration -- the
 7   set-aside of his conviction is not recognized in
 8   California, and the restoration of rights was not
 9   pursuant to a pardon?
10        A   That is correct.
11        Q   Okay.  Let's turn, finally, to Mr. Kendall
12   Jones.  And you're here, again, pursuant to
13   deposition -- a deposition notice to testify to
14   Categories 9 and 10 that deal with the interpretation of
15   Mr. Jones's criminal history and his application for a
16   certificate of eligibility?
17        A   That's correct.
18        Q   And what documents did you review to prepare
19   yourself to testify to those categories?
20        A   The documents that were given to me in the
21   binder regarding Mr. Jones and our NICS legal binder,
22   the terminology page, the restoration of rights page,
23   the state interpretation, state info page.
24        Q   And there are some criminal history records
25   that I haven't received yet, but you looked at documents
```

Page 96

1    page, the felony and misdemeanor page, restoration of

2    rights page, domestic violence page, and the state

3    prohibitor page.

4         Q   Okay.  So let's just start back up for a

5    minute.

6              What is a certificate of eligibility?

7         A   A certificate of eligibility is a form that an

8    individual needs to be able to sell or work at a dealer

9    to sell firearms.

10        Q   Among other things?

11        A   Among other things, it's -- well, pretty much

12   that's it that I know of, that I'm aware of.

13        Q   Okay.

14        A   I don't work in that unit so I couldn't tell

15   you.  I strictly do backgrounds.

16        Q   And we refer to them as COEs.  Is that how you

17   refer to them, too?

18        A   Yes, that's correct.  COE.

19        Q   So are COEs handled by a different unit other

20   than -- different than background clearance?

21        A   Yes.  Yes.

22        Q   Now, Mr. Jones received a denial of his COE,

23   the latest, in 2019; is that correct?

24        A   That is correct.

25              MR. LEE:  And I will pull up and reference

                                                 Page 99

```
 1    Exhibit 015.
 2              (Exhibit 15 was marked for identification
 3        and is attached hereto.)
 4              THE WITNESS:  It's blacked out.  Oh,
 5    Exhibit --
 6    BY MR. LEE:
 7        Q    Exhibit 015?
 8              MS. ONYEAGBAKO:  Oh, Exhibit 15?  Okay.
 9              THE WITNESS:  Okay.
10    BY MR. LEE:
11        Q    So is this Exhibit 15 a letter reflecting
12    Mr. Jones's denial of a COE as of February 23, 2019?
13        A    That's correct.
14        Q    What's the basis for his denial of the COE?
15        A    Felony conviction.  I think it was for misuse
16    of a credit card.
17        Q    And that was a felony conviction from the
18    State of Texas?
19        A    State of Texas.  Yes.
20        Q    All right.  And you've undertaken a review of
21    his criminal history that's reflected in the documents?
22        A    Yes, I have.
23        Q    And are there any other disqualifying
24    convictions that prevent Mr. Jones from getting his COE
25    aside from the Texas conviction for credit card abuse?
```

Page 100

1          A     No.

2                MR. LEE:  I'm going to mark and put up what

3     we've marked as Exhibit 016, or Exhibit 16.

4                (Exhibit 16 was marked for identification

5          and is attached hereto.)

6     BY MR. LEE:

7          Q     And this is what purports to be a certified

8     criminal history of Mr. Jones from the State of Texas as

9     of April 2019.

10               Do you see that?

11         A     Oh, yes.  Sorry.  April 6th of 2019.

12         Q     That's okay.

13               So does this generally track -- does this

14    document generally track with the criminal history that

15    you reviewed?

16         A     Yes.  This is one of the documents that an

17    analyst sent to Texas for clarification.

18         Q     Okay.  According to this Exhibit 16, it shows

19    that the disposition of that felony conviction is

20    dismissed.

21               Do you see that?

22               Let's see if I can pull that up.  On the

23    bottom of the page, it says page 2 of 3.

24         A     Okay.  Oh, right there.  Okay.

25         Q     And then where it says "Court Data," the

                                                Page 101

1       disposition is "Dismissed."

2               Do you see that?

3           A   Yes, I do.

4               MS. ONYEAGBAKO:  I'm sorry, Counsel.  Could

5       you enlarge the view just a little bit on your screen?

6       Thank you.

7               MR. LEE:  Does that work?

8               MS. ONYEAGBAKO:  Yes.

9               THE WITNESS:  That works.

10      BY MR. LEE:

11          Q   And then under the -- it looks likes it's a

12      heading called "Provision."  Do you see it says "Set

13      Aside"?

14          A   Yes, "Provision, Set Aside."

15          Q   Okay.  So what's -- why is it that California

16      does not recognize the dismissal or set-aside of the

17      felony conviction for purposes of issuing Mr. Jones a

18      COE?

19              MS. ONYEAGBAKO:  Objection.  Foundation.

20      BY MR. LEE:

21          Q   Okay.  Let me ask it this way:  Is Mr. Jones

22      prohibited from owning firearms in California?

23          A   Yes.

24          Q   And what's the basis for that prohibition?

25          A   The set-aside -- we wouldn't honor a set-aside

                                        Page 102

1     in the state of California.

2          Q    And --

3          A    That "Provision, Set Aside," again, we would

4     go to our NICS terminology page to see what "set aside"

5     means in the state of Texas.

6          Q    And by specifically looking at a definition of

7     "set aside" in the state of Texas would determine --

8     help you determine whether or not --

9          A    If he's eligible?

10         Q    Yes.

11         A    Yes.  I would do further research on this

12    because how can -- it's showing a conviction of 8-22,

13    and it's showing it dismissed on 8-22.  I would have to

14    do more research.  Is he convicted or is it dismissed?

15         Q    I think that the conviction occurred in 1980,

16    if I'm correct, and that the dismissal occurred in 1983.

17         A    Okay.

18         Q    So what happens is, in a lot of instances, a

19    court allows a person to plead guilty to an offense

20    if -- with the proviso that if they -- if they

21    successfully complete their probation, that they can

22    come back and they will enter a dismissal of the -- of

23    the charge, of the original felony conviction.

24              Does that comport with your understanding as

25    to what does occur in states sometimes?

Page 103

1          MS. ONYEAGBAKO:  Objection to the extent it
2  calls for a legal conclusion and lacks foundation.  The
3  witness is not a lawyer.
4          MR. LEE:  Right.
5      Q   But is that -- Mr. Matsumoto, does that
6  generally comport with your understanding of what does
7  occur from time to time?
8      A   Yes.
9      Q   But under those circumstances, do you think
10  that further research is required?
11      A   Yes.
12      Q   What specifically would you do?
13      A   For this particular offense, I would do my due
14  diligence and check to see if it was reduced.  It's
15  still showing a felony, but a felony -- it shows a
16  convicted felony.
17          If I saw convicted misdemeanor, he would be
18  fine.
19      Q   But it says "Dismissed," does it not?
20      A   Yeah, it says "Dismissed."
21      Q   Okay.
22      A   But that's based on the set-aside.  That's the
23  reason why the case was dismissed, because it was set
24  aside.
25      Q   But it says "Dismissed," does it not?

Page 104

1        A    Yes.

2        Q    And if you turn to Exhibit 17, page 228 --

3        A    Exhibit 17?  Oh, that's -- 228?  There it is.

4    Okay.  I have 228 in front of me.

5        Q    And this is the Texas terminology page, is it

6    not?

7        A    That's correct.

8        Q    And that's from the FBI binder or the NICS

9    binder?

10       A    Yes, that's correct.

11       Q    And there's a definition for "Dismissed,"

12   right?  Their definition of terminology, this is the

13   final disposition.

14       A    Okay.  Did you read the set-aside section?

15       Q    I'm asking you, does it not -- does it not say

16   this is a final disposition under the definition of

17   terminology?

18       A    Yes, it does.

19       Q    Under the application of terminology, where it

20   says "Dismissed," it says "This is not a conviction"; is

21   that correct?

22       A    That's correct.

23       Q    So under the Texas terminology page, the term

24   "dismissed" means it's not a conviction, correct?

25       A    Correct.

```
 1        Q   But you're saying that you go beyond that?
 2        A   Well, the provision -- I would look under --
 3    under his record, it says "set-aside."  So I wouldn't
 4    look under "dismissed."  I would look under what "set
 5    aside" says first.
 6        Q   Okay.  So turn to page AGO LINTON 231.
 7        A   Okay.
 8        Q   It says "set-aside," right?
 9        A   Correct.
10        Q   And then application of terminology, this is
11    not a conviction, right?
12        A   Correct.
13        Q   So what is it -- so you're cross-referencing
14    the NICS binder, looking at Texas terminology.  But
15    under both -- as a definition of both "dismissed" and
16    "set-aside," the application of terminology says this is
17    not a conviction, right?
18        A   That's correct.
19        Q   So is it not a conviction?
20        A   It may not be a conviction in Texas, but in
21    California, we wouldn't honor that Texas --
22        Q   Why -- why do you -- looking at these
23    definitions, do you still have the opinion that
24    Mr. Jones is prohibited in California?
25        A   Yes.
```

Page 106

1       Q   Based on what?

2       A   Based on either 29800 or the restoration of

3   rights.

4       Q   So why do you consult with the -- why do you

5   consult the NICS binder at all?   The NICS binder is

6   actually irrelevant, isn't it?

7           MS. ONYEAGBAKO:   Objection.   Vague,

8   foundation.

9   BY MR. LEE:

10      Q   You can answer.

11      A   Oh, okay.   Sometimes.   We only use it for

12  reference.   It's only reference material.

13      Q   But it's a useless -- it's meaningless -- it's

14  a meaningless reference exercise, isn't it?

15          MS. ONYEAGBAKO:   Objection.   Foundation,

16  vague.

17  BY MR. LEE:

18      Q   You can answer.

19      A   Technically, I wouldn't say it wasn't a

20  meaningless reference page.

21      Q   You wouldn't say that it wasn't?   I'm sorry.

22      A   Meaning -- okay.   It's not a meaningless page.

23  How's that?

24      Q   You say you consult this NICS binder to look

25  at the state terminology.   But the state terminology in

Page 107

1    both instances says that it's not a conviction, right?

2         A    Okay.  Then --

3         Q    Do you agree?

4         A    I agree.  Okay.

5         Q    So why even consult the Texas terminology page

6    in the first place if it doesn't really mean anything?

7              MS. ONYEAGBAKO:  Will you allow the witness

8    to -- you cut him off.  Allow him to finish his answer.

9              THE WITNESS:  Because based on this Texas

10   terminology page, I would look at this page, then I

11   would look under the page where -- about firearms and

12   restoration and how an individual could restore his gun

13   rights in Texas.

14             And if you look at that one page under -- on

15   the very top, it says the only -- restoration of rights

16   or, you know, gun rights restored in Texas is a

17   presidential pardon.

18   BY MR. LEE:

19        Q    You mean gubernatorial pardon?

20        A    Or presidential pardon.  That's what it says

21   on the top of the -- the pardons and restoration page.

22        Q    Does the President of the United States even

23   have the ability to pardon state offenses?

24             MS. ONYEAGBAKO:  Objection.  Calls for a legal

25   conclusion.  The witness is not a lawyer.

                                             Page 108

