1    XAVIER BECERRA
     Attorney General of California
2    ANTHONY R. HAKL
     Supervising Deputy Attorney General
3    MAUREEN C. ONYEAGBAKO
     Deputy Attorney General
4    State Bar No. 238419
       1300 I Street, Suite 125
5      P.O. Box 944255
       Sacramento, CA 94244-2550
6      Telephone:  (916) 210-7324
       Fax:  (916) 324-8835
7      E-mail:  Maureen.Onyeagbako@doj.ca.gov
     *Attorneys for Defendants Xavier Becerra, in his*
8    *official capacity as Attorney General of California,*
     *Luis Lopez, in his official capacity as Director of the*
9    *California Department of Justice Bureau of*
     *Firearms,[1] and Robert D. Wilson, in his official*
10   *capacity as Deputy Attorney General*

11              IN THE UNITED STATES DISTRICT COURT

12             FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14

15

16   **CHAD LINTON, an individual; PAUL**          3:18-cv-7653-JD
     **MCKINLEY STEWART, an individual;**
     **KENDALL JONES, an individual;**             **DEFENDANTS' OPPOSITION TO**
17   **FIREARMS POLICY FOUNDATION;**               **PLAINTIFFS' MOTION FOR**
     **FIREARMS POLICY COALITION;**                **SUMMARY JUDGMENT OR, IN THE**
18   **SECOND AMENDMENT FOUNDATION;**              **ALTERNATIVE, PARTIAL SUMMARY**
     **CALIFORNIA GUN RIGHTS**                     **JUDGMENT**
19   **FOUNDATION; and MADISON SOCIETY**
     **FOUNDATION,**                               Dept:        11
20                                                 Judge:       The Honorable James Donato
                                  Plaintiffs,      Trial Date:  January 11, 2021
21                                                 Action Filed:  December 20, 2018

22          v.

23   **XAVIER BECERRA, et al.,**

24                                 Defendants.

25

26

27   ──────────────────
            [1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Director Luis Lopez
     of the California Department of Justice Bureau of Firearms is automatically substituted as a
28   defendant in this matter in place of his predecessor, Brent E. Orick.

1

# TABLE OF CONTENTS

2

**Page**

3

Statement of Issues to Be Decided ...................................................................................... 1

4

Introduction ......................................................................................................................... 1

Statement of Relevant Facts ................................................................................................ 3

5

    I.     California's Background Check Process and the Felony-Conviction

6

           Prohibition ............................................................................................................ 3

    II.    The Parties ............................................................................................................ 5

7

           A.    Plaintiff Chad Linton ............................................................................... 5

8

           B.    Plaintiff Paul McKinley Stewart ............................................................. 6

9

           C.    Plaintiff Kendall Jones ............................................................................ 7

           D.    The Entity Plaintiffs ................................................................................ 7

10

           E.    Defendants Becerra, Lopez, and Wilson ................................................. 8

11

Procedural History .............................................................................................................. 8

12

Legal Standard .................................................................................................................... 9

Argument ........................................................................................................................... 10

13

    I.     Plaintiffs' Second Amendment Claim Fails ....................................................... 10

14

           A.    The Challenged Statutes Are Presumptively Lawful Regulatory

                 Measures Outside the Scope of the Second Amendment ....................... 10

15

           B.    Even if the Second Amendment Applies, the Challenged

16

                 Regulatory Measures Survive Intermediate Scrutiny ............................. 12

                1.    The challenged statutes serve significant government

17

                      objectives ..................................................................................... 13

18

                2.    The challenged laws promote the government's interests ........... 13

                3.    The Department is not required to apply the sister state set-

19

                      aside or dismissal orders to restore firearm rights in

                      California ...................................................................................... 14

20

           C.    The Challenged Measures Would Survive Even Strict Scrutiny ............. 16

21

    II.    The Full Faith and Credit Clause Does Not Require California to

           Subordinate Its Criminal Justice System to That of Another State ..................... 17

22

    III.   Plaintiffs' Claim Under the Privileges and Immunities Clause of Article IV

23

           Lacks Merit .......................................................................................................... 20

24

    IV.   Plaintiffs' Fourteenth Amendment Privileges or Immunities Clause Claim

           Also Fails ............................................................................................................. 22

25

    V.    Deputy Wilson Is Entitled to Eleventh Amendment Immunity ........................... 23

    VI.   The Entity Plaintiffs Lack Standing .................................................................... 24

26

Conclusion ......................................................................................................................... 25

27

28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Alaska Packers Ass'n. v. Indus. Accident Comm'n of Cal.*
    294 U.S. 532 (1935) ................................................................................17

*Binderup v. Attorney Gen.*
    836 F.3d 336 (3d Cir. 2016) .............................................................11, 15, 16

*Bolbol v. Brown*
    120 F. Supp. 3d 1010 (N.D. Cal. 2015) .................................................24

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) .................................................................................9

*Clapper v. Amnesty Int'l USA*
    133 S. Ct. 1138 (2013) ............................................................................24

*Cool Fuel, Inc. v. Connett*
    685 F.2d 309 (9th Cir. 1982) ..................................................................25

*Council of Ins. Agents & Brokers v. Molasky-Arman*
    522 F.3d 925 (9th Cir. 2008) ..................................................................20

*DesRosiers v. Hartford*
    979 F. Supp. 2d 1036 (E.D. Cal. 2013) ...................................................9

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ........................................................................2, 10, 12

*Duncan v. Becerra*
    ---F.3d 1171---, 2020 WL 4730668 (9th Cir. 2020) ...................13, 16, 21

*Giannini v. Real*
    911 F.2d 354 (9th Cir. 1990) ..................................................................20

*Gospel Missions of Am. v. City of Los Angeles*
    328 F.3d 548 (9th Cir. 2003) ..................................................................25

*Groseclose v. Plummer*
    106 F.2d 311 (9th Cir. 1939) .............................................................14, 18

*Hunt v. Wash. State Apple Advertising Comm'n*
    432 U.S. 333 (1977) .................................................................................25

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Huntington v. Attrill*
    146 U.S. 657 (1892).................................................................................................17, 18

4

*In re Zermeno-Gomez*
    868 F.3d 1048 (9th Cir. 2017)....................................................................................15

5

6

*Jackson v. City and Cty. of San Francisco*
    746 F.3d 953 (9th Cir. 2014)......................................................................................10

7

8

*Levanti v. Tippen*
    585 F. Supp. 499 (S.D. Cal. 1984).............................................................................23

9

*Los Angeles Cty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992)......................................................................................23

10

11

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)....................................................................................................24

12

13

*Mai v. United States*
    952 F.3d 1106 (9th Cir. 2020).............................................................10, 11, 13, 15

14

*Mance v. Sessions*
    896 F.3d 699 (5th Cir. 2018)........................................................................................4

15

16

*McBurney v. Young*
    569 U.S. 221 (2013)....................................................................................................20

17

18

*McDonald v. City of Chicago, Ill.*
    561 U.S. 742 (2010)....................................................................................................22

19

*Miller v. Johnson*
    515 U.S. 900 (1995)....................................................................................................16

20

21

*Murray v. Louisiana*
    347 F.2d 825 (5th Cir. 1965)......................................................................................14

22

23

*Nelson v. George*
    399 U.S. 224 (1970)....................................................................................................18

24

*Nevada v. Hall*
    440 U.S. 410 (1979)....................................................................................................17

25

26

*Oregon v. Ice*
    555 U.S. 160 (2009)....................................................................................................17

27

28

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Osuna v. Brazelton*
  No. 1:12-CV-00089-AWI-JL, 2014 WL 3362230 (E.D. Cal. July 8, 2014) ...........................13

*People v. Bell*
  49 Cal.3d 502 (1989) ......................................................................................................11, 21

*People v. Frawley*
  82 Cal.App.4th 784 (2000)..............................................................................................21, 23

*People v. Laino*
  32 Cal.4th 878 (2004) ...........................................................................................................18

*People v. Tran*
  242 Cal.App.4th 877 (2015)...................................................................................................21

*Peruta v. City of San Diego*
  824 F.3d 919 (9th Cir. 2016)..................................................................................................10

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985)...............................................................................................................19

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*
  506 U.S. 139 (1993)...............................................................................................................23

*Rosin v. Monken*
  599 F.3d 574 (7th Cir. 2010)..................................................................................................19

*Saenz v. Roe*
  526 U.S. 489 (1999).....................................................................................................20, 21, 22

*San Diego Cty. Gun Rights Comm'n v. Reno*
  98 F.3d 1121 (9th Cir. 1996)..................................................................................................25

*Sannmann v. Dept. of Justice*
  47 Cal.App.5th 676 (2020)................................................................................................21, 23

*Setser v. United States*
  566 U.S. 231 (2012)...............................................................................................................17

*Shaw v. Cal. Dep't of Alcoholic Beverage Control*
  788 F.2d 600 (9th Cir. 1986)..................................................................................................23

*Silvester v. Harris*
  843 F.3d 816 (9th Cir. 2016)...............................................................................................7, 16

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Slaughter-House Cases*
    83 U.S. 36 (1872) ................................................................................................................22

*Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins.*
    *Guar. Ass'n*
    455 U.S. 691 (1982) ............................................................................................................19

*United States v. Chovan*
    735 F.3d 1127 (9th Cir. 2013) ......................................................................................10, 12

*United States v. Phillips*
    827 F.3d 1171 (9th Cir. 2016) ......................................................................................11, 12

*United States v. Torres*
    911 F.3d 1253 (9th Cir. 2019) ................................................................................... *passim*

*United States v. Vongxay*
    594 F.3d 1111 (9th Cir. 2010) ......................................................................................11, 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
    454 U.S. 464 (1982) ............................................................................................................24

*Ex Parte Young*
    209 U.S. 123 (1908) ............................................................................................................23

*Zacharia v. City of Madera*
    No. 1:06-cv-892 AWI SMS, 2010 WL 3618690 (E.D. Cal. Sept. 13, 2010) ..........................14

**STATUTES**

United States Code, Title 18
    § 922(g)(1) ...........................................................................................................................16
    § 922(g)(4) ...........................................................................................................................13
    § 922(g)(5) ...........................................................................................................................15
    § 922(t) ...................................................................................................................................4

Arizona Revised Code
    § 13-604 .................................................................................................................................6
    § 13-3101 ...............................................................................................................................6

