George M. Lee (SBN 172982)
    gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:    (415) 979-0511

Attorneys for Plaintiffs
CHAD LINTON, PAUL MCKINLEY STEWART,
KENDALL JONES, FIREARMS POLICY FOUNDATION,
FIREARMS POLICY COALITION,
SECOND AMENDMENT FOUNDATION,
THE CALGUNS FOUNDATION and MADISON
SOCIETY FOUNDATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD LINTON, et al., | Case No. 3:18-cv-07653-JD |
| Plaintiffs, | **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| XAVIER BECERRA, in his official capacity as Attorney General of California, et al., | **[FRCP 56]** |
| Defendants. | Courtroom 11, 19th Floor |
| | Judge:     Hon. James Donato |

**SEILER EPSTEIN LLP**
**Attorneys at Law**

i

PLAINTIFFS' REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:18-cv-07653-JD

# TABLE OF CONTENTS

I.   ARGUMENT IN REPLY ......................................................................................1

   A.   DEFENDANTS CANNOT RELY UPON MERE PRESUMPTIONS IN OPPOSING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THEIR SECOND AMENDMENT CLAIMS. ..............1

      1.   Defendants' Treatment of Plaintiffs is a *Policy* Concerning Persons with Out-of-State Felony Convictions. ....................................................1

      2.   Defendants' Policies As Applied to Plaintiffs Burden Conduct Protected by the Second Amendment. ...................................................2

      3.   Defendants' Policies Fail Review Under Heightened Scrutiny. ...........................4

      4.   Plaintiffs' Convictions Were Not Crimes of Violence. .........................................7

   B.   REQUIRING A STATE TO HONOR ITS FULL FAITH AND CREDIT CLAUSE OBLIGATION TO RECOGNIZE JUDGMENTS RENDERED BY COURTS IN OTHER STATES IS NOT SUBORDINATION OF THE STATE'S CRIMINAL JUSTICE SYSTEM. ......................................8

   C.   DEFENDANTS FAIL TO DISPUTE THEIR DISPARATE TREATMENT OF OUT-OF-STATE FELONY CONVICTIONS WHICH VIOLATES THE CONSTITUTIONAL RIGHT TO TRAVEL. ...11

   D.   DEFENDANT WILSON IS NOT IMMUNE UNDER THE ELEVENTH AMENDMENT. ...............13

   E.   THE ORGANIZATIONAL PLAINTIFFS HAVE STANDING. ....................................................14

II.   CONCLUSION .....................................................................................................15

SEILER EPSTEIN LLP
Attorneys at Law

1

<u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ......................................................................11

4

5

*Associated Gen. Contractors of Am. v. Cal. Dept. of Transp.*, 713 F.3d 1187 (9th Cir. 2013).....15

6

*Baker v. Gen. Motors Corp.* 522 U.S. 222, 118 S.Ct. 657 (1998)...................................................9

7

*Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016)......................................................3, 6

8

*Borden's Farm Products Co. v. Baldwin*, 293 U.S. 194, 55 S.Ct. 187 (1934)...............................3

9

*Brown v. City of L.A.*, 521 F.3d 1238 (9th Cir. 2008) .................................................................15

10

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915 (1988) ...........................................1

11

*Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128 (9th Cir. 2014).......................14

12

13

*Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451 (1976)......................................................................6

14

*Dept. of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 119 S.Ct. 765 (1999)........15

15

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008) ...............................2, 3, 4, 5

16

*Duncan v. Becerra*, 970 F.3d 1133, No. 19-55376 (9th Cir. Aug. 14, 2020),
    slip. op. at https://cdn.ca9.uscourts.gov/datastore/opinions/2020/08/14/19-55376.pdf .............5

17

*Edenfield v. Fane*, 507 U.S. 761 (1993) ......................................................................................5

18

*Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908) ..................................................................14

19

20

*Farmland Dairies v. Barber*, 65 N.Y.2d 51, 478 N.E.2d 1314 (1985) ........................................8

21

*Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007)................................................................9

22

*Fisher v. Kealoha*, 855 F.3d 1067 (9th Cir. 2017) .....................................................................5

23

*Groseclose v. Plummer*, 106 F.2d 311 (9th Cir. 1939)..............................................................10

24

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*")............................3

25

*Hunt v. Washington State Apple Advertising Comm'n*, 432 US 333, 97 S.Ct. 2434 (1977).........15

26

*Huntington v. Attrill*, 146 U.S. 657 (1892) .................................................................................8

27

*In re Sonia G.*, 158 Cal.App.3d 18 (1984)..................................................................................9

28

*Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518 (1978).......................................................................6

SEILER EPSTEIN LLP
Attorneys at Law

iii

SEILER EPSTEIN LLP
Attorneys at Law

*Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992)....................................14

*Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020)...............................................4, 8

*Mai v. United States*, No. 18-36071, 2020 WL 5417158 (9th Cir. Sept. 10, 2020)
  (Collins, J., dissenting from denial of rehearing en banc) ...................................6

*McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010) ........................13

*Monell v. New York City Dept. of Soc. Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978) ..................1

*Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975 (9th Cir. 2013).....................15

*NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct.1163 (1958) .........................................15

*Nelson v. George*, 399 U.S. 224 (1970).........................................................8

*Packingham v. North Carolina*, 137 S.Ct. 1730 (2017) .........................................5

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ...........................................1

*Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018) ................................................4

*People v. Laino*, 32 Cal.4th 878 (2004) ......................................................10

*People v. Park*, 56 Cal.4th 782 (2013) .......................................................13

*People v. Wagner*, 2 Cal.App.4th 774 (2016)...................................................9

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013).........................................3

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965 (1985) .......................11

