ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
JERRY T. YEN
Deputy Attorney General
State Bar No. 247988
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7836
 Fax: (916) 324-8835
 E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for Rob Bonta, in his official capacity as
Attorney General of California, Blake Graham, in
his official capacity as Acting Director of the
California Department of Justice Bureau of
Firearms, and Robert D. Wilson, in his official
capacity as Deputy Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHAD LINTON, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California; BLAKE GRAHAM[1], in his official capacity as Acting Director of the Department of Justice Bureau of Firearms; and ROBERT D. WILSON, in his official capacity as Deputy Attorney General,**<br><br>Defendants. | 3:18-cv-07653-JD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Dept:  11<br>Judge:  The Honorable James Donato<br>Action Filed:  Dec. 20, 2018 |

---

[1] Blake Graham is hereby substituted for former Bureau of Firearms Director Luis Lopez. *See* Fed. R. Civ. P. 25(d).

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Statement of Relevant Facts ........................................................................................... 3

    I.    California's Background Check Process and the Felony-Conviction
        Prohibition ........................................................................................................ 3

    II.   The Parties ......................................................................................................... 4

        A.    Plaintiff Chad Linton ............................................................................ 4

        B.    Plaintiff Paul McKinley Stewart ........................................................... 5

        C.    Plaintiff Kendall Jones ......................................................................... 6

        D.    The Entity Plaintiffs ............................................................................. 6

        E.    Defendants Bonta, Graham, and Wilson ............................................... 7

Procedural History ......................................................................................................... 7

Legal Standard ............................................................................................................... 8

Argument ....................................................................................................................... 9

    I.    Plaintiffs' Second Amendment Claim Fails ....................................................... 9

        A.    *Bruen* Altered the Legal Standard for Analyzing Second
            Amendment Claims .............................................................................. 9

        B.    Plaintiffs Are Not Protected by the Text of the Second Amendment
            Because They Are Not Part of the "People" Referred to by the
            Second Amendment ............................................................................ 11

        C.    The Challenged Statutes Are Presumptively Lawful Regulatory
            Measures ............................................................................................ 11

        D.    The Challenged Statutes Are Consistent With The Nation's
            Historical Tradition of Firearm Regulation .......................................... 13

        E.    The Department is not required to apply the sister state set-aside or
            dismissal orders to restore firearm rights in California ........................... 16

    II.   The Full Faith and Credit Clause Does Not Require California to
        Subordinate Its Criminal Justice System to That of Another State ..................... 18

    III.  Plaintiffs' Claim Under the Privileges and Immunities Clause of Article IV
        Lacks Merit ..................................................................................................... 20

    IV.  Plaintiffs' Fourteenth Amendment Privileges or Immunities Clause Claim
        Also Fails ........................................................................................................ 22

    V.   Deputy Wilson Is Entitled to Eleventh Amendment Immunity ......................... 23

    VI.  The Entity Plaintiffs Lack Standing ................................................................. 24

Conclusion ................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Packers Ass'n. v. Indus. Accident Comm'n of Cal.*
294 U.S. 532 (1935) ................................................................................................ 18

*Binderup v. Att'y Gen.*
836 F.3d 336 (3d Cir. 2016) ........................................................................... *passim*

*Bolbol v. Brown*
120 F. Supp. 3d 1010 (N.D. Cal. 2015) ................................................................. 24

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) .................................................................................................. 8

*Cool Fuel, Inc. v. Connett*
685 F.2d 309 (9th Cir. 1982) ................................................................................. 25

*Council of Ins. Agents & Brokers v. Molasky-Arman*
522 F.3d 925 (9th Cir. 2008) ................................................................................. 20

*DesRosiers v. Hartford*
979 F. Supp. 2d 1036 (E.D. Cal. 2013) ................................................................... 9

*District of Columbia v. Heller*
554 U.S. 570 (2008) ......................................................................................... *passim*

*Folajtar v. Att'y Gen.*
980 F.3d 897 (3d Cir. 2020) ........................................................................... 11, 12

*Fyock v. Sunnyvale*
779 F.3d 991 (9th Cir. 2015) ................................................................................. 21

*Giannini v. Real*
911 F.2d 354 (9th Cir. 1990) ................................................................................. 21

*Gospel Missions of Am. v. City of Los Angeles*
328 F.3d 548 (9th Cir. 2003) ................................................................................. 25

*Groseclose v. Plummer*
106 F.2d 311 (9th Cir. 1939) ........................................................................... 17, 19

*Hamilton v. Pallozzi*
848 F.3d 614 (4th Cir. 2017) ......................................................................... 11, 16

ii

1

2

### TABLE OF AUTHORITIES
#### (continued)

**Page**

3

*Hatfield v. Barr*
   925 F.3d 950 (7th Cir. 2019).................................................................................. 12

4

5

*Huntington v. Attrill*
   146 U.S. 657 (1892)............................................................................................... 18

6

7

*Levanti v. Tippen*
   585 F. Supp. 499 (S.D. Cal. 1984)........................................................................ 23

8

*Los Angeles Cty. Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992)............................................................................ 23, 24

9

10

*Mai v. United States*
   952 F.3d 1106 (9th Cir. 2020).............................................................................. 16

11

*Mance v. Sessions*
   896 F.3d 699 (5th Cir. 2018).................................................................................. 3

12

13

*McBurney v. Young*
   569 U.S. 221 (2013)............................................................................................... 20

14

*McDonald v. City of Chicago*
   561 U.S. 742 (2010).................................................................................. 9, 10, 12, 22

15

16

*Medina v. Whitaker*
   913 F.3d 152 (D.C. Cir. 2019) ......................................................................... 12, 14

17

18

*Murray v. Louisiana*
   347 F.2d 825 (5th Cir. 1965).................................................................................. 17

19

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*
   142 S. Ct. 2111 (2022) ...................................................................................*passim*

20

21

*Nelson v. George*
   399 U.S. 224 (1970)............................................................................................... 18

22

23

*Nevada v. Hall*
   440 U.S. 410 (1979)............................................................................................... 18

24

*People v. Bell*
   49 Cal.3d 502 (1989) ....................................................................................... 11, 21

25

26

*People v. Frawley*
   82 Cal.App.4th 784 (2000)..................................................................................... 23

27

28

iii

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2
<u>Page</u>

3
*People v. Laino*
   32 Cal.4th 878 (2004) ......................................................................................... 19
4

5
*People v. Tran*
   242 Cal.App.4th 877 (2015).................................................................................. 21

6
*Phillips Petroleum Co. v. Shutts*
7
   472 U.S. 797 (1985) ............................................................................................. 19

8
*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*
   506 U.S. 139 (1993) ............................................................................................. 23
9

10
*Rosin v. Monken*
   599 F.3d 574 (7th Cir. 2010) ............................................................................... 20

11
*Saenz v. Roe*
12
   526 U.S. 489 (1999) ................................................................................. 20, 21, 22

13
*San Diego Cty. Gun Rights Comm'n v. Reno*
   98 F.3d 1121 (9th Cir. 1996)............................................................................... 24
14

15
*Sannmann v. Dept. of Justice*
   47 Cal.App.5th 676 (2020).............................................................................. 22, 23

16
*Setser v. United States*
17
   566 U.S. 231 (2012) ............................................................................................. 18

18
*Shaw v. Cal. Dep't of Alcoholic Beverage Control*
   788 F.2d 600 (9th Cir. 1986)............................................................................... 23
19

20
*Silvester v. Harris*
   843 F.3d 816 (9th Cir. 2016).................................................................................. 6

21
*U.S. v. Vongxay*
22
   594 F.3d 1111 (9th Cir. 2010)......................................................................... 11, 14

23
*Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar.*
   *Ass'n*
24
   455 U.S. 691 (1982) ............................................................................................. 20

25
*United States v. Bena*
   664 F.3d 1180 (8th Cir. 2011)......................................................................... 13, 14
26

27
*United States v. Carpio–Leon*
   701 F.3d 974 (4th Cir. 2012)............................................................................... 15

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Phillips*
   827 F.3d 1171 (9th Cir. 2016) ......................................................................... 13, 15

*United States v. Rene E.*
   583 F.3d 8 (1st Cir. 2009) ................................................................................. 14

*United States v. Torres*
   911 F.3d 1253 (9th Cir. 2019) ..................................................................... 13, 16, 21

*Ex Parte Young*
   209 U.S. 123 (1908) .......................................................................................... 23

*Zacharia v. City of Madera*
   No. 1:06-cv-892 AWI SMS, 2010 WL 3618690 (E.D. Cal. Sept. 13, 2010) ........................ 17

**STATUTES**

United States Code, Title 18
   § 922(g)(1) ...................................................................................................... 17
   § 922(t) ............................................................................................................ 3

California Penal Code
   § 17(b) ........................................................................................................ 21, 23
   § 12021 ....................................................................................................... 11, 22
   § 26710 ............................................................................................................ 6
   § 26710(c) ......................................................................................................... 6
   § 29800 ..................................................................................................... *passim*
   § 29800(a)(1) ................................................................................................... 3, 9
   § 29800(c)(1) ...................................................................................................... 3
   § 29800(c)(2) ...................................................................................................... 3
   § 30105(d) ......................................................................................................... 5
   § 30305 ..................................................................................................... *passim*
   § 30305(a)(1) ...................................................................................................... 3
   § 282051 ............................................................................................................ 3

Revised Code of Washington
   § 9.41.040(4) ...................................................................................................... 4
   § 9.94A.637 ........................................................................................................ 4
   § 9.94A.640 ........................................................................................................ 4

1

### TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3    **CONSTITUTIONAL PROVISIONS**

4    United States Constitution

5        Second Amendment ...................................................................................... *passim*

    Eleventh Amendment............................................................................ 2, 23, 24

6        Fourteenth Amendment......................................................................... 2, 22, 23

    Article IV, § 1 ................................................................................................ 18

7

**OTHER AUTHORITIES**

8

9    Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations and*

    *Criminological Considerations*, 60 Hastings L.J. 1339, 1360 (2009) ................... 14

10   John E. Nowak, et al., *Treatise on Const. L.* § 14.3(b) (2d ed. 1987).......................... 22

11   Washington Attorney General Opinion No. 4 (2002) ..................................................... 4

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2  Plaintiffs Linton, Stewart, and Jones were convicted of felony offenses in other states.

