George M. Lee (SBN 172982)
    gml@seilerepstein.com
**SEILER EPSTEIN LLP**
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:   (415) 979-0511

Attorneys for Plaintiffs
CHAD LINTON, PAUL MCKINLEY STEWART,
KENDALL JONES, FPC ACTION FOUNDATION,
FIREARMS POLICY COALITION,
SECOND AMENDMENT FOUNDATION,
THE CALGUNS FOUNDATION and MADISON
SOCIETY FOUNDATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD LINTON, et al., | Case No. 3:18-cv-07653-JD |
| Plaintiffs, | **PLAINTIFFS' BRIEF IN RESPONSE TO COURT QUESTIONS [ECF NO. 68]** |
| vs. | Hearing: April 25, 2023 |
| ROB BONTA, in his official capacity as Attorney General of California, et al., | Time: 10:30 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |
| Defendants. | |

**SEILER EPSTEIN LLP**

SEILER EPSTEIN LLP

<u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................1

PLAINTIFFS' RESPONSES TO THE COURT'S QUESTIONS ..........................................................1

1. Prior Convictions ...............................................................................................................1

   a.   Do any elements of the individual plaintiffs' offenses of conviction involve
violence or dangerous weapons under state or federal law? ................................1

   b.   Under what statutes did the Washington, Arizona, and Texas courts dismiss,
vacate, or set aside the individual plaintiffs' convictions? ...................................1

   c.   Under what statutes did the Washington, Arizona, and Texas courts
restore the individual plaintiffs' rights to possess firearms?................................2

2. Standing .............................................................................................................................2

   a.   Do any of the individual plaintiffs challenge Cal. Penal Code § 30305, and if so,
what is the basis of standing for the challenge? .................................................2

   b.   Do plaintiffs Linton and Stewart, who are not California residents, have standing
for any claim in the complaint?...........................................................................3

   c.   Does plaintiff Jones have standing to challenge Cal. Penal Code § 29800?........4

   d.   Do the organizational plaintiffs have standing when there is no evidence that any
individual plaintiff is a member? .........................................................................4

3. Second Amendment............................................................................................................6

   a.   Prohibitions on the possession of firearms by felons are "presumptively lawful."
*District of Columbia v. Heller*, 554 U.S. 570, 626-27 n.6 (2008). Courts have
denied as-applied challenges under the Second Amendment to laws that prohibit
felons from possessing firearms. *See U.S. v. Vongxay*, 594 F.3d 1111, 1115-18
(9th Cir. 2010); *Van Der Hule v. Holder*, 759 F.3d 1043, 1050-51 (9th Cir. 2014);
*United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016). Did *N.Y. State Rifle
& Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), abrogate or otherwise
disapprove *Vongxay* and similar cases? .............................................................6

   b.   Federal courts have concluded that "felons are categorically different from the
individuals who have a fundamental right to bear arms." *Vongxay*, 594 F.3d at 1115;
*see also Hamilton v. Pallozzi*, 848 F.3d 614, 636 (4th Cir. 2017) ("[C]onviction of
a felony necessarily removes one from the class of 'law-abiding, responsible citizens'
for the purposes of the Second Amendment."). Does this principle apply to the
individual plaintiffs, and why or why not? .........................................................8

c.  Is expert evidence necessary to determine whether prohibitions on the possession of firearms by felons similarly situated to the individual plaintiffs are "consistent with the Nation's historical tradition of firearm regulation"? *Bruen*, 142 S.Ct. at 2130; *see also Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) ("Felonies encompass a wide variety of non-violent offenses, and we see no reason to think that the Court meant 'dangerous individuals' when it used the word felon."). If so, what type of expert would be appropriate, and how should the Court weigh and evaluate the expert opinions? ...................................................................................................10

d.  Should the case be stayed pending a decision in *Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023)? ................................................................12

4. Full Faith and Credit Clause ............................................................................13

a.  May violations of the Full Faith and Credit Clause and its enabling statute be raised in an action against a non-judicial state actor under 42 U.S.C. § 1983? *See Adar v. Smith*, 639 F.3d 146, 154 (5th Cir. 2011) ("[S]ince the duty of affording full faith and credit *to a judgment* falls on courts, it is incoherent to speak of vindicating full faith and credit rights against non-judicial state actors.") (en banc) (emphasis in original)...............................................................................................13

b.  If convicted felons are outside the scope of the Second Amendment, is California bound by another state's statutes or judicial orders when determining whether an individual is a felon within the meaning of Cal. Penal Code § 29800? .............................17

PLAINTIFFS' BRIEF IN RESPONSE TO COURT QUESTIONS [ECF NO. 68] | CASE NO. 3:18-cv-07653-JD

**SEILER EPSTEIN LLP**

1

TABLE OF AUTHORITIES

2 **Cases**

3 *Adar v. Smith*, 639 F.3d 146 (5th Cir. 2011) ...................................................................13, 14, 15, 16

4 *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016)........................................8, 9, 11, 12

5 *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014) ...................................................................15

6 *District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................................6, 7, 8

7

8 *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020),
    *on reh'g en banc*, 19 F.4th 1087 (9th Cir. 2021),
9    *and judgment vacated, remanded*, 142 S.Ct. 2895 (Jun. 30, 2022).................................12

10 *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132 (9th Cir. 2001) ............5

11 *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007) ...................................................13

12 *Finstuen v. Edmondson*, 497 F. Supp.2d 1295 (W.D. Okla. 2006) ...............................13, 17

13 *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir. 2020) ...........................................9, 11, 12

14 *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375 (1982) ...................................4

15 *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444 (1989) ..................16

16

17 *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*,
    484 U.S. 49, 108 S.Ct. 376 (1987)...................................................................4

18 *Hamilton v. Pallozzi*, 848 F.3d 614 (4th Cir. 2017) ...................................................8, 9

19

20 *Henry v. Himes*, 14 F. Supp.3d 1036 (S.D. Ohio 2014),
    *rev'd sub nom. DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014),
21    *rev'd sub nom. Obergefell v. Hodges*, 576 U.S. 644, 135 S.Ct. 2584 (2015) ...........................15, 16

22 *Jackson v. City of San Francisco*, 746 F.3d 953 (9th Cir. 2014)...................................................3

23 *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019)...................................................9, 10, 11, 12

24 *Lamb Enters., Inc. v. Kiroff*, 549 F.2d 1052 (6th Cir. 1977) ...................................................16

25 *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367 (2020)..........4

26 *Luis v. United States*, 578 U.S. 5 (2016) ...................................................................3

27 *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ...................................................................7

28 *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019) ...................................................................10