```
1    that we follow for anybody that buys a firearm in state
2    or out of state.
3            Q   But the thing that you go through to -- you
4    said you looked at the Texas terminology page to look at
5    what it means to be dismissed or what it means to be set
6    aside.
7                But neither of that matters, right?  I mean,
8    it doesn't matter because it's not -- it doesn't matter
9    what the definition of "set aside" or "dismissed" means
10   because you're going to apply your own -- you're going
11   to apply 29800 no matter what, right?
12           A   That's correct.
13           Q   And if it's a conviction, it's a conviction,
14   right?
15           A   Correct.
16           Q   And even under Texas terminology, if Texas
17   considers the set-aside not to be a conviction, then
18   that doesn't matter, right?
19           A   That's correct.
20           Q   And if Texas determines or deems a dismissal
21   to be not a conviction, that doesn't matter, either,
22   right?
23           A   That's correct.
24           Q   So really, Texas terminology doesn't matter at
25   all.  It's just simply applying 29800.
```

Page 110

1              MS. ONYEAGBAKO:   Objection.   Misstates the

2    witness's testimony.

3    BY MR. LEE:

4         Q    Is that fair?

5         A    That's fair.

6              Mr. Lee, can you look at page 235?   Oh, wait.

7    Excuse me.   236.   Page 236.

8              I'm reading -- this is under the section "How

9    are firearm rights restored in Texas for felony

10   offenses?   Are they restored automatically?   By Texas

11   constitution?   By court order?"

12             "A governor's pardon is the only avenue to

13   restore firearm rights."

14             I can go by that to determine if he's eligible

15   or not.   If I read that statement, so they're telling me

16   only a governor's pardon could restore firearm rights.

17        Q    That's what -- is that what you're relying

18   on to determine that the only way to restore his firearm

19   rights is by a governor's pardon?

20        A    That's what's on one of the Texas State pages,

21   so I'm assuming that's the only way to restore his

22   firearm rights.

23        Q    But the next sentence, doesn't it say that

24   "Convictions set aside under Texas Code of Criminal

25   Procedure, Article 42.12, Section 20, removes the

Page 111

1    penalties and disabilities of the conviction"?

2         A    What -- what penalties does it say -- does it

3    remove his firearm rights?   It specifically has to say

4    that.

5         Q    It removes the penalties and disabilities of

6    the conviction.   Isn't that what it says?

7         A    Yes.

8         Q    Isn't that under the heading of this -- of the

9    section that says "How are firearm rights" -- underlined

10   "firearm rights" -- "restored in Texas for felony

11   offenses"?

12        A    Correct.

13        Q    Does this section not seem to refer to the

14   removal of penalties and disabilities related to firearm

15   rights?

16        A    You could say that.

17        Q    Well, you're --

18        A    Which is correct?   Is a governor's pardon the

19   only way or is the restoration of rights -- even if it's

20   a restoration of rights, we wouldn't honor it.

21             The Texas code removes the penalties and

22   disabilities of the conviction.   Wouldn't that be

23   similar to a restoration of rights?

24        Q    Well, a pardon doesn't -- a pardon -- I mean,

25   look, I don't mean to argue with you.   I know you're not

Page 112

1    a lawyer.

2           But if a conviction is set aside under Texas

3    law and it is no longer a conviction, then that removes

4    the penalties and disabilities of the conviction.

5           That's what this says, right?

6       A   Correct.

7       Q   And you're supposed to rely on all of this

8    together, right?  You're not supposed to look for the

9    most restrictive --

10      A   Right.

11      Q   -- interpretation.  You're supposed to look at

12   it the most -- the most fairly and even-handedly way you

13   can, right?

14      A   That is correct.

15      Q   So in some instances, a pardon doesn't remove

16   the fact of the conviction.  It simply says that the

17   person is -- is pardoned from any punishment from the

18   conviction.  But I don't think that anyone is quarreling

19   that the conviction never occurred, right?

20      A   That's correct.

21      Q   But under Texas law, at least according to the

22   terminology page, it's deemed not to be a conviction if

23   it's set aside or dismissed.

24          Would you agree?

25      A   I would agree.

Veritext Legal Solutions
866 299-5127

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were administered an oath; that a record of

7    the proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11         Further, that if the foregoing pertains to the

12   original transcript of a deposition in a Federal Case,

13   before completion of the proceedings, review of the

14   transcript [x] was [ ] was not requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee of

17   any attorney or any party to this action.

18         IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated: this 12 day of June, 2020.

22
                    *Carla Soares*
23

24                  CARLA SOARES

25                  CSR No. 5908

                                          Page 119

LEE EXHIBIT B

1   XAVIER BECERRA
Attorney General of California
2   ANTHONY R. HAKL
Supervising Deputy Attorney General
3   MAUREEN C. ONYEAGBAKO
Deputy Attorney General
4   State Bar No. 238419
   1300 I Street, Suite 125
5   P.O. Box 944255
Sacramento, CA 94244-2550
6   Telephone: (916) 210-7324
Fax: (916) 324-8835
7   E-mail: Maureen.Onyeagbako@doj.ca.gov
*Attorneys for Defendants Xavier Becerra, in*
8   *his official capacity as Attorney General of*
*California, Brent E. Orick, in his official*
9   *capacity as Acting Chief for the Department*
*of Justice Bureau of Firearms, and Robert D.*
10   *Wilson, in his official capacity as Deputy*
*Attorney General*

11

## IN THE UNITED STATES DISTRICT COURT

12

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14

15

| | |
|---|---|
| 16   **CHAD LINTON, et al.,** | 3:18-cv-7653-JD |
| 17             Plaintiffs, | **DEFENDANTS' RESPONSES TO** |
| | **PLAINTIFFS' FIRST SET OF** |
| 18    **v.** | **REQUESTS FOR ADMISSIONS** |
| 19 | |
| 20   **XAVIER BECERRA, in his official** | |
|    **capacity as Attorney General of** | |
| 21   **California, et al.,** | |
| 22             Defendants. | |

23

| | |
|---|---|
| **RESPONDING PARTY:** | Plaintiffs Linton, Stewart, and Jones |
| **PROPOUNDING PARTY:** | Defendants Becerra, Orick, and Wilson |
| **SET NUMBER:** | One |

24

25

26

27

28

1   **REQUEST FOR ADMISSION NO. 1:**  The ORDER ON MOTION RE:

2   VACATING RECORD OF FELONY CONVICTION GRANTED (ORVCJG),

3   issued by the Superior Court of the State of Washington, Island County, on

4   March 21, 2016, a certified copy of which is attached as Exhibit 001, is genuine.

5   **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**  Defendants are

6   unable to admit or deny this request.  They have no reason to doubt the genuineness

7   of a certified document, but because they do not work for the Superior Court of the

8   State of Washington, they lack sufficient information to admit or deny the

9   genuineness of Exhibit 001.

10   **REQUEST FOR ADMISSION NO. 2:**  The RCW 9.41.040(4) ORDER

11   RESTORING RIGHT TO POSSESS FIREARMS issued by the Superior Court of

12   the State of Washington, Island County, on April 18, 2016, a certified copy of

13   which is attached hereto as Exhibit 002, is genuine.

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**  Defendants are

15   unable to admit or deny this request.  They have no reason to doubt the genuineness

16   of a certified document, but because they do not work for the Superior Court of the

17   State of Washington, they lack sufficient information to admit or deny the

18   genuineness of Exhibit 002.

19   **REQUEST FOR ADMISSION NO. 3:**  The ORDER issued by the Superior

20   Court of Yuma County, Arizona, on August 11, 2016, a certified copy of which is

21   attached hereto as Exhibit 003, is genuine.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**  Defendants are

23   unable to admit or deny this request.  They have no reason to doubt the genuineness

24   of a certified document, but because they do not work for the Superior Court of the

25   State of Yuma County, Arizona, they lack sufficient information to admit or deny

26   the genuineness of Exhibit 003.

27   / / /

28   / / /

2

1    **REQUEST FOR ADMISSION NO. 4:**  The FULL TERMINATION

2    ORDER OF THE COURT DISMISSING THE CAUSE issued by the Criminal

3    District Court of Harris County, Texas, on August 22, 1983, a certified copy of

4    which is attached hereto as Exhibit 004, is genuine.

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 4:** Defendants are

6    unable to admit or deny this request.  They have no reason to doubt the genuineness

7    of a certified document, but because they do not work for the Criminal District

8    Court of Harris County, Texas, they lack sufficient information to admit or deny the

9    genuineness of Exhibit 004.

10   **REQUEST FOR ADMISSION NO. 5:**  All of the individual plaintiffs,

11   Linton, Stewart and Jones, are eligible to own and possess firearms under federal

12   law, pursuant to 18 U.S.C. § 921(a)(20).

13   **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**  Defendants object

14   to this request as compound because it asks about the eligibility of three different

15   individuals.  Subject to and without waiving the foregoing objection, Defendants

16   are unable to admit or deny this request.  A determination of Plaintiffs' federal

17   eligibility was unnecessary because of the prohibition imposed under California

18   Penal Code § 29800.

19   **REQUEST FOR ADMISSION NO. 6:**  None of the individual plaintiffs,

20   Linton, Stewart and Jones, is prohibited from owning and possessing firearms

21   under federal law, pursuant to 18 U.S.C. § 921(a)(20).

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**  Defendants object

23   to this request as compound because it asks about the status of three different

24   individuals.  Subject to and without waiving the foregoing objection, Defendants

25   are unable to admit or deny this request.  A determination of Plaintiffs' federal

26   eligibility was unnecessary because of the prohibition imposed under California

27   Penal Code § 29800.

28

1   **REQUEST FOR ADMISSION NO. 7:**  The DEPARTMENT's

2   ""Background Clearance Unit DROS Procedures" memorandum, attached hereto as

3   Exhibit 005 (hereinafter, "DROS Procedures Memorandum") is genuine.

4   **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**  To the extent that

5   Exhibit 005 consists of the pages marked AGO_LINTON_078 through 094,

6   Defendants deny that the document is a memorandum and admit that the document

7   is genuine.

8   **REQUEST FOR ADMISSION NO. 8:**  The DROS Procedures

9   Memorandum (Exhibit 005) describes the process by which the DEPARTMENT is

10   to determine whether persons are clear to purchase firearms within the State of

11   California using the Dealer Record of Sale (DROS) system.

12   **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**  Deny.  The

13   document marked AGO_LINTON_078 through 094 does not describe a process

14   but, rather, reflects the law governing eligibility for firearms in the State of

15   California.  Defendants also deny that the document is a memorandum.

16   **REQUEST FOR ADMISSION NO. 9:**  The DROS Procedures

17   Memorandum (Exhibit 005, the original of which may include all of the

18   attachments) is the only document constituting the DEPARTMENT's written

19   policy in denying out-of-state former felons the ability to purchase and/or possess

20   firearms possession in the State of California when those felony convictions have

21   been set aside or vacated in their respective states of origin.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**  Defendants object

23   to this request as compound because it asks about felony convictions that have been

24   vacated or set aside.  Defendants deny that Exhibit 005 is a memorandum and deny

25   that it constitutes a "policy."

26   ///

27   ///

28   ///

4

1   **REQUEST FOR ADMISSION NO. 10:** Aside from the DROS Procedures

2   Memorandum (Exhibit 005, the original of which may include all of the

3   attachments) there is no written policy of the DEPARTMENT as to treatment of

4   out-of-state felony convictions that have been vacated, set aside, or dismissed in

5   their respective states of origin.

6   **RESPONSE TO REQUEST FOR ADMISSION NO. 10:** Defendants

7   object to this request as compound because it asks about felony convictions that

8   have been vacated, set aside, or dismissed.  Subject to and without waiving the

9   foregoing objection, and to the extent the requests seeks information about a written

10  policy related to the possession of firearms, Defendants deny that Exhibit 005 is a

11  memorandum and deny that Exhibit 005 constitutes a "policy."  Penal Code

12  § 29800 serves as the guiding principle on treatment of out-of-state felony

13  convictions and possession of firearms in California.

14  Dated: January 13, 2020                          Respectfully submitted,

15                                                   XAVIER BECERRA
16                                                   Attorney General of California
                                                     ANTHONY R. HAKL
17                                                   Supervising Deputy Attorney General

18                                                   *Maureen Onyeagbako*

19                                                   MAUREEN C. ONYEAGBAKO
20                                                   Deputy Attorney General
                                                     *Attorneys for Defendants Xavier*
21                                                   *Becerra, in his official capacity as*
                                                     *Attorney General of California, Brent*
22                                                   *E. Orick, in his official capacity as*
                                                     *Acting Chief for the Department of*
23                                                   *Justice Bureau of Firearms, and*
                                                     *Robert D. Wilson, in his official*
24                                                   *capacity as Deputy Attorney General*

    SA2019100119
25  14307754.docx

26

27

28

Defendants' Responses to Plaintiffs' First Set of Requests for Admissions  (3:18-cv-7653-JD)

## DECLARATION OF SERVICE BY E-MAIL and U.S. Mail

Case Name:   **Linton, Chad, et al v. Xavier Becerra**
No.:         **3:18-cv-7653-JD**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On January 13, 2020, I served the attached **DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION** by transmitting a true copy via electronic mail. In addition, I placed a true copy thereof enclosed in a sealed envelope, in the internal mail system of the Office of the Attorney General, addressed as follows:

George M. Lee
Seiler Epstein, LLP
275 Battery Street, Suite 1600
San Francisco, CA 94111
**E-mail**: gml@seilerepstein.com

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 13, 2020, at Sacramento, California.

| Eileen A. Ennis | _Eileen A Ennis_ |
|-----------------|------------------|
| Declarant       | Signature        |

SA2019100119
14346601.docx

LEE EXHIBIT C

 

# Background Clearance Unit
# DROS Procedures

---

### Basic Firearms Eligibility Check

A Basic Firearms Eligibility Check (BFEC) is run on all subjects that are processed in the California Firearms Information System (CFIS) and DROS. Any record(s) that may possibly match that individual will require review by the analyst.

The BFEC process searches the following databases for possible prohibiting records:

**CHS** – Criminal History System (California)

**MHFPS/Ref File** – Mental Health Firearms Prohibition System / Reference File

**NICS/III/FBI** – National Instant Gun Check System / Interstate Identification Index / Federal Bureau of Investigation

**ICE** – Immigration and Customs Enforcement

**WPS/SRF/DVROS** – Wanted Persons System/Supervised Release File/Domestic Violence Restraining Order System

**DMV** – Department of Motor Vehicles

---

**Exhibit**

**5**

Matsumoto 6/5/20

---



# Background Clearance Unit
# DROS Procedures



## Overview

The analyst should become familiar with the following:

- PC 29805 (known as 12021 PC prior to 2012)
- PC 29905 (known as 12021.1 PC prior to 2012)
- PC 23515 (known as 12001.6 PC prior to 2012)
- PC 1203.073 (Felony Dangerous Drugs)
- WIC 707(B) (Juveniles)
- WIC 8100 (Mental Health)
- Title 18 USC 922 (Federal)
- Knowing the difference between infractions, misdemeanors, and felonies
- Able to read and understand a CII rapsheet and FBI rapsheet
- Able to read a court disposition



# Background Clearance Unit
# DROS Procedures



## Interpreting Criminal Records

**Felony Convictions**

A conviction constitutes a felony (PC 17) if the defendant received:

- State Prison
- State Prison suspended
- Proceedings suspended
- Probation
- Probation and jail, and jail was not suspended
- Sentencing to Youth Authority out of Superior Court and was later committed to State Prison; or
- If conviction is a straight felony or one of the prohibiting misdemeanors pursuant to 12021(c)(1) PC, a release from California Youth Authority (CYA) pursuant to W&I 1772 does not restore eligibility to purchase or possess a firearm

*A "wobbler" is any offense punishable by the court's discretion as a misdemeanor or felony.*

**Conviction of a "wobbler" constitutes a misdemeanor if:**

- Judgment imposes a punishment other than State Prison
- Judgment imposes County Jail only
- Judgment imposes County Jail, suspended and probation is given
- Judgment imposes 365 days jail or subject received jail time and all or part of the jail time had been suspended
- Court commits defendant to the Youth Authority and declares offense to be a misdemeanor (person is still prohibited is misdemeanor offense listed in 12001.6 or 12021.1 PC)