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Penal Code
§ 1203.4...................................................................................................21, 23
§ 12021...................................................................................................11, 21
§ 12021(a)...................................................................................................13
§ 26710(c)...................................................................................................7
§ 29800................................................................................................... *passim*
§ 29800(a)(1)...................................................................................................4, 10
§ 29800(c)(1)...................................................................................................4
§ 29800(c)(2)...................................................................................................4
§ 30105(d)...................................................................................................6
§ 30305................................................................................................... *passim*
§ 30305(a)(1)...................................................................................................4
§ 282051...................................................................................................4

Revised Code of Washington
§ 9.41.040(4)...................................................................................................5
§ 9.94A.637...................................................................................................5
§ 9.94A.640...................................................................................................5

CONSTITUTIONAL PROVISIONS

United States Constitution, Amendment XIV Clause 1...................................................................................................22

United States Constitution, Article IV
§ 1...................................................................................................17
§ 2, Clause 1...................................................................................................20

COURT RULES

Federal Rules of Civil Procedure Rule 56(a)...................................................................................................9

OTHER AUTHORITIES

2 John E. Nowak, et al., *Treatise on Const. L.* § 14.3(b) (2d ed. 1987)...................................................................................................22

Wash.Atty.Gen.Op. 2002 No. 4 (2002)...................................................................................................5

vi

Defs.' Opp'n to Pls.' Mot. Summ. J. / Partial Summ. J. (3:18-cv-7653-JD)

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether California Penal Code sections 29800 and 30305 as applied to the Individual Plaintiffs are constitutional under the Second Amendment.

2.    Whether California Penal Code sections 29800 and 30305 as applied to the Individual Plaintiffs are constitutional under the Full Faith and Credit Clause.

3.    Whether California Penal Code sections 29800 and 30305 as applied to the Individual Plaintiffs are constitutional under the Privileges and Immunities Clause of Article IV.

4.    Whether California Penal Code sections 29800 and 30305 as applied to the Individual Plaintiffs are constitutional under the Privileges and Immunities Clause of the Fourteenth Amendment.

5.    Whether the Eleventh Amendment bars suit against Deputy Attorney General Wilson.

6.    Whether the Entity Plaintiffs have established standing.

**INTRODUCTION**

Plaintiffs Linton, Stewart, and Jones are three previously convicted felons who want to possess firearms and ammunition in California and demand an exemption from the state laws prohibiting them from doing so.  Yet Plaintiffs as-applied constitutional challenges to those laws fail to override California's valid police powers to regulate the purchase and possession of firearms and ammunition by felons within its borders.

Supreme Court precedent provides that regulations prohibiting felons from possessing firearms are presumptively lawful.  California has a longstanding prohibition on felons in possession of firearms and ammunition.  Linton, Stewart, and Jones have committed felony offenses in other states.  They seek an exemption from California's felon-in-possession laws because the states that adjudicated their convictions have since dismissed or set those convictions aside.  Plaintiffs thus contend that California's law prohibiting persons convicted of felonies from possessing firearms and ammunition—California Penal Code[2] sections 29800 and 30305 (the

---

[2] All future statutory references are to the California Penal Code, unless otherwise stated.

1

challenged statutes)[3]—should not apply to them.  Plaintiffs also assert the theory that Defendants have an unlawful "policy" of not accepting relief orders from sister states.[4]  No such policy exists. In any event, Plaintiffs claim that the California Department of Justice's (the Department) application of the challenged statutes to Plaintiffs violate the Second Amendment, the Full Faith and Credit Clause, the Privileges and Immunities Clause of Article IV, and the Privileges or Immunities Clause of the Fourteenth Amendment.  Plaintiffs' claims lack merit.

This case does not implicate the Second Amendment.  Under the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), laws prohibiting persons convicted of felonies from possessing firearms are presumptively valid and do not burden any conduct protected by the Second Amendment.  The statutes at issue here constitute presumptively valid regulations directed at persons with felonious criminal histories, therefore aligning with *Heller*'s edict.  Even assuming *arguendo* that the challenged statutes burden a constitutional right (they do not), they survive the applicable analysis under intermediate scrutiny.  Specifically, they are substantially related to the significant and compelling government objectives of protecting public safety, controlling crime, and preventing gun violence.  Even the purported policy regarding out-of-state felony convictions, as vague as it is alleged, is presumptively lawful because it flows directly from *Heller*'s recognition that persons with felony convictions, such as Plaintiffs, should not possess firearms.

Plaintiffs also cannot establish a violation of the Full Faith and Credit Clause because California is entitled to administer its own criminal justice system without coordinating or subordinating it to the criminal justice mechanisms in other states.  California has a substantial and fair interest in applying its firearm regulations because its contacts with Plaintiffs outweigh Plaintiffs' contacts with the states where they were convicted.  Moreover, California is best equipped to identify and develop regulations that will serve its important and compelling

---

[3] Copies of sections 29800 and 30305 are provided in the attached exhibit to this brief, at pages 1–4.

[4] Plaintiffs' description of the alleged "policy" seems to shift between applying "the law of the state where the conviction occurred," (Pls.' Mot 8), to requiring a pardon from the adjudicating state to restore firearm rights (*id.* at 8–9), to refusing to accept foreign orders of dismissals to restore firearm rights, (*id.* at 22).

objectives.  Thus, it need not give full faith and credit to foreign judgments and statutes from other states that offend and stand in conflict with its police powers and firearm laws.

Plaintiffs also fail to show a violation of the right to travel, either under the Privileges and Immunities Clause of Article IV or the Privileges or Immunities Clause of the Fourteenth Amendment.  Article IV's Privileges and Immunities Clause applies to residents of other states who visit California.  As California citizens for at least thirty years each, Plaintiffs Stewart and Jones are not eligible to bring this cause of action.  Nor does Plaintiff Linton, a Nevada resident, have such a claim, even though he might visit California someday.  Neither the challenged statutes nor the purported policy makes distinctions based on residency.  They simply recognize the potential for convictions in other states.  Indeed, some other California resident convicted of a felony in another state (other than the states at issue here) also would be subject to the firearm prohibition and be ineligible for relief if the sister states dismissed or set those convictions aside.

The Fourteenth Amendment Privileges or Immunities argument fails for many of the same reasons.  Plaintiffs have not identified a law or policy that discriminates against new California citizens.  Nor do Plaintiffs qualify as newly arrived citizens of California.  Plaintiffs also have not shown that the challenged laws and policies present a barrier to interstate travel or require non-residents to obtain permission to enter California.  Thus, the right to travel has not been burdened.

Finally, summary judgment is not available to Plaintiffs as to Deputy Wilson because he is entitled to Eleventh Amendment immunity.  And, the Entity Plaintiffs lack standing.

Based on the foregoing, and as explained in more detail below, the Court should deny Plaintiffs' motion.

## STATEMENT OF RELEVANT FACTS

### I. CALIFORNIA'S BACKGROUND CHECK PROCESS AND THE FELONY-CONVICTION PROHIBITION

The interplay between federal and state law in connection with firearms background checks can be somewhat complex.  Relevant to this case, though, under the federal Brady Handgun Violence Prevention Act, Federal Firearms Licensees (FFLs), such as commercial firearms dealers, must contact the national instant criminal background check system (NICS) prior to the

3

1    transfer of a firearm to an unlicensed individual in order to receive information on whether the

2    individual is disqualified by federal or state law from possessing a firearm.  18 U.S.C. § 922(t).

3    FFLs contact NICS in one of two ways:  (1) through a point of contact established within a state,

4    or (2) through the NICS Operation Center at the Federal Bureau of Investigation.  *See Mance v.*

5    *Sessions*, 896 F.3d 699, 706–07 (5th Cir. 2018).  The method of contact with NICS depends on

6    whether the state is a point-of-contact state.  (*Id.*)  Because California is a point-of-contact state,

7    § 282051, FFLs in California do not communicate with NICS directly and instead go through the

8    California Department of Justice Bureau of Firearms.  (Decl. of M. Onyeagbako Supp. Defs.'

9    Opp'n to Pls.' Mot. Summ. J. / Partial Summ. J., Ex. A (Dep. Tr. of G. Matsumoto, June 5, 2020

10   at 58:10 – 59:1); *Mance*, 896 F.3d at 706–07.

11       California's background check process includes ascertaining whether the person attempting

12   to obtain a firearm falls within any of the federal or state prohibited categories.  (*See* Matsumoto

13   Dep. 58:23 – 59:5.)  Both federal and state standards must be satisfied to establish firearms

14   eligibility in California.  A would-be purchaser may meet federal requirements but be unable to

15   meet California state requirements.  Section 29800, for example, prohibits any person "who has

16   been convicted of . . . a felony under the law of the United States, the State of California, or any

17   other state, government, or country" from accessing firearms.  § 29800(a)(1).[5]  Section 30305

18   prohibits possession of ammunition and incorporates by reference section 29800's definition of

19   prohibited persons.  § 30305(a)(1) ("No person prohibited from owning or possessing a firearm

20   under Chapter 2 (commencing with Section 29800) . . ., shall own, possess, or have under custody

21   or control, any ammunition or reloaded ammunition.").

22       California law governs the treatment of out-of-state convictions.  (*See* Matsumoto Dep.

23   at 24:5-24; 64:14-19.)  The Department does not have any kind of blanket "policy" regarding out-

24   of-state convictions.  (*Id.*)

25

26       [5] This prohibition does not extend to anyone "who has been convicted of a felony under
     the laws of the United States unless either of the following criteria is satisfied:  (1) Conviction of

27   a like offense under California law can only result in imposition of felony punishment[, or] (2)
     The defendant was sentenced to a federal correctional facility for more than 30 days, or received a

28   fine of more than one thousand dollars (1,000), or received both punishments."  § 29800(c)(1),(2).