*Planned Parenthood Arizona, Inc. v. Brnovich*, 172 F.Supp.3d 1075 (D. Ariz. 2016)................14

*Saenz v. Roe*, 526 U.S. 489, 119 S.Ct. 1518 (1999) .......................................11, 12

*Sannmann v. Department of Justice*, 47 Cal.App.5th 676 (2020) ...............................13

*Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S.Ct. 1142 (2009) .......................14, 15

*Tyler v. Hillsdale Cty. Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016).........................3

*United States v. Barton*, 633 F.3d 168 (3d Cir. 2011) .........................................3

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010).........................................3

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013).........................................4

*United States v. Phillips*, 827 F.3d 1171 (9th Cir. 2016).........................................3

*United States v. Torres*, 789 F.App'x 655 (9th Cir. 2020) ........................................................2

*United States v. Torres*, 911 F.3d 1253 (9th Cir. 2019) ...........................................................7

*United States v. Williams*, 616 F.3d 685 (7th Cir. 2010) ..........................................................4

*V.L. v. E.L.*, -- U.S. --, 136 S.Ct. 1017 (2016) ...................................................................8, 10

*W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011) ...............................15

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017)............................................................15

**Statutes**

17 U.S.C. § 1738...........................................................................................................................9

18 U.S.C. § 922(g)(1) ...................................................................................................................2

18 U.S.C. § 922(g)(4) ...................................................................................................................4

18 U.S.C. § 922(g)(5) ................................................................................................................7, 8

42 U.S.C. § 1983...........................................................................................................................1

Cal. Code Civ. Pro. § 577 .............................................................................................................9

Cal. Pen. Code § 1203.4 ..............................................................................................................12

Cal. Pen. Code § 17(b) ...........................................................................................................12, 13

Cal. Pen. Code § 29800 ..........................................................................................................2, 3, 6

Cal. Pen. Code § 30305 ............................................................................................................2, 3

Cal. Pen. Code § 32310 ................................................................................................................5

**Other Authorities**

David B. Kopel & Joseph G.S. Greenlee, *The Federal Circuits' Second Amendment Doctrines*, 61 St. Louis L.J. 193 (2017) ...................................................................................................4

//

//

**SEILER EPSTEIN LLP**
**Attorneys at Law**

**Constitutional Provisions**

U.S. Const., Amend. II ................................................................................................. *passim*

U.S. Const., Amend. XI ...............................................................................................13, 14

U.S. Const., Amend. XIV ............................................................................................11, 12

U.S. Const., art. IV, § 1 .............................................................................................8, 9, 11

U.S. Const., art. IV, § 2 ...................................................................................................11

SEILER EPSTEIN LLP
Attorneys at Law

PLAINTIFFS' REPLY MEMO. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:18-cv-07653-JD

1

2

3

## I.   ARGUMENT IN REPLY

### A.   DEFENDANTS CANNOT RELY UPON MERE PRESUMPTIONS IN OPPOSING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THEIR SECOND AMENDMENT CLAIMS.

4

#### 1.   Defendants' Treatment of Plaintiffs is a *Policy* Concerning Persons with Out-of-State Felony Convictions.

5

6

Defendants' first line of defense against enjoining their unconstitutional policy is to deny

7

that it is a "policy" at all. See Opp. at 2:3 ("No such policy exists"); 4:23 ("The Department does

not have any kind of blanket 'policy' regarding out-of-state convictions").

8

9

The question of whether a "policy" exists arises frequently in the context of § 1983

10

municipal liability for violations under *Monell v. New York City Dept. of Soc. Services*, 436 U.S.

658, 98 S.Ct. 2018 (1978). In such cases, the courts uniformly find that a "policy" does not have

11

to be reduced to a formal, written statement which governs in order to be understood as such.

12

"To be sure, 'official policy' often refers to formal rules or understandings—often but not always

13

committed to writing—that are intended to, and do, establish fixed plans of action to be followed

14

under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S.

15

469, 480–481 (1986). "If the decision to adopt that particular course of action is properly made

16

by that government's authorized decisionmakers, it surely represents an act of official

17

government "policy" as that term is commonly understood." *Id.*, 475 U.S. at 481; see also, *City*

18

*of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 926 (1988) ("the Court has long

19

recognized that a plaintiff may be able to prove the existence of a widespread practice that,

20

although not authorized by written law or express municipal policy, is "so permanent and well

21

settled as to constitute a 'custom or usage' with the force of law.")

22

In the present case, DOJ representative Matsumoto testified that "there is no written

23

policy" (Matsumoto Depo. (Lee Decl. Exh. A) at 24:16-18), and that Exhibit 005 ("Background

24

Clearance Unit DROS Procedures") is simply a document from a "training binder" for the

25

training of "new employees to the […] Bureau of Firearms." (Matsumoto Depo. at 27:2-9, 31:3-

26

8). And yet, he admitted that these "training materials" could be characterized as a "guideline"

27

which generally provides that the Department of Justice does not recognize the restoration of

28

firearms from another state. (Matsumoto Depo. at 51:8 – 52:3). And with respect to Exhibit 005,

SEILER EPSTEIN LLP
Attorneys at Law

1

1   portions of that document did not constitute a "policy" of the Department, but was "just an

2   opinion." (Matsumoto Depo. at 45:4-20). Yet, it is an "opinion" that they endeavor to apply

3   consistently and uniformly to all who fall within the situation, treating everyone equally in order

4   to "minimize any exceptions" to that rule. (Id. at 45:21 – 46:10). To the extent that Mr.

5   Matsumoto described this as simply a point of "reference," it is an "item of reference that needs

6   to be applied to everybody in the [same] situation," and that "analysts who are applying it aren't

7   allowed to deviate from that" reference. (Id. at 46:1-7).