3  They now demand an exemption from California's felon-in-possession laws because the states

4  that adjudicated their convictions have since dismissed or set those convictions aside.  Plaintiffs

5  thus contend that California's law prohibiting persons convicted of felonies from possessing

6  firearms and ammunition—California Penal Code[2] sections 29800 and 30305 (the challenged

7  statutes)[3]—should not apply to them.  In particular, Plaintiffs claim that the application of the

8  challenged statutes by the California Department of Justice (the Department) to Plaintiffs violates

9  the Second Amendment, the Full Faith and Credit Clause, the Privileges and Immunities Clause

10  of Article IV, and the Privileges or Immunities Clause of the Fourteenth Amendment.  Plaintiffs'

11  claims lack merit.

12  This case does not implicate the Second Amendment because felons are not part of the

13  "people" who have a right to keep and bear arms.  Moreover, under the Supreme Court's decision

14  in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), laws prohibiting persons convicted

15  of felonies from possessing firearms—such as the challenged statutes—are presumptively lawful

16  and do not burden any conduct protected by the Second Amendment.  This is supported by the

17  historical record cited and discussed by other courts.  But to the extent the Court disagrees and in

18  light of the additional guidance that the Supreme Court has given about how to analyze Second

19  Amendment claims, this Court should order additional expert discovery about whether the

20  challenged statutes are "consistent with th[is] Nation's historical tradition of firearm regulation,"

21  *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 (2022)—an analysis that the

22  Supreme Court has emphasized "can be difficult," *id.* (quoting *McDonald v. City of Chicago*, 561

23  U.S. 742, 803-804 (2010) (Scalia, J., concurring)).

24  Plaintiffs also cannot establish a violation of the Full Faith and Credit Clause because

25  California is entitled to administer its own criminal justice system without coordinating or

26

---

27  [2] All future statutory references are to the California Penal Code, unless otherwise stated.

[3] Copies of sections 29800 and 30305 are provided in the attached exhibit to this brief, at

28  pages 1–4.

subordinating it to criminal justice determinations in other states.  California has a substantial and fair interest in applying its firearm regulations because its contacts with Plaintiffs outweigh their contacts with the states where they were convicted.  Moreover, California is best equipped to identify and develop regulations that will serve its important and compelling objectives of promoting public safety and preventing gun violence.  Thus, it need not give full faith and credit to foreign judgments and statutes from other states that offend and stand in conflict with its police powers and firearm laws.

Plaintiffs also fail to show a violation of the right to travel, either under the Privileges and Immunities Clause of Article IV of the Constitution or the Privileges or Immunities Clause of the Fourteenth Amendment.  Article IV's Privileges and Immunities Clause applies to residents of other states who visit California.  As California citizens for at least thirty years each, Plaintiffs Stewart and Jones are not eligible to bring this cause of action.  Nor does Plaintiff Linton, a Nevada resident, have such a claim, even though he might visit California someday.  The challenged statutes makes no distinctions based on residency, but simply recognize the potential for convictions in other states.  Indeed, some other California resident convicted of a felony in another state (other than the states at issue here) also would be subject to the firearm prohibition and be ineligible for relief if the sister states dismissed or set those convictions aside.

The Fourteenth Amendment Privileges or Immunities argument fails for many of the same reasons.  Plaintiffs have not identified a law or policy that discriminates against new California citizens.  Nor do Plaintiffs qualify as newly arrived citizens of California.  Plaintiffs also have not shown that the challenged laws present a barrier to interstate travel or require non-residents to obtain permission to enter California.  Thus, the right to travel has not been burdened.

Finally, summary judgment is not available to Plaintiffs as to Deputy Wilson because he is entitled to Eleventh Amendment immunity.  And, the Entity Plaintiffs lack standing.

Based on the foregoing, and as explained in more detail below, the Court should deny Plaintiffs' motion.

1

**STATEMENT OF RELEVANT FACTS**

2

I.  CALIFORNIA'S BACKGROUND CHECK PROCESS AND THE FELONY-CONVICTION
PROHIBITION

3

4        There is a complex interplay between federal and state law in connection with firearms

5   background checks.  Under the federal Brady Handgun Violence Prevention Act, Federal

6   Firearms Licensees (FFLs), such as commercial firearms dealers, must contact the national instant

7   criminal background check system (NICS) prior to the transfer of a firearm to an unlicensed

8   individual in order to receive information on whether the individual is disqualified by federal or

9   state law from possessing a firearm.  18 U.S.C. § 922(t).  FFLs contact NICS in one of two ways:

10  (1) through a point of contact established within a state, or (2) through the NICS Operation Center

11  at the Federal Bureau of Investigation.  *See Mance v. Sessions*, 896 F.3d 699, 706–07 (5th Cir.

12  2018).  The method of contact with NICS depends on whether the state is a point-of-contact state.

13  *Id.*  Because California is a point-of-contact state, § 282051, FFLs in California do not

14  communicate with NICS directly and instead go through the Department's Bureau of Firearms.

15  (Decl. of J. Yen Supp. Defs.' Opp'n to Pls.' Mot. Summ. J., Ex. A (Dep. Tr. of G. Matsumoto,

16  June 5, 2020 (Matsumoto Dep.) at 58:10 – 59:1); *Mance*, 896 F.3d at 706–07.

17        As part of California's background check process, the Department determines whether the

18  person attempting to obtain a firearm falls within any of the federal or state prohibited categories.

19  *See* Matsumoto Dep. 58:23 – 59:5.  Both federal and state standards must be satisfied to establish

20  firearms eligibility in California.  A would-be purchaser may be prohibited from possessing a

21  firearm under California law but not under federal law (and vice-versa).  Section 29800, for

22  example, prohibits any person "who has been convicted of . . .  a felony under the law of the

23  United States, the State of California, or any other state, government, or country" from accessing

24  firearms.  § 29800(a)(1).[4]  Section 30305 prohibits such persons from possessing ammunition.

25  § 30305(a)(1) ("No person prohibited from owning or possessing a firearm under Chapter 2

26        ─────────────
        [4] This prohibition does not extend to anyone "who has been convicted of a felony under
27  the laws of the United States unless either of the following criteria is satisfied:  (1) Conviction of
    a like offense under California law can only result in imposition of felony punishment[, or] (2)
28  The defendant was sentenced to a federal correctional facility for more than 30 days, or received a
    fine of more than one thousand dollars (1,000), or received both punishments."  § 29800(c)(1),(2).

3

(commencing with Section 29800) . . . shall own, possess, or have under custody or control, any ammunition or reloaded ammunition."). As specified in these provisions, these prohibitions apply to out-of-state convictions. *See* Matsumoto Dep. at 24:5-24, 64:14-19.

## II.   THE PARTIES

### A.   Plaintiff Chad Linton

In 2020, after filing this lawsuit, Plaintiff Chad Linton moved out of California and now resides in Nevada. *See* Decl. C. Linton ¶ 3, Aug. 26, 2022, ECF No. 62-2 (Linton Decl.). He purportedly maintains a cabin on leased property within California. *Id.* ¶ 4. Linton does not offer any details about the nature and term of the lease, whether he intends to renew it, whether he has ever lived at the property, or whether he intends to return to live in California. *See id.*

In 1987, Linton sustained a felony conviction in Washington State for attempting to evade a police vehicle. Linton Decl. ¶ 9; Decl. of G. Lee, Ex. E at 2, Aug. 26, 2022, ECF No. 62-6 (Lee Decl.). He was sentenced to and served seven days in jail and one year of community supervision. Lee Decl., Ex. E at 2. Linton moved to California in 1988 and remained in the state over twenty years, before moving to Nevada. Linton Decl. ¶¶ 3, 10.

In 2015, Linton attempted to purchase a firearm in California. Linton Decl. ¶ 13. The Department's criminal background check revealed his 1987 felony conviction. *Id.*; Matsumoto Dep. 74:17-25. Pursuant to section 29800, the Department deemed Linton ineligible to possess firearms. *Id.*

In 2016, Linton petitioned for and obtained an order from a Washington court setting aside his guilty plea and vacating his conviction under Revised Code of Washington (RCW) § 9.94A.640.[5] Linton Decl. ¶¶ 13–14 & Ex. A. He also obtained an order restoring his firearm rights in Washington, under RCW § 9.41.040(4). *Id.* ¶ 15 & Ex. B.

After obtaining the orders, Linton applied for a Personal Firearms Eligibility Check (PFEC). Linton Decl. ¶ 16. Under that process, the Bureau of Firearms examines authorized

---

[5] RCW 9.94A.640 permits a convicted felon to apply to vacate his conviction. RCW §§ 9.94A.637, 9.94A.640. However, if the conviction caused the offender to lose the right to possess firearms under Washington law, the order under RCW § 9.94A.640 does not restore that right. Wash.Atty.Gen.Op. 2002 No. 4 (2002).

4

1   *California* records to determine if the applicant is prohibited by state or federal law from

2   possessing, receiving, owning, or purchasing a firearm.  § 30105(d).  Linton's PFEC results

3   indicated he was eligible to possess and purchase firearms as of that date "based on a check of

4   California records" only.  Linton Decl., Ex. C.  The notice also advised Linton that "although the

5   results of the PFEC indicate you are eligible to possess and purchase firearms, you could still be

6   prohibited based on information in a federal database that the California Department of Justice

7   was not authorized to check."  *Id.*

8          Despite these warnings, Linton attempted to purchase a rifle in 2018.  Linton Decl. ¶ 17.

9   The Department prohibited the purchase because of Linton's 1987 felony conviction.[6]  *Id.*, Ex. D;

10   Matsumoto Dep. 74:17 – 75:13.  The Department continues to classify Linton as a prohibited

11   person.  Matsumoto Dep. 74:17 – 75:13.