SEILER EPSTEIN LLP

iv

**SEILER EPSTEIN LLP**

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978) ...................................16

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ........................................................10

*New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp.3d 143 (N.D.N.Y. 2018), *in subsequent proceedings, rev'd sub nom. New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022) ........................................................11

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022).................. *passim*

*Obergefell v. Hodges*, 576 U.S. 644, 135 S.Ct. 2584 (2015) ............................................15

*Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023) ...........................................12

*Rosin v. Monken*, 599 F.3d 574 (7th Cir. 2010) ...........................................................16

*Saenz v. Roe*, 526 U.S. 499, 119 S.Ct. 1518 (1999) .......................................................4

*State v. Roundtree*, 395 Wis.2d 94, 952 N.W.2d 765 (Wis. 2021)...............................11, 12

*State v. Weber*, 163 Ohio St.3d 125, 168 N.E.3d 468 (Ohio 2020)...............................11, 12

*Thompson v. Thompson*, 484 U.S. 174 (1988) ..........................................................14

*Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151 (9th Cir. 2015) .........................5

*U.S. v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010)....................................................6, 7, 8

*United Farm Workers v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249 (9th Cir. 1982)...............16

*United States v. Carrero*, No. 2:22-cr-30, 2022 WL 9348792, (D. Utah Oct. 14, 2022) ....................8

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010)...................................................9

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013)..................................................7

*United States v. Jimenez-Shilon*, 34 F.4th 1042 (11th Cir. 2022) ........................................8

*United States v. Moore*, 666 F.3d 313 (4th Cir. 2012) ...................................................9

*United States v. Phillips*, 827 F.3d 1171 (9th Cir. 2016)...............................3, 6, 7, 10

*United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405 (1973) ............................................4

*United States v. Torres*, 789 F.App'x 655 (9th Cir. 2020) ...............................................2

*United States v. Younger*, 398 F.3d 1179 (9th Cir. 2005) ............................................6, 8

*Van Der Hule v. Holder*, 759 F.3d 1043 (9th Cir. 2014)..............................................6, 7

*Wayne v. Vill. of Sebring*, 36 F.3d 517 (6th Cir.1994) ..................................................................16

*White v. Thomas*, 660 F.2d 680 (5th Cir. 1981) ......................................................................14


**Constitutional Provisions**

U.S. Const., Amend. II ................................................................................................. *passim*

U.S. Const., Amend. XIV ....................................................................................................4

U.S. Const., Art. I, § 1 ................................................................................................. *passim*

U.S. Const., Art. IV § 2 ......................................................................................................4


**Statutes**

**United States Code**

18 U.S.C. § 921(a)(20)(B) ....................................................................................................1

18 U.S.C. § 922(g) ........................................................................................................6, 12

28 U.S.C. § 1738 ..................................................................................................13, 17, 18

42 U.S.C. § 1983 ............................................................................................13, 14, 15, 16

**Arizona Statutes**

Ariz. Rev. Stat. § 13-1506 ....................................................................................................1

Ariz. Rev. Stat. § 13-1802 ....................................................................................................1

Ariz. Rev. Stat. § 13-302 (former) ......................................................................................1

Ariz. Rev. Stat. § 13-661 (former) ......................................................................................1

Ariz. Rev. Stat. § 13-704 ....................................................................................................1

Ariz. Rev. Stat. § 13-905 .................................................................................................1, 2

Ariz. Rev. Stat. § 13-907 .................................................................................................1, 2

Ariz. Rev. Stat. § 13-908 ....................................................................................................2

Ariz. Rev. Stat. § 13-910 .................................................................................................1, 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SEILER EPSTEIN LLP**

**SEILER EPSTEIN LLP**

**California Statutes**

Cal. Pen. Code § 17 ........................................................................................................17

Cal. Pen. Code § 29800 ...................................................................................2, 4, 17, 18

Cal. Pen. Code § 30305 ..............................................................................................2, 3

Cal. Pen. Code § 30312 ...................................................................................................3

Cal. Pen. Code § 30370 ...................................................................................................3

**Texas Statutes**

Tex. Code Crim. Pro. art. 42.12 § 20(a) (former)..........................................................2

Tex. Code Crim. Pro. art. 42A § 701(f)..........................................................................2

Tex. Code Crim. Pro. art. 42A.111 .................................................................................2

Tex. Pen. Code § 32.31 ...................................................................................................1

Tex. Pen. Code § 46.04 ...................................................................................................2

**Washinton Statutes**

Rev. C. Wash. § 46.61.024 .............................................................................................1

Rev. C. Wash. § 46.61.502 .............................................................................................1

Rev. C. Wash. § 9.41.040(4) ..........................................................................................2

Rev. C. Wash. § 9.94A.640 ............................................................................................1

**Rules**

Fed. R. Civ. Pro. 56 ........................................................................................................5

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) .......................................................................16

Thomas M. Joraanstad, *Half Faith and Credit?: The Fifth Circuit Upholds Louisiana's Refusal to Issue a Revised Birth Certificate*, 19 Wm. & Mary J. of Women & L. 421 (2013).......16

SEILER EPSTEIN LLP

**INTRODUCTION**

Plaintiffs Chad Linton, et al. hereby submit this brief in response to the questions presented by the Court's Order re Hearing [ECF No. 68], and respond to each of the questions presented therein as follows.

**PLAINTIFFS' RESPONSES TO THE COURT'S QUESTIONS**

**1. Prior Convictions**

    **a. Do any elements of the individual plaintiffs' offenses of conviction involve violence or dangerous weapons under state or federal law?**

No.

Plaintiff Linton's convictions for attempting to elude a police vehicle, Rev. C. Wash. § 46.61.024, and driving while intoxicated, § 46.61.502, did not involve any element of violence. Moreover, as noted, the Washington State Court expressly found that Mr. Linton's underlying offense was <u>not</u> a violent offense under Washington State law. (Linton Exh. A at p. 2). *See*, Rev. C. Wash. § 9.94A.640(2)(b).

Plaintiff Stewart's convictions for first degree burglary, formerly Ariz. Rev. Stat. § 13-302 (now codified at A.R.S. § 13-1506), and theft, formerly A.R.S. § 13-661 (now codified at A.R.S. § 13-1802) do not involve any elements of violence. Moreover, plaintiff Stewart's offense was not considered a "dangerous offense" under A.R.S. § 13-704. (He would not have been permitted to have his firearm rights restored for a "dangerous offense" pursuant to sections 13-905(N), 13-907(C), or 13-910).

Plaintiff Jones's conviction for credit card abuse did not involve any element of violence. See, Tex. Pen. Code § 32.31.