- Court grants probation without imposition of sentence (actual sentencing) and at that time or thereafter, declares conviction to be a misdemeanor
- Probation is granted and court declared the conviction to be a misdemeanor
- Defendant is committed to Youth Authority and then paroled (still prohibited if misdemeanor offense is listed in 12001.6 or 12021.1 PC); or
- Juvenile court decided case. However, subject is prohibited if conviction is listed under 707(b) WIC, an offense described in Section 1203.073(b) PC or any offense enumerated in 12021(c)(1) OC and the person is under age 30

**Conviction of a "wobbler" constitutes a felony if:**

- Defendant received probation only and the court did not declare offense to be a misdemeanor
- Defendant received probation and county jail as condition of probation; or
- Judgment imposes State Prison or State Prison suspended

**Other States**

The laws of that particular state where the conviction occurred apply. If, for example, the conviction was a felony in a given state and at a given time, the DOJ considers it as a prohibition pursuant to PC Section 12021(a)(1). However, when in doubt, consult with a supervisor.




# Background Clearance Unit
# DROS Procedures

## Federal Law

Pursuant to Federal Law, an offense punishable by death or imprisonment exceeding one year is a felony (US Code, Title 18, Section 1). The actual sentence given does not alter this; however, PC 12021 firearms prohibition only applies if:

- A conviction of a like offense under California Law can only result in imposition of felony punishment;
- Or the defendant was sentenced to a Federal correctional facility for more than 30 days, received a fine of more than $1,000, or received both such punishments (PC Sections 12021(b)(1) and (2)). However, when in doubt, consult with a supervisor.

## US Military Offenses

An offense punishable by death or imprisonment exceeding one year is a felony (Refer to Articles of War). The actual sentence given does not alter this.

Subjects with the following types of military discharges are firearms prohibited:

- Dishonorable Discharge
- A bad conduct discharge (BCD) would depend on the charge and the punishment for that offense. Consult with a supervisor for any subject with BCD.

## Other Countries

In the Supreme Court ruling of *US v. Bean*, foreign felony convictions cannot be used to prohibit firearm acquisition or possession.

## Subsequent Action – California Law

A dismissal pursuant to PC Section 1203.4 *does not restore* the right to possess firearms unless dated prior to 09/15/1961.

A dismissal action pursuant to PC Section 1203.4(a) restores the person's right to possess a firearm only if jail time was imposed on a misdemeanor conviction and the offense is not listed in PC Section 12021.1 or a misdemeanor conviction for domestic violence (273.5 or 243(e)(1) PC).

A reduction to a misdemeanor pursuant to PC Section 17 restores the person's right to possess a firearm. Exceptions are misdemeanor convictions listed under PC Sections 12001.6, 12021(c)(1) and 12021.1.

A straight felony conviction cannot be reduced to a misdemeanor pursuant to PC 17. If unsure about any PC 17 reductions, consult a supervisor.

A dismissal action pursuant to WIC Section 1772 granted after the release from CYA does not restore the right to possess firearms if the conviction was for a straight felony or a misdemeanor that would prohibit possession (California Court decision 12/87). **See Attachment 1**

A dismissal action granted pursuant to WIC Section 3200, does not restore the right to possess firearms (Opinion CR76/31/I/L, DAG Adler, 09/15/1976). **See Attachment 2**

Conviction of a felony, the record of which is subject to destruction pursuant to H&S Code Section 11361.5(b) does not bar firearm possession (Refer to Opinion No. 80-411, DAG Dobson, 06/10/1980). **See Attachment 3**

## Pardons – California Law

A California Governor's Pardon restores the right to possess firearms, but must include a Certificate of Rehabilitation pursuant to PC Section 4852.17 or Restoration of Firearms Rights pursuant to PC Section 4854.

Firearms rights are not restored if the felony involved the use of a Dangerous Weapon pursuant to PC Sections 4852.17 and 4854.



# Background Clearance Unit
# DROS Procedures



### Pardons / Civil Liability Relief – Other States

A person convicted of a felony in another state who has a governor's pardon from that state is prohibited from possessing a firearm in California, unless the pardon expressly restores the right to receive and possess firearms. Rights are not restored if the conviction involved the use of a dangerous weapon (AG Opinion No. 82-801, 10/13/1983). **See Attachment 4**

A person convicted of a felony in another state whose civil disabilities were removed under the laws of that state (similar to PC Section 12023.4) is prohibited from possessing handguns in California (AG Opinion No. 67-100. DAG Winkler, 07/26/1967). **See Attachment 5**

### Pardons and Grants of Relief – Federal

A person convicted of a felony under US statutes who has received a Presidential Pardon is eligible to possess firearms (Supreme Court decision Bradford v. Cardoza (19187) 195 Cal. App. 3d 361). **See Attachment 6**

A person convicted of a felony by the State of California, another state, or the Federal Government, who has received a grant of relief of disability from the BATF pursuant to Title 18, US Code, Section 925(c) is prohibited from possessing a firearm (Opinion No. CR72/63, DAG Chock, 04/03/1973). **See Attachment 7**

Under Title 18 US Code Section 5024, California is required to recognize expungement of a youthful offender's conviction pursuant to Title 18 US Code 5021. A person who has received such expungement may possess firearms in California (Opinion No. CR72/63, DAG Chock, 04/03/1973, also E. Bauer's Memo dated 02/28/1977). **See Attachment 8**

### Other Denial Categories By Department Policy

Department Policy is to deny firearm purchases to any person who:

- Has made threats against the President of the United States or another elected official.
- When the purchaser or receiver identified on the DROS form answers YES to any of the questions on the DROS form, that person is deemed ineligible to purchase or receive that firearm, even if no record exists. **See Attachment 9**

### Mental Health Denial Categories:

- A person in any of the following categories is statutorily prohibited from purchasing firearms if he or she is:
- A mental patient in a hospital or institution (WIC 8103)
- A mental patient on leave of absence from a hospital or institution (WIC 8103)
- A person adjudicated by the court to be a danger to self or others as a result of mental disorder or mental illness, after 10/01/1955, and if the person was not issued a Certificate of Relief (WIC 8103)
- A person placed under a conservatorship (WIC 8103)
- A person who is a mentally disordered sex offender (WIC 8103 and 6300)
- A person found by the court to be mentally incompetent to stand trial pursuant to PC Sections 1370 and 1370.1 or the law of any state or the United States
- A person who was admitted or certified under WIC 5150 is firearms *prohibited for 5 years* from the date of release; and
- A person who was admitted or certified under a WIC 5250, 5260, 5270.15 is firearms *prohibited for life* (pursuant to 18 USC, 922(d)(4))

### Persons in the following categories are prohibited from purchasing firearms pursuant to Department policy:

- A person who has threatened the President of the United States or another elected official. If the Background Clearance Unit has documents on file indicating a person is in this category, the individual will be denied a firearms purchase; and
- A person who was reported to the DOJ as a mental patient or former mental patient pursuant to WIC Section 8105.

DROS 1
August 2015
Interpreting Criminal Records
009
Page 3 of 3
AGO_LINTON_082

AGO_LINTON_083

STATE OF CALIFORNIA



OFFICE OF THE ATTORNEY GENERAL

Department of Justice

110 WEST A STREET, SUITE 600
SAN DIEGO, CALIFORNIA 92101

September 15, 1976

IL __76__ - _184_

~~Formerly~~ CR. _76/31  IL_

Mr. J. J. Enomoto
Director
Department of Corrections
714 P Street
Sacramento, California 95814

Re:  Opinion No. CR 76/31 I/L

Dear Mr. Enomoto:

In your letter of June 8, 1976, you requested
our opinion on the following:

"What guidance may the department give to a
person who successfully completes a course of
rehabilitation at the California Rehabilitation
Center when the criminal charges underlying the
commitment to the Center are dismissed pursuant
to Welfare and Institutions Code Section 3200
regarding the person's right to respond that he
or she has not been convicted of a felony and
regarding any disabilities that may remain?"

CONCLUSION

Welfare and Institutions Code section 3200 and
Penal Code section 1203.4 neither expressly permit
expungement of a criminal record nor affect the fact a
conviction was suffered.  A grant of relief under either
Welfare and Institutions Code section 3200 or Penal Code
section 1203.4 removes all penal and quasi-penal
disabilities but affects no others.  Therefore, these
sections do not authorize one granted relief to deny he
has been convicted of a felony.

DROS 1

AGO_LINTON_084

NOT TO BE PUBLISHED IN OFFICIAL REPORTS
NOR TO CONSTITUTE A PUBLIC RECORD UNDER
THE CALIFORNIA PUBLIC RECORDS ACT

OFFICE OF THE ATTORNEY GENERAL
State of California

GEORGE DEUKMEJIAN
Attorney General

--------------------------------

|  | |  |
|---|---|---|
| OPINION | : | |
| of | : | No. 80-411 |
| GEORGE DEUKMEJIAN | : | JUNE 10, 1980 |
| Attorney General | : | |
| PAUL H. DOBSON | : | |
| Deputy Attorney General | : | |

-----------------------------------------------------------------

NELSON KEMPSKY, DIRECTOR, DIVISION OF LAW ENFORCE-
MENT, DEPARTMENT OF JUSTICE, has requested an opinion on a
question which we have phrased as follows:

May a person who has been convicted of a felony,
the record of which is subject to destruction pursuant to
Health and Safety Code section 11361.5, subdivision (b),
purchase or possess a concealable handgun?

### CONCLUSION

A person convicted of a felony, the record of which
is subject to destruction pursuant to the provisions of
Health and Safety Code section 11361.5, subdivision (b), may
purchase or possess a concealable handgun.

### ANALYSIS

It is unlawful for a person convicted of a felony
to possess any pistol, revolver or other firearm capable
of being concealed upon the person. (Pen. Code, § 12021.)
It is also unlawful for any person to sell such a handgun
to any person whom the seller has cause to believe to be
a convicted felon. (Pen. Code, § 12072.)

Health and Safety Code section 11361.5 provides
for the destruction of the arrest and conviction records
of certain marijuana offenses. This section reads in

TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

OPINION
                                         :
of                                       :        No. 82-801
                                         :
JOHN K. VAN DE KAMP                      :        OCTOBER 13, 1983
Attorney General                        :
                                         :
JACK R. WINKLER                          :
Assistant Attorney General              :

------------------------------------------------------------

THE HONORABLE GEORGE DEUKMEJIAN, GOVERNOR OF CALIFORNIA, has requested an opinion on these questions:

1. Does a presidential pardon of a federal felony conviction restore the recipient's privilege to possess concealable firearms in California?

2. Does a pardon by the governor of another state of a felony conviction in that state restore the recipient's privilege to possess concealable firearms in California?

CONCLUSIONS

1. A full and unconditioned presidential pardon of a federal felony issued before June 19, 1968, restores the recipient's privilege to possess concealable firearms in California. A presidential pardon of a federal felony issued after June 19, 1968, does not restore the recipient's privilege to possess concealable firearms in California unless it expressly restores such privilege or is accompanied by an authorization to receive and possess firearms in commerce.

2. A pardon by the governor of another state of a felony conviction in that state does not restore the recipient's privilege to possess concealable firearms in California if the felony pardoned involved use of a dangerous weapon or for pardons of other felonies if the pardon does not expressly restore the recipient's privilege of possessing concealable firearms.

1.

OCW

## OFFICE OF THE ATTORNEY GENERAL
### State of California

#### THOMAS C. LYNCH
#### Attorney General

------------------

OPINION

of

THOMAS C. LYNCH
Attorney General
JACK R. WINKLER
Deputy Attorney General

:
:
:
:
:
:
:
:
:
:

No. 67/100

JUL 2 6 1967

--------------------------------

THE HONORABLE JOSEPH L. HEENAN, DISTRICT ATTORNEY OF
YUBA COUNTY, has requested an opinion on the following question:

May a Nevada felon, whose civil disabilities under
Nevada law were removed in 1959 following his release from a
Nevada prison, lawfully own or possess a concealable firearm in
California?

The conclusion is:

Section 12021 of the California Penal Code prohibits
ownership or possession of a concealable firearm in California
by a Nevada felon whose civil disabilities under Nevada law
were removed in 1959.

**Attachment 5**

AGO_LINTON_087

AG_LINTON_088

3.  A person convicted by either the State of California, a sister state, or the federal government, who has received a grant of relief issued pursuant to 18 U.S.C. 925(c) is prohibited from possessing a concealable firearm by Penal Code section 12021.

## ANALYSIS

Subdivision (a) of Penal Code[1]/section 12021 states in relevant part that:

> "Any person . . .who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, . . .who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense. . . ."

Subdivision (b) of section 12021 provides an exception to the operation of subdivision (a) to persons convicted under the laws of the United States.  It states that:

> "Subdivision (a) shall not apply to a person who has been convicted of a felony under the laws of the United States unless:  (1) Conviction of a like offense under California law can only result in imposition of felony punishment; or (2) The defendant was sentenced to a federal correctional facility for more than 30 days, or received a fine of more than one thousand dollars ($1,000), or received both such punishments."

Section 12021 by its express terms is applicable to one "who has been convicted of a felony."  It does not provide for the exclusion of pardoned felons from its operation.

---

1.  All section references are to the California Penal Code, unless otherwise specified.

Attachment 7

AGO_LINTON_089

of California

Department of Justice

# Memorandum

Date:   February 28, 1977

From  :  **Bureau of Identification**

Subject:  Federal Youth Corrections Act

The following information was obtained from Deputy Attorney General
Nancy Sweet as a result of questions to her.



EARL P. BAUER, Section Manager
Special Services

EB:at

Attachment 8

017

AGO_LINTON_090



AG_LINTON_091



# Background Clearance Unit
# DROS Procedures



---

### Firearms Prohibiting Categories

**State and federal law make it unlawful for certain persons to own and/or possess firearms, including:**

- Any person who is convicted of a felony, or any offense enumerated in Penal Code Sections 29900 or 29905 *(PC 12021.1)*

- Any person who is ordered to not possess firearms as a condition of probation or other court order listed in Penal Code section 29815, subdivision (a) and (b)

- Any person who is convicted of a misdemeanor listed in Penal Code section 29805 (refer to list of prohibiting misdemeanors*) (PC 12021(c)(1))*

- Any person who is adjudged a ward of the juvenile court because he or she committed an offense listed in Welfare and Institution Code (WIC) section 707(b), an offense described in Penal Code section 1203.073(b), or any offense enumerated in Penal Code section 29805 *(PC 12021(c)(1))*

- Any person who is subject to a temporary restraining order or an injunction issued pursuant to Code of Civil Procedures sections 527.6 or 527.8, a protective order as defined in Family Code section 6218, a protective order issued pursuant to Penal Code sections 136.2 or 646.91, or a protective order issued pursuant to WIC section 15657.03

- Any person who is found by a court to be a danger to himself, herself, or others because of mental illness

- Any person who is found by a court to be mentally incompetent to stand trial

- Any person who is found by a court to be not guilty by reason of insanity

- Any person who is adjudicated to be a mentally disordered sex offender

- Any person who is placed on a conservatorship because he or she is gravely disabled as a result of a mental disorder, or an impairment by chronic alcoholism

- Any person who communicates a threat to a licensed psychotherapist against a reasonably identifiable victim, that has been reported by the psychotherapist to law enforcement

- Any person who is taken into custody as a danger to self or others under WIC 5150, assessed under WIC section 5151, and admitted to a mental health facility under WIC sections 5151, 5152, or certified under WIC 5250, 5260 and 5270.15

- Any person who is addicted to the use of narcotics (state and federal)

- Any person who is under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year (federal)

- Any person who has been discharged from the military under dishonorably conditions (federal)

- Any person who is an illegal alien (federal)

- Any person who has renounced his or her US Citizenship (federal)

- Any person who is a fugitive from justice (federal)

**Note: Penal Codes in *italics* were used prior to 2012**

---



# Background Clearance Unit
# DROS Procedures



### Firearms Prohibiting Categories

**Firearm prohibitions for misdemeanor violations of the offenses listed below are generally for ten years from the date of conviction, but the duration of each prohibition may vary. All statutory references are to the California Penal Code, unless otherwise indicated.**

- Threatening public officers, employees, and school officials (PC 71)
- Threatening certain public officers, appointees, judges, staff, and their families with the intent and apparent ability to carry out the threat (PC 76)
- Intimidating witnesses or victims (PC 136.1)
- Possessing a deadly weapon with the intent to intimidate the witness (PC 136.5)
- Threatening witnesses, victims, or informants (PC 140)
- Attempting to remove or take a firearm from the person or immediate presence of a public or peace officer (PC 148(d))