4

## II.   THE PARTIES

### A.   Plaintiff Chad Linton

Earlier this year, Plaintiff Chad Linton moved out of California and he now resides in Nevada.  (*See* Decl. C. Linton Supp. Pls.' Mot. Summ. J. / Partial Summ. J. ¶ 3, June 22, 2020, ECF No. 47-2 (Linton Decl.).)  He purportedly maintains a cabin on leased property within California.  (*Id.* ¶ 4.)  Linton does not offer any details about the nature and term of the lease, whether he intends to renew it, whether he has ever lived at the property, or whether he intends to return to live in California.  (*See id.*)

In 1987, Linton sustained a felony conviction in Washington State for attempting to evade a police vehicle.  (Linton Decl. ¶ 9; Decl. of G. Lee Supp. Pls.' Mot. Summ. J. / Partial Summ. J., Ex. E at 2, June 22, 2020, ECF No. 47-6 (Lee Decl.).)  He was sentenced to and served seven days in jail and one year of community supervision.  (Lee Decl., Ex. E at 2.)  Linton moved to California in 1988 and remained in the state over twenty years, before moving to Nevada. (Linton Decl. ¶¶ 1, 10; Linton Decl. Supp. Pls.' Mot. Prelim. Inj. ¶ 6, Dec. 19, 2019, ECF No. 38-3.)

In 2015, Linton attempted to purchase a firearm in California.  (Linton Decl. ¶ 13.)  The Department's criminal background check revealed his 1987 felony conviction.  (*Id.*; Matsumoto Dep. 74:17-25.)  Pursuant to section 29800, the Department deemed Linton ineligible to possess firearms.  (*Id.*)

In 2016, Linton petitioned for and obtained an order from a Washington court setting aside his guilty plea and vacating his conviction under Revised Code of Washington (RCW) 9.94A.640.[6]  (Linton Decl. ¶¶ 13–14 & Ex. A.)  He also obtained an order restoring his firearm rights in Washington, under RCW 9.41.040(4).  (*Id.* ¶ 15 & Ex. B.)

After obtaining the orders, Linton applied for a Personal Firearms Eligibility Check (PFEC).  (Linton Decl. ¶ 16.)  The PFEC examines authorized *California* records to determine if

---

[6] RCW 9.94A.640 permits a convicted felon to apply to vacate his conviction.  RCW §§ 9.94A.637, 9.94A.640.  However, if the conviction caused the offender to lose the right to possess firearms under Washington law, the order under RCW § 9.94A.640 does not restore that right.  Wash.Atty.Gen.Op. 2002 No. 4 (2002).

1   the applicant is prohibited by state or federal law from possessing, receiving, owning, or

2   purchasing a firearm.  § 30105(d).  Linton's PFEC results indicated he was eligible to possess and

3   purchase firearms as of that date "based on a check of California records" only.  (Linton Decl.,

4   Ex. C.)  The notice also advised Linton that "although the results of the PFEC indicate you are

5   eligible to possess and purchase firearms, you could still be prohibited based on information in a

6   federal database that the California Department of Justice was not authorized to check."  (*Id.*)

7       Despite these warnings, Linton attempted to purchase a rifle in 2018.  (Linton Decl. ¶ 17.)

8   The Department prohibited the purchase because of Linton's 1987 felony conviction.[7]  (*Id.*,

9   Ex. D; Matsumoto Dep. 74:17 – 75:13.)  The Department continues to classify Linton as a

10  prohibited person.  (Matsumoto Dep. 74:17 – 75:13.)

11      **B.    Plaintiff Paul McKinley Stewart**

12      In 1976, Plaintiff Stewart sustained a felony conviction in Arizona for first degree burglary.

13  (*See* Decl. P. Stewart Supp. Pls.' Mot. Summ. J. / Partial Summ. J. ¶ 4, June 22, 2020, ECF

14  No. 47-3 (Stewart Decl.).)  He was sentenced to three years' probation and a suspended sentence.

15  (*Id.*)

16      Stewart moved to California in or around 1988 and has remained in the state.  (Stewart

17  Decl. ¶¶ 1, 6.)  At various points between 2014 and 2018, he attempted to purchase firearms but

18  was prohibited from doing so because of his 1976 felony conviction.  (*Id.* ¶¶ 7, 8, 12, 13;

19  Matsumoto Dep. 91:6–24.)

20      In 2016, Stewart petitioned for and received an order from an Arizona court setting aside

21  his felony conviction, and restoring his right to possess weapons under Arizona Revised Code

22  sections 13-604 and 13-3101.  (Stewart Decl. ¶ 10 & Ex. A.)  After receiving those orders,

23  Stewart attempted to purchase firearms in California in 2018.  (*Id.* ¶ 12.)  The Department denied

24  the purchase on the ground that Stewart was not eligible due to his 1976 felony conviction.  (*Id.*

25  ¶ 13 & Ex. B; Matsumoto Dep. 91:6–24.)

26  _____

27      [7] The time of Linton's attempted purchase is unclear.  After discussing the 2016 PFEC
    letter, his declaration references an October 30, 2018 attempt to purchase a firearm, then
    backtracks to a November 7, 2016 letter he received from the Department, and the Live Scan

28  fingerprint background check he underwent in November 2016.  (*See* Linton Decl. ¶¶ 16, 17.)

6

1

**C.      Plaintiff Kendall Jones**

2          In 1980, Plaintiff Jones sustained a felony conviction for "credit card abuse" in Texas.  (*See*

3   Decl. K. Jones Supp. Pls.' Mot. Summ. J. / Partial Summ. ¶ 9, June 22, 2020, ECF No. 47-4

4   (Jones Decl.); Lee Decl., Ex. G at 2.)  He was sentenced to three years' probation.  (Jones Decl.

5   ¶ 9; Lee Decl., Ex. G at 2.)  1983, the Texas court dismissed Jones's conviction and terminated

6   his probation, finding that he had satisfactorily fulfilled the conditions of his probation during the

7   full period of his original probation.  (Jones Decl. ¶ 10 & Ex. A.)

8          Jones moved to California in or around 1984 and has remained in the state.  (Jones Decl.

9   ¶ 1.)  From 1984 to 2013, he worked as a correctional officer for the California Department of

10   Corrections and Rehabilitation (CDCR).  (*Id.* ¶ 3.)  Jones states that he possessed and used

11   firearms in the course of his tenure at CDCR.  (*Id.* ¶ 5.)

12          Since retiring, Jones has worked as a firearms instructor, a position that requires him to

13   maintain a certificate of eligibility (COE) issued by the Department.  (Jones Decl. ¶¶ 12, 13;

14   § 26710.)  A COE  is valid for one year and "confirms a person's eligibility to lawfully possess

15   and/or purchase firearms under state and federal law."  *Silvester v. Harris*, 843 F.3d 816, 826–27

16   (9th Cir. 2016) (citations omitted); *see also* § 26710(c).  Jones's firearms eligibility came into

17   question when, during renewal for his COE in or around 2018, the Department noticed a changed

18   entry for Jones in the NICS database that called for closer inspection about Jones's eligibility to

19   possess firearms *in California*.  (Onyeagbako Decl., Ex. B at 8; Jones Decl. ¶ 14; Lee Decl.,

20   Ex. H.)  Given Jones's conviction and the absence of a pardon or statutory exemption, the

21   Department determined that Jones's felony conviction rendered him ineligible to own, possess, or

22   control a firearm.  (Jones Decl., Ex. C; Lee Decl., Ex. E at 009; Matsumoto Dep. 99:22-24,

23   100:11-19.)

24

**D.      The Entity Plaintiffs**

25          The complaint also names as Plaintiffs the Firearms Policy Foundation, Firearms Policy

26   Coalition, Second Amendment Foundation, California Gun Rights Foundation, and Madison

27   Society Foundation.  (First Am. Compl. ¶¶ 7–11, Dec. 2, 2019, ECF No. 36.)  They initially sued

28   on behalf of the Individual Plaintiffs and similarly situated persons, however, they move only for

7

1    relief as to the Individual Plaintiffs.  (*Id.*; Pls.' Mem. P. & A. Supp. Mot. Summ. J. / Partial

2    Summ. J. 1, 14, June 22, 2020, ECF No. 47-1 (Pls.' Mot.))   As discussed below, there is no

3    evidence in the record regarding the Individual Plaintiffs' membership in these organizations.

4           **E.    Defendants Becerra, Lopez, and Wilson**

5           Defendants are California Attorney General Xavier Becerra; Luis Lopez, Director of the

6    California Department Bureau of Firearms; and Deputy Attorney General Robert Wilson, all sued

7    in their official capacities.  (First Am. Compl. ¶¶ 12–14.)  Plaintiffs allege that Becerra is the

8    "chief law officer" for California and head of the Department, which "regulate[s] and enforce[s]

9    state law related to the sales, transfer, possession, and ownership of firearms."  (*Id.* ¶ 12.)  Lopez

10   allegedly "is responsible for the Bureau's "implementation and enforcement of the statutes,

11   regulations and policies regarding prohibited persons."  (*See id.* ¶ 13.)  Deputy Wilson allegedly

12   "is responsible for formulation, issuance, and implementation of the policy or policies described

13   below which prohibit Individual Plaintiffs and other similarly situated from purchasing or

14   possessing firearms."  (*Id.* ¶ 14.)  Plaintiffs' motion does not discuss Defendants' roles in the

15   alleged constitutional violations.

16                              **PROCEDURAL HISTORY**

17          Plaintiffs Linton, Stewart, and the Entity Plaintiffs filed this lawsuit on December 20, 2018,

18   requesting a declaration that sections 29800 and 30305, "as applied to Individual Plaintiffs and

19   others similarly-situated to them, is unconstitutional." (Compl., Prayer for Relief, ¶ 1, Dec. 20,

20   2018, ECF No. 1.)  They also sought a declaration that Defendants' alleged refusal to honor the

21   findings of states that set aside and vacate felony convictions and restore firearms rights "is

22   unconstitutional as applied to Individual Plaintiffs and others similarly-situated to them[.]"  (*Id.*,

23   Prayer for Relief, ¶¶ 1–3.)  Plaintiffs additionally sought an order enjoining Defendants from

24   enforcing policies and practices that refuse to honor the set-aside and dismissal orders.  (*Id.*,

25   Prayer for Relief, ¶ 4.)

26          Defendants moved to dismiss the complaint.  (Defs.' Mot. to Dismiss, Feb. 22, 2019, ECF

27   No. 12.)  Following a hearing, the Court issued an order stating that the motion "raise[d] issues

28   best addressed in summary judgment proceedings."  (Order, Aug. 22, 2020, ECF No. 26.)

                                        8

1   Defendants thereafter answered the Complaint (Answer, Sept. 20, 2019, ECF No. 28), and the

2   parties engaged in discovery.