8        Thus, despite Mr. Matsumoto's valiant but somewhat tortured attempt to stick to the

9   official statement of not having a "policy," the Department's treatment of out-of-state felony

10   convictions, reflected in Exhibit 005, is indeed a *policy*.

### 2. Defendants' Policies As Applied to Plaintiffs Burden Conduct Protected by the Second Amendment.

13        Defendants' Opposition states that Penal Code §§ 29800 and 30305 "are presumptively

14   lawful and longstanding measures that fall outside of the scope of the Second Amendment."

15   (Opp. at 11:7-8). On this basis, defendants claim that the two-part inquiry stops at the first step,

16   i.e., the "regulatory measures" do not burden conduct protected by the Second Amendment. (Id.

17   at 12:11-13). Thus, they contend, the Court should look no further into the plaintiffs' claims.

18        But this is not a facial challenge to sections 29800 and 30305. And thus, defendants'

19   Opposition, which relies heavily on their characterization of sections 29800 and 30305 as

20   "longstanding prohibitions," misses the nature of these claims. Plaintiffs seek to enjoin

21   defendants' *policies and enforcement practices* which prevent them from keeping firearms, for

22   all lawful purposes, on an as-applied basis, and not the statutes alone. Such as-applied relief is

23   not foreclosed, even if it ultimately involves the purported "longstanding prohibitions on the

24   possession of firearms by felons" as mentioned in dicta by *District of Columbia v. Heller*, 554

25   U.S. 570, 626-27, 128 S.Ct. 2783 (2008). In *United States v. Torres*, 789 F.App'x 655, 657 (9th

26   Cir. 2020), Judge Lee, concurring in the judgment, stated: "I do not believe either the Supreme

27   Court or the Ninth Circuit has explicitly held that felons are categorically barred from bringing

28   as-applied Second Amendment challenges to [18 U.S.C.] § 922(g)(1). While facial challenges to

  § 922(g)(1) are foreclosed, the door appears to remain ajar on whether someone can pursue an

SEILER EPSTEIN LLP
Attorneys at Law

2

1   as-applied Second Amendment challenge in circumstances where the underlying felony is so

2   minor or regulatory in nature and has no analogue in the Founding era." Again, in *United States*

3   *v. Phillips*, 827 F.3d 1171 (9th Cir. 2016), the Court recognized that "there are good reasons to

4   be skeptical of the constitutional correctness of categorical, lifetime bans on firearm possession

5   by *all* felons." *Id*. at 1174 (emphasis original).

6        Here, defendants' characterization of sections 29800 and 30305 as presumptively lawful,

7   and not burdening Second Amendment conduct, framed as if this were a facial challenge, misses

8   the mark. As-applied challenges to the defendants' policies, insofar as they are ostensibly based

9   upon sections 29800 and 30305, without seeking to invalidate those statutes, are not foreclosed.

10       Moreover, even if this case were to challenge "presumptively lawful" regulations, that

11  does not foreclose all further inquiry. Indeed, the very language in *Heller* regarding

12  "presumptively lawful" prohibitions implies that such a presumption, were it to apply, can be

13  rebutted. "A presumption of constitutionality 'is a presumption [...] [about] the existence of

14  factual conditions supporting the legislation. As such it is a *rebuttable* presumption.'" *Binderup*

15  *v. Attorney General*, 836 F.3d 336, 360 n.6 (3d Cir. 2016) (Hardiman, J., concurring) (emphasis

16  original) (quoting *Borden's Farm Products Co. v. Baldwin*, 293 U.S. 194, 209, 55 S.Ct. 187

17  (1934)). A majority of the circuit courts to have considered the issue directly all concur that

18  *Heller*'s language regarding a presumptively lawful regulation does not mean that the law is

19  *conclusively* lawful. See, e.g., *Tyler v. Hillsdale Cty. Sheriff's Dept.*, 837 F.3d 678, 686 (6th Cir.

20  2016) (en banc) ("*Heller* only established a presumption that such bans were lawful; it did not

21  invite courts onto an analytical off-ramp to avoid constitutional analysis."); *United States v.*

22  *Barton*, 633 F.3d 168, 173 (3d Cir. 2011) ("the Supreme Court implied that the presumption may

23  be rebutted."); *Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("*Heller II*")

24  ("A plaintiff may rebut this presumption"); *Peterson v. Martinez*, 707 F.3d 1197, 1218 n.1 (10th

25  Cir. 2013) ("A plaintiff may rebut the presumption of validity"); *United States v. Chester*, 628

26  F.3d 673, 679 (4th Cir. 2010) ("the phrase 'presumptively lawful regulatory measures' suggests

27  the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in

28  the face of an as-applied challenge.'") (quoting *United States v. Williams*, 616 F.3d 685, 692 (7th

3

**SEILER EPSTEIN LLP**
Attorneys at Law

1  Cir. 2010)); *Pena v. Lindley*, 898 F.3d 969, 1004 (9th Cir. 2018) (Bybee, J. concurring in part

2  and dissenting in part) ("It is contrary to my instincts to read 'presumptively lawful' as

3  'conclusively lawful.'") *See also*, David B. Kopel & Joseph G.S. Greenlee, *The Federal

4  *Circuits' Second Amendment Doctrines*, 61 St. Louis L.J. 193, 214–26 (2017).

5  In *Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020), upon which defendants rely in

6  their Opposition, the Ninth Circuit assumed without deciding that 18 U.S.C. § 922(g)(4),

7  prohibiting firearm possession of those involuntarily committed to a mental institution, that the

8  law as applied to the plaintiff there burdened Second Amendment rights. 952 F.3d at 1115. This,

9  notwithstanding that those "longstanding prohibitions" mentioned in *Heller* also included laws

10  preventing possession of firearms by "the mentally ill." *Heller*, 554 U.S. at 626.