12          **B.     Plaintiff Paul McKinley Stewart**

13          In 1976, Plaintiff Stewart sustained a felony conviction in Arizona for first degree burglary.

14   (*See* Decl. P. Stewart ¶ 5, Aug. 26, 2022, ECF No. 62-3 (Stewart Decl.).)  He was sentenced to

15   three years' probation and a suspended sentence.  *Id.*

16          Stewart moved to California in or around 1988 and has remained in the state.  Stewart Decl.

17   ¶¶ 1, 3.  At various points between 2014 and 2018, he attempted to purchase firearms but was

18   prohibited from doing so because of his 1976 felony conviction.  *Id.* ¶¶ 8, 14, 15; Matsumoto

19   Dep. 91:6–24.

20          In 2016, Stewart petitioned for and received an order from an Arizona court setting aside

21   his felony conviction, and restoring his right to possess weapons under Arizona Revised Code

22   sections 13-604 and 13-3101.  Stewart Decl. ¶ 12 & Ex. A.  After receiving those orders, Stewart

23   attempted to purchase firearms in California in 2018.  *Id.* ¶ 13.  The Department denied the

24   purchase on the ground that Stewart was not eligible due to his 1976 felony conviction.  *Id.* ¶ 14

25   & Ex. B; Matsumoto Dep. 91:6–24.

26   ──────────────────

27          [6] The time of Linton's attempted purchase is unclear.  After discussing the 2016 PFEC letter, his declaration references an October 30, 2018 attempt to purchase a firearm, then backtracks to a November 7, 2016 letter he received from the Department, and the Live Scan fingerprint background check he underwent in November 2016.  *See* Linton Decl. ¶¶ 16-18.

28

5

1

C.      **Plaintiff Kendall Jones**

2      In 1980, Plaintiff Jones sustained a felony conviction for "credit card abuse" in Texas.  (*See*

3   Decl. K. Jones. ¶ 9, Aug. 26, 2022, ECF No. 62-4 (Jones Decl.); Lee Decl., Ex. G at 2.)  He was

4   sentenced to three years' probation.  Jones Decl. ¶ 9; Lee Decl., Ex. G at 2.  In 1983, the Texas

5   court dismissed Jones's conviction and terminated his probation, finding that he had satisfactorily

6   fulfilled the conditions of his probation during the full period of his original probation.  Jones

7   Decl. ¶ 10 & Ex. A.

8      Jones moved to California in or around 1984 and has remained in the state.  Jones Decl. ¶ 1.

9   From 1984 to 2013, he worked as a correctional officer for the California Department of

10   Corrections and Rehabilitation (CDCR).  *Id.* ¶ 3.  Jones states that he possessed and used firearms

11   in the course of his tenure at CDCR.  *Id.* ¶ 5.

12      Since retiring, Jones has worked as a firearms instructor, a position that requires him to

13   maintain a certificate of eligibility (COE) issued by the Department.  Jones Decl. ¶¶ 12, 13;

14   § 26710.  A COE is valid for one year and "confirms a person's eligibility to lawfully possess

15   and/or purchase firearms under state and federal law."  *Silvester v. Harris*, 843 F.3d 816, 826–27

16   (9th Cir. 2016) (citations omitted); *see also* § 26710(c).  Jones's firearms eligibility came into

17   question when, during renewal for his COE in or around 2018, the Department noticed a changed

18   entry for Jones in the NICS database that called for closer inspection about Jones's eligibility to

19   possess firearms *in California*.  Yen Decl., Ex. B at 8; Jones Decl. ¶ 14; Lee Decl., Ex. H.  The

20   Department then determined that Jones's felony conviction rendered him ineligible to own,

21   possess, or control a firearm.  Jones Decl., Ex. C; Lee Decl., Ex. E at 009; Matsumoto Dep.

22   99:22-24, 100:11-19.

23

D.      **The Entity Plaintiffs**

24      The complaint also names as Plaintiffs the Firearms Policy Foundation, Firearms Policy

25   Coalition, Second Amendment Foundation, California Gun Rights Foundation, and Madison

26   Society Foundation.  First Am. Compl. ¶¶ 7–11, Dec. 2, 2019, ECF No. 36.  They initially sued

27   on behalf of the Individual Plaintiffs and similarly situated persons, however, they move only for

28   relief as to the Individual Plaintiffs.  *Id.*; Pls.' Mem. P. & A. Supp. Mot. Summ. J. 1, 14, Aug. 26,

6

2022, ECF No. 62-1 (Pls.' Mot.))   As discussed below, there is no evidence in the record

regarding the Individual Plaintiffs' membership in these organizations.

### E.   Defendants Bonta, Graham, and Wilson

Defendants are the California Attorney General, the Director of the California Department

Bureau of Firearms, and Deputy Attorney General Robert Wilson, all sued in their official

capacities.  First Am. Compl. ¶¶ 12–14.  Plaintiffs allege that the Attorney General is the "chief

law officer" for California and head of the Department, which "regulate[s] and enforce[s] state

law related to the sales, transfer, possession, and ownership of firearms."  *Id.* ¶ 12.  The Director

of the Department's Bureau of Firearms allegedly "is responsible for the Bureau's

"implementation and enforcement of the statutes, regulations and policies regarding prohibited

persons."  *See id.* ¶ 13.  Deputy Wilson allegedly "is responsible for formulation, issuance, and

implementation of the policy or policies described below which prohibit Individual Plaintiffs and

other similarly situated from purchasing or possessing firearms."[7]  *Id.* ¶ 14.  Plaintiffs' motion

does not discuss Defendants' roles in the alleged constitutional violations.

### PROCEDURAL HISTORY

Plaintiffs Linton, Stewart, and the Entity Plaintiffs filed this lawsuit on December 20, 2018,

requesting a declaration that sections 29800 and 30305, "as applied to Individual Plaintiffs and

others similarly-situated to them, is unconstitutional." Compl., Prayer for Relief, ¶ 1, Dec. 20,

2018, ECF No. 1.  They also sought a declaration that Defendants' alleged refusal to honor the

findings of states that set aside and vacate felony convictions and restore firearms rights "is

unconstitutional as applied to Individual Plaintiffs and others similarly-situated to them[.]" *Id.*,

Prayer for Relief, ¶¶ 1–3.  Plaintiffs additionally sought an order enjoining Defendants from

enforcing policies and practices that refuse to honor the set-aside and dismissal orders.  *Id.*,

Prayer for Relief, ¶ 4.

Defendants moved to dismiss the complaint.  Defs.' Mot. to Dismiss, Feb. 22, 2019, ECF

No. 12.  Following a hearing, the Court issued an order stating that the motion "raise[d] issues

best addressed in summary judgment proceedings."  Order, Aug. 22, 2019, ECF No. 26.

---

[7] Since the filing of this action, Deputy Wilson has retired from the Department.

1   Defendants thereafter answered the Complaint (Answer, Sept. 20, 2019, ECF No. 28), and the

2   parties engaged in discovery.

3        In November 2019, Plaintiffs moved to amend the complaint, adding Plaintiff Jones to the

4   action, and Defendants opposed that motion.  Pls.' Mot. Leave to File Am. Compl., Nov. 15,

5   2019, ECF No. 30; Defs.' Opp'n to Mot. Leave to File First Am. Compl., Nov. 2, 2019, ECF

6   No. 33.  The Court granted Plaintiffs' motion.  Order, Dec. 2, 2019, ECF No. 35.

7        Approximately two weeks after the Court granted leave to amend and one year after

8   commencing this lawsuit, Plaintiffs moved for preliminary injunction preventing enforcement of

9   sections 29800 and 30305 against each of the Individual Plaintiffs.  Pls.' Mot. Prelim. Inj.,

10  Dec. 19, 2019, ECF No. 38.  Defendants opposed and the Court denied the motion.  Defs.' Opp'n

11  to Pls.' Mot. Prelim. Inj., Jan. 27, 2020, ECF No. 42; Order, May 21, 2020, ECF No. 46.

12       Plaintiffs filed a motion for summary judgment or, in the alternative, partial summary

13  judgment, on June 22, 2020.  ECF No. 47.  Defendants filed their opposition, ECF No. 48, and

14  Plaintiffs filed their reply, ECF No. 49.  The Court then administratively stayed the case pending

15  the Ninth Circuit's decision in *Duncan v. Becerra*, No. 19-55376 and directed the parties to file a

16  joint status report within thirty days of the *en banc* decision and address whether new or

17  additional briefing would be warranted.  ECF No. 53.

18       On June 23, 2022, the Supreme Court issued its decision in *Bruen*.  Plaintiffs then filed an

19  administrative motion to lift the stay.  ECF No. 57.  The Court granted the motion and directed

20  the parties to file new summary judgment motion papers in lieu of supplemental briefs.  ECF No.

21  58.

22                              **LEGAL STANDARD**

23       The standards applicable to a summary judgment motion are well known.  In short,

24  summary judgment is appropriate where there exists no genuine issue as to any material fact and

25  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (2010); *Celotex*

26  *Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  "The standard that applies to a motion for

27  summary adjudication is the same as that which applies to a motion for summary judgment."

28

8

1   *DesRosiers v. Hartford*, 979 F. Supp. 2d 1036, 1047 (E.D. Cal. 2013); *see* also Fed. R. Civ.

2   P. 56(a).

3                                                **ARGUMENT**

4   **I.   PLAINTIFFS' SECOND AMENDMENT CLAIM FAILS**

5           The Second Amendment codifies "the right of *law-abiding, responsible* citizens to use arms

6   for self-defense." *Bruen*, 142 S. Ct. at 2131 (quoting *Heller*, 554 U.S. at 635) (emphasis added

7   and internal quotations omitted).  That right does not extend to individuals who have been

8   convicted of a felony.  At issue here is whether California *must* exempt felons, who have had their

9   convictions set aside or dismissed in other states, from California's firearm prohibition for "[a]ny

10  person who has been convicted of . . . a felony under the laws of the United States, the State of

11  California, or any other state, government, or country[.]"  § 29800(a)(1).  The answer is no.  For

12  the reasons discussed below, felons do not come within the scope of the Second Amendment and

13  there is no Second Amendment right for felons to be returned to the category of "law-abiding,

14  responsible citizens."