None of these individual plaintiffs' offenses involved weapons, and none of the plaintiffs is prohibited from owning firearms under federal law. 18 U.S.C. § 921(a)(20)(B).

    **b. Under what statutes did the Washington, Arizona, and Texas courts dismiss, vacate, or set aside the individual plaintiffs' convictions?**

Plaintiff Linton's conviction was vacated and set aside (and the indictment dismissed) pursuant to Rev. C. Wash. § 9.94A.640. (See, Linton Decl., Ex. B).

1

Plaintiff Stewart's conviction was set aside pursuant to Ariz. Rev. Stat. § 13-905(D).

Plaintiff Jones's conviction was set aside and dismissed upon completion of community supervision, pursuant to former Tex. Code Crim. Pro., art. 42.12 § 20(a) (now codified at art. 42A § 701(f)).

### c. Under what statutes did the Washington, Arizona, and Texas courts restore the individual plaintiffs' rights to possess firearms?

Plaintiff Linton's right to possess firearms was restored to him in the State of Washington pursuant to Rev. C. Wash. § 9.41.040(4). (See, Linton Decl., Ex. B).

Plaintiff Stewart's right to possess firearms was automatically restored to him by the set-aside of his conviction, pursuant to Ariz. Rev. Stat. § 13-905(M) and § 13-907, and, upon the petition he made pursuant to Ariz. Rev. Stat. § 13-908, pursuant to Ariz. Rev. Stat. § 13-910 (See Order of Aug. 11, 2016, Stewart Exh. A).

Plaintiff Jones's right to possess firearms in Texas was restored to him upon the set aside and dismissal of his conviction, under former Tex. Code Crim. Pro., art. 42.12 § 20 (now codified at art. 42A § 701(f)). *See also*, Tex. Code Crim. Pro., art. 42A.111(c) ("a dismissal and discharge under this article may not be considered a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense."). Further, Jones's right to possess firearms in Texas was also automatically restored to him after five years, by virtue of Tex. Pen. Code § 46.04(a) (prohibiting firearm possession within five years from the date of a felony conviction).

## 2. Standing

### a. Do any of the individual plaintiffs challenge Cal. Penal Code § 30305, and if so, what is the basis of standing for the challenge?

This case does not present a facial challenge to § 30305, but is an as-applied challenge to the State's policies and practices that interpret both § 29800 *and* 30305 as conclusively prohibiting them from possessing arms or ammunition. Now that *Bruen* expressly requires an historical analysis such as the one presented here, plaintiffs' as-applied relief is not foreclosed. *See United States v. Torres*, 789 F.App'x 655, 657 (9th Cir. 2020) ("the door appears to remain ajar on whether someone can pursue an as-applied Second Amendment challenge in circumstances where the underlying felony is

2

SEILER EPSTEIN LLP

so minor or regulatory in nature and has no analogue in the Founding era.") (Lee, J., concurring). *See also*, *United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016) ("there are good reasons to be skeptical of the constitutional correctness of categorical, lifetime bans on firearm possession by *all* felons.")

To the Court's query, plaintiffs do have standing to challenge the DOJ's policies interpreting § 30305 because enjoining the defendants' policies and practices preventing plaintiffs from owning arms would be meaningless without the concomitant right to own and possess ammunition as well. *See*, *Jackson v. City of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("The Second Amendment protects 'arms,' 'weapons,' and 'firearms'; it does not explicitly protect ammunition. Nevertheless, without bullets, the right to bear arms would be meaningless"). Constitutional rights "implicitly protect those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment).

In California, all ammunition purchases must be done (with certain exceptions) through a licensed ammunition dealer. Cal. Pen. Code § 30312(a). And all such transactions must be electronically approved by the Department of Justice, after conducting a background check to ensure that the person is eligible to possess ammunition. Pen. Code § 30370(b). Until their right to possess firearms is restored to them in the State of California, plaintiffs will also be prohibited from purchasing or possessing ammunition as well. Accordingly, plaintiffs seek to enjoin the enforcement of section 30305, as applied to them.

**b. Do plaintiffs Linton and Stewart, who are not California residents, have standing for any claim in the complaint?**

Yes, plaintiffs Linton and Stewart have standing for the Second Amendment and Full Faith and Credit Clause claims because they both still have property interests in the state. Mr. Linton continues to visit a cabin in a remote area and wishes to have access to a firearm to defend himself. (Linton Decl., ¶¶ 4, 25.) He is prevented from doing so due to the defendants' policies and practices. Mr. Stewart has temporarily relocated to Arizona, but has purchased property in California, with an intention to move back and build a house on the property permanently. (Stewart Decl., ¶ 2.) Both individuals, therefore, continue to maintain residential interests in California.

And even if they were to be regarded as residents of other states, aside from Second

SEILER EPSTEIN LLP

Amendment concerns, defendants' policies also violate their right to travel under the Privileges and Immunities Clause, Const. Art. IV § 2 (the Comity Clause), because defendants' policies treat them differently from a California resident when they are temporarily present in the state, which is a "second component" claim under *Saenz v. Roe*, 526 U.S. 499, 501, 119 S.Ct. 1518 (1999).

All of the individual plaintiffs have standing to challenge defendants' policies that violate their right to travel under the Fourteenth Amendment (a "third component" claim under *Saenz*.)

### c. Does plaintiff Jones have standing to challenge Cal. Penal Code § 29800?

Plaintiff Jones would have standing to challenge Pen. Code § 29800 (prohibition on possession of firearms by person convicted of felony), but he is not asserting that claim in this case.

### d. Do the organizational plaintiffs have standing when there is no evidence that any individual plaintiff is a member?

While the organizations do have standing, it is unnecessary for the Court to address the issue, because the individual plaintiffs have standing to assert all claims before the Court, and the Court's jurisdiction therefore is secure regardless of whether the organizations have standing. *See, e.g.*, *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 402 n.22 (1982). Indeed, because the individual plaintiffs have standing, the Court there is no warrant for the Court to address the organizations' standing. *See Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 2379 n.6 (2020). Standing is ordinarily a threshold matter, necessary to determine whether the court has jurisdiction. And thus, allegations of injury are ordinarily sufficient to invoke the jurisdiction of the court, with no specific proof being necessary to determine whether a case should be dismissed. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 65, 108 S.Ct. 376, 385 (1987). Of course, an allegation of standing may be challenged—ordinarily by *the defendant* on a motion for summary judgment. *Id.*, 484 U.S. at 66 (citing *United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2417 (1973)). If, upon such a motion, the defense shows that the standing allegations are a sham, then the plaintiff must offer evidence to support its allegations. *Id*. If the defendant fails to show any genuine issue of fact thereon, then the case proceeds to trial on the merits, and the plaintiff must prove the standing allegations in order to prevail. *Id*.