- Unauthorized possession of a weapon in a courtroom, courthouse, or court building or at a public meeting (PC 171(b))
- Bringing into or possessing a load firearm within the state capitol, legislative offices, etc. (PC 171(c))
- Taking into or possessing loaded firearms within the Governor's Mansion or residence of other constitutional officers (PC 171(d))
- Supplying, selling, or giving possession of a firearm to a person for participation in criminal street gangs (PC 186.28)
- Assault (PC 240, 241)
- Battery (PC 242, 243)
- Sexual Battery (PC 243.4)
- Assault with a stun gun or taser weapon (PC 244.5)
- Assault with a deadly weapon other than a firearm, or with force likely to produce great bodily injury (PC 245)
- Assault with a deadly weapon or instrument; by any means likely to produce great bodily injury or with a stun gun or taser on a school employee engaged in performance of duties (PC 245.5)
- Discharging a firearm in a grossly negligent manner (PC 246.3)
- Shooting at an unoccupied aircraft, motor vehicle, or uninhabited building or dwelling house (PC 247)
- Inflicting corporal injury on a spouse or significant other (PC 273.5)**
- Willfully violating a domestic protective order (PC 273.6)
- Drawing, exhibiting, or using deadly weapons other than a firearm (PC 417 (a)(1) or (a)(2))
- Inflicting serious bodily injury as a result of brandishing (PC 417.6)

**\*\* A "misdemeanor crime of domestic violence" (18 U.S.C. §§ 921(a)(33)(A), 922(g)(2))**




# Background Clearance Unit
## DROS Procedures

- Making threats to commit a crime which will result in death or great bodily injury to another person (PC 422)
- Bringing into or possessing firearms upon or within public schools and grounds (PC 626.9)
- Stalking (PC 646.9)
- Armed criminal action (PC 25800) *(PC 12023)*
- Possessing a deadly weapon with intent to commit an assault (PC 17500) *(PC 12024)*
- Driver of any vehicle who knowingly permits another person to discharge a firearm from the vehicle or any person who willfully and maliciously discharges a firearm from a motor vehicle (PC 26100 (b) or (d)) *(PC 12034(b) or (d))*
- Criminal possession of a firearm (PC 25300) *(PC 12040)*
- Firearms dealer who sells, transfers, or gives possession of any firearm to a minor or a handgun to a person under 21 *(PC 27510) (PC 12072(b))*
- Various violations involving sales and transfers of firearms (PC 27590(c)) *(12072(g)(3))*
- Person or corporation who sells any concealable firearm to any minor *(PC 12100(a))*
- Unauthorized possession/transportation of a machine gun (PC 32625) *(PC 12220)*
- Possession of ammunition designed to penetrate metal or armor (PC 30315) *(PC 12320)*
- Carrying a concealed or loaded firearm or other deadly weapon or wearing a peace officer uniform while picketing (PC 830.95(a), 17510(a)) *(PC 12590)*
- Bringing firearm related contraband into juvenile hall (WIC 871.5)
- Bringing firearm related contraband into a youth authority institution (WIC 1001.5)
- Purchase, possession, or receipt of a firearm or deadly weapon by a person receiving in-patient treatment for a mental disorder, or by a person who has communicated to a licensed psychotherapist a serious threat of physical violence against an identifiable victim (WIC 8100)
- Purchase, possession, or receipt of a firearm or deadly weapon by a person who has been adjudicated to be a mentally disordered sex offender or found to be mentally incompetent to stand trial, or not guilty by reason of insanity, and individuals placed under conservatorship (WIC 8103)

**The following misdemeanor convictions result in a lifetime prohibition:**

- Assault with a firearm (PC 29800(a)(1), PC 23515 (a)) *(PC 12021(a)(1), 12001.6(2))*
- Shooting at an inhabited or occupied dwelling house, building, vehicle, aircraft, or camper (PC 246, 29800(a)(1), 17510, 23515(b)) *(PC 12021(a)(1), 12001.6(b))*
- Brandishing a firearm in the presence of a peace officer (PC 417(c) 23515(d), 29800(a)(1)) *(12001.6(d), 12021(a)(1))*
- Two or more convictions of PC 417(a)(2) (PC 29800(a)(2)) *(12021(a)(2))*

LEE EXHIBIT D

1   George M. Lee (SBN 172982)
        gml@seilerepstein.com
2   **SEILER EPSTEIN LLP**
    275 Battery Street, Suite 1600                          Linton v. Becerra
3   San Francisco, CA 94111                                     Exhibit 006
    Phone: (415) 979-0500
4   Fax:    (415) 979-0511

5   Attorneys for Plaintiffs
    CHAD LINTON, PAUL MCKINLEY STEWART,
6   KENDALL JONES, FIREARMS POLICY FOUNDATION,
    FIREARMS POLICY COALITION,
7   SECOND AMENDMENT FOUNDATION,
    CALIFORNIA GUN RIGHTS FOUNDATION and MADISON
8   SOCIETY FOUNDATION

9

10                          **UNITED STATES DISTRICT COURT**

11                          **NORTHERN DISTRICT OF CALIFORNIA**

12

13  CHAD LINTON, et al.,                    Case No. 3:18-cv-07653-JD

14          Plaintiffs,                     **FOURTH AMENDED NOTICE OF
                                            DEPOSITION OF THE CALIFORNIA
15                                          DEPARTMENT OF JUSTICE [FRCP 30(B)(6)]**
        vs.
16

17  XAVIER BECERRA, in his official capacity as
    Attorney General of California, et al.,
18                                                    ┌─────────────────┐
            Defendants.                               │     **Exhibit**     │
19                                                    │                 │
                                                      │       **6**       │
20                                                    │  Matsumoto 6/5/20 │
                                                      └─────────────────┘
21                          **NOTICE OF DEPOSITION**

22          TO ALL PARTIES, THROUGH THEIR COUNSEL OF RECORD:

23          PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

24  Procedure, plaintiffs Chad Linton, et al. ("plaintiffs") will take the deposition of the **CALIFORNIA**

25  **DEPARTMENT OF JUSTICE** ("DEPARTMENT") on the subject matters set forth below, commencing

26  on **Friday, June 5, 2020** at **9:00 a.m.** at the offices of SEILER EPSTEIN LLP, 275 Battery Street,

27  Suite 1600, San Francisco, CA 94111. Pursuant to the agreement of the parties, the deposition

28  will be conducted remotely via video teleconferencing.  If the deposition is not completed on the

SEILER EPSTEIN LLP
Attorneys at Law

1  date specified, the deposition shall continue from day to day, or to a date and time mutually

2  agreeable to the deponent(s), the parties, and their counsel, until completed.

3      FURTHER TAKE NOTICE that the deposition will be taken before a notary public or

4  other person authorized to administer oaths under applicable law, and will be conducted pursuant

5  to Fed. Rule of Civ. Pro. 30.  Pursuant to Rule 30(b)(3), the deposition testimony shall be

6  recorded using audio, audiovisual and stenographic means; plaintiffs reserve the right to use the

7  audio and video recordings of the deposition at the time of trial.

8

9  <u>SUBJECTS OF TESTIMONY</u>

10      Pursuant to Fed. Rule of Civ. Pro. 30(b)(6), the DEPARTMENT shall identify, designate,

11  and produce for deposition one or more officers, directors, managing agents or other person(s)

12  most knowledgeable to testify on its behalf with regard to the following subjects:

13      1.    The DEPARTMENT's policy or policies in denying out-of-state former felons the

14  ability to purchase and/or possess firearms in the State of California when those felony

15  convictions have been set aside or vacated in their respective states of origin;

16      2.    The DEPARTMENT's treatment and interpretation of out-of-state felony convictions

17  for purposes of determining whether a person is entitled to purchase or possess firearms in the

18  State of California;

19      3.    The DEPARTMENT's Background Clearance Unit's DROS procedures as set forth

20  in the document entitled "Background Clearance Unit DROS Procedures," produced as

21  AGO_LINTON_078 – AGO_LINTON_094;

22      4.    The DEPARTMENT's procedures regarding all criminal history checks for the

23  Dealer Record of Sale (DROS) system;

24      5.    The DEPARTMENT's interpretation of plaintiff CHAD LINTON's criminal history

25  in relation to his eligibility to purchase or possess firearms;

26      6.    The DEPARTMENT's denial of plaintiff CHAD LINTON's attempt to purchase

27  firearms;

28      7.    The DEPARTMENT's interpretation of plaintiff PAUL McKINLEY STEWART's

1    criminal history in relation to his eligibility to purchase or possess firearms;

2           8.      The DEPARTMENT's denial of plaintiff PAUL McKINLEY STEWART's attempt

3    to purchase firearms;

4           9.      The DEPARTMENT's interpretation of plaintiff KENDALL JONES's criminal

5    history in relation to his eligibility to purchase or possess firearms; and

6           10.     The DEPARTMENT's denial of plaintiff KENDALL JONES's application for a

7    Certificate of Eligibility (COE).

8                                              ■ ■ ■

9           Pursuant to Fed. Rules of Civ. Pro. 30(b)(2) and 34(a), the DEPARTMENT's deponent(s)

10   is/are requested to bring the following categories of documents for copying and inspection by the

11   noticing parties as follows.

12

13                                         DEFINITIONS

14          As used in this set of DOCUMENTS TO BE PRODUCED AT DEPOSITION, the following

15   definitions shall apply:

16          "DEPARTMENT" shall refer to the California Department of Justice, and all divisions,

17   bureaus, officials, officers, employees, investigators and agents working on its behalf, including

18   but not limited to: Attorney General Xavier Becerra, the Office of the Attorney General, the

19   Bureau of Firearms, the Background Clearance Unit, and all other subdivisions thereof.

20          "DOCUMENTS" shall refer to the term as used by FRCP(a)(1)(A), broadly defined to

21   include all media on which information is recorded or stored, including but not limited to: all

22   written typed, printed, recorded, tape-recorded, transcribed, graphic or other reproduced matter

23   or memorialization in any form pertaining to or describing, referring or relating to, directly or

24   indirectly, in whole or in part, the matter that is the subject of a particular request.  If unable to

25   be produced in hard copy form, then DOCUMENTS shall be produced in accessible form as

26   ELECTRONICALLY STORED INFORMATION.

27          "ELECTRONICALLY STORED INFORMATION" or "ESI" shall refer to the term as used by

28   FRCP(a)(1)(A), and shall include all DOCUMENTS, writings, drawings, graphs, charts,

SEILER EPSTEIN LLP
Attorneys at Law

NOTICE OF DEPOSITION OF CAL. DEPT. OF JUSTICE [FRCP 30(b)(6)] | CASE NO. 3:18-cv-07653-JD

1   photographs, sound recordings, images, and other data or data compilations stored in any

2   medium from which information can be obtained.  All ESI shall be produced in its original

3   native format, and otherwise in a usable format that is readily accessible and reviewable to the

4   requesting parties and their representatives.

5   "COMMUNICATIONS" shall refer to all DOCUMENTS and ESI consisting of and

6   memorializing communications between individuals, entities and/or departments of any kind,

7   including but not limited to: correspondence, letters, faxes, electronic mail messages (email),

8   instant text or paper messages, interoffice electronic messaging, memoranda, notes,

9   memorializations of conversations, and/or audio or video recordings of such communications.

10   "DROS" shall refer to Dealer Record of Sale.  *See*, 11 Cal. Code Regs. § 4001, et seq.

11

12   <u>DOCUMENTS TO BE PRODUCED AT DEPOSITION</u>

13   1.      All DOCUMENTS pertaining to plaintiff Chad Linton's criminal history and

14   information, which formed the basis of any denial by the DEPARTMENT for the

15   purchase/possession of firearms.

16   2.      All COMMUNICATIONS and correspondence with plaintiff Chad Linton, and/or his

17   legal representatives, that pertains, refers or relates to Mr. Linton's eligibility to purchase or

18   possess firearms in the State of California, and/or his status as an alleged prohibited person.

19   3.      All DOCUMENTS, including internal COMMUNICATIONS within the DEPARTMENT,

20   that refer or relate to plaintiff Chad Linton's eligibility to purchase or possess firearms in the

21   State of California.

22   4.      Any and all DOCUMENTS which defendant Robert D. Wilson specifically

23   consulted or relied upon in determining that plaintiff Chad Linton was ineligible to purchase or

24   possess firearms in the State of California.

25   5.      All DOCUMENTS reflecting or referring to the DEPARTMENT's Armed Prohibited

26   Persons System (APPS) enforcement operations undertaken as to and regarding plaintiff Chad

27   Linton, including but not limited to: all databases cross-referenced by APPS for firearm

28   association and prohibition determinations, reports of Mr. Linton's eligibility, COMMUNICATIONS

SEILER EPSTEIN LLP
Attorneys at Law

1  within the DEPARTMENT regarding Mr. Linton's eligibility to own firearms, and all field and

2  supervising agent reports submitted regarding the same.

3      6.    All DOCUMENTS pertaining to plaintiff Paul McKinley Stewart's criminal history

4  and information, which formed the basis of any denial by the DEPARTMENT for the

5  purchase/possession of firearms.

6      7.    All COMMUNICATIONS and correspondence with plaintiff Paul McKinley Stewart,

7  and/or his legal representatives, that pertains, refers or relates to Mr. Stewart's eligibility to

8  purchase or possess firearms in the State of California, and/or his status as an alleged prohibited

9  person.

10     8.    All DOCUMENTS, including internal COMMUNICATIONS within the DEPARTMENT,

11  that refer or relate to plaintiff Paul McKinley Stewart's eligibility to purchase or possess firearms

12  in the State of California.

13     9.    Any and all DOCUMENTS which defendant Robert D. Wilson specifically

14  consulted or relied upon in determining that plaintiff Paul McKinley Stewart was ineligible to

15  purchase or possess firearms in the State of California.

16     10.   All DOCUMENTS constituting, referring or relating to the DEPARTMENT's written

17  policies in denying out-of-state former felons the ability to purchase and/or possess firearms in

18  the State of California when those felony convictions have been set aside or vacated in their

19  respective states of origin.

20     11.   All DOCUMENTS constituting, referring or relating to the DEPARTMENT's DROS

21  procedures which pertain to the treatment of out-of-state felony convictions for purposes of

22  determining whether a person is entitled to purchase or possess firearms in the State of

23  California.

24     12.   All DOCUMENTS constituting, referring or relating to the DEPARTMENT's

25  Background Clearance Unit's DROS procedures that pertain to the treatment of all felony

26  convictions that have been set aside, vacated, expunged, or subsequently reduced to

27  misdemeanors.

28  //

SEILER EPSTEIN LLP
Attorneys at Law

13.     All DOCUMENTS constituting, referring or relating to written opinions, memoranda or executive analyses by the Attorney General or the DEPARTMENT that pertain, refer or relate to the treatment of out-of-state felony convictions for purposes of determining whether a person is entitled to purchase or possess firearms in the State of California.

14.     All DOCUMENTS pertaining to plaintiff Kendall Jones's criminal history and information, which formed the basis of any denial by the DEPARTMENT for a Certificate of Eligibility (COE).

15.     All COMMUNICATIONS and correspondence with plaintiff Kendall Jones, and/or his legal representatives, that pertains, refers or relates to Mr. Jones's eligibility to purchase or possess firearms in the State of California, and/or his status as an alleged prohibited person.

16.     All DOCUMENTS, including internal COMMUNICATIONS within the DEPARTMENT, that refer or relate to plaintiff Kendall Jones's eligibility to purchase or possess firearms in the State of California.

Dated: May 29, 2020                    **SEILER EPSTEIN LLP**


                                       /s/ George M. Lee
                                       George M. Lee

                                       Attorneys for Plaintiffs

**SEILER EPSTEIN LLP**
Attorneys at Law

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I declare that I am over the age of eighteen years and that I am not a party to the above action.  My business address is 275 Battery Street, Suite 1600, San Francisco, California 94111. On the date set forth below, I served the following document(s) on the parties in this action as follows:

**FOURTH AMENDED NOTICE OF DEPOSITION OF THE CALIFORNIA DEPARTMENT OF JUSTICE [FRCP 30(B)(6)]**

Service of said document(s) was accomplished in the following manner:

☐ **By First Class Mail:** I placed each document listed above in sealed envelope(s), addressed to the recipient(s) set forth below, with pre-paid postage affixed thereto, and deposited said envelope(s) in a recognized place of deposit for collection and delivery by first class United States Mail.

☐ **By Facsimile:** I caused each document to be transmitted to the recipient(s) set forth below at their respective facsimile numbers as indicated.

☐ **By Personal Service:** I personally served each document listed above on the recipient(s) set forth below.

☐ **By Courier/Messenger:** I placed each document listed above in a sealed envelope(s), addressed to the recipient(s) set forth below, and arranged personal delivery of the same through a messenger/courier service, for delivery to be accomplished on this date.

☐ **By Overnight Express:** I placed each document listed above in a sealed envelope(s), addressed to the recipient(s) set forth below, and deposited said envelope(s) with an overnight courier service, for delivery to be accomplished the next business day.

☑ **By Email:** I caused true and correct copies of the above document(s) to be sent via email to the addressee(s) on this date.

Said documents were addressed/delivered to the following recipients:

Maureen C. Onyeagbako
Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL
1300 I Street, Suite 125
Sacramento, CA 94244-2550
Email: maureen.onyeagbako@doj.ca.gov

I declare under penalty of perjury that the foregoing is true and correct.  Executed May 29, 2020, at San Francisco, California.

/s/ _____
GEORGE M. LEE

Lee Exhibit E