3       In November 2019, Plaintiffs moved to amend the complaint, adding Plaintiff Jones to the

4   action, and Defendants opposed that motion.  (Pls.' Mot. Leave to File Am. Compl., Nov. 15,

5   2019, ECF No. 30; Defs.' Opp'n to Mot. Leave to File First Am. Compl., Nov. 2, 2019, ECF

6   No. 33).  The Court granted Plaintiffs' motion.  (Order, Dec. 2, 2019, ECF No. 35.)

7       Approximately two weeks after the Court granted leave to amend and one year after

8   commencing this lawsuit, Plaintiffs moved for preliminary injunction preventing enforcement of

9   sections 29800 and 30305 against each of the Individual Plaintiffs.  (Pls.' Mot. Prelim. Inj.,

10  Dec. 19, 2019, ECF No. 38.)  Defendants opposed and the Court denied the motion.  (Defs.'

11  Opp'n to Pls.' Mot. Prelim. Inj., Jan. 27, 2020, ECF No. 42; Order, May 21, 2020, ECF No. 46.)

12      Plaintiffs filed their pending motion for summary judgment or, in the alternative, partial

13  summary judgment, on June 22, 2020.  (ECF No. 47.)  Defendants, in turn, are filing this

14  opposition brief.  A bench trial in this case is set for January 11, 2020.  (Scheduling Order,

15  Jan. 10, 2020, ECF No. 41.)

16                                  **LEGAL STANDARD**

17      The standards applicable to a summary judgment motion are well known.  In short,

18  summary judgment is appropriate where there exists no genuine issue as to any material fact and

19  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (2010); *Celotex*

20  *Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  "The standard that applies to a motion for

21  summary adjudication is the same as that which applies to a motion for summary judgment."

22  *DesRosiers v. Hartford*, 979 F. Supp. 2d 1036, 1047 (E.D. Cal. 2013); *see* also Fed. R. Civ.

23  P. 56(a).

24

25

26

27

28

1

**ARGUMENT**

2

**I.    PLAINTIFFS' SECOND AMENDMENT CLAIM FAILS**

3        The Second Amendment right to bear arms is not unlimited. *Heller*, 554 U.S. at 626–27

4    ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the

5    possession of firearms by felons and the mentally ill"); *United States v. Torres*, 911 F.3d 1253,

6    1257 (9th Cir. 2019) (recognizing Congress's ability to "place certain limits on where the [Second

7    Amendment] right is exercised, how the right is exercised, and who may exercise the right.");

8    *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (regulating the manner in which

9    persons exercise their Second Amendment rights is permissible).  At issue here is whether

10    California *must* permit individuals whose felony convictions have been set aside or dismissed in

11    other states to deviate from California's firearm prohibition for "[a]ny person who has been

12    convicted of . . . a felony under the laws of the United States, the State of California, or any other

13    state, government, or country[.]"  § 29800(a)(1).

14        The Ninth Circuit analyzes Second Amendment challenges using a two-part inquiry.  The

15    first step looks at "whether the challenged law burdens conduct protected by the Second

16    Amendment."  *Chovan*, 735 F.3d at 1136.  If so, the Court must apply the appropriate level of

17    scrutiny.  *Id.*; *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).

18
        **A.    The Challenged Statutes Are Presumptively Lawful Regulatory Measures
            Outside the Scope of the Second Amendment**
19

20        It matters whether challenged laws burden protected conduct because courts "cannot 'apply

21    the Second Amendment to protect a right that does not exist under the Amendment.'"  *Torres*,

22    911 F.3d at 1258 (quoting *Peruta v. City of San Diego*, 824 F.3d 919, 942 (9th Cir. 2016)

23    (en banc)).  "A law does not burden Second Amendment rights "if it either falls within one of the

24    'presumptively lawful regulatory measures' identified in *Heller* or regulates conduct that

25    historically has fallen outside the scope of the Second Amendment."  *Mai v. United States*,

26    952 F.3d 1106, 1114 (9th Cir. 2020) (quoting *Torres*, 911 F.3d at 1258.)  Relevant here is

27    *Heller*'s recognition that regulatory measures prohibiting felons from possessing firearms are

28    longstanding and presumptively lawful.  554 U.S. at 626–27.  Such measures—like the statutes

1   and supposed policy at issue here—are not constrained by the Second Amendment because they

2   "affect individuals or conduct unprotected by the right to keep and bear arms." *Torres*, 911 F.3d

3   at 1258 (quoting *Binderup v. Attorney Gen.*, 836 F.3d 336, 343 (3d Cir. 2016)); *accord United*

4   *States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) (federal prohibition on felons in

5   possession of firearms comports with Second Amendment).

6        Sections 29800 and 30305, which prohibit persons who have been convicted of felony

7   offenses from possessing firearms and ammunition, are presumptively lawful and longstanding

8   measures that fall outside the scope of the Second Amendment.  There is no material dispute that

9   Plaintiffs Linton, Stewart, and Jones have sustained felony convictions.  There is also no material

10  dispute that the challenged statutes relate back to 1917, to the Dangerous Weapons Control Act.

11  *People v. Bell*, 49 Cal.3d 502, 544 (1989) (en banc) ("The clear intent of the Legislature in

12  adopting the weapons control act [codified in former § 12021, the predecessor to § 29800] was to

13  limit as far as possible the use of instruments commonly associated with criminal activity . . . and,

14  specifically, to minimize the danger to public safety arising from the free access to firearms that

15  can be used for crimes of violence.") (internal citations and quotation marks omitted).

16       Plaintiffs cannot reasonably argue that the challenged statutes are unlawful, so they argue

17  instead that there is no "longstanding historical predicate" for the Department's alleged policy

18  and that Plaintiffs "are not [among] the class of persons the Founders understood to be prohibited

19  from possessing firearms—i.e., violent and otherwise dangerous persons." (Pls.' Mot. 10

20  (quoting *Binderup*, 836 F.3d at 348).)  Such a carveout conflicts with the Ninth Circuit's

21  understanding that "'felons are categorically different from the individuals who have a

22  fundamental right to bear arms.'"  *United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016)

23  (quoting *Vongxay*, 594 F.3d at 1115).  Thus, law-abiding citizens are distinct from those persons

24  with a demonstrated history of committing felony offenses, whether violent or non-violent.  *Mai*,

25  952 F.3d at 1121.

26       Even if firearms laws like the ones at issue were limited to violent or otherwise dangerous

27  persons—a limitation the statutes make no mention of—Plaintiffs' claims would still fall short.

28  The challenged statutes are at least akin to the Federal Firearms Act of 1938, which restricted

11

firearm possession for individuals convicted of a "crime of violence," the definition of which included mayhem and burglary. *Chovan*, 735 F.3d at 1137. Plaintiffs Linton's and Stewart's offenses for attempting to evade a police officer and first-degree burglary, respectively, fairly fall into this category. To the extent Plaintiffs want to characterize Jones's conviction for credit card abuse as non-violent, the offense still carries an element of deceit that is dangerous. *Cf. Phillips*, 827 F.3d at 1175 (non-violent crime such as misprision of felony is not purely passive because it "contain[s] some element of active concealment, though a mere lie might be sufficient"). These circumstances are enough to view the Individual Plaintiffs as "categorically different" from law-abiding citizens entitled to Second Amendment protections and not protected by the Second Amendment.[8]

For this reason, the Court should end its analysis under the applicable two-part inquiry at step one. The regulatory measures that Plaintiffs complain about do not burden Second Amendment conduct.

**B.      Even if the Second Amendment Applies, the Challenged Regulatory Measures Survive Intermediate Scrutiny**

If this Court decides that the challenged measures implicate conduct within the scope of the Second Amendment (they do not), they still survive under intermediate scrutiny. "[T]here has been near unanimity in the post-*Heller* case law that, when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate." *Torres*, 911 F.3d at 1262.

Intermediate scrutiny asks (1) whether the challenged law serves a "'significant, substantial, or important' government objective," and (2) whether there is a "reasonable fit between that objective and the conduct regulated." *Torres*, 911 F.3d at 1263 (quoting Chovan, 735 F.3d at 1139). Importantly, the challenged law need not utilize "the least restrictive means of achieving its interest" in order to survive scrutiny. *Id.*

---

[8] This Court also need not veer from established precedent on this point to entertain the scholarly skepticism on lifetime bans for all felons. (Pls.' Mot. 10 (citing *Phillips*, 827 F.3d at 1174).) As the *Phillips* court correctly noted, such skepticism is "beside the point" in light of precedent. 827 F.3d at 1176 (citing *Heller* and *Vongxay*).

### 1.    The challenged statutes serve significant government objectives

California has multiple government objectives that are served by the challenged statutes. "The intent underlying section 12021, subdivision (a) [predecessor to § 29800] was to limit the use of instruments commonly associated with criminal activity and to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence. . . . The law properly presumes the danger is greater when the person possessing the firearm has previously been convicted of a felony." *Osuna v. Brazelton*, No. 1:12-CV-00089-AWI-JL, 2014 WL 3362230, at *10 (E.D. Cal. July 8, 2014) (citation and quotation marks omitted); *accord Duncan v. Becerra*, ---F.3d 1171---, 2020 WL 4730668, at *22 (9th Cir. 2020) (recognizing public safety, preventing against gun violence, and preventing crime as compelling state interests); *Torres*, 911 F.3d at 1263 (acknowledging important government interests in crime control and public safety). Thus, California "has a[] strong interest in preventing people who already have disrespected the law" from possessing guns. *Torres*, 911 F.3d at 1264 (internal citation and quotations omitted; alteration in original).

### 2.    The challenged laws promote the government's interests

A law subject to intermediate scrutiny simply needs "to promote a substantial government interest that would be achieved less effectively absent the regulation[s]." *Mai*, 952 F.3d at 1116 (quoting *Torres*, 911 F.3d at 1263). It need not employ the least restrictive means necessary to achieve their objectives. *Id.* Here, sections 29800 and 30305 reasonably fit and substantially promote the state's interests in promoting public safety, controlling crime, and preventing gun violence. There is no difference between the state laws and [18 U.S.C. §] 922(g)(4)'s interest in "preventing horrific acts of violence." *Mai*, 952 F.3d at 1121.