11  Without the protection of irrebuttable or "conclusive lawfulness," defendants cannot

12  reasonably assert that a complete ban on the ownership of firearms by persons previously

13  convicted of non-violent felonies which have since been vacated is not substantial. Even in

14  *Chovan*, while not conceding that the law implicated the "core" Second Amendment right, the

15  Ninth Circuit recognized that "[t]he burden the statute place[d] on domestic violence

16  misdemeanants' rights, [….] is quite substantial." *United States v. Chovan*, 735 F.3d 1127, 1138

17  (9th Cir. 2013) (applying intermediate scrutiny because of the degree of the burden on the right).

18  Here, as argued throughout, the offenses constituting plaintiffs' underlying convictions in

19  other states were non-violent, equivalent to "wobblers" in the State of California, and did not

20  involve the imposition of a prison sentence. Moreover, under the laws of the states of origin,

21  plaintiffs are not felons, as their convictions were set aside, vacated and dismissed. But even

22  were they to be considered prior felons, plaintiffs have rebutted any presumptions in defendants'

23  favor and shown that defendants cannot continue to restrict their fundamental rights without

24  implicating a fundamental constitutional right.

25  **3.    Defendants' Policies Fail Review Under Heightened Scrutiny.**

26  As argued in our opening Memorandum, plaintiffs maintain that defendants' policies at

27  issue constitute a categorical prohibition, with no historical predicate, and should be summarily

28  struck under *Heller*. Assuming here that some test is appropriate, defendants' Opposition fails to

4

1   satisfy their burden in demonstrating that the law satisfies heightened scrutiny, i.e., either strict

2   or intermediate scrutiny.

3          Recently, in *Duncan v. Becerra*, 970 F.3d 1133, No. 19-55376 (9th Cir. Aug. 14, 2020),

4   slip. op. at https://cdn.ca9.uscourts.gov/datastore/opinions/2020/08/14/19-55376.pdf, the Ninth

5   Circuit held that because the large-capacity magazine law, Penal Code § 32310, "substantially

6   burdens core Second Amendment rights," it was subject to review under strict scrutiny. *Duncan*,

7   slip op. at 31. Here, plaintiffs reiterate, as stated in their opening Memorandum, that "if tiered

8   scrutiny is to be used at all, strict scrutiny should apply to the defendants' policies at issue, i.e.,

9   those which prohibit former felons convicted in other states for non-violent crimes

10  notwithstanding the set-aside/dismissal of those convictions." (Memo. at 11:21-23). This is

11  particularly the case where the policy at issue, as it pertains to persons who suffered out-of-state

12  felony convictions, does not allow for *any* exceptions that would "lighten" the burden. *Fisher v.*

13  *Kealoha*, 855 F.3d 1067, 1071 n.2 (9th Cir. 2017).

14         Should this Court find that intermediate scrutiny is appropriate, however, the Ninth

15  Circuit's decision in *Duncan* provides further guidance on how exacting intermediate scrutiny

16  should be. Even though the *Duncan* Court applied strict scrutiny to strike down the law there at

17  issue, it also held that the law would fail under intermediate scrutiny as well. *Duncan*, slip op. at

18  58-59. The Court began by reiterating the Supreme Court's affirmation of the "potent nature of

19  intermediate scrutiny." *Id*. at 59 (citing *Packingham v. North Carolina*, 137 S.Ct. 1730, 1736

20  (2017)). The Court further went on to state that "[w]hile the precise contours of intermediate

21  scrutiny may vary, this much is certain: It has bite. It is a demanding test. While its application is

22  neither fatal nor feeble, it still requires a reviewing court to scrutinize a challenged law with a

23  healthy dose of skepticism. Indeed, the law must address 'harms' that 'are real' in a 'material'

24  way." *Duncan*, slip op. at 59 (citing *Edenfield v. Fane*, 507 U.S. 761, 771 (1993)).

25         *Duncan* further recognized what the organizational plaintiffs here have long asserted, that

26  some courts have been applying intermediate scrutiny in Second Amendment cases that appears

27  to be "a diluted form of intermediate scrutiny that approximates rational basis, which *Heller*

28  forbids." *Duncan*, slip op. at 61-62 (disapproving of legislative deference in Second Amendment

SEILER EPSTEIN LLP
Attorneys at Law

1    cases as approximating rational basis review). Therefore, if intermediate scrutiny is to be used, a

2    robust form of it is more than appropriate in Second Amendment cases like this one.

3         Defendants fail to meet their burden under strict or intermediate scrutiny to show that the

4    means the state has chosen to advance its interests in "public safety, preventing gun violence,

5    and preventing crime" generally (Opp. at 13:9-10) satisfy such a "demanding" standard of

6    review. Notably, defendants here attempt to rely upon the underlying "intent" of section 29800

7    by stating that "[t]he law properly presumes the danger is greater when the person possessing the

8    firearm has previously been convicted of a felony." (Opp. at 13:6-7). But mere reliance on that

9    type of presumption is simply not permitted in cases where the government has an actual burden

10   to demonstrate with substance that its law or policy is reasonably tailored to meet those stated

11   ends. *Mai v. United States*, No. 18-36071, 2020 WL 5417158, at *10 (9th Cir. Sept. 10, 2020)

12   (Collins, J., dissenting from denial of rehearing en banc) (intermediate scrutiny demands

13   "'consistency and substantiality' in the evidence the government uses to establish a sufficient fit

14   between its means and ends") (citing *Lalli v. Lalli*, 439 U.S. 259, 274, 99 S.Ct. 518 (1978)). This

15   requires an *actual showing*, not merely resort to the usual platitudes of "public safety" and

16   "preventing gun violence" (Opp. at 13:10), or relying on a "presumption" that their policies

17   somehow prevent crime. As the Third Circuit noted after reviewing the record in *Binderup*:

18        Here the Government falls well short of satisfying its burden—even under
19        intermediate scrutiny. The record before us consists of evidence about the
     Challengers' backgrounds, including the time that has passed since they last broke
20        the law. It contains no evidence explaining why banning people like them (i.e.,
     people who decades ago committed similar misdemeanors) from possessing
21        firearms promotes public safety.