15          **A.   *Bruen* Altered the Legal Standard for Analyzing Second Amendment**
16                 **Claims**

17          In *Bruen*, petitioners challenged the constitutionality of a New York law requiring that

18  individuals show "proper cause" to obtain a license to carry a firearm in public.  *Bruen*, 142 S. Ct.

19  at 2123.  The petitioners claimed that the law violated their Second Amendment rights.  *Id*. at

20  2125.  Before turning to the merits, the Supreme Court recognized that most federal courts of

21  appeals had "coalesced around a 'two-step' framework for analyzing Second Amendment

22  challenges that combines history with means-end scrutiny."  *Id*.  The Court "decline[d] to adopt"

23  that "'two-step' framework" and explained that its earlier decisions in *Heller* and *McDonald*,

24  "d[id] not support applying means-end scrutiny in the Second Amendment context."  142 S. Ct. at

25  2126-2127.  It then announced a new standard for analyzing Second Amendment claims

26  "centered on constitutional text and history."  *Id.* at 2128-2129.

27          Under this new approach, courts must initially assess whether the "Second Amendment's

28  plain text covers" the regulated conduct.  *Id.* at 2129.  If the answer is no, there is no violation of

                                                      9

the Second Amendment.  If the answer is yes, the government can still justify its regulation—and overcome a constitutional challenge—not by showing that the law overcomes intermediate scrutiny but by showing that the challenged law is "consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2130.

For some cases, *Bruen* provides that this historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal problem that has persisted since the 18th century."  *Id*. at 2131.  But in others—particularly those where the challenged laws address "unprecedented societal concerns or dramatic technological changes"—this historical analysis requires a "more nuanced approach."  *Id.* at 2132.  In particular, governments can justify regulations of that sort by "reasoning by analogy," a process that requires the government to show that its regulation is "'relevantly similar'" to a "well-established and representative historical analogue."  *Id*. at 2333 (emphasis omitted).  In other words, modern-day regulations need not be a "dead ringer" for historical precursors or a "historical *twin*" to "pass constitutional muster."  *Id*.

While *Bruen* announced a new approach for analyzing Second Amendment claims, it also made clear that the Second Amendment is not a "regulatory straightjacket."  *Id.* at 2133.  Nor is it a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes."  *Id.* at 2128 (quoting *Heller*, 554 U.S. at 626).  And Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to underscore the "limits of the Court's decision."  *Id.* at 2161 (Kavanaugh, J., concurring).  Justice Kavanaugh reiterated *Heller*'s observation that "the Second Amendment allows a 'variety' of gun regulations."  *Id.* at 2162 (quoting *Heller*, 554 U.S. at 636).  And he emphasized that the "presumptively lawful measures" identified in *Heller*— including "longstanding prohibitions on the possession of firearms by felons and the mentally ill"—remained constitutional, and that this was not an "exhaustive" list.  *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626-627, 627 n.26).[8]

_____

[8] *See also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess.  Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns").

1

**B.** **Plaintiffs Are Not Protected by the Text of the Second Amendment Because They Are Not Part of the "People" Referred to by the Second Amendment**

2

3    Under the *Bruen* framework, the party challenging a restriction under the Second

4    Amendment must first demonstrate that the law regulates conduct protected by the "plain text" of

5    the Second Amendment.  *See Bruen*, 142 S. Ct. at 2134.  Plaintiffs have not done so in this case.

6    The Amendment's operative clause is "the right of the people to keep and bear Arms . . . ."  *Id.*

7    Thus, the "plain text" analysis must consider whether the plaintiffs are "part of 'the people'

8    whom the Second Amendment protects."  *Id*.  And *Bruen* consistently refers to "the people" as

9    "law-abiding, responsible citizens."  *See id.* at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156.

10   Here, those who have been convicted of a felony are not "law-abiding, responsible citizens."

11   Indeed, the "conviction of a felony necessarily removes one from the class of 'law-abiding,

12   responsible citizens' for purposes of the Second Amendment . . . ."  *Hamilton v. Pallozzi*, 848

13   F.3d 614, 626 (4th Cir. 2017), *cert denied* 138 S. Ct. 500 (2017); *see also U.S. v. Vongxay*, 594

14   F.3d 1111, 1115 (9th Cir. 2010) ("felons are categorically different from the individuals who have

15   a fundamental right to bear arms"); *Folajtar v. Att'y Gen.*, 980 F.3d 897, 911 (3d Cir. 2020)

16   ("When [the plaintiff] committed a federal felony . . ., she removed herself from the

17   constitutionally protected class of 'law-abiding citizens'")  Thus, Plaintiffs, who have been

18   convicted of a felony, are not part of "the people" covered by the "plain text' of the Second

19   Amendment, which means there is no violation of the Second Amendment and the analysis ends.

20   **C.    The Challenged Statutes Are Presumptively Lawful Regulatory Measures**

21   The conclusion that felons are not part of the "people" covered by the Second Amendment

22   is consistent with *Heller*'s recognition that regulatory measures prohibiting "the possession of

23   firearms by felons" are longstanding and presumptively lawful.[9]  554 U.S. at 626–27.  And the

---

24      [9] Sections 29800 and 30305, which prohibit persons who have been convicted of felony
offenses from possessing firearms and ammunition, are presumptively lawful and longstanding

25   measures that fall outside the scope of the Second Amendment.  There is no material dispute that
Plaintiffs Linton, Stewart, and Jones have sustained felony convictions.  There is also no material

26   dispute that the challenged statutes relate back to 1917, to the Dangerous Weapons Control Act.
*People v. Bell*, 49 Cal.3d 502, 544 (1989) (en banc) ("The clear intent of the Legislature in

27   adopting the weapons control act [codified in former § 12021, the predecessor to § 29800] was to
limit as far as possible the use of instruments commonly associated with criminal activity . . . and,

28

11

Supreme Court's recent decision in *Bruen* emphasized that *Heller* remains good law.  *See* 142 S.

Ct. at 2122 (noting that its holding is "consistent with *Heller* and *McDonald*"); *id.* at 2157 (Alito,

J., concurring) (stating "Nor have we disturbed anything that we said in *Heller* . . . ."); *id.* at 2162

(Kavanaugh, J., concurring) (emphasizing that the *Bruen* decision does not disturb *Heller*'s

discussion of "presumptively lawful" prohibitions).

This presumptively lawful prohibition applies to all felons, not just violent felons.  Felonies

at the time of the Second Amendment's ratification, just like today, were comprised of the most

serious crimes.  *Folajtar*, 980 F.3d at 904 (citations omitted).  Many of those felonies were

considered violent, such as burglary, rape, arson, murder, but others were not, such as unlawful

hunting and repeated forgery.  *Id.* (citing Francis Bacon, *Preparation for the Union of Laws of

England and Scotland*, in 2 *The Works of Francis Bacon* 163–64 (Basil Montagu ed., Cary &

Hart 1844); *see also id.* at 905 ("The widespread, continued condemnation of felons, including

those who committed non-violent offenses, to death demonstrates that in 1791 Americans

understood felons, as a group, to commit serious crimes).  Thus, if the Supreme Court intended to

carve out certain felonies from the presumption of lawfulness, then it would have done so.  *See

Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) ("Felonies encompass a wide variety of

non-violent offenses, and we see no reason to think that the Court [in *Heller*] meant 'dangerous

individuals' when it used the word felon"); *see also Hatfield v. Barr*, 925 F.3d 950, 952 (7th Cir.

2019) ("If we could know reliably who *will be* 'law-abiding, responsible citizens' despite felony

convictions, the Supreme Court might include them among those protected by the Second

Amendment").

Even if the presumption were limited to violent or otherwise dangerous persons—a

limitation the Supreme Court makes no mention of—Plaintiffs' claims would still fall short.

Plaintiffs Linton's and Stewart's offenses for attempting to evade a police officer and first-degree

burglary, respectively, fairly fall into the category of dangerous conduct.  To the extent Plaintiffs

want to characterize Jones's conviction for credit card abuse as non-violent, the offense still

specifically, to minimize the danger to public safety arising from the free access to firearms that
can be used for crimes of violence.") (internal citations and quotation marks omitted).

carries an element of deceit that is dangerous.  *Cf. United States v. Phillips*, 827 F.3d 1171, 1175
(9th Cir. 2016) (non-violent crime such as misprision of felony is not purely passive because it
"contain[s] some element of active concealment, though a mere lie might be sufficient").  These
circumstances are enough to view the Individual Plaintiffs as unprotected by the Second
Amendment because they are "categorically different" from law-abiding citizens entitled to
Second Amendment protections.

Ultimately, measures prohibiting felons from possessing firearms—like the statutes at issue
here—are presumptively lawful under the Second Amendment because they "affect individuals or
conduct unprotected by the right to keep and bear arms."  *United States v. Torres*, 911 F.3d 1253,
1258 (9th Cir. 2019) (quoting *Binderup v. Att'y Gen.*, 836 F.3d 336, 343 (3d Cir. 2016)); *see also*
*United States v. Bena*, 664 F.3d 1180, 1183 (8th Cir. 2011) ("It seems most likely that the
Supreme Court viewed the regulatory measures listed in *Heller* as presumptively lawful because
they do not infringe on the Second Amendment right").  And Plaintiffs have failed to present any
argument rebutting that presumption.