Here, plaintiffs are the moving party in a motion for summary judgment. Defendants have

4

SEILER EPSTEIN LLP

**SEILER EPSTEIN LLP**

1  not raised a *genuine* dispute of fact here, but have only raised the question of the organizational

2  plaintiffs' standing in their opposition to the motion (Opp. at 24:22—25:2), and they have not moved

3  for judgment in their own favor. To establish a *genuine* dispute of a material fact, an opposing party

4  must support the assertion by either citing to particular materials in the record that show such a

5  dispute (Rule 56(c)(1)(A)), or show that the moving party cannot produce admissible evidence to

6  support its factual position (Rule 56(c)(1)(B)). Defendants' opposition fails to raise a genuine

7  dispute of fact by this standard.

8  　　　　If this Court determines that the organizational plaintiffs have failed to meet their burden to

9  show entitlement to judgment in their favor, on plaintiffs' motion, then the matter would proceed to

10  trial, where the membership of the individual plaintiffs within the organizational plaintiffs would

11  easily be shown at trial. However, there is another path. Rule 56(e) provides that if a party fails to

12  properly support an assertion of fact or fails to properly address another party's assertion of fact as

13  required by Rule 56(c), the court may:

14  　　　　(1) give an opportunity to properly support or address the fact; or

15  　　　　(2) consider the fact undisputed for purposes of the motion[.]

16  　　　　Here, defendants do not *really* dispute the membership of the individual plaintiffs within the

17  organizational plaintiffs, but have only raised the question in the context of an opposition to a

18  motion for summary judgment. Under Rule 56(e), this Court should allow a supplementary

19  declaration to show the individual plaintiffs' membership within the organizational plaintiffs. And if

20  this court were to consider defendants' opposition to be, in effect, a cross-motion for summary

21  judgment on this issue, then the plaintiffs should be afforded the opportunity to oppose that motion

22  with evidence of membership under Rule 56, with the burden on defendants to show an absence of

23  material fact on this point. "[W]hen simultaneous cross-motions for summary judgment on the same

24  claim are before the court, the court must consider the appropriate evidentiary material identified and

25  submitted in support of both motions, and in opposition to both motions, before ruling on each of

26  them." *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing

27  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

28  　　　　Alternatively, plaintiffs would request leave to file supplementary declaration pursuant to

N.D. Local Rule 7-3(d) to prove the issue of the individual plaintiffs' membership within the organizations.

**3. Second Amendment**

> **a. Prohibitions on the possession of firearms by felons are "presumptively lawful."** ***District of Columbia v. Heller***, **554 U.S. 570, 626-27 n.6 (2008). Courts have denied as-applied challenges under the Second Amendment to laws that prohibit felons from possessing firearms.** ***See U.S. v. Vongxay***, **594 F.3d 1111, 1115-18 (9th Cir. 2010);** ***Van Der Hule v. Holder***, **759 F.3d 1043, 1050-51 (9th Cir. 2014);** ***United States v. Phillips***, **827 F.3d 1171, 1174 (9th Cir. 2016). Did** ***N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen***, **142 S.Ct. 2111 (2022), abrogate or otherwise disapprove** ***Vongxay*** **and similar cases?**

Yes. Following *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) and the other cases contained in the Court's question are not controlling on the issue of whether the continued enforcement of defendants' policies and practices is constitutional.

Under *Bruen*, all Second Amendment challenges must be analyzed the same way. First, courts must determine whether the plain text of the Second Amendment covers the conduct the statute seeks to prohibit. *Bruen*, 142 S. Ct. at 2126. If it does (and here it does, since the individual plaintiffs seek to possess firearms and ammunition, and defendants' policies prevent them from doing so), then the law preventing that activity is presumptively *unconstitutional*. *Id.* Defendants' policies and practices can only be saved one way: the State must come forward with evidence establishing that the challenged policy and practice (i.e., their interpretation of the law) "is consistent with this Nation's historical tradition of firearm regulation." *Id*.

*Vongxay* did not perform this analysis, so it was thus abrogated by *Bruen*. And *Vongxay*'s analysis lends the defendants no support following *Bruen*. Its analysis largely turned on a pre- *Heller* decision finding that 18 U.S.C. § 922(g)(1) was constitutional under the erroneous belief that the Second Amendment conferred no individual right to bear arms. *See Vongxay*, 594 F.3d at 1116 (citing *United States v. Younger*, 398 F.3d 1179, 1192 (9th Cir. 2005)). The Ninth Circuit noted that the *Younger* rationale was incorrect under *Heller*, but claimed the decision was nevertheless consistent with *Heller* because *Heller* identified bans on felon possession as one type of regulation

6

which was "presumptively lawful" under the Second Amendment. *Vongxay*, 594 F.3d at 116; *see also Heller*, 554 U.S. at 627 n.26. But under *Bruen* we now know that *Heller* was not giving courts a free pass to find certain laws were *per se* compatible with the Second Amendment, but rather noting at most that it expected, *once the proper analysis* was conducted, courts would find the enumerated regulations to be compatible with history to some extent. Courts still *must do the historical analysis*, and since *Vongxay* did not, it does not control this case. *See* 594 F.3d at 1118 (noting the historical debate and "recogniz[ing] . . . that the historical question has not been definitively resolved").

*United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016) simply followed the holding of *Vongxay* ("Our decision in *Vongxay* forecloses Phillips's argument, and we accordingly affirm the district court's denial of Phillips's motion to dismiss the indictment.") However, as noted, the panel did express skepticism of the constitutional correctness of categorical, lifetime bans on firearm possession by *all* felons. *Id*.

In *Van Der Hule v. Holder*, 759 F.3d 1043, 1050-51 (9th Cir. 2014), the Ninth Circuit panel applied intermediate scrutiny, expressly citing to *United States v. Chovan*, 735 F.3d 1127, 1137-38 (9th Cir. 2013), thereby impliedly adopting the two-step approach of that case. Without analysis, the panel rejected the plaintiff's Second Amendment claim under *Chovan* and *Vongxay*. 735 at 1051. But *Bruen* has now expressly rejected the interest-balancing tests such as the one formerly used by the Ninth Circuit, as reflected in *Chovan*. *Bruen*, 142 S.Ct. at 2118 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context.") Accordingly, both *Chovan*—and the court's Second Amendment analysis in *Van Der Hule*—have now been abrogated.