```
4CLNG177379.I*

FR.WAWSP0000
09/07/2018 11:08 09937
●09/07/2018 11:08 20470 CA0349440
*CLNG0T4W02DJOO25FŽ0J559000005QM
TXT

FR.WAWSP0000.CA0349440..
PUR/C.ATN/███.SID/WA███████
PAGE 1
FQ.CA0349440.11:0809/07/20182256111:0809/07/201815312WA *CLNGD9HWXQTXTPUR/C.
     ATN/███.SID/WA███████

ATN/███
WASHINGTON STATE CRIMINAL HISTORY RECORD FOR SID/WA13700861
                    WASHINGTON STATE PATROL
                 CRIMINAL HISTORY RECORD SECTION
                      P.O. BOX 42633
                  OLYMPIA, WASHINGTON 98504-2633


*******************************************************************
            CRIMINAL HISTORY INFORMATION AS OF 09/07/2018
*******************************************************************
                          NOTICE
THE FOLLOWING TRANSCRIPT OF RECORD IS FURNISHED FOR OFFICIAL USE ONLY.
SECONDARY DISSEMINATION OF THIS CRIMINAL HISTORY RECORD INFORMATION IS
PROHIBITED UNLESS IN COMPLIANCE WITH THE WASHINGTON STATE CRIMINAL RECORDS
PRIVACY ACT, CHAPTER 10.97 RCW.

POSITIVE IDENTIFICATION CAN ONLY BE BASED UPON FINGERPRINT COMPARISON. BECAUSE
ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME, A NEW COPY SHOULD BE REQUESTED
FOR SUBSEQUENT USE. WHEN EXPLANATION OF A CHARGE OR DISPOSITION IS NEEDED,
COMMUNICATE DIRECTLY WITH THE AGENCY THAT SUPPLIED THE INFORMATION TO THE
WASHINGTON STATE PATROL.

*******************************************************************
                       MASTER INFORMATION
*******************************************************************
     NAME:      LINTON,CHAD J              DOB:      07/05/███
     SID NUMBER: WA███████            FBI NUMBER: ███████

*******************************************************************
                       PERSON INFORMATION
*******************************************************************
   SEX   RACE  HEIGHT  WEIGHT   EYES    HAIR   PLACE OF BIRTH   CITIZENSHIP
    M     W     510     155     BLU     BLN         CA

OTHER NAMES USED            OTHER DATES OF      SOC SEC     MISC NUMBER
                            BIRTH USED          NUMBER
                                                ███████

DNA TAKEN: N  DNA TYPED: N

*******************************************************************
            NO KNOWN SCARS, MARKS, TATTOOS, AND AMPUTATIONS
*******************************************************************
```

```
****************************************************************
                 CONVICTION AND/OR ADVERSE FINDING SUMMARY
****************************************************************
0 FELONY(S)                                           DISPOSITION
DATE

1 GROSS MISDEMEANOR(S)
       DRIVING UNDER THE INFLUENCE                    12/29/1987
0 MISDEMEANOR(S)

0 CLASSIFICATION(S) UNKNOWN


****************************************************************
              **** NO KNOWN DOC SUMMARY INFORMATION ****
****************************************************************


****************************************************************
                    CRIMINAL HISTORY INFORMATION
****************************************************************
THE ARRESTS LISTED MAY HAVE BEEN BASED ON PROBABLE CAUSE AT THE TIME OF ARREST
OR ON A WARRANT. PROBABLE CAUSE ARRESTS MAY OR MAY NOT RESULT IN THE FILING OF
CHARGES. CONTACT THE ARRESTING AGENCY FOR INFORMATION ON THE FORMAL CHARGES
AND/OR DISPOSITIONS.