Moreover, the scope of the challenged statues is narrow. They do not encompass individuals without felony convictions or those subject to statutory exemptions. The laws, therefore, are narrowly tailored because they target those with a demonstrated history of dangerousness, whether violent or non-violent. Plaintiffs' Second Amendment claim fails because sections 29800 and 30305 are valid exercises of the California legislature's authority. *See, e.g.*, *Torres*, 911 F.3d at 1264–65.

1

### 3.    The Department is not required to apply the sister state set-aside or dismissal orders to restore firearm rights in California

2

3       Plaintiffs do not seriously contest the importance of the governmental interests at stake

4   here, or that the challenged measures sufficiently promote those interests as a general matter.

5   Rather, Plaintiffs somewhat narrowly claim that those interests are not promoted in this particular

6   case, where each of the Plaintiffs have obtained some sort of out-of-state order.  But that as-

7   applied argument lacks merit.

8       The fact that other states have set aside or dismissed the Individual Plaintiffs' felony

9   convictions does not mandate that Plaintiffs be exempted from the prohibited class of persons

10  who have been convicted of felony offenses in other states.  Defendants take no issue with those

11  other states restoring firearm rights within their own jurisdictions.  However, the California

12  statutes at issue do not contain language that permits the Department to make exceptions for relief

13  orders from other states.  *See* §§ 29800, 30305.  Moreover, the out-of-state orders cannot preclude

14  the Department from recognizing the plain facts of the Individual Plaintiffs' convictions and

15  applying California's own police laws within California's borders.  *See, e.g.*, *Groseclose v.*

16  *Plummer*, 106 F.2d 311, 313 (9th Cir. 1939) ("It still remains true that petitioner was the subject

17  of two prior final convictions when the law of California overtook him in the commission of

18  another felony.  Notwithstanding the Texas pardons, the stubborn fact remains that the habit of

19  crime was upon him.  The executive clemency of one state could not, under any law of such state,

20  prevent a sister state from taking cognizance of plain facts, and from applying its police laws to

21  them."); *Murray v. Louisiana*, 347 F.2d 825, 827 (5th Cir. 1965) ("Different states use different

22  standards in issuing pardons and the effect of them may vary from jurisdiction to jurisdiction.");

23  *Zacharia v. City of Madera*, No. 1:06-cv-892 AWI SMS, 2010 WL 3618690, at *20 n.25 (E.D.

24  Cal. Sept. 13, 2010) (agreeing with California state court decision that another state cannot

25  determine whether California views person as a felon, even if that state restores firearm rights)

26  (citations omitted).

27       Although their purpose in doing so is not entirely clear, Plaintiffs engage in a review of the

28  Department's process for analyzing the Individual Plaintiffs' criminal history records to somehow

14

1  show that Defendants do more than simply apply the challenged statutes.  (Pls.' Mot. 13–16.)

2  Plaintiffs suggest there is an improper "one-way street" where the Department consults the laws

3  of the other states to understand the convictions but will not then recognize the dismissal and set

4  aside orders to restore firearm rights.  (*Id.* at 13.)

5       The Ninth Circuit analyzed similar circumstances in *Mai v. United States*, 952 F.3d 1106,

6  and upheld a law prohibiting firearms to those once deemed mentally ill.  Plaintiff Mai had

7  previously been committed to a mental institution in Washington State, which rendered him

8  ineligible to purchase or possess firearms under state and federal law (18 U.S.C. § 922(g)(5)).  *Id.*

9  at 1110.  In the years since his release from the institution, Mai presumptively established himself

10  as a law-abiding citizen and successfully obtained an order restoring his firearm rights in

11  Washington State.  *Id.*  The Ninth Circuit upheld the federal prohibition.  *Id.* at 1121.  Scientific

12  evidence supported congressional judgment that the mentally ill continue to pose an increased

13  risk of violence.  *Id.* at 1110, 1112.  Additionally, the court ruled that the Second Amendment

14  "does not demand 'an individualized hearing' to assess the plaintiff's level of risk.  *Id.* at 1119;

15  *cf. Torres*, 911 F.3d at 1164 n.6 (permitting over inclusiveness of firearms ban to include non-

16  violent offenders).  And, while plaintiff Mai had not had future incidents, the Ninth Circuit

17  concluded that there was nothing in the record that showed his level of risk was nonexistent.  *Mai*,

18  952 F.3d at 1119.  The same reasoning may be applied here.  The California Legislature retains

19  the right to not base firearms eligibility for this class of individuals on perceived, individualized

20  risk.

21       Given the Ninth Circuit's decision in *Mai*, this Court should disregard Plaintiffs' reliance

22  on the Third Circuit's decision in *Binderup*, 836 F.3d 336.  (Pls.' Mot. 18–19.)  *Binderup* lacks

23  precedential and persuasive value.  *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir.

24  2017) ("Under our 'law of the circuit doctrine,' a published decision of this court constitutes

25  binding authority which must be followed unless and until overruled by a body competent to do

26  so.") (citation and quotation marks omitted).  Moreover, the plaintiffs in that Third Circuit case

27  were convicted of misdemeanors (corrupting a minor and driving while intoxicated), which

28

15

1  played a significant role in the court's finding that the firearm ban was unconstitutional as applied

2  to those plaintiffs.  *Binderup*, 836 F.3d at 340.  Those facts do not present themselves here.

3     Finally, this Court should resist Plaintiffs' use of federal firearms law, 18 U.S.C.

4  § 922(g)(1), to suggest that California, presumably at the direction of this Court, should change

5  its approach.  (Pls.' Mot. 16–17.)  California has the sovereign right to develop its police powers.

6  Section 29800, unlike section 922(g)(1), does not contain a qualification for recognizing

7  expunged or set aside convictions.  And the Court should decline to insert such language into a

8  California statute.

9     **C.  The Challenged Measures Would Survive Even Strict Scrutiny**

10     As discussed above, the challenged statutes and alleged policy are presumptively lawful

11  and longstanding prohibitions that do not burden conduct protected by the Second Amendment.

12  *See* section I.A, *supra*.  Thus, this Court need not conduct an analysis applying the appropriate

13  level of scrutiny.  Additionally, if any level of scrutiny applies, there is near unanimity in post-

14  *Heller* case law applying intermediate scrutiny, which the measures at issue survive.  *Torres*,

15  911 F.3d at 1262.  Strict scrutiny does not apply because the challenged measures do not

16  "implicate[] the core of the Second Amendment right and severely burden[] that right[.]"

17  *Silvester*, 843 F.3d at 821 (internal citation omitted).  Again, Plaintiffs are part of a prohibited

18  class of persons generally outside the scope of Second Amendment protections.

19     Nevertheless, under strict scrutiny a state law must be "narrowly tailored to achieve a

20  compelling interest."  *Duncan*, 2020 WL 4730668, at *22 (quoting *Miller v. Johnson*, 515 U.S.

21  900, 920 (1995)).  The challenged laws and alleged policy are narrowly tailored because they do

22  not affect persons who have never been convicted of felonies or are eligible for statutory

23  exemptions.  And, as the Ninth Circuit makes clear, preventing crime and gun violence are

24  compelling government interests.  *Id.*  For these reasons, the challenged laws and alleged policy

25  survive strict scrutiny as well.

26     Finally, this Court should give no weight to Plaintiffs' unqualified legal conclusions about

27  their Second Amendment rights being denied, and vague accounts of "substantial hardships."

28  (Pls.' Mot. 12; Linton ¶ 25; Stewart ¶ 15; Jones ¶ 18.)  For example, Linton notes loss of "an

<div align="center">16</div>

1  antique family-heirloom shotgun," that may or may not be operable to defend his home.  (Linton

2  Decl. ¶ 22.)  Jones discusses threats made to him while working at CDCR, a career which ended

3  seven years ago in 2013.  (Jones Decl. ¶¶ 3, 17.)  He fails to offer additional information

4  necessary to assess the threat(s), such as who made them and when, whether those individuals are

5  still incarcerated, and whether any threats have been carried out outside the prison's walls.  The

6  fact that Jones was allowed to possess a firearm for so many years also is of no moment.  If that

7  firearms possession resulted from an error attributable to the Department, the Department should

8  not be prohibited from correcting it.  The simple facts are that Jones, Linton, and Stewart all

9  sustained felony convictions, and section 29800 does not create a carveout for set asides or

10  dismissals of such orders.  Plaintiffs have suffered no Second Amendment infirmity.

11  **II.     THE FULL FAITH AND CREDIT CLAUSE DOES NOT REQUIRE CALIFORNIA TO
12          SUBORDINATE ITS CRIMINAL JUSTICE SYSTEM TO THAT OF ANOTHER STATE**

13          Article IV of the Constitution requires that "Full Faith and Credit shall be given in each

14  State to the public Acts, Records, and Judicial Proceedings of every other State."  U.S. Const.

15  art. IV, § 1.  The Full Faith and Credit Clause does not preclude a state from determining its own

16  laws or carrying out its public policy.  *Nevada v. Hall*, 440 U.S. 410, 422 (1979) ("[T]he Full

17  Faith and Credit Clause does not require a State to apply another State's law in violation of its

18  own legitimate policy."); *Alaska Packers Ass'n. v. Indus. Accident Comm'n of Cal.*, 294 U.S. 532,

19  547 (1935) ("It has often been recognized by this Court that there are some limitations upon the

20  extent to which a state will be required by the full faith and credit clause to enforce even the

21  judgment of another state, in contravention of its own statutes or policy.").