22   *Binderup v. Attorney General*, 836 F.3d at 353–54. Here, defendants' near-complete reliance

23   upon a supposed legal *presumption* pertaining to felon possession laws, and offering mere

24   perorations to "preventing crime" is fatal to their case. "The proffer of 'loose-fitting generalities'

25   in the form of statistical data is insufficient to clear intermediate scrutiny." *Mai*, 2020 WL

26   5417158 at *10 (citing *Craig v. Boren*, 429 U.S. 190, 191–92, 202–04, 209, 97 S.Ct. 451 (1976)

27   (rejecting the use of "broad sociological propositions" to particularized applications under

28   heightened scrutiny)).

SEILER EPSTEIN LLP
Attorneys at Law

6

1    Neither have defendants made any effort whatsoever to show that there is a "reasonable

2    fit" between those generally-stated government interests and the policy at issue. Defendants have

3    offered no statistics, analysis, or findings, nor cited any cases, which conclude that persons

4    previously convicted of non-violent felony offenses over thirty years ago, and who received

5    expungements, set-aside orders, vacated convictions, or pardons, continue to be within that class

6    of persons whom they presume are likely to engage in "gun violence," to use defendants' specter

7    of choice. And their conclusion that "[t]he laws […] are narrowly tailored because they target

8    those with a demonstrated history of dangerousness," (Opp. at 13:24-26) is simply a generality

9    without support. *United States v. Torres*, 911 F.3d 1253, 1264-65 (9th Cir. 2019), which

10   defendants cited for this proposition (Opp. at 13:28), involved the question of whether 18 U.S.C.

11   § 922(g)(5) restricted a constitutional right due to persons illegally in this country. The

12   government relied upon arguments and cases which held that unauthorized aliens were more

13   difficult to trace or detect, were less compliant with identification and record-keeping

14   requirements, and lived largely outside of the formal system of registration, employment, and

15   identification. Moreover, since unauthorized aliens were subject to removal, they posed a risk to

16   immigration officials who were attempting to apprehend them. 911 F.3d at 1264.

17   Here, defendants offer nothing about the law's inclusion of the subset of non-violent

18   former felons with expunged, vacated or pardoned convictions, but rely completely on

19   *presumptions* about their perceived "dangerousness." Defendants have failed to meet their

20   burden under either strict or intermediate scrutiny.

21       **4.    Plaintiffs' Convictions Were Not Crimes of Violence.**

22   Finally, in order to buttress their argument that plaintiffs deserve to fall within a subset of

23   persons who are prohibited because of "a demonstrated history of committing felony offenses,

24   whether violent or non-violent" (Opp. at 11:23-24), defendants imply that individual plaintiffs

25   Linton, Stewart and Jones can conceivably be considered "dangerous." (Opp. at 12:2-10). But

26   common sense, a plain understanding of the laws of which they were convicted, and "the laws of

27   that particular state where the conviction occurred" (Exh. 005) would disagree. Again, the

28   Washington State Court expressly found Mr. Linton's underlying offense was not a violent

**SEILER EPSTEIN LLP**
*Attorneys at Law*

7

1  offense. (Linton Exh. A at p. 2). Likewise, the Arizona court did not consider Mr. Stewart's

2  offense to be a "Serious Offense" by setting it aside. (Ariz. Terminology Page, Lee Decl. Exh. J

3  at p. 217). And if the State considers Mr. Jones's conviction to involve an element of

4  "dangerousness" for misusing a credit card without authorization because it allegedly involved a

5  level of deceit (Opp. at 12:4-5), by that standard, there is no such thing as a non-violent felony.

6      Defendants rely upon *Mai v. United States*, 952 F.3d 1106, to support their argument that

7  plaintiffs continue to belong in this category of potentially dangerous persons. (Opp. at 15). But

8  *Mai* involved the prohibition imposed by 18 U.S.C. § 922(g)(5), applied to those who were

9  involuntarily committed for a mental illness, involving a potential danger to themselves or to

10 others, a situation well outside of the scope of the claims here.

11     Plaintiffs here were *never* suspected of violence, and their non-violent offenses do not

12 reflect any inherent inclusion within a category of "dangerous persons."

13 **B.    REQUIRING A STATE TO HONOR ITS FULL FAITH AND CREDIT CLAUSE OBLIGATION TO
14        RECOGNIZE JUDGMENTS RENDERED BY COURTS IN OTHER STATES IS NOT
          SUBORDINATION OF THE STATE'S CRIMINAL JUSTICE SYSTEM.**

15     The thrust of defendants' Opposition here is that the Full Faith and Credit Clause "cannot

16 require California to subordinate its criminal justice system and Penal Code based on the

17 criminal justice laws of sister states." (Opp. at 17:24-26). But simply demanding that a state

18 "recognize and give effect to valid judgments rendered by the courts of its sister states," *V.L. v.

19 E.L.*, -- U.S. --, 136 S.Ct. 1017, 1020 (2016), when the felony conviction itself emanated from

20 those other states, is hardly undermining a state's criminal justice system. Defendants greatly

21 exaggerate what is at stake.