> **D.  The Challenged Statutes Are Consistent With The Nation's Historical Tradition of Firearm Regulation**

Plaintiffs cannot reasonably argue that the challenged statutes are unlawful, so they argue
instead that there is no "historical predicate to permanently prohibiting *all non-violent* felons from
owning firearms."  Pls.' Mot. 11-15.  In essence, Plaintiffs claim that only those convicted of
dangerous crimes may be disarmed.  *See id.*  This is wrong.[10]

Gun restrictions from the Founding Era were not limited to those deemed to be dangerous
but were "directed at citizens who [were] not law-abiding and responsible."  *Bena*, 664 F.3d at
1183.  Many historical scholars have concluded that "the right to bear arms was inextricably . . .
tied to the concept of a virtuous citizenry" and that, accordingly, the government could "disarm[]

---

[10] Plaintiffs' reliance on the Third Circuit's decision in *Binderup*, 836 F.3d 336, to support
their as-applied challenge is also misplaced.  Pls.' Mot. 13–14.  The plaintiffs in *Binderup* were
convicted of misdemeanors (corrupting a minor and driving while intoxicated), which played a
significant role in the court's finding that the firearm ban was unconstitutional as applied to those
plaintiffs.  836 F.3d at 340.  Those facts do not present themselves here.

unvirtuous citizens." *Vongxay*, 594 F.3d at 1118 (citations and internal quotations omitted); *see also Binderup*, 836 F.3d at 348 (identifying historical evidence supporting the concept of disarming "unvirtuous citizens").  In fact, "there is every reason to believe that the Founding Fathers would have deemed persons convicted of any of the common law felonies not to be among 'the [virtuous] people' to whom they were guaranteeing the right to arms."  Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1360 (2009) (internal citations and footnotes omitted); *see also Bena*, 664 F.3d at 1183 ("in classical republican philosophy, the concept of a right to arms was inextricably and multifariously tied to that of the virtuous citizen, such that the right to arms does not preclude laws disarming the unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, are deemed incapable of virtue") (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue, Law & Comtemp. Probs.*, Winter 1986, at 146 (1986)) (internal quotations omitted).  As one court noted, "[p]erhaps the most accurate way to describe the dominant understanding of the right to bear arms in the Founding era is as . . . limited to those members of the polity who were deemed capable of exercising it in a virtuous manner."  *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009) (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 679 (2002)); *see also id.* at 16 ("the view of late-seventeenth century republicanism [is] that '[t]he right to arms was to be limited to virtuous citizens only'") (quoting Robert E. Shalhope, *The Armed Citizen in the Early Republic*, 49 Law & Contemp. Probs. 125, 130 (1986)).

"The category of 'unvirtuous citizens' is [] broader than violent criminals, it covers any person who has committed a serious criminal offense, violent or nonviolent."  *Binderup*, 836 F.3d at 348 (citations omitted); *see also id.* at 349 ("The view that anyone who commits a serious crime [—violent or not—] loses the right to keep and bear arms dates back to our founding era.") (citations omitted); *Medina*, 913 F.3d at 159 (after considering historical evidence, the court concluded that "the public in the founding era understood that the right to bear arms could

14

exclude at least some nonviolent persons").[11]  And because felons "were deemed unvirtuous," they were excluded from the right to arms.  *See United States v. Carpio–Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012) (internal quotation marks omitted); *see also Binderup*, 836 F.3d at 348 (identifying sister circuits that endorsed "the 'virtuous citizen' justification for excluding felons and felon-equivalents from the Second Amendment's ambit") (citations omitted).

       To the extent that this Court concludes that the ample historical evidence cited by other courts is not enough to conclude that felons (violent and non-violent) are not protected by the Second Amendment and that California's regulations are not presumptively lawful or consistent with the Nation's historical tradition of firearm regulation, it should order additional expert discovery and briefing.  While it is true that some jurists before *Bruen* examined some of the relevant historical evidence, *see* Pls.' Mot. 14-15, *Bruen* clarified how the historical inquiry differs from the approach employed by pre-*Bruen* courts in important respects.  For example, *Bruen* directs that the State can justify its regulation by showing that there is a historical analogue that imposes a "comparable burden on the right to armed self-defense" and is "comparably justified." *Bruen*, 142 S. Ct. at 2133.  The authorities plaintiffs cite, which comprise a number of dissenting opinions, did not conduct this "reasoning by analogy." *Id.* at 2132.  And compiling a historical record beyond what has already been discussed in other cases may not be an easy task.  It would likely need to be undertaken by trained historians in order to identify the sources available to them in order to answer a particular historical inquiry.  *See* Declaration of Zachary Schrag, *Miller v. Becerra*, No. 3:19-cv-1537-BEN-JLB (S.D. Cal. Aug. 29, 2022), ECF No. 129-1 at 2-5.  Even identifying which sources are available does not necessarily mean that those sources are readily available to be accessed, read, and analyzed. *Id*. at 5-10.  Once those sources are accessed, the process of putting together findings can also be a time consuming. *Id*. at 10-12.

       However, as discussed earlier, the historical record cited by other courts supports the conclusion that California's statutes prohibiting a person convicted of a felony, whether violent or

---

[11] This Court also need not veer from established precedent on this point to entertain the scholarly skepticism on lifetime bans for all felons.  Pls.' Mot. 12 (citing *Phillips*, 827 F.3d at 1174).  As the *Phillips* court correctly noted, such skepticism is "beside the point" in light of precedent.  827 F.3d at 1176 (citing *Heller* and *Vongxay*).

nonviolent, from possessing a firearm is consistent with the Nation's historical tradition of firearm regulation.  And there is no basis, based on the current historical record, for granting Plaintiffs' motion for summary judgment.

### E. The Department is not required to apply the sister state set-aside or dismissal orders to restore firearm rights in California

Although their purpose in doing so is not entirely clear, Plaintiffs engage in a review of the Department's process for analyzing the Individual Plaintiffs' criminal history records and appear to suggest that failure to recognize sister states' set-aside or dismissal orders of the Individual Plaintiffs' felony convictions amounts to a Second Amendment violation.  Pls.' Mot. 16-19. Without citing any authority, Plaintiffs essentially argue that felons who were able to get their convictions expunged have restored their firearms rights and must now be considered part of the "people" protected by the Second Amendment.  *See id.*  This argument is misplaced. "A felon cannot be returned to the category of 'law-abiding, responsible citizens' for purposes of the Second Amendment . . . ."  *Hamilton*, 848 F.3d at 626.  And there is no precedent for requiring that felons be returned to that category, even if some (but not all) states allow them to be returned to that category within their own borders.

Similarly, "the Second Amendment does not require that those who commit serious crimes be given an opportunity to regain their right to keep and bear arms . . . ."  *Binderup*, 836. F.3d at 350.  Thus, California is not required to provide felons with the ability to restore their firearms rights, including recognizing the expungement of an out-of-state felony conviction by a sister state court.  In fact, "[t]here is no historical support for the view that the passage of time or rehabilitation can restore Second Amendment rights that were forfeited" or that individualized assessments are required to assess a person's risk.  *Binderup*, 836. F.3d at 350; *Mai v. United States*, 952 F.3d 1106, 1119 (9th Cir. 2020) (ruling that the Second Amendment "does not demand 'an individualized hearing' to assess the plaintiff's level of risk"); *cf. Torres*, 911 F.3d at 1164 n.6 (permitting over inclusiveness of firearms ban to include non-violent offenders). Accordingly, the California Legislature retains the right to not base firearms eligibility for this class of individuals on perceived, individualized risk or on the determinations or assessments of

1    sister state courts.  *See Binderup*, 836 F.3d at 350 ("To the extent Congress affords [] a remedy

2    [to restore Second Amendment rights] that is a matter of legislative grace").

3         In other words, the fact that other states have set aside or dismissed the Individual

4    Plaintiffs' felony convictions does not mandate that California exempt them from the prohibited

5    class of persons who have been convicted of felony offenses.  Defendants take no issue with those

6    other states restoring firearm rights within their own jurisdictions.  However, the California

7    statutes at issue do not contain language that permits the Department to make exceptions for relief

8    orders from other states.  *See* §§ 29800, 30305.  Moreover, the out-of-state orders cannot preclude

9    the Department from recognizing the plain facts of the Individual Plaintiffs' convictions and

10   applying California's own police powers within California's borders.  *See, e.g.*, *Groseclose v.*

11   *Plummer*, 106 F.2d 311, 313 (9th Cir. 1939) ("It still remains true that petitioner was the subject

12   of two prior final convictions when the law of California overtook him in the commission of

13   another felony.  Notwithstanding the Texas pardons, the stubborn fact remains that the habit of

14   crime was upon him.  The executive clemency of one state could not, under any law of such state,

15   prevent a sister state from taking cognizance of plain facts, and from applying its police laws to

16   them."); *Murray v. Louisiana*, 347 F.2d 825, 827 (5th Cir. 1965) ("Different states use different

17   standards in issuing pardons and the effect of them may vary from jurisdiction to jurisdiction.");

18   *Zacharia v. City of Madera*, No. 1:06-cv-892 AWI SMS, 2010 WL 3618690, at *20 n.25 (E.D.

19   Cal. Sept. 13, 2010) (agreeing with California state court decision that another state cannot

20   determine whether California views a person as a felon, even if that state restores firearm rights)

21   (citations omitted).

22        Finally, this Court should resist Plaintiffs' use of federal firearms law, 18 U.S.C.

23   § 922(g)(1), to suggest that California, presumably at the direction of this Court, should change

24   its approach.  Pls.' Mot. 19.  California has the sovereign right to exercise its police powers.

25   Section 29800, unlike the federal section 922(g)(1), does not contain a qualification for

26   recognizing expunged or set aside convictions.  And Plaintiffs cite no authority whatsoever for

27   the proposition that the Second Amendment requires such a qualification.  The Court should

28   therefore decline to insert such language into a California statute.

17

**II.    THE FULL FAITH AND CREDIT CLAUSE DOES NOT REQUIRE CALIFORNIA TO SUBORDINATE ITS CRIMINAL JUSTICE SYSTEM TO THAT OF ANOTHER STATE**

Article IV of the Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State."  U.S. Const. art. IV, § 1.  The Full Faith and Credit Clause does not preclude a state from determining its own laws or carrying out its public policy.  *Nevada v. Hall*, 440 U.S. 410, 422 (1979), *overruled on other grounds*, *Franchise Tax Bd. Of Cal. v. Hyatt*, 139 S. Ct. 1485 (2019) ("[T]he Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate policy."); *Alaska Packers Ass'n. v. Indus. Accident Comm'n of Cal.*, 294 U.S. 532, 547 (1935) ("It has often been recognized by this Court that there are some limitations upon the extent to which a state will be required by the full faith and credit clause to enforce even the judgment of another state, in contravention of its own statutes or policy.").