And now, after *Bruen*, it is clear that *Heller*'s "presumptively lawful" language did not have any doctrinal significance. Rather, when *Heller* said certain types of laws were presumptively lawful, it simply meant that it presumed that once the proper analysis was done on those laws, that they could be found to be constitutional to some extent. But this does not affect the analysis when the issue actually comes before a court. This can be seen from *Bruen* itself, which when evaluating New York's sensitive places argument, another type of law on *Heller*'s presumptively-constitutional list, the Court applied the *Bruen* methodology without affording the government any presumption of constitutionality. To the contrary, the Court looked to historical regulations to

SEILER EPSTEIN LLP

1   define the scope of the Second Amendment just as it prescribes for all Second Amendment cases.

2          Further, as plaintiffs have argued, "presumptively lawful" does not mean "conclusively

3   lawful." After all, even if such a presumption existed, it is necessarily a rebuttable one (or else, the

4   claim would simply be foreclosed, not beginning with any presumption at all).

5          **b.   Federal courts have concluded that "felons are categorically different from the**
           **individuals who have a fundamental right to bear arms." _Vongxay_, 594 F.3d at**
6          **1115; _see also Hamilton v. Pallozzi_, 848 F.3d 614, 636 (4th Cir. 2017) ("[C]onviction**
           **of a felony necessarily removes one from the class of 'law-abiding, responsible**
7          **citizens' for the purposes of the Second Amendment."). Does this principle apply to**
           **the individual plaintiffs, and why or why not?**
8

9          No. Firstly, even accepting the premise that felons are "categorically different," the

10  individual plaintiffs here are not felons. Mr. Linton's conviction vacated and set aside. Mr. Stewart's

11  and Mr. Jones's convictions were set aside and dismissed. So categorically, they are no longer

12  convicted felons in the states in which they were convicted.

13         Further to the court's query, _Vongxay_ was wrong to conclude that "felons are categorically

14  different from individuals who have a fundamental right to bear arms." 594 F.3d at 1115. Under the

15  Second Amendment, "the people" have the right to bear arms. There is no distinction in the text of

16  the Second Amendment that "the people" to whom the amendment refers have be "law abiding," and

17  there is nothing in the plain text of Amendment itself which restricts the scope of the Amendment to

18  "law abiding citizens." As noted above, _Vongxay_, did not decide the issue on any historical basis for

19  non-law abiding citizens losing the right. The primary case upon which it relied, _United States v._

20  _Younger_, has no basis in the Second Amendment following _Heller_.

21         Other courts, in keeping with the preliminary textual reading required by _Bruen_, have found

22  that felons are part of "the people" referred to in the Second Amendment. _See United States v._

23  _Jimenez-Shilon_, 34 F.4th 1042, 1046 (11th Cir. 2022); _United States v. Carrero_, No. 2:22-cr-30,

24  2022 WL 9348792, at *2 (D. Utah Oct. 14, 2022) (holding, post-_Bruen_, that felons are among "the

25  people" referred to in the Second Amendment's text). Likewise, it was implied in _Binderup_ that

26  irrespective of whether former felons may be prohibited from possessing firearms, temporarily or

27  otherwise, felons are not categorically excluded from "the people" protected by the Second

28  Amendment. _See Binderup v. Attorney General_, 836 F.3d 336, 344 (3d Cir. 2016) (Ambro, J.,

8

1  plurality op.) ("That individuals with Second Amendment rights may nonetheless be denied

2  possession of a firearm is hardly illogical.")

3       In her dissent in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), then-Judge Barrett explained

4  why this "unusual way of thinking about rights" cannot be squared with our treatment of fundamental

5  rights. The proper "conceptual" approach is that as a matter of text "all people have the right to keep

6  and bear arms but that history and tradition support Congress's power to strip certain groups of that

7  right," not that "there are certain groups of people . . . who fall entirely outside the Second

8  Amendment's scope." *Kanter*, 919 F.3d at 451–52 (Barrett, J., dissenting).

9       To the extent that the Second Amendment permits any distinction here, and may permit the

10  deprivation of *some* people of their rights, that distinction must be shown from history, not plain

11  text. And, as argued, to the extent there is a relevant historical tradition it is based on dangerousness,

12  not an overinclusive categorization of "felons." *See Binderup*, 836 F.3d at 369 ("the historical record

13  leads us to conclude that the public understanding of the scope of the Second Amendment was

14  tethered to the principle that the Constitution permitted the dispossession of persons who

15  demonstrated that they would present a danger to the public if armed.") (Hardiman, J., concurring);

16  *Folajtar v. Attorney General*, 980 F.3d 897, 914 (3d Cir. 2020) (Bibas, J., dissenting); *Kanter*, 919

17  F.3d at 454 ("The historical evidence . . . [shows] that the legislature may disarm those who have

18  demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the

19  public safety.") (Barrett, J., dissenting). The touchstone, according to these historical analyses, was

20  danger; and here, the individual plaintiffs are not dangerous.

21       In *Hamilton*, another case pre-dating *Bruen*, the court appears to have been applying the

22  Fourth Circuit's version of the former two-step test under *United States v. Chester*, 628 F.3d 673

23  (4th Cir. 2010) (abrogated by *Bruen*), finding that the appellant did not pass the first step under a

24  "streamlined" analysis under *Chester*. Indeed, under that streamlined analysis, *Hamilton* explained

25  that the court "need not take an extensive historical inquiry to determine whether the conduct at issue

26  was understood to be within the scope of the Second Amendment at the time of ratification."

27  *Hamilton*, 848 F.3d at 624 (citing *United States v. Moore*, 666 F.3d 313, 318-19 (4th Cir. 2012)).

28  But under *Bruen*, of course, this is no longer the test. *Hamilton* holds no reliable ground here.

SEILER EPSTEIN LLP

9

So even if this Court begins with categorizing plaintiffs as felons, that does not foreclose a proper as-applied challenge to defendants' policies and practices. Plaintiffs are not categorically foreclosed from raising the challenge, *Phillips*, 827 F.3d at 1174, and as argued, plaintiffs belong to "the people" to which the Second Amendment refers because they are still part of the national community. *See Kanter*, 919 F.3d at 453 ("Neither felons nor the mentally ill are categorically excluded from our national community. That does not mean that the government cannot prevent them from possessing guns. Instead, it means that the question is whether the government has the power to disable the exercise of a right that they otherwise possess, rather than whether they possess the right at all.") (Barrett, J., dissenting).

   c.   **Is expert evidence necessary to determine whether prohibitions on the possession of firearms by felons similarly situated to the individual plaintiffs are "consistent with the Nation's historical tradition of firearm regulation"? *Bruen*, 142 S.Ct. at 2130; *see also Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) ("Felonies encompass a wide variety of non-violent offenses, and we see no reason to think that the Court meant 'dangerous individuals' when it used the word felon."). If so, what type of expert would be appropriate, and how should the Court weigh and evaluate the expert opinions?**

No expert evidence is needed here. Any relevant historical facts which defendants may offer to satisfy their burden under *Bruen*, i.e., the burden to show relevant laws and regulations, and other known historical facts, to support historically appropriate analogues, are properly presented through briefing and argument. The "facts" relevant to resolution of the historical aspect of this case are "legislative facts" regarding the history of prohibiting felons from owning firearms. As such, all facts have been submitted without the need for expert or other historical evidence adduced through traditional party discovery methods. *See Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (ordering entry of judgment for plaintiffs on review of order granting motion to dismiss because "[t]he constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial . . . . Only adjudicative facts are determined in trials, and only legislative facts are relevant to the constitutionality of the Illinois gun law.")