------------------------------------------------------------------

ARREST 1                                       DATE OF ARREST:
08/20/1987
------------------------------------------------------------------

    NAME USED:            LINTON,CHAD J
    CONTRIBUTING AGENCY:  WA0150000   ISLAND COUNTY SHERIFFS OFFICE
    LOCAL ID:  14324            PCN: N/A        TCN: N/A
------------------------------------------------------------------

        ARREST OFFENSES          |         DISPOSITION
07618 ATTEMPT TO ELUDE           | CONTRIBUTOR OR RESPONSIBLE AGENCY:
  RCW: 46.61.024                 |   WA015025J  ISLAND COUNTY
SUPERIOR                         |
  CLASS C FELONY                 |         COURT
  ORIGINATING AGENCY:  WA0150000 |   COURT CASE NO: 871000649
  ISLAND COUNTY SHERIFFS OFFICE  |
  DISPO RESPONSIBILITY: WA015025J|   STATUS:        VACATED
  DATE OF OFFENSE:     08/20/1987|   07618 ATTEMPT TO ELUDE
                                 |   RCW:          46.61.024
07644 DRIVING UNDER THE INFLUENCE|   CLASS C FELONY
  RCW: 46.61.502                 |   STATUS DATE:  03/21/2016
  GROSS MISDEMEANOR              |
  ORIGINATING AGENCY:  WA0150000 |
  ISLAND COUNTY SHERIFFS OFFICE  |   SENTENCE:      SENT. DESC.:
  DISPO RESPONSIBILITY: WA015025J|     CHG 01: JAIL - 7 DS, COMM
  DATE OF OFFENSE:     08/20/1987|     SUPV - 1 YR
                                 |
                                 |   STATUS:        GUILTY
                                 |   07644 DRIVING UNDER THE
INFLUENCE
```

*NOT RECOGNIZED CA!* (handwritten)

```
                                        |    RCW:              46.61.502
                                        |    GROSS MISDEMEANOR
                                        |    STATUS DATE:     12/29/1987
                                        |
                                        |
                                        |    SUBSEQUENT DISPOSITION: RIGHT
TO                                      |
                                        |       POSSESS A FIREARM RESTORED
                                        |    DATE: 04/18/2016
                                        |    ORI: WA015015J
                                        |    COMMENT: 162001968, 9.41.040(4)
                                        |
```

******************************************************************************
                   NO KNOWN DEPARTMENT OF CORRECTIONS INFORMATION
******************************************************************************
******************************************************************************
                   NO KNOWN SEX/KIDNAPPING OFFENDER REGISTRATIONS
******************************************************************************


******************************************************************************
                             NO KNOWN APPLICANT DETAILS
******************************************************************************
******************************************************************************
          NO KNOWN MONITORED POPULATION REGISTRATION TRACKING INFORMATION
******************************************************************************
******************************************************************************
GLOSSARY OF TERMS IS AVAILABLE IN THE CRIMINAL JUSTICE TRAINING MANUAL (CJTM)
LOCATED AT HTTP://WWW.WSP.WA.GOV/_SECURED/IDENT/RESOURCE.HTM
******************************************************************************
                                   RESOURCES
******************************************************************************

ADMINISTRATIVE OFFICE OF
     THE COURTS (AOC)--------------WWW.COURTS.WA.GOV
WSP CRIMINAL HISTORY
     RECORDS SECTION--------------CRIMHIS@WSP.WA.GOV OR (360) 534-2000
WSP CRIMINAL HISTORY &
     FINGERPRINT TRAINING----------
HTTP://WWW.WSP.WA.GOV/_SECURED/IDENT/RESOURCE.HTM
DEPARTMENT OF CORRECTIONS (DOC)--WWW.DOC.WA.GOV
WSP SEX/KIDNAPPING
     OFFENDER REGISTRY (SOR) UNIT--(360) 534-2000
REVISED CODE OF WASHINGTON (RCW)--HTTP://APPS.LEG.WA.GOV/RCW/
WSP WASHINGTON ACCESS TO CRIMINAL
     HISTORY (WATCH) WEBSITE-------https://fortress.wa.gov/wsp/watch
WSP IDENTIFICATION AND
     BACKGROUND CHECK SECTION------WATCH.HELP@wsp.wa.gov OR (360) 534-2000
END OF RECORD
```

LEE EXHIBIT F

Dealer Record Of Sale-DROS   Denial                                                                    Page 1 of 1

# DROS Denial

**DROS Number**

**Last**          **First**          **Middle**          **Suffix**
STEWART           PAUL              MCKINLEY

**Transaction Type**                **Analyst**
DEALER SALE

Longgun

Back

Notification(s)    Comments    Control Number(s)    Reason(s)

| Date/Time Notified | Method of Notification | Person Notified | Notification Comment |
|---|---|---|---|
| 02/27/2018 02:14:46 PM | MAIL | MAIL | FBI/ 1976 FEL BURG CONV, 13-907 GRANTED 8/11/16, NOT RECOGNIZED IN CA/AT |
| 02/27/2018 02:14:59 PM | OTHER | N/A | SEE COMMENTS |

**AGO_LINTON_068**

LEE EXHIBIT G

# CERTIFICATION OF CRIMINAL
# HISTORY RECORD INFORMATION

STATE OF TEXAS
COUNTY OF TRAVIS

Pursuant to the authority contained in Rule 902, Sections 1 and 4, Texas Rules of Evidence, and Subchapter F, Chapter 411, Texas Government Code, I , Tanya Wilson, Supervisor, Criminal History Inquiry Unit, Access and Dissemination Bureau, Crime Records Service, Texas Department of Public Safety, do hereby certify I am the deputy custodian of the criminal history record information of Crime Records Service of the Texas Department of Public Safety. I further certify the attached 3 pages(s) are a true and correct copy of the records on file at the Texas Department of Public Safety, that I am legally authorized to produce, for the following:

Texas SID:

**TEXAS CRIMINAL HISTORY RECORD**
**JONES,KENDALL D**
Date of Birth:



In Testimony Whereof, I hereunto set my hand and affix the seal of the Texas Department of Public Safety. Done at my office in Austin, Texas on this 6th day of April, 2019.

*Tanya Wilson*

Tanya Wilson, Supervisor
Criminal History Inquiry Unit
Access and Dissemination Bureau
Crime Records Service
Texas Department of Public Safety

**Exhibit**

**16**

Matsumoto 6/5/20

Linton v. Becerra
Exhibit 016

# TEXAS DEPARTMENT OF PUBLIC SAFETY

## CRIMINAL HISTORY



The information contained in this record reflects only information contained in the Computerized Criminal History database maintained by the Texas Department of Public Safety. Contact the contributing agency for specific or additional information regarding charges or dispositions. The contents of this record are confidential and intended for dissemination only to criminal agencies or other individuals or agencies authorized by law to receive criminal history record information. UNAUTHORIZED USE OR DISCLOSURE OF THE INFORMATION CONTAINED IN THIS RECORD MAY RESULT IN SEVERE CRIMINAL PENALTIES. SEE SECTION 411.085 OF THE TEXAS GOVERNMENT CODE.

CRIME RECORDS SERVICE
P.O. BOX 4143
AUSTIN, TEXAS 78765-4143
PHONE 512-424-5079

TEXAS DEPARTMENT OF PUBLIC SAFETY COMPUTERIZED CRIMINAL HISTORY (Version 0.38 pdf)

THE FOLLOWING RECORD PERTAINS TO DPS NUMBER TX 02751758

**NAME(S)**
JONES,KENDALL DWAYNE
JONES,KENDALL (AKA)



| | | |
|---|---|---|
| **FBI NUMBER** | **DPS NUMBER** | |
| **SOCIAL SECURITY** | **DRIVERS LICENSE** | **ID NUMBER** |
| **SEX**<br>MALE | **RACE**<br>BLACK | **SKIN TONE**<br>UNKNOWN |
| **HEIGHT**<br>602 | **WEIGHT**<br>220 | **DATE OF BIRTH** |
| **HAIR COLOR**<br>UNKNOWN OR COMPLETELY BALD | **EYE COLOR**<br>BROWN | **FINGERPRINT PATTERN** |
| **HENRY CLASS**<br>5 S 1 U III 16 MSS<br>S 1 U OOI MLM | | |
| **PLACE OF BIRTH**<br>CA | **CITIZEN**<br>US | |
| **SCARS, MARKS, AND TATTOOS**<br>BALD | | **ALIAS DOB** |
| **DNA**<br>N | | |
| **DATE OF REPORT**<br>04-06-2019 | **ORIGINATION DATE**<br>07-16-1980 | **DATE OF LAST UPDATE**<br>04-05-2019 |

**EVENT CYCLE 1**
    **ARREST DATE**     1980-06-25
    **TYPE**     ADULT
    **AGENCY**     TXHPD0000 - HOUSTON POLICE DEPARTMENT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    **TRACKING SUFFIX**   *001
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    **OFFENSE DATA**
        **AGENCY ID NUMBER**     343919
        **OFFENSE DATE**     1980-04-20
        **ARREST OFFENSE**     FRAUD-ILLEG USE CREDIT CARDS
        **CITATION**     X X

| OFFENSE DESC | CREDIT CARD ABUSE |

**PROSECUTION DATA**

| PROSECUTION AGENCY | TX101015A - DISTRICT ATTORNEYS OFFICE HOUSTON |
| ACTION | PROSECUTOR HAS CHANGED THE CHARGE |
| PROSECUTOR OFFENSE | FRAUD-ILLEG USE CREDIT CARDS |
| CITATION | X X |
| OFFENSE DESC | CREDIT CARD ABUSE |
| LEVEL & DEGREE | FELONY - 3RD DEGREE |

**COURT DATA**

| COURT AGENCY | TX101225J - 180TH DISTRICT COURT HOUSTON |
| COURT OFFENSE | FRAUD-ILLEG USE CREDIT CARDS |
| CITATION | X X |
| OFFENSE DESC | CREDIT CARD ABUSE |
| LEVEL & DEGREE | FELONY - 3RD DEGREE |
| DISPOSITION | CONVICTED |
| DISPOSITION DATE | 1980-08-22 |
| SENTENCE DATE | 1980-08-22 |
| CAUSE NUMBER | 031702001010 |
| FINAL PLEADING | GUILTY |
| CONFINEMENT | P3Y |
| SUSPENDED TIME | P3Y |
| PROBATION | P3Y |
| FINE | 350 |
| COURT COST | 76 |
| RECEIVING CUSTODY | TX101035G - COMMUNITY SUPERVISION & CORRECTIONS DEPARTMENT |

**COURT DATA**

| COURT AGENCY | TX101225J - 180TH DISTRICT COURT HOUSTON |
| COURT OFFENSE | FRAUD-ILLEG USE CREDIT CARDS |
| CITATION | X X |
| OFFENSE DESC | CREDIT CARD ABUSE |
| LEVEL & DEGREE | FELONY - 3RD DEGREE |
| DISPOSITION | DISMISSED |
| DISPOSITION DATE | 1980-08-22 |
| SENTENCE DATE | 1983-08-22 |
| CAUSE NUMBER | 031702001010 |
| FINAL PLEADING | UNREPORTED/OR UNKNOWN |
| PROVISION | SET ASIDE |

**EVENT CYCLE 2**

| TRACKING NUMBER | 0117670855 |
| ARREST DATE | 1981-12-16 |
| TYPE | ADULT |
| AGENCY | TX1010000 - HARRIS CO SO HOUSTON |
| NAME | JONES,KENDALL DWAYNE |

**TRACKING SUFFIX    A001**

**OFFENSE DATA**

| AGENCY CASE NUMBER | FP2130314830 |
| OFFENSE AGENCY | TX1010000 - HARRIS CO SO HOUSTON |
| OFFENSE DATE | 1981-12-16 |
| ARREST OFFENSE | UNLAWFUL CARRYING WEAPON |
| CITATION | PC 46.02(a) |
| LEVEL & DEGREE | MISDEMEANOR - CLASS A |
| DISPOSITION | BAIL/RELEASED ON OWN RECOGNIZANCE |
| DISPOSITION DATE | 1981-12-16 |
| REFERRED | TX101015A - DISTRICT ATTORNEYS OFFICE HOUSTON |

**NO PROSECUTION DATA AVAILABLE**

**COURT DATA**

SID Number - TX

| | |
|---|---|
| **COURT OFFENSE** | UNLAWFUL CARRYING WEAPON |
| **CITATION** | PC 46.02(a) |
| **LEVEL & DEGREE** | MISDEMEANOR - CLASS A |
| **DISPOSITION** | CONVICTED |
| **DISPOSITION DATE** | 1981-12-16 |
| **SENTENCE DATE** | 1981-12-16 |
| **CAUSE NUMBER** | 063141101010 |
| **FINAL PLEADING** | UNREPORTED/OR UNKNOWN |
| **CONFINEMENT** | P25D |
| **RECEIVING CUSTODY** | TX1010000 - HARRIS CO SO HOUSTON |

=========================================================================== NO CUSTODY

EVENTS -------------------------------------------------------------------------

UNAUTHORIZED USE OR DISCLOSURE OF THE INFORMATION CONTAINED IN THIS RECORD MAY RESULT IN
SEVERE CRIMINAL PENALTIES. SEE TEXAS GOVERNMENT CODE SECTION 411.085.
END OF REPORT

SID Number - TX

LEE EXHIBIT H

**From:**
**Sent:** Thursday, March 22, 2018 12:35 PM
**To:**
**Subject:** Kendall jones FW: dismissal restore firearm rights in TX

fyi

**From:** NICS_LegalResearch [mailto:NICS_LegalResearch@FBI.GOV]
**Sent:** Thursday, March 22, 2018 12:16 PM
**To:** @doj.ca.gov>
**Subject:** RE: dismissal restore firearm rights in TX

The completion of probation in Texas followed up by a subject receiving a conviction set aside is not a ROR but it does remove the conviction.  The DOA would no longer be prohibiting for firearms purposes.

Thanks

David A. Fazzini
Legal Administrative Specialist
FBI National Instant Criminal Background Check System (NICS) Section
david.fazzini@ic.fbi.gov
(304) 625-7194

This response is case-specific and is based on the information you provided.  Variance in the substance of the information you provided, either by adding, modifying, or omitting any detail, may change the accuracy of this response as it applies to your request.  This message has been transmitted to you by the FBI Criminal Justice Information Services Division's National Instant Criminal Background Check System Section.  The message, along with any attachments, is to be considered confidential and legally privileged.  No part of it is to be disseminated or reproduced without written consent of the sender.  If you are not the intended recipient of this message, please destroy it promptly without any retention, dissemination, or reproduction (unless required by law), and please notify the sender of the error immediately by separate e-mail or by calling (304) 625-7194.

**From:** @doj.ca.gov>
**Sent:** Thursday, March 22, 2018 2:44 PM
**To:** NIC_LegalResearch@fbi.gov; NICS_LegalResearch <NICS_LegalResearch@FBI.GOV>
**Subject:** dismissal restore firearm rights in TX

Hello,
I am in need of clarification of a TX SID T) (see attached KendallJones pdf) felony conviction of credit card abuse in the third degree in which the person later after completing his probation received a dismissal and judgment of conviction set aside ( see kendall jones CORR pdf pg 6) I would like to know does this  dismissal restore firearms rights in TX ?

1

Thank you.