22          As a sovereign state, California "is responsible for 'the administration of [its own]

23  criminal justice syste[m].'"  *Setser v. United States*, 566 U.S. 231, 241 (2012) (alterations in

24  original; citations omitted) (quoting *Oregon v. Ice*, 555 U.S. 160, 168 (2009)).  Thus, it has long

25  been recognized that the Full Faith and Credit Clause cannot require California to subordinate its

26  criminal justice system and Penal Code based on the criminal justice laws of sister states.  *See,*

27  *e.g.*, *Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond

28  the jurisdiction of the state which enacts them, and can have extraterritorial effect only by the

17

Defs.' Opp'n to Pls.' Mot. Summ. J. / Partial Summ. J. (3:18-cv-7653-JD)

1    comity of other states.").  "Crimes and offenses against the laws of any state can only be defined,

2    prosecuted, and pardoned by the sovereign authority of that state; and the authorities . . . of other

3    states take no action with regard to them, except by way of extradition, to surrender offenders to

4    the state whose laws they have violated, and whose peace they have broken."  *Id.*

5           Just as Washington, Arizona, and Texas retained the right to dismiss or vacate the

6    Individual Plaintiffs' felony convictions without input from California, California acts lawfully in

7    choosing to recognize the Individual Plaintiffs' convictions while not recognizing out-of-state

8    orders or judgments setting aside or vacating the convictions.  *Cf. Nelson v. George*, 399 U.S. 224

9    (1970) ("the Full Faith and Credit Clause does not require that sister States enforce a foreign

10   penal judgment. . . California is free to consider what effect, if any, it will give to the North

11   Carolina detainer . . . .'") (citations omitted); *Groseclose*, 106 F.2d at 313 ("It still remains true

12   that petitioner was the subject of two prior final convictions when the law of California overtook

13   him in the commission of another felony.  Notwithstanding the Texas pardons, the stubborn fact

14   remains that the habit of crime was upon him.  The executive clemency of one state could not,

15   under any law of such state, prevent a sister state from taking cognizance of plain facts, and from

16   applying its police laws to them.").[9]

17          The California Supreme Court has considered and rejected a similar argument that the

18   state should give full faith and credit to an Arizona court's judgment of dismissal, and not use the

19   defendant's guilty plea to enhance a sentence in a subsequent proceeding.  *People v. Laino*, 32

20   Cal.4th 878, 887 (2004).  The *Laino* court held "that the full faith and credit clause does not

21   preclude a state from determining under its own laws whether a guilty plea in another jurisdiction

22   constitutes a prior conviction for purposes of its habitual criminal statute."  *Id.* at 888; *see also id.*

23   ("If California need not give full faith and credit to penal judgments of another state, then it is

24   free to determine under its own laws whether defendant's Arizona plea constitutes a conviction

25   for purposes of the three strikes law, notwithstanding the subsequent Arizona judgment

26   discharging defendant from probation and dismissing the proceedings.").

27   _____
             [9] The authorities cited by Plaintiff with respect to recognizing foreign judgments do not
28   save their case.  Those cases do not involve criminal judgments and relate instead to products
     liability and family law scenarios.  (Pls.' Mot. 20–21.)

1    Furthermore, the Full Faith and Credit Clause does not require California to recognize

2 criminal judgments from sister states because of its substantial contacts with the Individual

3 Plaintiffs, which outweigh Plaintiffs' contacts with the states that issued the set aside and

4 dismissal orders.  For example, Plaintiff Stewart has resided in California for thirty years and

5 offers no information about his current contacts with Arizona beyond seeking the set aside order.

6 (Stewart Decl. ¶¶ 1, 10.)  Plaintiff Jones has lived and worked in California for over thirty-nine

7 years and offers no information about recent contacts with Texas over that time.  (Jones Decl.

8 Supp. Pls.' Mot. ¶¶ 1, 10, 11.)  Plaintiff Linton was born and raised in California, served in the

9 Navy in Washington State, and returned and remained in California for over twenty years.

10 (Linton Decl. ¶¶ 7, 8, ECF No. 38-3; Linton Decl. ¶¶ 1, 10, ECF No. 47-2.)  Based on these

11 contacts, California has a real and substantial interest in applying its firearm regulations to

12 Plaintiffs.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) ("for a State's

13 substantive law to be selected in a constitutionally permissible manner, that State must have a

14 significant contact or significant aggregation of contacts, creating state interests, such that choice

15 of its law is neither arbitrary nor fundamentally unfair.").[10]

16    Based on the foregoing, this Court should reject Plaintiffs' argument that California is

17 required to give full faith and credit to the sister state court orders or judgments here.  (Pls.'

18 Mot. 19.)

19

20

21

22

23

---

24    [10] The disproportionate contacts between California and the adjudicating states also
explain why the sister states lack jurisdiction to extend their decisions to California.  "If [the court
25 rendering judgment] did not have jurisdiction over the subject matter or the relevant parties, full
faith and credit need not be given."  *Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. &*
26 *Health Ins. Guar. Ass'n*, 455 U.S. 691, 705 (1982); *accord Rosin v. Monken*, 599 F.3d 574, 577
(7th Cir. 2010) ( "Illinois need not dispense with its preferred mechanism for protecting its
27 citizenry by virtue merely of a foreign judgment that envisioned less restrictive requirements'
[*sic*] being imposed on the relevant sex offender.  Illinois, as a state of the Union, has police
28 power over the health and welfare of its citizens.").

1

2

### III.   PLAINTIFFS' CLAIM UNDER THE PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV LACKS MERIT

3

4

5

6

7

8

9

10

11

12

13

14

15

"A citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." *Saenz v. Roe*, 526 U.S. 489, 501 (1999) (quoting U.S. Const., art. IV, § 2, cl. 1). Thus, Article IV "provides important protections for nonresidents who enter a State," *id.*, but only as to fundamental rights, *McBurney v. Young*, 569 U.S. 221, 226 (2013). "Like many other constitutional provisions, the privileges and immunities clause is not an absolute." *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 934 (9th Cir. 2008) (citation omitted). It does not prohibit the use of state citizenship or residency to distinguish among a class of persons. *McBurney*, 569 U.S. at 226; *Saenz*, 526 U.S. at 502. A challenged law or policy also does not violate the Privileges and Immunities Clause if it advances a substantial state interest, *Council of Ins. Agents & Brokers*, 522 F.3d at 934, and has an incidental effect on non-citizens, *McBurney*, 569 U.S. at 228–29. Further, "the Clause does require that a State tailor its every action to avoid any incidental effect" on non-residents. *Id.* at 229.

16

17

18

19

20

21

22

Plaintiffs' claims fail because the challenged statutes and alleged policy advance a substantial state interest here and do not have more than an incidental effect on non-citizens. Both Plaintiffs Stewart and Jones have lived in California for at least thirty years. (Stewart Decl. ¶¶ 1, 10; Jones Decl. ¶¶ 1, 10, 11.) Thus, they cannot show that they have been discriminated against because they are California citizens. *Giannini v. Real*, 911 F.2d 354, 357 (9th Cir. 1990) ("Discrimination on the basis of out-of-state residency is a necessary element for a claim under the Privileges and Immunities Clause.")

23

24

25

26

27

28

While Plaintiff Linton is no longer a California resident, his claim also lacks merit. He argues that "Defendants' policies" somehow "violate [his] right to reenter the state without forfeiting a substantial liberty interest." (Pls.' Mot. 22.) But Linton cites no language in the challenged statutes that distinguishes between residents and non-residents, or otherwise gives California residents an advantage. (*See id.* at 21, 22.) Linton's status as a non-California resident is not the reason why he cannot access firearms in the state. Linton cannot access firearms in

20

1    California because he has been convicted of a felony.  *See* § 29800.  California prohibits such

2    access to a person who has been convicted of a felony offense in order to promote substantial

3    state interests of protecting public safety, controlling crime, and preventing gun violence.

4    *Duncan*, 2020 WL 4730668, at *22; *Torres*, 911 F.3d at 1263; *Bell*, 49 Cal.3d at 544.  These are

5    substantial and, indeed, compelling state interests.  *Duncan*, 2020 WL 4730668, at *22.

6          Moreover, any effects of the challenged statutes or alleged policy on Linton are incidental.

7    They do not deny Linton the right to travel into or out of California.  And Linton's comparison of

8    himself to individuals convicted of section 17(b) wobbler offenses in California, who may have

9    their firearm rights restored if reduced to a misdemeanor, is not an appropriate comparison.[11]

10   (Pls.' Mot. 21.)  First, the Privileges and Immunities Clause is implicated "by virtue of a person's

11   state citizenship," *Saenz*, 526 U.S. at 501, not where the person was convicted.  Second,

12   eligibility for a section 17(b) conviction is not based on a person's status as a California resident.

13   California residents and non-residents are equally eligible for conviction.  Third, the more

14   appropriate comparison for Linton is to individuals (whether residents or non-residents) whose

15   California convictions are for straight felonies that are set aside under section 1203.4.[12]  Just as

16   Linton is not eligible to possess firearms, neither are persons convicted of straight felonies with

17   1203.4 dismissals and set asides.  *See Sannmann v. Dept. of Justice*, 47 Cal.App.5th 676, 686

18   (2020) (quoting *People v. Frawley*, 82 Cal.App.4th 784, 797 (2000) ("persons granted relief

19   under [section 1203.4] remain liable to prosecution under section 12021 for possession of any of

20   the weapons proscribed by that section")).

21

22

23

24

---

25   [11] When the imposition of sentence is suspended, the status of a person convicted of a
section 17(b) wobbler offense charged as a felony is that of a "potential" felon.  *People v. Tran*
26   242 Cal.App.4th 877, 886 (2015).  Misdemeanor or felony sentencing is held in abeyance
pending completion of terms and a successful 17(b) petition.  The same is not true of a person
27   convicted of a crime that is a straight felony, or a person who commits a wobbler offense but is
sentenced to prison – even if the execution of the sentence is suspended.  *Id.* at 885.

28        [12] A copy of section 1203.4 is attached in the exhibit to this brief, at page 5.

## IV. PLAINTIFFS' FOURTEENTH AMENDMENT PRIVILEGES OR IMMUNITIES CLAUSE CLAIM ALSO FAILS

The Privileges or Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of the United States[.]" U.S. Const., amend. XIV, cl. 1. The Clause protects "very few rights," including "the right to petition Congress, the right to vote in federal elections, the right to interstate travel or commerce, the right to enter federal lands, or the rights of a citizen while in custody of federal officers." 2 John E. Nowak, et al., *Treatise on Const. L.* § 14.3(b) (2d ed. 1987) (citing *Slaughter-House Cases*, 83 U.S. 36, 79–81 (1872)). It does not protect a right to keep and bear arms. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 758 (2010) (citation omitted).

Constrained by the exclusion of the right to bear arms, Plaintiffs argue that the challenged statutes and alleged policy regarding out-of-state felony convictions deprive them of the right to travel. (Pls.' Mot. 23–25.) That argument cannot stand. The Supreme Court held in *Saenz* that the right to travel under the Fourteenth Amendment involves "the right of the *newly arrived* citizen to the same privileges and immunities enjoyed by other citizens of the same state." 526 U.S. at 502 (emphasis added). The facts here do not fit that scenario because Plaintiffs Stewart and Jones have each lived in California for at least thirty years. (Stewart Decl. ¶¶ 1, 10; Jones Decl. ¶¶ 1, 10, 11.) Plaintiff Linton lacks standing because he left California, after more than twenty years in the state. (Linton Decl. ¶¶ 6, 8, ECF No. 38-3; Linton Decl. ¶¶ 1, 10, ECF No. 47-2.) Thus, Plaintiffs do not come within the ambit of the Privileges or Immunities Clause.