22     Defendants' cited cases of *Nelson v. George*, 399 U.S. 224 (1970) and *Huntington v.

23 Attrill*, 146 U.S. 657 (1892) have no application here because plaintiffs are in no way asking this

24 Court to compel the State of California to "enforce a foreign penal judgment." *Nelson*, 399 U.S.

25 at 229. Plaintiffs are simply asking this Court to force California to *recognize* a judgment and

26 give it its due effect. *See*, *Farmland Dairies v. Barber*, 65 N.Y.2d 51, 57, 478 N.E.2d 1314, 1318

27 (1985) ("New York is not being asked by the State of New Jersey to enforce its penal laws. Quite

28 the contrary, respondent wishes to recognize the New Jersey judgment as evidence of the

SEILER EPSTEIN LLP
Attorneys at Law

8

1    misconduct underlying it.")

2          And on the related issue of foreign judgments, there is no subject matter limitation to the

3    Full Faith and Credit Clause as defendants suggest. Defendants argue that "[t]he authorities cited

4    by Plaintiff[s] with respect to recognizing foreign judgments do not save their case. Those cases

5    do not involve criminal judgments and instead relate to products liability and family law

6    scenarios." (Opp. at 18, fn.9). However, neither the Full Faith and Credit Clause, nor its enabling

7    statute, 17 U.S.C. § 1738, make any subject matter limitations as to what constitutes judgments,

8    and indeed, neither make express reference to "judgments" at all, but rather to the "records and

9    judicial proceedings of every other state." Recognizing, however, that plaintiffs are here

10   advancing the Supreme Court's jurisprudence as to "judgments" as opposed to the legislative

11   acts of other states, *Baker v. Gen. Motors Corp.* 522 U.S. 222, 232, 118 S.Ct. 657 (1998), it is

12   enough to say that a "judgment" is "the final determination of the rights of the parties in an

13   action or proceeding." Cal. Code Civ. Pro. § 577. In California, this commonly-understood

14   definition of "judgment" extends to criminal cases as well. *People v. Wagner*, 2 Cal.App.4th 774,

15   779 (2016); *In re Sonia G.*, 158 Cal.App.3d 18, 22 n.5 (1984).[1]

16         Defendants' argument that "[t]he Full Faith and Credit Clause does not preclude a state

17   from determining its own laws or carrying out its public policy" (Opp. at 17:15-16), when tied

18   into their earlier argument that "California has the sovereign right to develop its police powers"

19   (Opp. at 16:5), sounds as if the State is attempting to make a policy argument. That argument is

20   foreclosed by the Supreme Court cases cited in plaintiffs' Memorandum which order submission

21   to the "hostile policies" reflected in the judgment of another state.

22         A generalized appeal to a state's sovereign power to enforce its own laws does not justify

23   its refusal to recognize a foreign judgment. In *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir.

24   2007), the State of Oklahoma attempted to make a similar argument, and failed. It specifically

25   argued, similar to what defendants argue here, "that requiring Oklahoma to recognize an out-of-

26   state adoption judgment would be tantamount to giving the sister state control over the effect of

27   _____

28   [1]And thus, to reduce the import of the plaintiffs' vacated judgments to their having obtained
     "some sort of out-of-state order" as defendants do (Opp. at 14:6) trivializes what is at stake.

SEILER EPSTEIN LLP
Attorneys at Law

9

SEILER EPSTEIN LLP
Attorneys at Law

1   its judgment in Oklahoma." *Id*. at 1153. The Tenth Circuit rejected that argument, and held that

2   Oklahoma's "refusal to recognize final adoption orders of other states that permit adoption by

3   same-sex couples" was unconstitutional. *Id*. See also, *V.L. v. E.L.*, 136 S.Ct. at 1020 (requiring

4   Alabama to recognize a same-sex couple's adoption order awarding custody in Georgia).

5       Without expressly asserting what the "public policy" is that recognition of the out-of-

6   state judgments would "preclude" (Opp. at 17:15-16), defendants allude generally to the State's

7   police power. (Opp.at 16:5). No matter how they frame it, however, defendants are attempting to

8   pry a public policy exception from a prohibition the Supreme Court has made clear. Public

9   policy is no reason to deny a person legal rights that have expressly been adjudicated elsewhere,

10  no matter how much California or Oklahoma might not prefer the outcome.

11      Likewise, defendants' implied policy objectives associated with *punishing* persons

12  convicted of crimes here, or enhancing their sentences based upon out-of-state convictions that

13  have been expunged or pardoned, are not being called into question. And therefore, neither

14  *Groseclose v. Plummer*, 106 F.2d 311 (9th Cir. 1939) nor *People v. Laino*, 32 Cal.4th 878 (2004)

15  has any application here. *Groseclose* involved an appeal from the denial of a habeas petition, in

16  which the petitioner claimed that the trial court was without jurisdiction to sentence him under a

17  habitual criminal statute when his underlying convictions had been pardoned. 106 F.2d at 312-

18  13. Similarly, *Laino* involved a three-strikes sentencing enhancement where the underlying

19  conviction was an out-of-state conviction that had been discharged and dismissed following

20  probation. 32 Cal.4th at 885. These cases are inapplicable to the present situation because

21  plaintiffs here have not been convicted of any crime in California, and the prohibition of their

22  right to exercise a fundamental constitutional right cannot and should not, in any way, be

23  described as "punitive" in nature. Plaintiffs are not asking to overturn any California conviction,

24  nor are they asking to set anyone free. And thus, the "criminal justice system" is hardly being

25  "subordinated" or undermined by the relief plaintiffs seek. On the other hand, if the stated policy

26  objective of the State is indeed to "punish" people like the plaintiffs here by depriving them of a

27  constitutional right, that even more begs the relief that plaintiffs seek. Summarily depriving

28  plaintiffs of a fundamental constitutional right as a form of *punishment*, without any trial,

10

SEILER EPSTEIN LLP
Attorneys at Law

1  adjudicative process, fact-finding tribunal, or even an established administrative procedure,

2  would be constitutionally indefensible.