As a sovereign state, California "is responsible for 'the administration of [its own] criminal justice syste[m].'"  *Setser v. United States*, 566 U.S. 231, 241 (2012) (alterations in original; citations omitted) (quoting *Oregon v. Ice*, 555 U.S. 160, 168 (2009)).  Thus, it has long been recognized that the Full Faith and Credit Clause cannot require California to subordinate its criminal justice system and Penal Code based on the criminal justice laws of sister states.  *See, e.g.*, *Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond the jurisdiction of the state which enacts them, and can have extraterritorial effect only by the comity of other states.").  "Crimes and offenses against the laws of any state can only be defined, prosecuted, and pardoned by the sovereign authority of that state; and the authorities . . . of other states take no action with regard to them, except by way of extradition, to surrender offenders to the state whose laws they have violated, and whose peace they have broken."  *Id.*

Just as Washington, Arizona, and Texas retained the right to dismiss or vacate the Individual Plaintiffs' felony convictions without input from California, California acts lawfully in choosing to recognize the Individual Plaintiffs' convictions while not recognizing out-of-state orders or judgments setting aside or vacating the convictions.  *Cf. Nelson v. George*, 399 U.S. 224 (1970) ("the Full Faith and Credit Clause does not require that sister States enforce a foreign

18

penal judgment. . . California is free to consider what effect, if any, it will give to the North Carolina detainer . . . .'") (citations omitted); *Groseclose*, 106 F.2d at 313 (rejecting petitioner's claim that California refused to give full faith and credit to the pardons he received for his felony convictions in Texas and that he "may be adjudged a prior offender and given increased punishment as such").[12]

The California Supreme Court has considered and rejected a similar argument that the state should give full faith and credit to an Arizona court's judgment of dismissal, and not use a defendant's guilty plea to enhance a sentence in a subsequent proceeding. *People v. Laino*, 32 Cal.4th 878, 887 (2004). The *Laino* court held "that the full faith and credit clause does not preclude a state from determining under its own laws whether a guilty plea in another jurisdiction constitutes a prior conviction for purposes of its habitual criminal statute." *Id.* at 888; *see also id.* ("If California need not give full faith and credit to penal judgments of another state, then it is free to determine under its own laws whether defendant's Arizona plea constitutes a conviction for purposes of the three strikes law, notwithstanding the subsequent Arizona judgment discharging defendant from probation and dismissing the proceedings.").

Furthermore, the Full Faith and Credit Clause does not require California to recognize criminal judgments from sister states because of its substantial contacts with the Individual Plaintiffs, which outweigh Plaintiffs' contacts with the states that issued the set aside and dismissal orders. For example, Plaintiff Stewart has resided in California for thirty years and offers no information about his current contacts with Arizona beyond seeking the set aside order. Stewart Decl. ¶¶ 2, 11. Plaintiff Jones has lived and worked in California for over thirty-nine years and offers no information about recent contacts with Texas over that time. Jones Decl. ¶¶ 1, 10, 11. Plaintiff Linton was born and raised in California, lived briefly in Washington State, and returned and remained in California for over twenty years. Linton Decl. ¶¶ 1, 7, 10. Based on these contacts, California has a real and substantial interest in applying its firearm regulations to Plaintiffs. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) ("for a State's

---

[12] The authorities cited by Plaintiffs with respect to recognizing foreign judgments do not save their case. Those cases do not involve criminal judgments and relate instead to products liability and family law scenarios. Pls.' Mot. 20–21.

19

substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.").[13]

Based on the foregoing, this Court should reject Plaintiffs' argument that California is required to give full faith and credit to the sister state court orders or judgments here.

## III.   PLAINTIFFS' CLAIM UNDER THE PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV LACKS MERIT

"A citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." *Saenz v. Roe*, 526 U.S. 489, 501 (1999) (quoting U.S. Const., art. IV, § 2, cl. 1). Thus, Article IV "provides important protections for nonresidents who enter a State," *id.*, but only as to fundamental rights, *McBurney v. Young*, 569 U.S. 221, 226 (2013). "Like many other constitutional provisions, the privileges and immunities clause is not an absolute." *Council of Ins. Agents & Brokers v. Molasky-Arman,* 522 F.3d 925, 934 (9th Cir. 2008) (citation omitted). It does not prohibit the use of state citizenship or residency to distinguish among a class of persons. *McBurney*, 569 U.S. at 226; *Saenz*, 526 U.S. at 502. A challenged law or policy also does not violate the Privileges and Immunities Clause if it advances a substantial state interest, *Council of Ins. Agents & Brokers*, 522 F.3d at 934, or has an incidental effect on non-citizens, *McBurney*, 569 U.S. at 228–29. Further, "the Clause does not require that a State tailor its every action to avoid any incidental effect" on non-residents. *Id.* at 229.

Plaintiffs' claims fail because the challenged statutes and alleged policy advance a substantial state interest here and do not have more than an incidental effect on non-citizens.

---

[13] The substantial contacts Plaintiffs have with California as compared to the relatively scant contacts they have with the adjudicating states also explain why the sister states lack jurisdiction to extend their decisions to California's firearm regulations. "If [the court rendering judgment] did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705 (1982); *accord Rosin v. Monken*, 599 F.3d 574, 577 (7th Cir. 2010) ( "Illinois need not dispense with its preferred mechanism for protecting its citizenry by virtue merely of a foreign judgment that envisioned less restrictive requirements' [*sic*] being imposed on the relevant sex offender. Illinois, as a state of the Union, has police power over the health and welfare of its citizens.").

1   Both Plaintiffs Stewart and Jones have lived in California for at least thirty years.  Stewart Decl.

2   ¶ 2; Jones Decl. ¶ 1.  Thus, they cannot show that they have been discriminated against based on

3   out-of-state residency—they are longtime California citizens.  *Giannini v. Real*, 911 F.2d 354,

4   357 (9th Cir. 1990) ("Discrimination on the basis of out-of-state residency is a necessary element

5   for a claim under the Privileges and Immunities Clause.")

6       While Plaintiff Linton is no longer a California resident, his claim also lacks merit.  He

7   argues that "Defendants' policies" somehow "violate [his] right to reenter the state without

8   forfeiting a substantial liberty interest."  Pls.' Mot. 23.  But Linton cites no language in the

9   challenged statutes that distinguishes between residents and non-residents, or otherwise gives

10  California residents an advantage.  *See id.* at 22, 23.  Linton's status as a non-California resident

11  is not the reason why he cannot possess firearms in the state.  Linton cannot possess firearms in

12  California because he has been convicted of a felony.  *See* § 29800.  California prohibits firearms

13  possession by those convicted of a felony offense in order to promote substantial state interests of

14  protecting public safety, controlling crime, and preventing gun violence.  *See Fyock v. Sunnyvale*,

15  779 F.3d 991, 1000 (9th Cir. 2015); *Torres*, 911 F.3d at 1263; *Bell*, 49 Cal.3d at 544.  These are

16  substantial and, indeed, compelling state interests.  *See Fyock*, 779 F.3d at 1000.

17      Moreover, any effects of the challenged statutes or alleged policy on Linton are incidental.

18  They do not deny Linton the right to travel into or out of California.  And Linton's comparison of

19  himself to individuals convicted of section 17(b) wobbler offenses in California, who may have

20  their firearm rights restored if reduced to a misdemeanor, is not an appropriate comparison.[14]

21  Pls.' Mot. 23.  First, the Privileges and Immunities Clause is implicated "by virtue of a person's

22  state citizenship," *Saenz*, 526 U.S. at 501, not where the person was convicted.  Second,

23  eligibility for a section 17(b) conviction is not based on a person's status as a California resident.

---

25  [14] When the imposition of sentence is suspended, the status of a person convicted of a
    section 17(b) wobbler offense charged as a felony is that of a "potential" felon.  *People v. Tran*
26  242 Cal.App.4th 877, 886 (2015).  Misdemeanor or felony sentencing is held in abeyance
    pending completion of terms and a successful 17(b) petition.  The same is not true of a person
27  convicted of a crime that is a straight felony, or a person who commits a wobbler offense but is
    sentenced to prison – even if the execution of the sentence is suspended.  *Id.* at 885.

28

California residents and non-residents are equally eligible for conviction.  Third, the more appropriate comparison for Linton is to individuals (whether residents or non-residents) whose California convictions are for straight felonies that are set aside under section 1203.4.[15]  Just as Linton is not eligible to possess firearms, neither are persons convicted of straight felonies with 1203.4 dismissals and set asides.  *See Sannmann v. Dept. of Justice*, 47 Cal.App.5th 676, 686 (2020) (quoting *People v. Frawley*, 82 Cal.App.4th 784, 797 (2000) ("persons granted relief under [section 1203.4] remain liable to prosecution under section 12021 for possession of any of the weapons proscribed by that section")).

## IV.  PLAINTIFFS' FOURTEENTH AMENDMENT PRIVILEGES OR IMMUNITIES CLAUSE CLAIM ALSO FAILS

The Privileges or Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of the United States[.]"  U.S. Const., amend. XIV, cl. 1.  The Clause protects "very few rights," including "the right to petition Congress, the right to vote in federal elections, the right to interstate travel or commerce, the right to enter federal lands, or the rights of a citizen while in custody of federal officers."  John E. Nowak, et al., *Treatise on Const. L.* § 14.3(b) (2d ed. 1987) (citation omitted).  It does not protect a right to keep and bear arms.  *McDonald*, 561 U.S. at 758 (citation omitted).