It is noteworthy that in *Bruen* itself, no factual development occurred in the district court because the plaintiffs' claims were foreclosed by circuit precedent at the time the complaint was filed, and the district court accordingly entered judgment against the plaintiffs on the pleadings. *See*,

SEILER EPSTEIN LLP

*New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp.3d 143 (N.D.N.Y. 2018). In holding New York's may-issue licensing scheme violated the Second Amendment, the Supreme Court expressly rejected the argument that it could not "answer the question presented without giving respondents the opportunity to develop an evidentiary record," 142 S.Ct. at 2135 n.8, because "in light of the text of the Second Amendment, along with the Nation's history of firearm regulation," the conclusion "that a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense" did not turn on disputed factual questions." *Id*. The same is true here. Application of *Bruen*'s text-and-history analysis does not involve any analysis of adjudicative facts of the kind that are disclosed through discovery, as the parties have now aptly demonstrated through their briefing. It is also noteworthy that *Bruen* itself did not involve expert witnesses. Indeed, the Supreme Court decided the case based on a motion-to-dismiss record in the district court.

Here, as argued, the historical work has been done. Plaintiffs have specifically cited Judge Hardiman's concurring opinion in *Binderup*, then-Judge Barrett's dissenting opinion in *Kanter*, Judge Bibas's dissenting opinion in *Folajtar*, Judge Hagedorn's dissenting opinion in *State v. Roundtree*, 395 Wis.2d 94, 156-161, 952 N.W.2d 765 (Wis. 2021), and Judge DeWine's concurring opinion in *State v. Weber*, 163 Ohio St.3d 125, 151-54, 168 N.E.3d 468 (Ohio 2020). These are all cases that predated *Bruen*, but in which the judges had performed the historical analysis on the American tradition of prohibiting dangerous persons. Notably, these opinions were bereft of any citation to expert testimony.

Finally, a good reason to foreclose expert discovery and testimony in this case is to prevent the State from engaging in its well-noted practice of seeking to overwhelm its opposing parties in Second Amendment cases, and the court, with expert declarations and supplementary materials that take months to sift through. For example, in *Miller v. Bonta*, S.D. Cal. No. 3:19-cv-01537-BEN-JLB, a case pending in the Southern District of California challenging the State's prohibition on "assault weapons" (and in which counsel undersigned is the plaintiffs' counsel of record), notwithstanding the district court's expressly-stated disapproval on the need for expert testimony (*Miller,* Tx. of Hearing, ECF 143, at 3:15–5:8), the State thereafter proceeded to submit no less than

four expert declarations from historians (*Id.*, ECF 137-3, 137-6, 137-7, 137-8) testifying to various aspects of historical regulations regarding firearms. When the district court requested the parties to submit hard copies of all materials that had been cited in their briefing (*Id.*, ECF 138), the State lodged thousands of pages of documentary materials. (*Id.*, ECF 144-154). This Court should prevent the State from doing so here.

      **d. Should the case be stayed pending a decision in *Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023)?**

No, this case should not be stayed. Whatever the outcome, *Range* would not involve binding authority in this circuit, and that case involves a challenge to a different, federal statute (18 U.S.C. § 922(g)). And even though the first panel in *Range*, 53 F.4th 262, came to a different conclusion than the one that we would urge, we note that the historical work has already been done, and by other jurists, as cited in plaintiffs' briefs. *See*, *Binderup*, 836 F.3d at 367-69 (Hardiman, J., concurring), *Kanter*, 919 F.3d at 451-458 (Barrett, J., dissenting); *Folajtar*, 980 F.3d at 913-920 (Bibas, J., dissenting); *Roundtree*, 395 Wis.2d at 156-161 (Hagedorn, J., dissenting); *Weber*, 163 Ohio St.3d at 151-54 (DeWine, J., concurring). This Court can decide the historical questions on the work that has already been done.

And practically speaking, no matter what this Court may decide in this case, the matter is likely to be appealed to the Ninth Circuit by the non-prevailing party. If the anticipated en banc decision in *Range* is persuasive as to either side, it will surely be cited in the parties' appellate briefs.

Any further stay would simply add to the already lengthy stay associated with the administrative stay imposed in this case as the parties awaited the Ninth Circuit's disposition of *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020), *on reh'g en banc*, 19 F.4th 1087 (9th Cir. 2021), *and judgment vacated, remanded*, 142 S.Ct. 2895 (Jun. 30, 2022) (*See* ECF 53). Plaintiffs note that they filed this suit to vindicate the plaintiffs' rights in 2018, and throughout, continue to be deprived of the full blessings of constitutional liberty and citizenship. This case should be decided without any further stay.

SEILER EPSTEIN LLP

**4. Full Faith and Credit Clause**

    **a.** **May violations of the Full Faith and Credit Clause and its enabling statute be raised in an action against a non-judicial state actor under 42 U.S.C. § 1983?** *See Adar v. Smith*, **639 F.3d 146, 154 (5th Cir. 2011) ("[S]ince the duty of affording full faith and credit *to a judgment* falls on courts, it is incoherent to speak of vindicating full faith and credit rights against non-judicial state actors.") (en banc) (emphasis in original).**

    Yes, plaintiffs' claims, brought under 42 U.S.C. § 1983, should be decided on the merits against defendants, in order to enjoin them from continuing to enforce their policies and practices which deprive plaintiffs of their rights, under the Full Faith and Credit Clause, and 28 U.S.C. § 1738. In *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007), the plaintiffs sued the State of Oklahoma directly to enjoin that state's enforcement of an amendment to an Oklahoma statute that would not have recognized adoptions by same sex couples from any other state or foreign jurisdiction. 496 F.3d at 1142. There, the plaintiffs sued the governor, attorney general, and commissioner of health in their official capacities, and specifically requested a revised birth certificate naming one of the plaintiffs as the child's parent. *Id.*, at 1142-43. The district court had held that the amendment violated the Full Faith and Credit Clause because it "impair[ed] the proper recognition … of out-of-state decrees." *Finstuen v. Edmondson*, 497 F. Supp.2d 1295, 1307 (W.D. Okla. 2006). On appeal, the Tenth Circuit affirmed the district court's ruling that the amendment violated the Full Faith and Credit Clause, holding "that final adoption orders and decrees are judgments that are entitled to recognition by all other states under the Full Faith and Credit Clause." 496 F.3d at 1156. It was unremarkable, and uncontroversial, that the plaintiffs brought suit under § 1983 against state officials to compel both recognition of out of state judgments, and the issuance of revised birth certificates.