**Staff Services Analyst**
**Department of Justice Bureau of Firearms**
**Licensing & Certificate of Eligibility Section**
**Ph# (**
**Fax#**



CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

AGO_LINTON_161

LEE EXHIBIT I

**From:**
**Sent:** Thursday, March 22, 2018 8:41 AM
**To:**
**Subject:** Kendall Jones

**From:** [mailto: @dps.texas.gov]
**Sent:** Thursday, March 22, 2018 5:42 AM
**To:** @doj.ca.gov>
**Subject:** RE: Request for information

I included all the court documents pertaining to the case and the individual does not have a governors pardon; however the case was dismissed and set aside. That is why the Status flag was changed from disqualified to unknown. The court documents do not show just a dismissal, but a dismissed and set aside.

Please call me directly if you have further questions.

I have been out of the office the past two days due to illness, I am in the office the rest of the week. I work 7:15am – 4:15pm CST.

 (phone)
(fax)



**From:** [mailto: @doj.ca.gov]
**Sent:** Wednesday, March 21, 2018 1:22 PM
**To:**
**Subject:** RE: Request for Information

**CAUTION:** This email was received from an EXTERNAL source, use caution when clicking links or opening attachments.

1

LEE EXHIBIT J

## Arizona Terminology Page

Last Updated:          Monday, July 06, 2015

| Terminology | Updates | | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| | Date | Initials | | |
| Adult Diversion Program | 04/11/07 | | The adult diversion program is a project established by the county attorney's office. Successful completion of the program results in felony charges being dismissed with prejudice. May be under indictment or information. | Needs further research. |
| Arrest Scratched | 03/26/07 | mjz | Means no complaint filed. The same as a dismissal. | Final disposition. This is not a conviction. |
| Bond Forfeiture | | | Proceeding where individual's appearance bond is forfeited upon judicial finding of failure to appear after receipt of notice. | This is not a final disposition; needs researched. |
| Closed Record | 04/29/09 | mjz | In some instances, courts order certain documents or portions of documents sealed, meaning they are unavailable to the public. Additionally, all juvenile court proceedings are closed to the public. | Needs further research. |
| Conditional Release | | | Released for purpose preparatory to return to the community and/or work furlough (see A.R.S. 41-1604.11). | This is a conviction. |
| Deferred Jail | | | Deferred jail is a jail term to be served in the county jail that is a condition of probation. Further, the jail term cannot exceed one year. Deferred jail is imposed at sentencing, but often does not begin for a period of time which allows the court to monitor the probationer's performance. It can be deferred, deleted, or modified at the court's discretion. It is commonly used as an incentive device to ensure compliance with the terms of probation. | This is a conviction. |
| Deferred Proceedings | 10/05/11 | mjz | AZ ST 13-3601(M) (repealed 7/1/04). For first time MCDV conviction with probation prior to 7/1/04. | A domestic violence misdemeanant who has not yet successfully completed probation after Deferred proceedings under 13-3601(M) is considered convicted during the probationary period and is subject to Federal and state firearm disabilities. If the probation is successfully completed and dismissed, it is not a conviction and is not subject to Federal and state firearm disabilities. |

AGO_LINTON_214

## Arizona Terminology Page

Last Updated:              Monday, July 06, 2015

| Terminology | Updates | | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| | Date | Initials | | |
| Deferred Prosecution | 10/5/2011 | mjz | After the filing of a complaint, indictment, or information, but prior to a plea of guilty or trial, the subject enters a written agreement between the prosecutor and the defendant that if certain conditions are met, charges will be dismissed. During the deferred prosecution, the individual is ALWAYS under indictment until successful completion of the deferred prosecution. Therefore, the individual is federally prohibited while serving the deferred prosecution. This applies to charges that are disqualifying under 922(n). | This is not a conviction for misdemeanors, but all active misdemeanor deferrals need researched for firearm restrictions.\n\nThis is not a conviction for felonies, but the individual is always under indictment during active deferrals.\n\nA successfully completed deferred prosecution is not a conviction and is not disqualifying for firearms. |
| Deferred Sentence | 04/03/12 | JFK | The sentence can either be deferred after an adjudication of guilt which is a conviction OR the PLEA can be deferred without an adjudication (whether the sentence is deferred or not) it is NOT a conviction. Therefore, research is required to determine if there was an adjudication of guilt. | Needs researched. |
| Dismissed | | | Dismissed is a final disposition. | This is not a conviction. |
| Dismissed Per D.V. Statute | 10/05/11 | mjz | See Deferred Proceedings | See Deferred Proceedings |
| Dismissed With Prejudice | | | The case is removed from the court's docket and can no longer be re-filed. | This is not a conviction. |
| Dismissed Without Prejudice | 03/12/13 | rhd | The case is removed from the court's docket but may be refiled at a later date | This is not a conviction. This is a final disposition (unless the charge is refiled) |
| Expungement | 01/09/14 | JFK | An expungement under AZ law does not destroy the record of disposition, See Op. Atty. Gen. 73-3-L and Russell v. Royal Maccabees Life Ins. Co., 193 Ariz. 464, 974 P.2d 443, 268 Ariz. Adv. Rep. 51, Ariz.App. Div. 1, May 07, 1998 (NO. 1CA-CV 97-0157). | This is not a true expungement for NICS purposes. NOTE: If record indicates "Set-Aside" and "Expunged," see Set-Aside |

AGO_LINTON_215

# Arizona Terminology Page

Last Updated:                 Monday, July 06, 2015

| Terminology | Updates | | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| | Date | Initials | | |
| Juvenile Adjudication | 03/14/14 | JFK | Adjudicated as a juvenile for an offense that, if committed by an adult, would be a felony. | This is not a conviction.  This is an AZ State Prohibitior UNLESS restoration of firearm rights granted. |
| No Complaint Filed | | | This is a final disposition. | This is not a conviction. |
| No Contest | 09/20/06 | mjz | A plea by a defendant that he will not dispute the charge. | This is a conviction. |
| Nolle Prosequi | | | This is a final disposition. | This is not a conviction. |
| Nolo Contendere | 09/20/06 | mjz | See No Contest | This is a conviction. |
| Pretrial Diversion | 04/12/10 | mjz | After charges are filed, a written agreement is entered into by the prosecutor and the defendant, whereupon if certain conditions are met by the defendant, the charges are dismissed. | If dismissal is on the criminal history record no further research is needed.  If dismissal is not on the criminal history record, further research is needed to confirm dismissal.  A successfully completed pretrial diversion is not a conviction and is not disqualifying for firearms. |
| Set Aside (1) -        Set Aside Per AZ ST 13-907 issued PRIOR TO JULY 3, 2015 OR Issued anytime if the conviction was for a "Serious Offense" (See Definition of Set Aside 2 in entry below for serious offneses) | 07/06/15 | JFK | A prohibiting conviction set aside under A.R.S. 13-907 removes the firearms prohibition UNLESS either of the following apply:<br>(1) A federal prohibition would remain if the order contains specific language that the person is not relieved of firearm disabilities<br>(2) For a felony conviction, an AZ state prohibition remains if subject has not been "restored" under AZ law. An AZ set aside alone (without a specific firearm restoration) is not a restoration for purposes of AZ state prohibition.  The required restoration can be either automatic (see automatic ROR) or court ordered by a provision of the set aside itself or separate court order. | If set aside under 13-907 and "firearm rights restored" is listed on the criminal history record, this removes the federal and AZ prohibition for this offense.<br><br>If set aside under 13-907 is listed but "firearm rights restored" is not listed on the record, the set aside documentation must be obtained and reviewed to determine if this restores federal and AZ firearms rights.<br><br>* A set aside/vacate order can only be issued after a sentence completion and therefore also verifies sentence completion has occurred on or before the date of the set aside. |

AGO_LINTON_216

## Arizona Terminology Page

Last Updated:                    Monday, July 06, 2015

| Terminology | Updates Date | Updates Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Set Aside (2) - Set Aside Per AZ ST 13-907 issued ON OR AFTER JULY 3rd, 2015 IF the underlying conviction was not for a 'serious offense' | 07/06/15 | JFK | Firearm rights must be restored unless the conviction was for a 'Serious Offense' - whicn includes (all inclusive list) -<br>(a) First Degree Murder<br>(b) Second Degree Murder<br>(c) Manslaughter<br>(d) Aggravated assault resulting in serious physical injury or involving the discharge,<br>use or threatening exhibition of a deadly weapon or dangerous instrument<br>(e) Sexual Assault<br>(f) Any dangerous crime against children<br>(g) Arson of an occupied structure<br>(h) Armed Robbery<br>(I) Burglary in the first Degree<br>(j) Kidnapping<br>(k) Sexual conduct with a minor under fifteen years of age<br>(l) Child prostitution | Removes both federal and AZ state prohibitions for this offense. |
| Suspended Imposition of Sentence | | | This occurs when a judge grants probation instead of sentencing a defendant to prison. | This is a conviction. |
| Suspended Prosecution | | | After the filing of a complaint, indictment, or information, but prior to a plea of guilty or trial, the prosecutor determines that it would serve the ends of justice to suspend further prosecution of a defendant so that he or she could participate in a deferred prosecution program.  If conditions are not satisfied prosecution can resume and subject can subsequently be convicted.      Refer to  DEFERRED PROSECUTION. | This is not a conviction, but the subject is under indictment or information while participating in the program.  Needs research for completion. |
| Suspended Sentence | | | Imposition of jail and/or prison term is suspended and individual placed on probation. | This is a conviction. |
| Vacated | 10/11/10 | mjz | See Set-Aside | See Set-Aside |

AGO_LINTON_217

LEE EXHIBIT K

# Texas Terminology Page

Last Updated:              Saturday, December 16, 2017

AGO_LINTON_227

| Terminology | Updates Date | Updates Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Bond Forfeiture | 04/24/14 | bab | The defendant has failed to appear as required by the conditions of his release on his bond, and the bond has been forfeited.  Chapter 22, Texas Code of Criminal Procedure. | This is not a conviction. |
| Case Retired | | | This shows the case was removed from the docket until information is received that shows there is evidence to proceed with the charges or dismiss the charges. | This is not a final disposition. |
| Cleared Record | | | Resulting in an indictment or under information being dismissed or quashed, or an acquittal or pardon being received and the arrest or criminal record is expunged | This is not a conviction. |
| Clemency | 03/25/13 | bab | "Executive Clemency."  This relieves persons convicted of a felony of all or any part of their term of imprisonment | Additional research is required to determine if there is a full pardon, a partial pardon or conditional pardon.  Only the full pardon absolves individuals from all legal consequences of the conviction. See  Carr v. State, 19 Tex. Ct. App. 635 (1885); Overruled in part by Lundstrom V. State, 742 S.W.2d 279, 287. |
| Clemency Discharge/Early Release | 04/24/14 | bab | Subject has received clemency discharge.  Can also be called early release. | This remains a conviction. |
| Deferred/Deferred Adjudication | 04/24/14 | bab | The finding of guilt has been postponed.  Under TX Art 42.12: The judge may, after hearing a plea of guilty or a plea of nolo contendere, defer the proceedings without entering an adjudication of guilt and place the defendant on probation.  This is commonly referred to as Deferred Adjudication, Deferred Probation or Deferred Sentence. | This is not a conviction, but refers to a pending charge which may be dismissed if the defendant satisfied the conditions of an agreement with the state.  If it has been determined that the probation has been completed (successful or unsuccessful), this is not considered a conviction. |

## Texas Terminology Page

Last Updated:                Saturday, December 16, 2017

| Terminology | Updates Date | Updates Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Deferred cont | 04/15/16 | df | Felony with current/active or past deferred probation. Probation may be dismissed and discharged early. You must confirm if the probation is still active or if past deferred has been completed. | If active or unable to determine completion, subject is still considered under indictment, per case law—FLH.  If completed it is not a conviction. |
| Deferred cont | 04/24/14 | bab | Felony with violation of probation. The court may proceed with an adjudication of guilt on the original charge. | This becomes a conviction if you have an adjudication of guilt. |
| Deferred cont | 10/19/17 | df | Misdemeanor with current/active deferred probation.

Misdemeanor drug related offenses receiving a deferred sentence within the past year will not meet as a drug conviction within the past year pursuant to 18 USC § 922(g)(3). | This is not a conviction.  Need to check probation for firearm restrictions.