Plaintiffs' Fourteenth Amendment claim also fails because, as discussed above, the challenged statutes do not make a distinction based on residency, let alone the length of residence. *See* section III *supra*. Perhaps that explains why Plaintiffs push their "policy" theory concerning recognition of the out-of-state felony set-aside orders. That, too, falls flat because the place of conviction does not represent the place of residence. Again, a California resident who commits and is convicted of a felony in another state that is later set aside or dismissed, will be in the same position as the Individual Plaintiffs here. Plaintiffs' comparison of themselves to persons

22

1    convicted of misdemeanors under section 17(b) is inapt and closer instead to persons with straight

2    felonies whose convictions have been set aside under section 1203.4.  Just as the Individual

3    Plaintiffs are not eligible to possess firearms, neither are persons convicted of straight felonies

4    with 1203.4 set asides.  *See Sannmann v*, 47 Cal.App.5th at 686; *Frawley*, 82 Cal.App.4th at 797.

5           Finally, Plaintiffs' claim fails because the challenged laws and "policy" do not present a

6    barrier to interstate travel, nor require non-residents to obtain permission to enter California.  *See*

7    *Levanti v. Tippen*, 585 F. Supp. 499, 507 (S.D. Cal. 1984) ("every case invoking the right to

8    travel has required the plaintiff to establish disparate treatment of outsiders which inhibits free

9    passage across state boarders").  Any inconvenience to Plaintiffs, therefore, is incidental and

10   justified in light of the state's compelling interests in public safety, crime prevention, and

11   preventing gun violence.  For these reasons, the Fourteenth Amendment right to travel claim is

12   unavailing.

13   **V.     DEPUTY WILSON IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY**

14          The Eleventh Amendment generally bars suits against a state or state agency, whether the

15   relief sought is money damages or an injunction.  *See Puerto Rico Aqueduct & Sewer Auth. v.*

16   *Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  Actions against state officials acting in their

17   official capacities are considered suits against the state and are barred by the Eleventh

18   Amendment.  *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir.

19   1986).  The Supreme Court recognized a limited exception in *Ex Parte Young*, 209 U.S. 123

20   (1908), where an official has a direct connection with enforcement.  *Los Angeles Cty. Bar Ass'n*

21   *v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).  "This connection must be fairly direct; a generalized

22   duty to enforce state law or general supervisory power over the persons responsible for enforcing

23   the challenged provision will not subject an official to suit.")  *Id.* (citations omitted).

24          The First Amended Complaint, as currently framed, alleges no such connection with respect

25   to any of the Defendants.  While that deficiency might be set aside with respect to the Attorney

26   General and Director Lopez, there is no indication that Plaintiffs could allege, and they have not

27   demonstrated in their motion, any semblance of an enforcement connection between Deputy

28   Wilson and the challenged laws and alleged policy.  Plaintiffs claim that Deputy Wilson "is

23

1   responsible for formulation, issuance, and implementation of the policy or policies" resulting in

2   the firearms prohibition.  (First Am. Compl. ¶ 14.)  But they offer no legal authorities or

3   admissible evidence from which this Court can conclude that Deputy Wilson has a direct

4   connection with enforcement of the challenged statutes or alleged policy.  Plaintiff Linton's

5   declaration statements about Deputy Wilson "den[ying] his request" when the Department's

6   agents seized his firearms is vague as to the nature of the request and inadmissible hearsay as to

7   what Deputy Wilson allegedly said.  (*See* Linton Decl. ¶ 24.)  The statements from Linton's

8   attorney about what Deputy Wilson supposedly said are also inadmissible hearsay.  (*See* Decl. of

9   A. Richards Supp. Pls.' Mot. Summ. J. / Partial Summ. J. ¶ 5, June 22, 2020, ECF No. 47-5.)

10   Regardless, as an attorney interpreting the law, Deputy Wilson is simply part of the mechanism

11   by which the Attorney General executes his general law enforcement powers.  There is no direct

12   connection between Deputy Wilson and enforcement of the laws or "policy" at issue here, and his

13   participation in this action is unnecessary.  Thus, if the Court is inclined to grant Plaintiffs'

14   motion to any extent, the motion nevertheless should be denied as to Deputy Wilson based on

15   Eleventh Amendment immunity.  *See, e.g.*, *Bolbol v. Brown*, 120 F. Supp. 3d 1010, 1019 (N.D.

16   Cal. 2015).

17   **VI.   THE ENTITY PLAINTIFFS LACK STANDING**

18          As mentioned, the Entity Plaintiffs move on behalf of the Individual Plaintiffs, but offer no

19   evidence about the connection between Linton, Stewart, and Jones and the Entity Plaintiffs.  An

20   Article III "case or controversy" requires (1) an "injury in fact," (2) a sufficient "causal

21   connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the

22   injury "will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

23   560-61 (1992) (internal quotation marks omitted).  These constitutional requirements are

24   "rigorous," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,

25   454 U.S. 464, 475 (1982), and Plaintiffs bear the burden of establishing standing.  *Clapper v.*

26   *Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013).  In addition to complying with Article III,

27   associations have standing to sue on behalf of their members "only if (a) their members would

28   otherwise have standing to sue in their own right; (b) the interests that the organizations seek to

24

Defs.' Opp'n to Pls.' Mot. Summ. J. / Partial Summ. J. (3:18-cv-7653-JD)

1  protect are germane to their purpose; and (c) neither the claim asserted nor the relief requested

2  requires the participation of individual members in the lawsuit." *San Diego Cty. Gun Rights*

3  *Comm'n v. Reno*, 98 F.3d 1121, 1130–31 (9th Cir. 1996); *see also Hunt v. Wash. State Apple*

4  *Advertising Comm'n*, 432 U.S. 333, 343 (1977).  There being no proof that the Individual

5  Plaintiffs are members of these organizations, the Entity Plaintiffs lack standing.

6  <center>**CONCLUSION**</center>

7       Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs'

8  motion.[13]

9  Dated:  August 21, 2020                       Respectfully Submitted,

10                                         XAVIER BECERRA
                                        Attorney General of California

11                                         ANTHONY R. HAKL
                                        Supervising Deputy Attorney General

12

13

14                                      ***/s/ Maureen C. Onyeagbako***

15                                      MAUREEN C. ONYEAGBAKO
                                     Deputy Attorney General

16                                      *Attorneys for Defendants Xavier Becerra, in
                                     his official capacity as Attorney General of

17                                      California, Luis Lopez, in his official
                                     capacity as Director of the California

18                                      Department of Justice Bureau of Firearms,
                                     and Robert D. Wilson, in his official

19                                      capacity as Deputy Attorney General*

20 SA2019100119
34343794.docx

21

22

23       [13] Defendants oppose Plaintiffs' motion for summary judgment, and have refrained from
filing a cross-motion for summary judgment, mindful of the Court's admonition to avoid

24 "duplicative" cross-motions.  (Order re Stip., Oct. 10, 2019, ECF No. 29.)  The Ninth Circuit has
recognized that where there is no genuine issue of material fact, a cross-motion for summary

25 judgment is unnecessary, because a court can grant summary judgment sua sponte. *Gospel
Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003).  In other words, even

26 when there has been no cross-motion for summary judgment, a district court may enter summary
judgment sua sponte against a moving party if the losing party has had a "full and fair opportunity

27 to ventilate the issues involved in the matter." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th
Cir. 1982).  Plaintiffs have had such an opportunity here. Thus, in addition to denying Plaintiffs'

28 motion, Defendants respectfully request that the Court consider taking the additional step of
entering summary judgment sua sponte against Plaintiffs.

<center>25</center>

# EXHIBIT

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 9. Special Firearm Rules Relating to Particular Persons (Refs & Annos)
          Chapter 2. Person Convicted of Specified Offense, Addicted to Narcotic, or Subject to Court Order (Refs & Annos)
            Article 1. Prohibitions on Firearm Access (Refs & Annos)

West's Ann.Cal.Penal Code § 29800

§ 29800. Specified convictions or outstanding warrants; narcotic addiction; restriction on firearm possession; punishment

Effective: June 27, 2017

Currentness

(a)(1) Any person who has been convicted of, or has an outstanding warrant for, a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

(2) Any person who has two or more convictions for violating paragraph (2) of subdivision (a) of Section 417 and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

(b) Notwithstanding subdivision (a), any person who has been convicted of a felony or of an offense enumerated in Section 23515, when that conviction results from certification by the juvenile court for prosecution as an adult in an adult court under Section 707 of the Welfare and Institutions Code, and who owns or has in possession or under custody or control any firearm is guilty of a felony.

(c) Subdivision (a) shall not apply to a person who has been convicted of a felony under the laws of the United States unless either of the following criteria is satisfied:

(1) Conviction of a like offense under California law can only result in imposition of felony punishment.

(2) The defendant was sentenced to a federal correctional facility for more than 30 days, or received a fine of more than one thousand dollars ($1,000), or received both punishments.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012. Amended by Stats.2017, c. 17 (A.B.103), § 44, eff. June 27, 2017.)

**Editors' Notes**

### LAW REVISION COMMISSION COMMENTS

2010 Addition

Subdivision (a) of Section 29800 continues former Section 12021(a) without substantive change.

Subdivision (b) continues former Section 12021(b) without substantive change.

For an exemption from the prohibitions in subdivisions (a) and (b), see Section 29850 (justifiable violation of Section 29800, 29805, 29815, or 29820). For a notice requirement relating to those prohibitions, see Section 29810 (notice to person who is subject to Section 29800 or 29805).

Subdivision (c) continues former Section 12021(f) without substantive change.

See Section 16520 ("firearm"). [38 Cal.L.Rev.Comm. Reports 217 (2009)].