3  Finally, defendants argue that "the Full Faith and Credit Clause does not require

4  California to recognize criminal judgments from sister states because of its substantial contacts

5  with the Individual Plaintiffs, which outweigh Plaintiffs' contacts with the states that had issued

6  the set aside and dismissal orders." (Opp. at 19:1-4). Defendants cite no authority for the

7  proposition that the Full Faith and Credit Clause requires any kind of balancing of contacts

8  between the party to the underlying judgment and the state from which it originated, because

9  there is no such authority. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965 (1985),

10  cited in defendants' Opp. at 19:12-15, and *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13

11  (1981), from which the quote is derived, involved choice-of-law questions that were intertwined

12  with personal jurisdiction questions. Neither case involved the recognition of an out-of-state

13  judgment. These cases involving choice-of-law questions that are based on a party's minimum

14  contacts with the state whose law was being applied have nothing to do with demanding that a

15  state recognize and honor an out-of-state judgment, and therefore have no applicability here.

16  **C.  DEFENDANTS FAIL TO DISPUTE THEIR DISPARATE TREATMENT OF OUT-OF-STATE**
17  **FELONY CONVICTIONS WHICH VIOLATES THE CONSTITUTIONAL RIGHT TO TRAVEL.**

18  Addressing plaintiffs' Article IV § 2 and Fourteenth Amendment claims, defendants'

19  Opposition argues that plaintiffs' claims based upon the constitutional right to travel "cannot

20  stand" because "[t]he Supreme Court held in *Saenz* that the right to travel under the Fourteenth

21  Amendment involves 'the right of the *newly arrived* citizen to the same privileges and

22  immunities enjoyed by other citizens of the same state." (Opp. at 22:14-16 (emphasis original)

23  (citing *Saenz v. Roe*, 526 U.S. 489, 502, 119 S.Ct. 1518 (1999)). Defendants' argument, which

24  would pertain solely to the "third component"[2] right to travel under *Saenz*, completely ignores

25  the rest of that passage from *Saenz* which states: "That right is protected not only by the new

26  arrival's status as a state citizen, but also by her status as a citizen of the United States." *Saenz*,

27  _____

28  [2]And thus, defendants do not address at all plaintiff Linton's standing to bring his "second component" claim under the Privileges and Immunities Clause, Art. IV § 2, as asserted in plaintiffs' Memo. at 22-23. See *Saenz*, 526 U.S. at 501.

11

SEILER EPSTEIN LLP
Attorneys at Law

1   526 U.S. at 502. Defendants frame this as a matter of "standing" (Opp. at 22:17-21), yet they do

2   not cite one single case which stands for the proposition that the right to travel under the third

3   component of *Saenz* requires some "newly arrived" status as a matter of standing. That is

4   because such a case does not exist.

5        Indeed, it would be quite the argument to say that a law which infringes upon the

6   constitutional right to travel is somehow waived or forfeited after a period of time has elapsed.

7   As Justice Stevens noted in *Saenz* itself, the purpose of the Fourteenth Amendment's Privileges

8   or Immunities Clause was to "guarantee[] the rights of newly freed black citizens by ensuring

9   that they could claim the state citizenship of any State in which they resided and by precluding

10  that State from abridging their rights of national citizenship." 526 U.S. at 499 n.15. Does

11  defendants' argument mean that the freedmen who were protected by the Fourteenth

12  Amendment's right to travel somehow lost its protection after moving to another state for a

13  certain period of time? Of course not. The only reason why *Saenz* mentions "newly arrived"

14  citizens at all is likely because the case involved California's statute which limited maximum

15  welfare benefits to "newly arrived residents." 526 U.S. at 492.

16       Putting standing issues aside, defendants' Opposition wholly ignores the central thesis of

17  plaintiffs' right-to-travel claim, which is the discriminatory treatment their policy affords to

18  persons with out-of-state felony convictions, while allowing persons convicted of certain felony

19  offenses in California to have their rights restored under section 17(b) of the Penal Code. In their

20  opening Memorandum, plaintiffs challenged defendants to address this disparity in treatment.

21  Specifically, plaintiffs asserted that under this third-component claim involving the right to

22  travel, strict scrutiny should apply, and that the burden to justify this disparity in treatment falls

23  on the government. (Memo. at 24:12-19). Defendants completely avoid this challenge to justify

24  their disparate treatment, instead simply choosing to deny any discrimination by arguing that

25  plaintiffs' situation is "closer instead to persons with straight felonies whose convictions have

26  been set aside under [Penal Code] section 1203.4. Just as the Individual Plaintiffs are not eligible

27  to possess firearms, neither are persons convicted of straight felonies with 1203.4 set asides."

28  (Opp. at 23:1-4). But the entire point here is that plaintiffs were <u>not</u> convicted of "straight

12

felonies." "A 'straight felony' is an offense punishable only as a felony (i.e., by death or imprisonment in state prison)." *Sannmann v. Department of Justice*, 47 Cal.App.5th 676, 679 n.2 (2020). "By contrast, a 'wobbler' is an offense that is 'chargeable or, in the discretion of the court, punishable as either a felony or a misdemeanor; that is, they are punishable either by a term in state prison or by imprisonment in county jail and/or by a fine.'" 47 Cal.App.5th at 679 (citing *People v. Park*, 56 Cal.4th 782, 789 (2013)). And again, defendants admit that a reduction of a felony conviction to a misdemeanor under Pen. Code § 17(b) ordinarily restores that person's right to possess a firearm (Lee Decl. Exh. C at p. 081), and that the manner in which this is done here in California is "frequent." (Matsumoto Depo. at 67-22 – 68:15).