Constrained by the exclusion of the right to bear arms, Plaintiffs argue that the challenged statutes and alleged policy regarding out-of-state felony convictions deprive them of the right to travel.  Pls.' Mot. 23–25.  That argument cannot stand.  The Supreme Court held in *Saenz* that the right to travel under the Fourteenth Amendment involves "the right of the *newly arrived* citizen to the same privileges and immunities enjoyed by other citizens of the same state."  526 U.S. at 502 (emphasis added).  In contrast, here, Plaintiffs Stewart and Jones have each lived in California for at least thirty years.  Stewart Decl. ¶ 2; Jones Decl. ¶ 1.  Plaintiff Linton lacks standing because he left California, after more than twenty years in the state.  Linton Decl. ¶¶ 1, 10.  Thus, Plaintiffs do not come within the ambit of the Privileges or Immunities Clause.

---

[15] A copy of section 1203.4 is attached in the exhibit to this brief, at page 5.

22

Plaintiffs' Fourteenth Amendment claim also fails because, as discussed above, the challenged statutes do not make a distinction based on residency, let alone the length of residence. *See* section III *supra*. Perhaps that explains why Plaintiffs push their "policy" theory concerning recognition of the out-of-state felony set-aside orders. That, too, falls flat because the place of conviction does not represent the place of residence. Again, a California resident who commits and is convicted of a felony in another state that is later set aside or dismissed, will be in the same position as the Individual Plaintiffs here. Plaintiffs' comparison of themselves to persons convicted of misdemeanors under section 17(b) is inapt and closer instead to persons with straight felonies whose convictions have been set aside under section 1203.4. Just as the Individual Plaintiffs are not eligible to possess firearms, neither are persons convicted of straight felonies with 1203.4 set asides. *See Sannmann v*, 47 Cal.App.5th at 686; *Frawley*, 82 Cal.App.4th at 797.

Finally, Plaintiffs' claim fails because the challenged laws and "policy" do not present a barrier to interstate travel, nor require non-residents to obtain permission to enter California. *See Levanti v. Tippen*, 585 F. Supp. 499, 507 (S.D. Cal. 1984) ("every case invoking the right to travel has required the plaintiff to establish disparate treatment of outsiders which inhibits free passage across state boarders"). Any inconvenience to Plaintiffs, therefore, is incidental and justified in light of the state's compelling interests in public safety, crime prevention, and preventing gun violence. For these reasons, Plaintiff's right to travel claim is unavailing.

**V.   DEPUTY WILSON IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY**

The Eleventh Amendment generally bars suits against a state or state agency, whether the relief sought is money damages or an injunction. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Actions against state officials acting in their official capacities are considered suits against the state and are barred by the Eleventh Amendment. *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986). The Supreme Court recognized a limited exception in *Ex Parte Young*, 209 U.S. 123 (1908), where an official has a direct connection with enforcement. *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). "This connection must be fairly direct; a generalized

23

1  duty to enforce state law or general supervisory power over the persons responsible for enforcing

2  the challenged provision will not subject an official to suit." *Id.* (citations omitted).

3       The First Amended Complaint, as currently framed, alleges no such connection with respect

4  to any of the Defendants.  While that deficiency might be set aside with respect to the Attorney

5  General and Director of the Bureau of Firearms, there is no indication that Plaintiffs could allege,

6  and they have not demonstrated in their motion, any semblance of an enforcement connection

7  between Deputy Wilson and the challenged laws and alleged policy.  Plaintiffs claim that Deputy

8  Wilson "is responsible for formulation, issuance, and implementation of the policy or policies"

9  resulting in the firearms prohibition.  First Am. Compl. ¶ 14.  But they offer no legal authorities

10  or admissible evidence from which this Court can conclude that Deputy Wilson has a direct

11  connection with enforcement of the challenged statutes or alleged policy.  Plaintiff Linton's

12  statements about Deputy Wilson "den[ying] his request" when the Department's agents seized his

13  firearms is vague as to the nature of the request and inadmissible hearsay as to what Deputy

14  Wilson allegedly said.  *See* Linton Decl. ¶ 24.  The statements from Linton's attorney about what

15  Deputy Wilson supposedly said are also inadmissible hearsay.  *See* Decl. of A. Richards ¶ 5, Aug.

16  26, 2022, ECF No. 66-5.  Regardless, as an attorney interpreting the law, Deputy Wilson simply

17  provides legal counsel to the Bureau of Firearms.  There is no direct connection between Deputy

18  Wilson and enforcement of the laws or "policy" at issue here, and his participation in this action

19  is unnecessary.  *See, e.g.*, *Bolbol v. Brown*, 120 F. Supp. 3d 1010, 1019 (N.D. Cal. 2015).  Thus,

20  if the Court is inclined to grant Plaintiffs' motion to any extent, the motion nevertheless should be

21  denied as to Deputy Wilson based on Eleventh Amendment immunity.

22  **VI.   THE ENTITY PLAINTIFFS LACK STANDING**

23       As mentioned, the Entity Plaintiffs move on behalf of the Individual Plaintiffs, but offer no

24  evidence about their connection to Linton, Stewart, and Jones.  Associations have standing to sue

25  on behalf of their members "only if (a) their members would otherwise have standing to sue in

26  their own right; (b) the interests that the organizations seek to protect are germane to their

27  purpose; and (c) neither the claim asserted nor the relief requested requires the participation of

28  individual members in the lawsuit." *San Diego Cty. Gun Rights Comm'n v. Reno*, 98 F.3d 1121,

24

Defs.' Opp'n to Pls.' Mot. Summ. J. (3:18-cv-07653-JD)

1130–31 (9th Cir. 1996).  There being no proof that the Individual Plaintiffs are members of these

organizations, and thus no issue of material fact, the Entity Plaintiffs lack standing.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs'

motion.[16]


Dated:  September 26, 2022                    Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General



*/s/ Jerry T. Yen*

JERRY T. YEN
Deputy Attorney General
*Attorneys for Rob Bonta, in his official*
*capacity as Attorney General of California,*
*Blake Graham, in his official capacity as*
*Acting Director of the California*
*Department of Justice Bureau of Firearms,*
*and Robert D. Wilson, in his official*
*capacity as Deputy Attorney General*

---

[16] Defendants oppose Plaintiffs' motion for summary judgment, and have refrained from filing a cross-motion for summary judgment, mindful of the Court's admonition to avoid "duplicative" cross-motions.  Order re Stip., Oct. 10, 2019, ECF No. 29.  The Ninth Circuit has recognized that where there is no genuine issue of material fact, a cross-motion for summary judgment is unnecessary, because a court can grant summary judgment sua sponte.  *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003).  In other words, even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a "full and fair opportunity to ventilate the issues involved in the matter." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982).  Plaintiffs have had such an opportunity here. Thus, in addition to denying Plaintiffs' motion, Defendants respectfully request that the Court consider taking the additional step of entering summary judgment sua sponte against Plaintiffs.

25

# EXHIBIT

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 9. Special Firearm Rules Relating to Particular Persons (Refs & Annos)
          Chapter 2. Person Convicted of Specified Offense, Addicted to Narcotic, or Subject to Court Order (Refs & Annos)
            Article 1. Prohibitions on Firearm Access (Refs & Annos)

West's Ann.Cal.Penal Code § 29800

§ 29800. Specified convictions or outstanding warrants; narcotic addiction; restriction on firearm possession; punishment

Effective: January 1, 2021
Currentness

(a)(1) Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

(2) Any person who has two or more convictions for violating paragraph (2) of subdivision (a) of Section 417 and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

(3) Any person who has an outstanding warrant for any offense listed in this subdivision and who has knowledge of the outstanding warrant, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

(b) Notwithstanding subdivision (a), any person who has been convicted of a felony or of an offense enumerated in Section 23515, when that conviction results from certification by the juvenile court for prosecution as an adult in an adult court under Section 707 of the Welfare and Institutions Code, and who owns or has in possession or under custody or control any firearm is guilty of a felony.

(c) Subdivision (a) shall not apply to a conviction or warrant for a felony under the laws of the United States unless either of the following criteria, as applicable, is satisfied:

(1) Conviction of a like offense under California law can only result in imposition of felony punishment.

(2) The defendant was sentenced to a federal correctional facility for more than 30 days, or received a fine of more than one thousand dollars ($1,000), or received both punishments.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012. Amended by Stats.2017, c. 17 (A.B.103), § 44, eff. June 27, 2017; Stats.2020, c. 306 (S.B.723), § 1, eff. Jan. 1, 2021.)

**Editors' Notes**

### LAW REVISION COMMISSION COMMENTS

2010 Addition

Subdivision (a) of Section 29800 continues former Section 12021(a) without substantive change.

Subdivision (b) continues former Section 12021(b) without substantive change.

For an exemption from the prohibitions in subdivisions (a) and (b), see Section 29850 (justifiable violation of Section 29800, 29805, 29815, or 29820). For a notice requirement relating to those prohibitions, see Section 29810 (notice to person who is subject to Section 29800 or 29805).

Subdivision (c) continues former Section 12021(f) without substantive change.

See Section 16520 ("firearm"). [38 Cal.L.Rev.Comm. Reports 217 (2009)].

Notes of Decisions (518)

West's Ann. Cal. Penal Code § 29800, CA PENAL § 29800
Current with urgency legislation through Ch. 425 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.   **EXHIBIT_002**   2

West's Annotated California Codes
    Penal Code (Refs & Annos)
        Part 6. Control of Deadly Weapons (Refs & Annos)
            Title 4. Firearms (Refs & Annos)
                Division 10. Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Refs & Annos)
                    Chapter 1. Ammunition (Refs & Annos)
                        Article 2. Other Restrictions Relating to Ammunition (Refs & Annos)

West's Ann.Cal.Penal Code § 30305

§ 30305. Possession of ammunition by persons prohibited from owning
or possessing a firearm; penalties; burden of proof in proving exemption

Effective: January 1, 2012

Currentness

(a)(1) No person prohibited from owning or possessing a firearm under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, shall own, possess, or have under custody or control, any ammunition or reloaded ammunition.