    On the other hand, in *Adar v. Smith*, 639 F.3d 146 (5th Cir. 2011), the en banc panel held that a Full Faith and Credit Clause claim could not be asserted in a § 1983 action. In *Adar*, a same-sex couple who had obtained an adoption decree in New York sought a revised birth certificate in Louisiana, listing both of the parents' names. The Louisiana Registrar denied their request, and the parents brought suit in federal court alleging that the Registrar's refusal to issue a birth certificate with both of their names violated the Full Faith and Credit Clause, and the Equal Protection Clause. 639 F.3d at 149-50. The district court ruled in favor of the plaintiffs, and a panel of the Fifth Circuit

SEILER EPSTEIN LLP

originally upheld the district court. However, in a divided opinion, en banc, the Fifth Circuit reversed, holding that the Full Faith and Credit Clause could not be enforced by way of an action under § 1983. In so holding, the majority opinion recognized that it was "the usual posture of full faith and credit cases [that] the issue arises in the context of pending litigation—not as a claim brought against a party failing to afford full faith and credit to a state judgment, but as a basis to challenge the forum court's decision. Such cases begin in state court, and the Supreme Court intervenes only after the state court denies the validity of a sister state's law or judgment." *Id.*, at 154. In part, the majority opinion relied, in part, on Fifth Circuit precedent. *Id.*, at 155 (citing *White v. Thomas*, 660 F.2d 680, 685 (5th Cir. 1981)).

Key to the en banc's opinion in *Adar* was its distinction between the *enforcement* of another jurisdiction's laws, and *recognition* of a foreign judgment or decree. It thus distinguished *Finstuen* because it characterized the issuance of a birth certificate as an "enforcement mechanism," whereas it was apparently undisputed that the Louisiana Registrar in *Adar* had conceded the validity of the New York adoption. 639 F.3d at 157. The en banc panel thus seemed to suggest that to the extent that the plaintiffs were seeking to compel the issuance of a revised birth certificate, that claim should have been brought in state court, instead of in an action under § 1983. *Id.*, and at 158 ("To enforce the clause, Appellees might have sought to compel the issuance of a new birth certificate in Louisiana courts, for full faith and credit doctrine does not contemplate requiring an executive officer to 'execute' a foreign judgment without the intermediatory of a state court.") The majority concluded: "Obtaining a birth certificate falls in the heartland of enforcement, and therefore outside of the full faith and credit obligation of recognition." *Id.*, at 160.

But the majority opinion was not without stern dissent. Judge Wiener, joined by four other judges of the Firth Circuit, strongly disagreed with the majority opinion's conclusion that the Full Faith and Credit Clause only imposed obligations on state courts, and not other state actors. 639 F.3d at 165 (Wiener, J., dissenting). On the question of whether § 1983 afforded a remedy to the plaintiffs, Judge Wiener observed that the en banc majority's reliance upon *Thompson v. Thompson*, 484 U.S. 174 (1988) was misplaced, because that case involved the question of whether a specific federal statute furnished an implied cause of action in federal court as against private actors. As

Judge Wiener noted: "Here, however, when Appellees are suing a *state actor*, they have no need for

an *implied* cause of action: Section 1983 *expressly* provides them with the only remedy they seek

and the only one they need." 639 F.3d at 171 (Wiener, J., dissenting) (emphasis original). Judge

Wiener continued: "The Supreme Court has repeatedly pronounced that § 1983 is a remedial statute

which is intended "to be broadly construed, against all forms of official violation of federally

protected rights." *Id.*, at 173. For this, and other reasons, the dissenting opinion concluded that "the

FF&C Clause indisputably does confer a constitutional 'right' for which § 1983 provides an

appropriate remedy. Respectfully, the en banc majority errs absolutely in concluding otherwise." *Id.*,

at 176.

It has been noted that *Adar* is an outlier decision on this point. In *Henry v. Himes*, 14 F.

Supp.3d 1036 (S.D. Ohio 2014), the plaintiffs sued state officials to challenge Ohio's ban on the

recognition of same-sex marriages from other states as unconstitutional. The plaintiffs specifically

sought a declaration that Ohio's refusal to recognize same-sex marriages is unconstitutional, a

permanent injunction prohibiting defendants from enforcing those bans, or denying full faith and

credit to decrees of adoption duly obtained by same sex couples in other jurisdictions, and sought to

compel the issuance of birth certificates listing both same-sex parents. 14 F. Supp.3d at 1039.

Because the district court had found that Ohio's marriage recognition bans were constitutionally

invalid on other grounds (e.g., equal protection),[1] it found it unnecessary to reach the plaintiffs'

arguments based on the Full Faith and Credit Clause, except to find that two of the plaintiffs had

demonstrated a compelling basis to have full faith and credit for a same-sex adoption decree in Ohio.

14 F. Supp.3d at 1058.

In footnote 24 to the district court's opinion in *Henry*, the district court discussed the Full

Faith and Credit claims. Specifically addressing the question of whether the claims were enforceable

in an action under § 1983, the district court, discussing *Adar,* stated:

The Fifth Circuit stands alone in holding that federal claims to enforce rights

_____

[1] *Henry v. Himes* was directly reversed on appeal by *DeBoer v. Snyder*, 772 F.3d 388 (6th Cir. 2014)
(plaintiff Henry was a consolidated party to that appeal), which in turn was reversed by *Obergefell v.
Hodges*, 576 U.S. 644, 135 S.Ct. 2584 (2015). Neither *DeBoer* nor *Obergefell* were decided upon
nor did they address the Full Faith and Credit Clause claims.