If a drug arrest is within the past year the offense may meet 18 USC § 922(g)(3) as an inference of current use or unlawful possession. |
| Deferred cont | | | MCDV related offenses with past deferred probation needs researched to determine if an adjudication of guilt has been entered. | This remains a conviction if you have an adjudication of guilt |
| Deferred Prosecution | 04/06/17 | df | Prosecution of a case has been deferred and the subject is under supervision.  Charge can still be pending. | This is not a conviction, but refers to a pending charge which may be dismissed if the defendant satisfied the conditions of an agreement with the state. |
| Dismissed | | | This is a final disposition. | This is not a conviction. |
| Disposition Unavailable | | | This is not a final closure for the case.  It means it has been undetermined if the case has been filed. | Requires research. |
| Elapsed Time | | | Indicates the prosecutor reports no case filing after a locally determined period of time. | This is not a conviction when code of E (elapsed time) is on the record. |
| Expunction | 04/24/14 | bab | The release, maintenance, dissemination, or use of the expunged records and files for any purpose is prohibited. *Texas Criminal Procedure Article 55.03.* | This IS a true expunction and NOT DISQUALIFYING for NICS purposes. |
| Juvenile Adjudication | 02/07/14 | bab | An order of adjudication or disposition in a proceeding is not a conviction of crime. | This is not a conviction.  This is not a TX State Prohibitor. |

Updated by DF 1/26/2017

AGO_LINTON_228

## Texas Terminology Page

Last Updated:          Saturday, December 16, 2017

AGO_LINTON_229

| Terminology | Updates Date | Updates Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| No Billed by Grand Jury | 07/18/07 | bab | The Grand Jury did not have enough information to indict the individual. | This is not a conviction. |
| No Record Found | 04/24/14 | bab | The court is unable to locate any case file or information. | This is not a final disposition. |
| Nolle Prosequi | 04/24/14 | bab | This is a refusal by a prosecutor to prosecute a charge. | This is not a conviction. |
| Non-Disclosure Order | 04/24/14 | bab | An order of non-disclosure has been issued.  If a person is placed on deferred adjudication community supervision under Section 5, Article 42.12, Code of Criminal Procedure, subsequently receives a discharge and dismissal under Section 5(c0, Article 42.12, and satisfies the requirements of subs.(e), the person may petition the court (through a non-disclosure petition) that placed the defendant on deferred adjudication for an order of non disclosure under TX Government Code 411.081. | This is not a conviction. |
| Non-Suit | 04/24/14 | bab | No trial on the merits of the case.  This is a disposition in civil cases only, and would indicate that the plantiff/petitioner has dropped the suit.  In this context it would only apply to juvenile cases. | This is not a conviction. |
| Order For New Trial/New Trial Granted | 04/24/14 | bab | A motion for a new trial has been granted.  This is not necessarily an appellate result, as a motion for a new trial can be filed and granted before an appeal.  It has the effect of putting the case back in the position it was in before trial. | This typically indicates that any prior disposition is rescinded, and the case remains pending.  However, there are instances when this is only granted for the punishment phase.  This is not final unless a disposition follows. |

# Texas Terminology Page

Last Updated:                Saturday, December 16, 2017

AGO_LINTON_230

| Terminology | Updates Date | Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Plea in Bar | 04/24/14 | bab | The case is dismissed because of "plea in bar". This can be entered because of a double jeopardy complaint or because the defendant has otherwise shown that he/she cannot be prosecuted for the offense, regardless of guilt. This destroys the action and bars it from further prosecution. | This is not a conviction. |
| Pretrial Diversion | 04/24/14 | bab | The status of the court disposition numeric is caused by a pre-trial diversion. Usually a probation-type disposition, but without requiring the defendant to enter a plea. Successful completion will usually result in dismissal, but failing to comply with the condition may result in filing of the charges and a possible conviction later. | This is not a conviction but does suggest the existence of a pending charge. Additional research is required, if current pre-trial, to determine if the individual is under indictment. |
| Prosecutor Has Rejected The Charge Without A Pre-Trial Diversion | 07/26/16 | df | Per TX Art. 60.01(12)(a), a charge that after the arrest of the offender, the prosecutor declines to include in an information or present to a grand jury; or (b) an infromation or indictment that, after the arrest of the offender, the prosecutor refuses to prosecute. | This is a final disposition and not a conviction. |
| Reduction of State Jail Felony Punishment to Misdemeanor Punishment per TX Penal § 12.44 | 03/24/16 | df | Per TX PENAL § 12.44, a court may punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as punishment for a Class A misdemeanor. | If the conviction is under 12.44(a), the conviction is a felony. If the conviction is under 12.44(b), the conviction is a misdemeanor. |
| Released | 01/12/16 | df | Subject is released on different concurrent supervision. | This is not a disposition, just a change in custody status. The related charge may still be pending or the subject may be serving a sentence on that charge. Additional research is required. |
| Released By Authority DA's Office | 04/24/14 | bab | Different than a dismissal. The DA's office released or transferred without otherwise altering the status of the case. | This is not a conviction. |

Updated by DF 1/26/2017

# Texas Terminology Page

Last Updated:        Saturday, December 16, 2017

| Terminology | Updates Date | Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Sealed Record | 12/16/17 | df | See Non-Disclosure Order | This is not a conviction. |
| Set Aside | 04/24/14 | bab | The conviction relating to this custody event has been set aside. A judge discharges the defendant from community supervision and sets aside the verdict or permits the defendant to withdraw his plea and dismisses the charge. (see memo) | This is not a conviction. |
| Shock Probation | 01/26/17 | df | Per TX Articles 42A.202 and 42A.204, a judge can sentence a defendant from 60 to 120 days in jail for a felony offense and at the end of the term can change the jail to probation or leave the defendant in jail. | This is a final dispostion and remains a conviction. |
| Suspension of Sentence | 04/24/14 | bab | The courts have accepted a plea or found the subject guilty, but suspended service of the sentence upon conditions.  Texas courts have jurisdiction, after conviction, to suspend the imposition or execution of sentence and invoke probation | This is not a final disposition. |
| Taken Into Consideration | 04/24/14 | bab | A charge is taken into consideration during the punishment phase of a different charge's adjudication. The charge was taken into consideration at the sentencing in another case pursuant to Texas Penal Code, Section 12.45.  Usually this results in the dismissal of the charge after a plea of guilty in the other case. | This is not a conviction. |

Updated by DF 1/26/2017

AGO_LINTON_231

## Texas Terminology Page

Last Updated:                Saturday, December 16, 2017

| Terminology | Updates | | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| | Date | Initials | | |
| Unadjudicated With | 01/15/16 | DF | Per TX Penal § 12.45, A person may, with the consent of the attorney for the state, admit during the sentencing hearing his guilt of one or more unadjudicated offenses and request the court to take each into account in determining sentence for the offense or offenses of which he stands adjudged guilty. If the court lawfully takes into account the admitted offense, prosecution is barred for that offense. | This is a final disposition and not a conviction. |
| Waived | 12/01/08 | bab | The disposition of Waived is not final.  Additional research must be conducted to determine what was actually waived. | This is not a final disposition. |

AGO_LINTON_232

LEE EXHIBIT L

## Washington Terminology Page

Last Updated:          Friday, March 15, 2019

| Terminology | Updates Date | Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Alford Plea | | | A defendant, although pleading guilty, continues to deny his or her guilt, but enters a plea to avoid threat of greater punishment. | This remains a conviction. |
| Bond or Bail Forfeiture | 11/10/10 | rhd | If posted as a DISPOSITION for an offense the defendant is allowed to forfeit their bond or bail as a final disposition for the offense. | This is not a conviction in WA. The charge is dropped. |
| Committed | 12/13/16 | rhd | When a charge is amended to a non-criminal CIVIL infraction it is"committed" when the defendant admits to the amended charge. | This is not a criminal conviction and does not meet 922(g)(4) criteria. |
| Conditional Release | 06/14/17 | rhd | Is a mechanism whereby mentally ill persons of varying degrees of dangerousness, previously deemed insanity acquittees, can be conditionally reintroduced into society where it is determined the conditions will reasonably mitigate the dangerousness. | This is not a conviction, but requires additional research for possible firearms restrictions per 922(g)(4). |
| Deferred Disposition | 03/04/14 | rhd | Per RCW 13.40.127 of the Juvenile Justice Act, upon successful completion of the deferral the conviction can be vacated and dismissed.  If the juvenile fails to comply with the terms of supervision, the court shall enter an order of disposition. | This is a conviction and can be a federal or a state prohibitor if the conviction is for a felony unless firearm rights have been restored. |
| Deferred Prosecution | | | A pre-conviction program designed to encourage treatment and allow a person to avoid a conviction upon successful completion of the program. | This is not a conviction.  However, charges may be pursued if any of the terms of the agreement or program are not complied with.  Research for successful completion. |

AGO_LINTON_251

## Washington Terminology Page

Last Updated:                         Friday, March 15, 2019

| Terminology | Updates Date | Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Deferred Sentence | 03/15/19 | cmc | Enumerated Felony Offenses per 9.41.040:<br>Murder<br>Manslaughter<br>Robbery<br>Rape<br>Indecent Liberties<br>Arson<br>Assault<br>Kidnapping<br>Extortion<br>Burglary<br>Controlled Substance Violations under RCW 69.50.401(69.50.401(a) prior to July 1st 2004) and 69.50.410 | Offenses prior to 07/01/1984 with dismissed probation is not a conviction unless the offense is an enumerated felony.<br><br>All enumerated felonies before 07/1/1984 and ALL misdemeanor/felony offenses on or after 07/01/1984 remains a conviction. |
| Dismissed | | | This is a final disposition.  Generally, not a conviction if there was no plea or verdict of guilt entered. | This may or may not be a conviction. |
| Dismissed with Prejudice | 07/06/11 | rhd | Case is removed from the court docket and can not be re-filed | This is not a conviction |
| Dismissed without Prejudice | 03/12/13 | rhd | Court dismisses the offense but does not prohibit the individual from being recharged.  IF the charge is refiled it will appear as another entry on the record. | This is not a conviction.  This is a final disposition (unless the charge is refiled) |
| Expungement | 01/09/14 | rhd | Washington criminal convictions cannot be expunged | This is not a true expungement for NICS purposes. |

AGO_LINTON_252

## Washington Terminology Page

Last Updated:                   Friday, March 15, 2019

| Terminology | Updates Date | Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Juvenile Adjudication | 05/24/18 | cmc | This includes adjudications which were dismissed after an adjudication, a period of probation, suspension, or deferral of sentence. | 1. For any felony offense, 6/11/1992 to present, - a felony juvenile adjudication is a conviction for federal firearms purposes and therefore meets 18 USC 922(g)(I) unless pardoned/restored/etc.<br><br>2. For misdemeanor assault 4th degree, coercion, stalking, reckless endangerment, criminal trespass 1st degree, or a violation of a protection order offenses committed on or after 7/1/1993 or harassment on or after 06/07/2018: when committed by one family or household member against another - this a WA state Prohibition.<br><br>3. For any offense not listed in 1 or 2 above (all other misdemeanors, etc.) - this is not a conviction and is not a WA state Prohibition. |
| Juvenile Sealed Records | 10/18/18 | cmc | A juvenile record may contain any juvenile disposition before being sealed for certain purposes. RCW § 13.50.050 / RCW § 13.50.260 | This does not remove a previously existing federal or WA State Prohibition for offenses on or after 06/11/1992. Juvenile Adjudications for offenses prior to 06/11/1992 are not viewed as a conviction. |
| No Charges Filed / No Action | 01/05/11 | rhd | This is a final disposition and is not a conviction. | This is not a conviction. |
| Nolle Prosequi | | | Not a conviction. | This is not a conviction. |
| Non-felony | 04/07/11 | rhd | Is noted in the court segment of the WA criminal history record when the offense reduced by the court but the statute for the offense indicates a felony level only | The conviction is for a gross misdemeanor or misdemeanor level offense. |
| Pretrial Diversion | 01/30/14 | rhd | The statute governing pretrial diversions was repealed in 1985, and it applied only to crimes occurring before July 1, 1984. However, Prosecuting Attorney's have the non-statutory authority to enter into a "diversion agreement". | This is not a conviction. However, if diversion was not successfully completed then charges could still be filed. Research for successful completion. |

AGO_LINTON_253

## Washington Terminology Page

Last Updated:                    Friday, March 15, 2019

| Terminology | Updates Date | Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Probation Before Judgment | | | Not a finding of guilt. | This is not a conviction. |
| Released | | | This is not a final disposition. It could mean any of the following:<br><br>Released until trial, Released on own recognizance, Released on bail/bond, Released on parole/probation. | This is not a conviction. Further research is required. |
| Stricken on Leave | | | | This is not a conviction. |
| Stipulated Order of Continuance(SOC)/ Continuance | 04/03/18 | cmc | Stipulated order of continuance is not a final disposition. The defendant is placed on a probationary period, after successful completion the charge is dismissed. If defendant does not comply with the terms, charges can be pursued. Defendant is not considered under indictment or information during the probationary period. | This is not a conviction. If probation is not completed successfully, charges can be pursued. Research for successful completion. |
| Suspended Imposition/ Execution of Sentence | 03/15/19 | cmc | See Deferred Sentence for list of enumerated felony offenses. | Offenses prior to 07/01/1984 with dismissed probation is not a conviction unless the offense is an enumerated felony.<br><br>All enumerated felonies before 07/1/1984 and ALL misdemeanor/felony offenses on or after 07/01/1984 remains a conviction. |

AGO_LINTON_254

## Washington Terminology Page

Last Updated:                 Friday, March 15, 2019

AGO_LINTON_255

| Terminology | Updates Date | Initials | Definition of Terminology | Application of Terminology |
|---|---|---|---|---|
| Suspended Sentence | 03/15/19 | cmc | After a plea/conviction, the court may suspend or defer a sentence and place the defendant on probation. See **Deferred Sentence** for list of enumerated felony offenses. | **Offenses prior to 07/01/1984 with dismissed probation is not a conviction unless the offense is an enumerated felony.**<br><br>**All enumerated felonies before 07/1/1984 and ALL misdemeanor/felony offenses on or after 07/01/1984 remains a conviction.** |
| Vacated | 03/15/19 | cmc | Once the conviction is vacated, it is not disseminated to the public, but the arrest is available to criminal justice agencies. See **Deferred Sentence** for list of enumerated felony offenses. | **Offenses prior to 07/01/1984 with dismissed probation is not a conviction unless the offense is an enumerated felony.**<br><br>**All enumerated felonies before 07/1/1984 and ALL misdemeanor/felony offenses on or after 07/01/1984 remains a conviction.** |