Notes of Decisions (500)

West's Ann. Cal. Penal Code § 29800, CA PENAL § 29800
Current with urgency legislation through Ch. 31 of 2020 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Annotated California Codes
   Penal Code (Refs & Annos)
      Part 6. Control of Deadly Weapons (Refs & Annos)
         Title 4. Firearms (Refs & Annos)
            Division 10. Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Refs & Annos)
               Chapter 1. Ammunition (Refs & Annos)
                  Article 2. Other Restrictions Relating to Ammunition (Refs & Annos)

West's Ann.Cal.Penal Code § 30305

§ 30305. Possession of ammunition by persons prohibited from owning
or possessing a firearm; penalties; burden of proof in proving exemption

Effective: January 1, 2012

Currentness

(a)(1) No person prohibited from owning or possessing a firearm under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, shall own, possess, or have under custody or control, any ammunition or reloaded ammunition.

(2) A violation of this subdivision is punishable by imprisonment in a county jail not to exceed one year or in the state prison, by a fine not to exceed one thousand dollars ($1,000), or by both the fine and imprisonment.

(b)(1) A person who is not prohibited by subdivision (a) from owning, possessing, or having under the person's custody or control, any ammunition or reloaded ammunition, but who is enjoined from engaging in activity pursuant to an injunction issued pursuant to Section 3479 of the Civil Code against that person as a member of a criminal street gang, as defined in Section 186.22, may not own, possess, or have under the person's custody or control, any ammunition or reloaded ammunition.

(2) A violation of this subdivision is a misdemeanor.

(c) A violation of subdivision (a) or (b) is justifiable where all of the following conditions are met:

(1) The person found the ammunition or reloaded ammunition or took the ammunition or reloaded ammunition from a person who was committing a crime against the person who found or took the ammunition or reloaded ammunition.

(2) The person possessed the ammunition or reloaded ammunition no longer than was necessary to deliver or transport the ammunition or reloaded ammunition to a law enforcement agency for that agency's disposition according to law.

(3) The person is prohibited from possessing any ammunition or reloaded ammunition solely because that person is prohibited from owning or possessing a firearm only by virtue of Chapter 2 (commencing with Section 29800) of Division 9 or ammunition or reloaded ammunition because of subdivision (b).

(d) Upon the trial for violating subdivision (a) or (b), the trier of fact shall determine whether the defendant is subject to the exemption created by subdivision (c). The defendant has the burden of proving by a preponderance of the evidence that the defendant is subject to the exemption provided by subdivision (c).

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012.)

**Editors' Notes**

### LAW REVISION COMMISSION COMMENTS

2010 Addition

Subdivision (a) of Section 30305 continues former Section 12316(b)(1) & (3) without substantive change.

Subdivision (b) continues former Section 12316(b)(4)-(5) without substantive change.

Subdivision (c) continues former Section 12316(d)(1) without substantive change.

Subdivision (d) continues former Section 12316(d)(2)-(3) without substantive change.

For limitations on the effect of this article, see Sections 30330 (effect of article on member of military, police agency, forensic laboratory, or holder of permit for destructive device), 30335 (effect of article on permanently deactivated ammunition), 30340 (effect of article on ammunition manufactured under contract approved by government agency).

See Sections 16150 ("ammunition"), 16520 ("firearm"). [38 Cal.L.Rev.Comm. Reports 217 (2009)].

Notes of Decisions (18)

West's Ann. Cal. Penal Code § 30305, CA PENAL § 30305
Current with urgency legislation through Ch. 31 of 2020 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2020 Thomson Reuters. No claim to original U.S. Government Works.  EXHIBIT_004  2

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or PreemptedPrior Version Held Unconstitutional as Applied by People v. Arata, Cal.App. 3 Dist., May 30, 2007

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 2. Of Criminal Procedure
      Title 8. Of Judgment and Execution
        Chapter 1. The Judgment (Refs & Annos)

West's Ann.Cal.Penal Code § 1203.4

§ 1203.4. Fulfillment of conditions of probation or discharge prior to termination; change of plea or vacation of verdict; dismissal and release from penalties and disabilities; exceptions; pardon

Effective: January 1, 2019

Currentness

(a)(1) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code. The probationer shall be informed, in his or her probation papers, of this right and privilege and his or her right, if any, to petition for a certificate of rehabilitation and pardon. The probationer may make the application and change of plea in person or by attorney, or by the probation officer authorized in writing. However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission.

(2) Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6.

(3) Dismissal of an accusation or information underlying a conviction pursuant to this section does not permit a person prohibited from holding public office as a result of that conviction to hold public office.

(4) This subdivision shall apply to all applications for relief under this section which are filed on or after November 23, 1970.

(b) Subdivision (a) of this section does not apply to any misdemeanor that is within the provisions of Section 42002.1 of the Vehicle Code, to any violation of subdivision (c) of Section 286, Section 288, subdivision (c) of Section 287 or of former Section

288a, Section 288.5, subdivision (j) of Section 289, Section 311.1, 311.2, 311.3, or 311.11, or any felony conviction pursuant to subdivision (d) of Section 261.5, or to any infraction.

(c)(1) Except as provided in paragraph (2), subdivision (a) does not apply to a person who receives a notice to appear or is otherwise charged with a violation of an offense described in subdivisions (a) to (e), inclusive, of Section 12810 of the Vehicle Code.

(2) If a defendant who was convicted of a violation listed in paragraph (1) petitions the court, the court in its discretion and in the interests of justice, may order the relief provided pursuant to subdivision (a) to that defendant.

(d) A person who petitions for a change of plea or setting aside of a verdict under this section may be required to reimburse the court for the actual costs of services rendered, whether or not the petition is granted and the records are sealed or expunged, at a rate to be determined by the court not to exceed one hundred fifty dollars ($150), and to reimburse the county for the actual costs of services rendered, whether or not the petition is granted and the records are sealed or expunged, at a rate to be determined by the county board of supervisors not to exceed one hundred fifty dollars ($150), and to reimburse any city for the actual costs of services rendered, whether or not the petition is granted and the records are sealed or expunged, at a rate to be determined by the city council not to exceed one hundred fifty dollars ($150). Ability to make this reimbursement shall be determined by the court using the standards set forth in paragraph (2) of subdivision (g) of Section 987.8 and shall not be a prerequisite to a person's eligibility under this section. The court may order reimbursement in any case in which the petitioner appears to have the ability to pay, without undue hardship, all or any portion of the costs for services established pursuant to this subdivision.

(e)(1) Relief shall not be granted under this section unless the prosecuting attorney has been given 15 days' notice of the petition for relief. The probation officer shall notify the prosecuting attorney when a petition is filed, pursuant to this section.

(2) It shall be presumed that the prosecuting attorney has received notice if proof of service is filed with the court.

(f) If, after receiving notice pursuant to subdivision (e), the prosecuting attorney fails to appear and object to a petition for dismissal, the prosecuting attorney may not move to set aside or otherwise appeal the grant of that petition.

(g) Notwithstanding the above provisions or any other provision of law, the Governor shall have the right to pardon a person convicted of a violation of subdivision (c) of Section 286, Section 288, subdivision (c) of Section 287 or of former Section 288a, Section 288.5, or subdivision (j) of Section 289, if there are extraordinary circumstances.

**Credits**

(Added by Stats.1935, c. 604, p. 1709, § 5. Amended by Stats.1941, c. 1112, p. 2815, § 1; Stats.1951, c. 183, p. 434, § 1; Stats.1961, c. 1735, p. 3744, § 1; Stats.1967, c. 1271, p. 3076, § 1; Stats.1970, c. 539, p. 1035, § 1; Stats.1971, c. 333, p. 667, § 1; Stats.1976, c. 434, p. 1110, § 1; Stats.1978, c. 911, p. 2870, § 1; Stats.1979, c. 199, p. 443, § 6; Stats.1983, c. 1118, § 1; Stats.1985, c. 1472, § 1; Stats.1989, c. 917, § 11; Stats.1994, c. 882 (A.B.1327), § 1; Stats.1997, c. 61 (A.B.729), § 1; Stats.2000, c. 226 (A.B.2320), § 1, eff. Aug. 28, 2000; Stats.2003, c. 49 (A.B.580), § 1; Stats.2005, c. 704 (A.B.439), § 3; Stats.2005, c. 705 (S.B.67), § 5, eff. Oct. 7, 2005; Stats.2007, c. 161 (A.B.645), § 1; Stats.2008, c. 94 (A.B.2092), § 1; Stats.2009, c. 606 (S.B.676), § 7; Stats.2010, c. 328 (S.B.1330), § 166; Stats.2010, c. 178 (S.B.1115), § 76, operative Jan. 1, 2012; Stats.2011, c. 304 (S.B.428), § 9; Stats.2011, c. 285 (A.B.1402), § 17; Stats.2013, c. 143 (A.B.20), § 2; Stats.2018, c. 423 (S.B.1494), § 96, eff. Jan. 1, 2019.)

EXHIBIT_006  2

**Editors' Notes**

## LAW REVISION COMMISSION COMMENTS

2010 Amendment

Subdivision (a) of Section 1203.4 is amended to reflect nonsubstantive reorganization of the statutes governing control of deadly weapons. [38 Cal.L.Rev.Comm. Reports 217 (2009)].

2011 Amendment

Subdivisions (a) and (b) of Section 1203.4 (as it reads in 2010 Cal. Stat. ch. 178, § 76) are amended to incorporate language that was chaptered out due to a conflict between two bills that amended the section in 2010. See SB 1115 (Committee on Public Safety), 2010 Cal. Stat. ch. 178, §§ 76, 108; SB 1330 (Committee on Judiciary), 2010 Cal. Stat. ch. 328, §§ 166, 266; Gov't Code § 9605 (specifying how to resolve conflict between two bills that amend same section). [41 Cal.L.Rev.Comm. Reports 135 (2011)].

## OFFICIAL FORMS

### 2015 Main Volume

<Mandatory and optional Forms adopted and approved by the Judicial Council are set out in West's California Judicial Council Forms Pamphlet.>

Notes of Decisions (290)

West's Ann. Cal. Penal Code § 1203.4, CA PENAL § 1203.4
Current with urgency legislation through Ch. 31 of 2020 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# CERTIFICATE OF SERVICE

Case Name:   **Linton, Chad, et al v. Xavier**          No.    **3:18-cv-7653-JD**
              **Becerra, et al.**

I hereby certify that on <u>August 21, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 21, 2020</u>, at Sacramento, California.


       Eileen A. Ennis                  */s/ Eileen A. Ennis*
          Declarant                        Signature

SA2019100119
34342658.docx