In plaintiffs' opening Memorandum, we asserted that each of the underlying convictions was the equivalent to a wobbler in California because each California equivalent crime was reducible to a misdemeanor. (Memo. at 24:23 – 25:11). Defendants do not appear to dispute this, but by insisting that the individual plaintiffs' situation is analogous to persons convicted of "straight felonies" here in California, defendants are just ignoring this argument and appear to concede the point. Defendants have neither adequately addressed, nor at all justified the disparate treatment between plaintiffs' circumstances and those of a person who is able to have their firearms rights restored after the conviction of a felony wobbler in California.

Finally, defendants remark that their policy, if disparate, represents a mere "inconvenience" which is "incidental" to their generalized interests in "public safety, crime prevention, and preventing gun violence." (Opp. at 23:9-11). Plaintiffs' inability to exercise a fundamental constitutional right to self-defense is not an "inconvenience" that is "incidental." The right to keep and bear arms is a right fundamental to our system of ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742, 791, 130 S.Ct. 3020 (2010), and defendants' attempt to reduce this right to a "convenience" in failing to justify their policy is telling.

**D.   DEFENDANT WILSON IS NOT IMMUNE UNDER THE ELEVENTH AMENDMENT.**

Defendants' Opposition claims that defendant Robert Wilson is immune under the Eleventh Amendment. (Opp. at 23-24). But it is well understood that state officials may be sued in their official capacities for prospective injunctive and declaratory relief arising from violations

13

1 of federal laws. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908). This exception to Eleventh

2 Amendment immunity applies where the state official has "some connection with the

3 enforcement of the act." *Id.*, 209 U.S. at 157; *Coalition to Defend Affirmative Action v. Brown*,

4 674 F.3d 1128, 1134 (9th Cir. 2014).  The connection of the state official to the act at issue

5 "must be fairly direct; a generalized duty to enforce state law or general supervisory power over

6 the persons responsible for enforcing the challenged provision will not subject an official to

7 suit." *Id.* at 1134 (quoting *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)).

8 And a direct connection to establish a claim for prospective injunctive relief under *Ex Parte*

9 *Young* is established by enforcement with the law, on in this case, policy, at issue. *Eu*, 979 F.2d

10 at 704; *Coal. to Defend Affirm. Action*, 674 F.3d at 1134 (defendant had a 'fairly direct'

11 connection to enforcement of a provision amending the California Constitution); *Planned*

12 *Parenthood Arizona, Inc. v. Brnovich*, 172 F.Supp.3d 1075, 1096 (D. Ariz. 2016) (attorney

13 general's conduct was not a "single link" in an attenuated chain of possibilities, but his actions

14 formed a causal chain that resulted in constitutional injury).

15 In the present case, Deputy Attorney General Wilson had that direct involvement with the

16 enforcement of the policy in which the defendants refuse to recognize the restoration of plaintiff

17 Linton's firearm rights. (Linton Decl., ¶ 22; Richards Decl., ¶ 5). Deputy Wilson admitted his

18 involvement in the enforcement and policy by and through review of the case, and denial of

19 plaintiff Linton's request in explaining that "this was routinely how the Department handled out-

20 of-state felony convictions that have been set aside or vacated." (Richards Decl., ¶ 5; Exhibit B).

21 Defendant Wilson's direct involvement in the enforcement of plaintiff Linton's case

22 demonstrates he is not entitled to Eleventh Amendment immunity, because injunctive relief to

23 prevent further enforcement of the Department's policy is wholly appropriate.

24 **E.    THE ORGANIZATIONAL PLAINTIFFS HAVE STANDING.**

25 "It is common ground that the respondent organizations can assert the standing of their

26 members." *Summers v. Earth Island Inst.*, 555 U.S. 488, 494, 129 S.Ct. 1142, 1149 (2009).  It is

27 also well recognized that civil rights advocacy organizations have been permitted to assert the

28 constitutional rights of their members. *Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir.

14

SEILER EPSTEIN LLP
Attorneys at Law

2017) (citing *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct.1163 (1958)). To establish associational standing, an organization must show: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 US 333, 343, 97 S.Ct. 2434, 2441 (1977). Where at least one identified member of an organization is able to demonstrate that he or she has suffered harm, or would suffer harm, it is common to permit that organization's claims to go forward. *See*, *Assoc. Gen. Contractors of Am. v. Cal. Dept. of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (citing *Summers*, 555 U.S. at 498); *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 483 (9th Cir. 2011).

Here, individual plaintiffs Linton, Stewart and Jones, who have directly suffered injury and are suing for prospective relief, are members of the organizational plaintiffs. Irrespective, "the presence in a suit of even one party with standing suffices to make a claim justiciable[.]" *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 981 (9th Cir. 2013) (citing *Brown v. City of L.A.*, 521 F.3d 1238, 1240 n. 1 (9th Cir. 2008)). Even on summary judgment, where several of the plaintiffs meet their burden of proof regarding standing to bring suit, summary judgment in all plaintiffs' favor for injunctive relief, as a matter of standing, is proper. *Dept. of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330, 119 S.Ct. 765 (1999) (upholding summary judgment for plaintiffs).

By reason of the injuries to and relief sought on behalf of its members, the organizational plaintiffs have associational standing to pursue the injunctive and declaratory judgment sought.

## II.  CONCLUSION

Summary judgment should be entered in plaintiffs' favor as to all claims. In the alternative, partial summary judgment should be entered in their favor on each count.

Dated: September 21, 2020

**SEILER EPSTEIN LLP**

/s/ George M. Lee
George M. Lee

Attorneys for Plaintiffs

15

SEILER EPSTEIN LLP
Attorneys at Law