(2) A violation of this subdivision is punishable by imprisonment in a county jail not to exceed one year or in the state prison, by a fine not to exceed one thousand dollars ($1,000), or by both the fine and imprisonment.

(b)(1) A person who is not prohibited by subdivision (a) from owning, possessing, or having under the person's custody or control, any ammunition or reloaded ammunition, but who is enjoined from engaging in activity pursuant to an injunction issued pursuant to Section 3479 of the Civil Code against that person as a member of a criminal street gang, as defined in Section 186.22, may not own, possess, or have under the person's custody or control, any ammunition or reloaded ammunition.

(2) A violation of this subdivision is a misdemeanor.

(c) A violation of subdivision (a) or (b) is justifiable where all of the following conditions are met:

(1) The person found the ammunition or reloaded ammunition or took the ammunition or reloaded ammunition from a person who was committing a crime against the person who found or took the ammunition or reloaded ammunition.

(2) The person possessed the ammunition or reloaded ammunition no longer than was necessary to deliver or transport the ammunition or reloaded ammunition to a law enforcement agency for that agency's disposition according to law.

(3) The person is prohibited from possessing any ammunition or reloaded ammunition solely because that person is prohibited from owning or possessing a firearm only by virtue of Chapter 2 (commencing with Section 29800) of Division 9 or ammunition or reloaded ammunition because of subdivision (b).

(d) Upon the trial for violating subdivision (a) or (b), the trier of fact shall determine whether the defendant is subject to the exemption created by subdivision (c). The defendant has the burden of proving by a preponderance of the evidence that the defendant is subject to the exemption provided by subdivision (c).

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012.)

**Editors' Notes**

**LAW REVISION COMMISSION COMMENTS**

2010 Addition

Subdivision (a) of Section 30305 continues former Section 12316(b)(1) & (3) without substantive change.

Subdivision (b) continues former Section 12316(b)(4)-(5) without substantive change.

Subdivision (c) continues former Section 12316(d)(1) without substantive change.

Subdivision (d) continues former Section 12316(d)(2)-(3) without substantive change.

For limitations on the effect of this article, see Sections 30330 (effect of article on member of military, police agency, forensic laboratory, or holder of permit for destructive device), 30335 (effect of article on permanently deactivated ammunition), 30340 (effect of article on ammunition manufactured under contract approved by government agency).

See Sections 16150 ("ammunition"), 16520 ("firearm"). [38 Cal.L.Rev.Comm. Reports 217 (2009)].

Notes of Decisions (25)

West's Ann. Cal. Penal Code § 30305, CA PENAL § 30305
Current with urgency legislation through Ch. 425 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Prior Version Held Unconstitutional as Applied by  People v. Arata,  Cal.App. 3 Dist.,  May 30, 2007

🚩 KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 2. Of Criminal Procedure
      Title 8. Of Judgment and Execution
        Chapter 1. The Judgment (Refs & Annos)

West's Ann.Cal.Penal Code § 1203.4

§ 1203.4. Fulfillment of conditions of probation or discharge prior to termination; change of plea or vacation of verdict; dismissal and release from penalties and disabilities; exceptions; pardon

Effective: January 1, 2022

Currentness

(a)(1) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if they are not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw their plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if they have been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, the defendant shall thereafter be released from all penalties and disabilities resulting from the offense of which they have been convicted, except as provided in Section 13555 of the Vehicle Code. The probationer shall be informed, in their probation papers, of this right and privilege and the right, if any, to petition for a certificate of rehabilitation and pardon. The probationer may make the application and change of plea in person or by attorney, or by the probation officer authorized in writing. However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve them of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery Commission.

(2) Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have custody or control of any firearm or to prevent conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6.

(3) Dismissal of an accusation or information underlying a conviction pursuant to this section does not permit a person prohibited from holding public office as a result of that conviction to hold public office.

(4) Dismissal of an accusation or information pursuant to this section does not release the defendant from the terms and conditions of any unexpired criminal protective order that has been issued by the court pursuant to paragraph (1) of subdivision

(i) of Section 136.2, subdivision (j) of Section 273.5, subdivision (l) of Section 368, or subdivision (k) of Section 646.9. These protective orders shall remain in full effect until expiration or until any further order by the court modifying or terminating the order, despite the dismissal of the underlying accusation or information.

(5) This subdivision shall apply to all applications for relief under this section which are filed on or after November 23, 1970.

(b) Subdivision (a) of this section does not apply to any misdemeanor that is within the provisions of Section 42002.1 of the Vehicle Code, to any violation of subdivision (c) of Section 286, Section 288, subdivision (c) of Section 287 or of former Section 288a, Section 288.5, subdivision (j) of Section 289, Section 311.1, 311.2, 311.3, or 311.11, or any felony conviction pursuant to subdivision (d) of Section 261.5, or to any infraction.

(c)(1) Except as provided in paragraph (2), subdivision (a) does not apply to a person who receives a notice to appear or is otherwise charged with a violation of an offense described in subdivisions (a) to (e), inclusive, of Section 12810 of the Vehicle Code.

(2) If a defendant who was convicted of a violation listed in paragraph (1) petitions the court, the court in its discretion and in the interests of justice, may order the relief provided pursuant to subdivision (a) to that defendant.

(d) A person who petitions for a change of plea or setting aside of a verdict under this section may be required to reimburse the court for the actual costs of services rendered, whether or not the petition is granted and the records are sealed or expunged, at a rate to be determined by the court not to exceed one hundred fifty dollars ($150), and to reimburse the county for the actual costs of services rendered, whether or not the petition is granted and the records are sealed or expunged, at a rate to be determined by the county board of supervisors not to exceed one hundred fifty dollars ($150), and to reimburse any city for the actual costs of services rendered, whether or not the petition is granted and the records are sealed or expunged, at a rate to be determined by the city council not to exceed one hundred fifty dollars ($150). Ability to make this reimbursement shall be determined by the court using the standards set forth in paragraph (2) of subdivision (g) of Section 987.8 and shall not be a prerequisite to a person's eligibility under this section. The court may order reimbursement in any case in which the petitioner appears to have the ability to pay, without undue hardship, all or any portion of the costs for services established pursuant to this subdivision.

(e)(1) Relief shall not be granted under this section unless the prosecuting attorney has been given 15 days' notice of the petition for relief. The probation officer shall notify the prosecuting attorney when a petition is filed, pursuant to this section.

(2) It shall be presumed that the prosecuting attorney has received notice if proof of service is filed with the court.

(f) If, after receiving notice pursuant to subdivision (e), the prosecuting attorney fails to appear and object to a petition for dismissal, the prosecuting attorney may not move to set aside or otherwise appeal the grant of that petition.

(g) Notwithstanding the above provisions or any other provision of law, the Governor shall have the right to pardon a person convicted of a violation of subdivision (c) of Section 286, Section 288, subdivision (c) of Section 287 or of former Section 288a, Section 288.5, or subdivision (j) of Section 289, if there are extraordinary circumstances.

**Credits**

(Added by Stats.1935, c. 604, p. 1709, § 5. Amended by Stats.1941, c. 1112, p. 2815, § 1; Stats.1951, c. 183, p. 434, § 1; Stats.1961, c. 1735, p. 3744, § 1; Stats.1967, c. 1271, p. 3076, § 1; Stats.1970, c. 539, p. 1035, § 1; Stats.1971, c. 333, p. 667, § 1; Stats.1976, c. 434, p. 1110, § 1; Stats.1978, c. 911, p. 2870, § 1; Stats.1979, c. 199, p. 443, § 6; Stats.1983, c. 1118, § 1; Stats.1985, c. 1472, § 1; Stats.1989, c. 917, § 11; Stats.1994, c. 882 (A.B.1327), § 1; Stats.1997, c. 61 (A.B.729), § 1; Stats.2000, c. 226 (A.B.2320), § 1, eff. Aug. 28, 2000; Stats.2003, c. 49 (A.B.580), § 1; Stats.2005, c. 704 (A.B.439), § 3; Stats.2005, c. 705 (S.B.67), § 5, eff. Oct. 7, 2005; Stats.2007, c. 161 (A.B.645), § 1; Stats.2008, c. 94 (A.B.2092), § 1; Stats.2009, c. 606 (S.B.676), § 7; Stats.2010, c. 328 (S.B.1330), § 166; Stats.2010, c. 178 (S.B.1115), § 76, operative Jan. 1, 2012; Stats.2011, c. 304 (S.B.428), § 9; Stats.2011, c. 285 (A.B.1402), § 17; Stats.2013, c. 143 (A.B.20), § 2; Stats.2018, c. 423 (S.B.1494), § 96, eff. Jan. 1, 2019; Stats.2021, c. 209 (A.B.1281), § 1, eff. Jan. 1, 2022.)

**Editors' Notes**

### LAW REVISION COMMISSION COMMENTS

2010 Amendment

Subdivision (a) of Section 1203.4 is amended to reflect nonsubstantive reorganization of the statutes governing control of deadly weapons. [38 Cal.L.Rev.Comm. Reports 217 (2009)].

2011 Amendment

Subdivisions (a) and (b) of Section 1203.4 (as it reads in 2010 Cal. Stat. ch. 178, § 76) are amended to incorporate language that was chaptered out due to a conflict between two bills that amended the section in 2010. See SB 1115 (Committee on Public Safety), 2010 Cal. Stat. ch. 178, §§ 76, 108; SB 1330 (Committee on Judiciary), 2010 Cal. Stat. ch. 328, §§ 166, 266; Gov't Code § 9605 (specifying how to resolve conflict between two bills that amend same section). [41 Cal.L.Rev.Comm. Reports 135 (2011)].

### OFFICIAL FORMS

#### 2015 Main Volume

<Mandatory and optional Forms adopted and approved by the Judicial Council are set out in West's California Judicial Council Forms Pamphlet.>

Notes of Decisions (298)

West's Ann. Cal. Penal Code § 1203.4, CA PENAL § 1203.4
Current with urgency legislation through Ch. 425 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.