SEILER EPSTEIN LLP

SEILER EPSTEIN LLP

conferred by the Full Faith and Credit Clause are unavailable under § 1983 against nonjudicial state officials. *Adar*, 639 F.3d at 153. Given that § 1983 creates a remedy for those denied "rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983, and that the Supreme Court has repeatedly held that § 1983 is a remedial statute that must be applied expansively to assure the protection of constitutional rights (see *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 700–01, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (§ 1983 is "to be broadly construed, against all forms of official violation[s] of federally protected rights"); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (§ 1983's coverage is to be "broadly construed"); *Wayne v. Vill. of Sebring*, 36 F.3d 517, 528 (6th Cir.1994) (same), <u>other circuits have unremarkably entertained such claims</u>. *See Rosin v. Monken*, 599 F.3d 574, 575 (7th Cir. 2010) (adjudicating full faith and credit claim against state actors on the merits in § 1983 action); *United Farm Workers v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1257 (9th Cir. 1982) (same); *Lamb Enters., Inc. v. Kiroff*, 549 F.2d 1052, 1059 (6th Cir. 1977) (propriety of § 1983 claim in federal court to enforce full faith and credit obligation against state judge not questioned, but abstention deemed warranted).

*Henry*, 14 F. Supp.3d at 1057 (emphasis added). Further criticism of the *Adar* en banc majority decision may be found at Thomas M. Joraanstad, *Half Faith and Credit?: The Fifth Circuit Upholds Louisiana's Refusal to Issue a Revised Birth Certificate*, 19 Wm. & Mary J. of Women & L. 421, 433-39 (2013) (arguing that section 1983 is a proper vehicle to redress Full Faith and Credit Clause claims.)

As applied to the present case, Judge Wiener's dissent in *Adar* makes the better point. "Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.' As the language of the statute plainly indicates, the remedy encompasses violations of federal statutory as well as constitutional rights. We have repeatedly held that the coverage of the statute must be broadly construed." *Golden State Transit Corp.*, 493 U.S. at 105. And to the extent that the majority en banc opinion made some distinction between "enforcement" and "recognition"—finding that the issuance of revised birth certificates constituted enforcement—then this case falls outside of the "heartland of enforcement." *Adar*, 639 F.3d at 160. Plaintiffs here are primarily seeking to have the State of California recognize that their prior felony convictions were vacated, set aside, and/or dismissed. That they are, in effect, nullified, cancelled, made void and/or invalidated. Black's Law Dictionary 1782 (10th ed. 2014) (defining "vacate"). As the district court's opinion in *Finstuen* reasoned, "Here, the adoption decrees do not attempt to direct any Oklahoma official to take action or direct any Oklahoma official to refrain from acting. Rather,

the decrees merely establish the legal relationships between the adult and minor Plaintiffs." *Finstuen v. Edmondson*, 497 F. Supp.2d at 1307. Here, plaintiffs' out-of-state judgments that were vacated, set aside, and/or dismissed must be *recognized* first, and then cannot constitute the basis for the prohibition of the possession of firearms which the defendants would otherwise insist upon.

**b. If convicted felons are outside the scope of the Second Amendment, is California bound by another state's statutes or judicial orders when determining whether an individual is a felon within the meaning of Cal. Penal Code § 29800?**

Yes. But first, as noted and argued above at length, former, non-violent felons are *not* outside of the scope of the Second Amendment. That argument need not be belabored here. And again, even if there is a presumption as to longstanding regulations prohibiting the possession of firearms by felons, that does not mean (a) that such individuals are "outside of the scope" of the Second Amendment such that they are forever foreclosed from raising a challenge to their prohibitions; or (b) that they cannot seek to rebut any such presumption.

The Court's question goes to the heart of the matter: Can California continue to consider the plaintiffs "convicted felons" in the first place when judgments/adjudications from other states have determined them otherwise?

The plain text of both the Full Faith and Credit Clause, and section 1738, compel the outcome. The Clause itself states: ""Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." Section 1738 goes further: "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions *as they have by law or usage in the courts of such State, Territory or Possession from which they are taken*." (Emphasis added.) California's policies which only recognize the fact of conviction, without giving any respect to subsequent proceedings on those convictions, clearly violate these provisions.

Defendants' policies and practices otherwise rigidly interpreting and implementing section 29800 essentially state that once one is convicted felon, they are always a convicted felon, for the rest of their life. But even that rigid, supposedly literal interpretation of section 29800 is not actually true, for the DOJ recognizes some exceptions. For example, the DOJ's "DROS Procedures" manual recognizes that "[a] reduction to a misdemeanor pursuant to PC Section 17 restores the person's

SEILER EPSTEIN LLP

1   right to possess a firearm." (Lee Decl., Exh. C., p. 081). And persons convicted of a felony in other

2   states who have received a gubernatorial pardon which also expressly restores their right to receive

3   and possess firearms may have their firearms rights restored here. (Id., p. 082.) But on the other

4   hand, without that qualifying language, even with a pardon, the person may not. (Id.) Likewise, "[a]

5   person convicted of a felony in another state whose civil disabilities were removed under the laws of

6   that state (similar to PC Section 12023.4) is prohibited from possessing handguns in California."

7   (Id.) The source of these policies are Attorney General opinions dating from 1983 and 1967. (Id.)

8       That defendants' policies make no exception for vacated convictions is telling of their

9   complete disregard of the plain text of both the Full Faith and Credit Clause and section 1738. Even,

10  for example, if a person from another state was *wrongfully* convicted, spent years in prison, and later

11  was exonerated, and had their conviction set aside, *with a factual finding of innocence*—they would

12  *still* not be able to possess a firearm here. Why? Because section 29800 supposedly states that once

13  one is a felon, they are always a felon, and there is no exception for this contained within their

14  manual.

15      If defendants were actually concerned about honoring both the Constitution, and section

16  1738, they could simply follow their own manual. The DOJ Procedures manual upon which

17  Defendants' policy emanates supposedly provides that "the laws of the state where the conviction

18  occurred apply." (Lee Decl., Exh. C, p. 080.) But this case has given lie to this practice. In fact,

19  defendants' policies respect *only* upon the fact of the conviction itself—and nothing else about "the

20  laws of the state where the conviction occurred" whatsoever. Defendants' policy is essentially a one-

21  way ratchet, that considers only the fact of conviction, wholly ignoring any further adjudication

22  relating to that conviction. California should be bound by another state's final judgments, under the

23  Full Faith and Credit Clause, or otherwise.

24  Dated: April 18, 2023                          **SEILER EPSTEIN LLP**

25

26                                                 /s/ George M. Lee
                                                   George M. Lee

27

28                                                 Attorneys for Plaintiffs

**SEILER EPSTEIN LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

**(All Case Participants Are CM/ECF Participants)**

I hereby certify that on April 18, 2023, I electronically filed the foregoing document with the Clerk of the Court for the Northern District of California by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ George M. Lee
GEORGE M. LEE