ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
JERRY T. YEN
Deputy Attorney General
State Bar No. 247988
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7836
  Fax: (916) 324-8835
  E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for Rob Bonta, in his official capacity as Attorney General of California, Allison Mendoza, in her official capacity as Director of the California Department of Justice Bureau of Firearms, and Robert D. Wilson, in his official capacity as Deputy Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHAD LINTON, ET AL.,**<br><br>                  Plaintiffs,<br><br>    v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California; ALLISON MENDOZA[1], in her official capacity as Director of the Department of Justice Bureau of Firearms; and ROBERT D. WILSON, in his official capacity as Deputy Attorney General,**<br><br>                  Defendants. | Case No. 3:18-cv-07653-JD<br><br>**DEFENDANTS' MEMORANDUM IN RESPONSE TO ORDER REQUESTING BRIEFING**<br><br>Date:          April 25, 2023<br>Time:         10:30 a.m.<br>Courtroom:  11<br>Judge:        The Honorable James Donato<br>Action Filed: Dec. 20, 2018 |

---

    [1] Allison Mendoza is hereby substituted for former Bureau of Firearms Director Luis Lopez.  *See* Fed. R. Civ. P. 25(d).

**TABLE OF CONTENTS**

Page

I. Prior Convictions ................................................................................................. 1

    A. Do any elements of the individual plaintiffs' offenses of conviction involve violence or dangerous weapons under state or federal law? .......... 1

    B. Under what statutes did the Washington, Arizona, and Texas courts dismiss, vacate, or set aside the individual plaintiffs' convictions? ........... 2

    C. Under what statutes did the Washington, Arizona, and Texas courts restore the individual plaintiffs' rights to possess firearms? ...................... 2

II. Standing ................................................................................................................ 2

    A. Do any of the individual plaintiffs challenge Cal. Penal Code § 30305, and if so, what is the basis of standing for the challenge? ........... 3

    B. Do plaintiffs Linton and Stewart, who are not California residents, have standing for any claim in the complaint? ............................................ 3

    C. Does plaintiff Jones have standing to challenge Cal. Penal Code § 29800? ........................................................................................................ 4

    D. Do the organizational plaintiffs have standing when there is no evidence that any individual plaintiff is a member? .................................... 4

III. Second Amendment .............................................................................................. 5

    A. Prohibitions on the possession of firearms by felons are "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 n.6 (2008). Courts have denied as-applied challenges under the Second Amendment to laws that prohibit felons from possessing firearms. *See U.S. v. Vongxay*, 594 F.3d 1111, 1115-18 (9th Cir. 2010); *Van Der Hule v. Holder*, 759 F.3d 1043, 1050-51 (9th Cir. 2014); *United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016). Did *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), abrogate or otherwise disapprove *Vongxay* and similar cases? ................................................................................................ 5

    B. Federal courts have concluded that "felons are categorically different from the individuals who have a fundamental right to bear arms." *Vongxay*, 594 F.3d at 1115; *see also Hamilton v. Pallozzi*, 848 F.3d 614, 636 (4th Cir. 2017) ("[C]onviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment."). Does this principle apply to the individual plaintiffs, and why or why not? .............. 6

    C. Is expert evidence necessary to determine whether prohibitions on the possession of firearms by felons similarly situated to the individual plaintiffs are "consistent with the Nation's historical tradition of firearm regulation"? *Bruen*, 142 S.Ct. at 2130; *see also Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) ("Felonies encompass a wide variety of non-violent offenses, and we see no reason to think that the Court meant 'dangerous individuals' when it used the word felon."). If so, what type of expert would be appropriate, and how should the Court weigh and evaluate the expert opinions? ......................................................................................... 9

i

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

**TABLE OF CONTENTS**
(continued)

Page

    D.    Should the case be stayed pending a decision in *Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted*, *opinion vacated*, 56 F.4th 992 (3d Cir. 2023)?............................. 9

IV.    Full Faith and Credit Clause ................................................................................... 10

    A.    May violations of the Full Faith and Credit Clause and its enabling statute be raised in an action against a non-judicial state actor under 42 U.S.C. § 1983? *See Adar v. Smith*, 639 F.3d 146, 154 (5th Cir. 2011) ("[S]ince the duty of affording full faith and credit *to a judgment* falls on courts, it is incoherent to speak of vindicating full faith and credit rights against non-judicial state actors.") (en banc) (emphasis in original).................................................................................. 10

    B.    If convicted felons are outside the scope of the Second Amendment, is California bound by another state's statutes or judicial orders when determining whether an individual is a felon within the meaning of Cal. Penal Code § 29800?....................................................... 11

ii

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adar v. Smith*
  639 F.3d 146 (5th Cir. 2011) (En Banc) .................................................................. 10

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*
  713 F.3d 1187 (9th Cir. 2013) .................................................................................. 4

*Binderup v. Att'y Gen.*
  836 F.3d 336 (3d Cir. 2016) ............................................................................ 7, 8, 9

*District Of Columbia v. Heller*
  554 U.S. 570 (2008) ........................................................................................ 5, 6, 8

*Fair Hous. Council v. Roommate.com, LLC*
  666 F.3d 1216 (9th Cir. 2012) .................................................................................. 4

*Fair Hous. of Marin v. Combs*
  285 F.3d 899 (9th Cir. 2002) .................................................................................... 4

*Folajtar v. Att'y Gen.*
  980 F.3d 897 (3d Cir. 2020) .................................................................................. 6, 9

*Groseclose v. Plummer*
  106 F.2d 311 (9th Cir. 1939) .................................................................................. 11

*Hamilton v. Pallozzi*
  848 F.3d 614 (4th Cir. 2017) ................................................................................ 6, 8

*Hatfield v. Barr*
  925 F.3d 950 (7th Cir. 2019) .................................................................................... 6

*McDonald v. City of Chicago*
  561 U.S. 742 (2010) .................................................................................................. 5

*Huntington v. Attrill*
  146 U.S. 657 (1892) ................................................................................................ 11

*Lujuan v. Defenders of Wildlife*
  504 U.S. 555 (1992) .................................................................................................. 2

*Medina v. Whitaker*
  913 F.3d 152 (D.C. Cir. 2019) ......................................................................... 6, 7, 9

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*
  142 S. Ct. 2111 (2022) ..................................................................................... 5, 6, 8, 9

iii

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

## TABLE OF AUTHORITIES
(continued)

Page

*Nelson v. George*
　399 U.S. 224 (1970) .................................................................................................. 11

*People v. Bipialaka*
　34 Cal. App. 5th 455 (Cal. Ct. App. 2019) ................................................................. 1

*People v. Laino*
　32 Cal.4th 878 (2004) ......................................................................................... 11, 12

*Range v. Attorney General United States*
　53 F.4th 262 (3d Cir. 2022) ........................................................................................ 9

*San Diego Cty. Gun Rights Comm'n v. Reno*
　98 F.3d 1121 (9th Cir. 1996) ..................................................................................... 4

*Setser v. United States*
　566 U.S. 231 (2012) .................................................................................................. 11

*Shaw v. State of California Dept. of Alcoholic Beverage Control*
　788 F.2d 600 (9th Cir. 1986) .................................................................................... 10

*U.S. v. Aceves-Rosales*
　832 F.2d 1155 (9th Cir. 1987) ................................................................................... 1

*U.S. v. Vongxay*
　594 F.3d 1111 (9th Cir. 2010) ........................................................................... *passim*

*Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health*
　*Ins. Guar. Asss'n*
　455 U.S. 691 (1982) ................................................................................................. 10

*United Farm Workers v. Ariz. Agric. Emp't Relations Bd.*
　669 F.2d 1249 (9th Cir. 1982) .................................................................................. 10

*United States v. Bena*
　664 F.3d 1180 (8th Cir. 2011) ................................................................................ 6, 7

*United States v. Burrell*
　2022 WL 4096865 (E.D. Mich. Sept. 7, 2022) .......................................................... 8

*United States v. Butts*
　Case No. CR 22-33-M-DWM, 2022 WL 16553037 (D. Mont. Oct. 31, 2022) ......... 5

*United States v. Carpenter*
　2022 WL 16855533 (D. Utah Nov. 10, 2022) ........................................................... 8

iv

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

# TABLE OF AUTHORITIES
(continued)

Page

*United States v. Carpio–Leon*
  701 F.3d 974 (4th Cir. 2012) ................................................................................................ 8

*United States v. Cockerham*
  2022 WL 4229314 (S.D. Miss. Sept. 13, 2022) .................................................................... 8

*United States v. Daniels*
  2022 WL 5027574 (W.D.N.C. Oct. 4, 2022) ........................................................................ 8

*United States v. Jackson*
  2022 WL 4226229 (D. Minn. Sept. 13, 2022) ...................................................................... 8

*United States v. Kilgore*
  2023 WL 2505012 (E.D. Cal. Mar. 14, 2023) ...................................................................... 8

*United States v. King*
  2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022) ......................................................................... 8

*United States v. Minter*
  2022 WL 10662252 (M.D. Pa. Oct. 18, 2022) ..................................................................... 8

*United States v. Moore*
  Case No. 3:20-cr-00474-IM-1, 2023 WL 154588 (D. Or. Jan. 11, 2023) ............................ 5

*United States V. Phillips*
  827 F.3d 1171 (9th Cir. 2016) ........................................................................................... 5, 6

*United States v. Rene E.*
  583 F.3d 8 (1st Cir. 2009) .................................................................................................... 7

*United States v. Riley*
  ___ F.3d ____, 2022 WL 7610264 (E.D. Va. Oct. 13, 2022) .............................................. 8

*United States v. Robinson-Davis*
  2023 WL 2495805 (W.D. Va. Mar. 14, 2023) ..................................................................... 8

*United States v. Siddoway*
  2022 WL 4482739 (D. Idaho Sept. 27, 2022) ...................................................................... 8

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
  454 U.S. 464 (1982) ............................................................................................................. 3

*Van Der Hule v. Holder*
  759 F.3d 1043 (9th Cir. 2014) ........................................................................................... 5, 6

v

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

# TABLE OF AUTHORITIES
## (continued)

Page

*Vongxay. United States v. Hill*
   Case No. 21cr107, 2022 WL 4361917 (S.D. Cal. Sept. 20, 2022) .......................................... 5

*Walker v. City of Lakewood*
   272 F.3d 1114 (9th Cir. 2001) ................................................................................................. 4

*White v. Thomas*
   660 F.3d 680 (5th Cir. 1981) ................................................................................................. 11

**STATUTES**

United States Code
   Title 18 § 922(b)(3) .................................................................................................................. 3
   Title 28 § 1783 ....................................................................................................................... 10

Arizona Revised Statutes
   § 13-905 ................................................................................................................................... 2
   § 13-1508 ................................................................................................................................. 1

California Penal Code
   § 1508 (1975) ........................................................................................................................... 1
   § 16400 ..................................................................................................................................... 3
   § 26815 ..................................................................................................................................... 3
   § 28180 ..................................................................................................................................... 3
   § 29800 ........................................................................................................................ 3, 4, 11, 12
   § 30305 ..................................................................................................................................... 3

Revised Code of Washington
   § 9.41.040(4) ............................................................................................................................ 2
   § 9.94A.640 .............................................................................................................................. 2
   § 9A.04.110(6) ......................................................................................................................... 1
   § 46.61.024 .............................................................................................................................. 1
   § 46.61.502 .............................................................................................................................. 1

Texas Code of Criminal Procedure, Article 42.12
   § 20 ........................................................................................................................................... 2

Texas Penal Code
   § 1.07(a)(19) ............................................................................................................................. 1
   § 32.31 ...................................................................................................................................... 1

vi

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

Defendants Attorney General Rob Bonta, Director Allison Mendoza, and Deputy Attorney General Rob Wilson file this memorandum in response to the Court's March 24, 2023 Order requesting briefing that addresses several questions raised by the Court (ECF No. 68).

I.   **PRIOR CONVICTIONS**

   A.   **Do any elements of the individual plaintiffs' offenses of conviction involve violence or dangerous weapons under state or federal law?**

In 1987, Plaintiff Chad Linton was convicted of attempting to evade a pursuing police vehicle (Wash. Rev. Code § 46.61.024) and driving while intoxicated (Wash. Rev. Code § 46.61.502) in Washington State. First Am. Compl., ECF No. 36, Dec. 2, 2019, ¶¶ 20-21. On their face, the elements of those offenses do not require violence or dangerous weapons, although depending on the circumstances, Plaintiff Linton's actual offenses may have involved violence or dangerous weapons.[2]

Plaintiff Paul Stewart was convicted of first degree burglary in Arizona in 1976. First Am. Compl., ¶ 41. In 1976, an element of first degree burglary in Arizona was being "armed with explosives or a deadly weapon in the course of committing the offense." Ariz. Rev. Crim. Code § 1508 (1975).[3] Thus, the elements of Plaintiff Stewart's offense in fact involved violence or dangerous weapons under Arizona law.

Plaintiff Kendall Jones was convicted of third degree felony for credit card abuse in Texas in 1980. First Am. Compl., ¶ 55. Texas Penal Code section 32.31 specifies that credit card abuse can involve the lack of "effective consent" from the cardholder. Consent is not effective if induced by force, threat, or fraud. Texas Penal Code § 1.07(a)(19). Thus, similar to the situation with Plaintiff Linton, depending on the circumstances, Plaintiff Jones's actual offense may have

---

[2] In Washington State, a "vehicle" can be considered a "deadly weapon" if it is used in a manner "readily capable of causing death or substantial bodily harm." Wash. Rev. Code § 9A.04.110(6). Federal and California law also acknowledge that cars can be deadly weapons. *U.S. v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) ("an automobile . . . can be used as a deadly weapon"); *People v. Bipialaka*, 34 Cal. App. 5th 455, 458 (Cal. Ct. App. 2019) ("cars can be deadly weapons").

[3] The Arizona Legislature reorganized the Arizona Criminal Code in 1977 and 1978. First degree burglary is now defined in Arizona Revised Statutes section 13-1508, but also requires possession of "explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony."

1

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

involved violence or dangerous weapons, but violence or dangerous weapons is not a required element of the offense.

### B. Under what statutes did the Washington, Arizona, and Texas courts dismiss, vacate, or set aside the individual plaintiffs' convictions?

A Washington state court vacated Plaintiff Linton's felony conviction pursuant to Revised Code of Washington section 9.94A.640. First Am. Compl., Exh. A. An Arizona state court set aside Plaintiff Stewart's judgment of guilt. *Id*., Exh. I. Although the Arizona state court's order does not specify the authority for its set aside order, it appears to be issued pursuant to Arizona Revised Statutes section 13-905. Similarly, the Texas court order setting aside Plaintiff Jones's judgment of conviction does not specify the authority for the order (First Am. Compl., Exh. K), and Defendants are unaware of the authority for such an order.

### C. Under what statutes did the Washington, Arizona, and Texas courts restore the individual plaintiffs' rights to possess firearms?

A Washington state court restored Plaintiff Linton's right to possess a firearm in Washington state pursuant to Revised Code of Washington section 9.41.040(4). First Am. Compl., Exh. B. The Arizona state court's order does not specify the authority for restoring Plaintiff Stewart's right to possess a firearm in Arizona (First Am. Compl. Exh. I), but as a general matter Arizona Revised Statutes section 13-905 appears to authorize such an order. The Texas court order setting aside Plaintiff Jones's judgment of conviction does not mention anything about restoring his right to possess firearms (First Am. Compl., Exh. K), but Texas Code of Criminal Procedure, Art. 42.12 section 20 generally authorizes such an order.

## II. STANDING

There are three minimum requirements for constitutional standing. First, "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujuan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of." *Id*. (citation omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (internal quotations and citation omitted). In addition to

2

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

these requirements, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982) (citation omitted).

**A.  Do any of the individual plaintiffs challenge Cal. Penal Code § 30305, and if so, what is the basis of standing for the challenge?**

The amended complaint appears to challenge California Penal Code section 30305. *See* First Am. Compl., ¶¶ 3, 75, Prayer for Relief. However, as discussed further in response to the next question, Plaintiffs Linton and Stewart do not have standing to challenge that statute. Section 30305 places restrictions on who may own or possess ammunition in California. And there are no allegations nor is there any evidence that Plaintiffs Linton and Stewart, who do not reside in California, currently own or possess ammunition in California. As for Plaintiff Jones, who resides in California, to the extent he possess or seeks to purchase ammunition in California, he would have standing to challenge California Penal Code section 30305.

**B.  Do plaintiffs Linton and Stewart, who are not California residents, have standing for any claim in the complaint?**

Plaintiffs Linton and Stewart do not have standing to challenge the statutes in this case because they do not have a legal right to possess or purchase firearms in California. *See Valley Forge*, 454 U.S. at 474. The challenged statutes in this case – California Penal Code sections 29800 and 30305 – only apply to possession or purchases of firearms or ammunition in California. And non-residents of California cannot purchase a firearm or ammunition in California. *See* Cal. Penal Code §§ 16400, 26815, and 28180 (requiring a California driver's license or California identification when purchasing a firearm or ammunition); *see also* 18 U.S.C. § 922(b)(3). In addition, the challenged statutes do not apply in the states where Plaintiffs Linton and Stewart currently reside. Thus, they have not suffered an "injury-in-fact" to support their standing in this case.

3

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

### C. Does plaintiff Jones have standing to challenge Cal. Penal Code § 29800?

As long as he is a California resident, to the extent Plaintiff Jones currently possesses or seeks to purchase firearms in California, he would have standing to challenge California Penal Code section 29800.

### D. Do the organizational plaintiffs have standing when there is no evidence that any individual plaintiff is a member?

The organizational plaintiffs do not have standing unless there is evidence that an individual plaintiff is a member. Associations have standing to sue on behalf of their members "only if (a) their members would otherwise have standing to sue in their own right; (b) the interests that the organizations seek to protect are germane to their purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[4] *San Diego Cty. Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1130-31 (9th Cir. 1996). To satisfy these requirements, the association must identify an affected member by name and show that the member has suffered or will suffer harm. *Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). Here, there is no evidence that Plaintiffs Linton, Stewart, or Jones are members of these organizational plaintiffs nor have the organizational plaintiffs identified an affected member by name. In particular, there are no allegations nor is there any evidence that the organizational plaintiffs have members that are California residents attempting to purchase or currently possess a firearm or ammunition, but have a felony conviction from another state that has been dismissed or set aside.

---

[4] An association could have direct standing to sue on its own behalf only if "it [shows] a drain on its resources from both a diversion of its resources and frustration of its mission." *Fair Hous. Council v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). However, "standing must be established independent of the lawsuit filed by the plaintiff." *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001); *see also Combs*, 285 F.3d at 903 ("[A]n organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit") (internal quotation marks omitted). Here, the organizational plaintiffs lack direct standing to sue because they have not alleged "a diversion of its resources" resulting from the challenged statutes, nor made any claims of injury that are "independent of the lawsuit filed by" the individual plaintiffs.

4

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

### III. SECOND AMENDMENT

**A. Prohibitions on the possession of firearms by felons are "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 n.6 (2008). Courts have denied as-applied challenges under the Second Amendment to laws that prohibit felons from possessing firearms. *See U.S. v. Vongxay*, 594 F.3d 1111, 1115-18 (9th Cir. 2010); *Van Der Hule v. Holder*, 759 F.3d 1043, 1050-51 (9th Cir. 2014); *United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016). Did *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), abrogate or otherwise disapprove *Vongxay* and similar cases?**

*Bruen* did not overrule *Vongxay* and other similar post-*Heller* precedent. Other district courts have reached the same conclusion, and further stated that they were bound to follow *Vongxay*. *United States v. Hill*, Case No. 21cr107, 2022 WL 4361917, *3 (S.D. Cal. Sept. 20, 2022); *United States v. Butts*, Case No. CR 22-33-M-DWM, 2022 WL 16553037, *4 (D. Mont. Oct. 31, 2022); *United States v. Moore*, Case No. 3:20-cr-00474-IM-1, 2023 WL 154588, *2 (D. Or. Jan. 11, 2023). In accordance with *Bruen*'s requirement that regulations be "consistent with this Nation's historical tradition of firearm regulation," the Ninth Circuit in *Vongxay* examined "historical gun restrictions" before concluding that felons do not have the right to possess firearms. 594 F.3d at 1116-18.

In addition, *Vongxay*, *Van Der Hule*, and *Phillips* all relied on *Heller* in concluding that laws prohibiting felons from possessing firearms did not violate the Second Amendment. *Vongxay*, 594 F.3d at 1114-16; *Van Der Hule*, 759 F.3d at 1051; *Phillips*, 827 F.3d at 1176. And *Bruen* did not change anything in *Heller*. *See* 142 S. Ct. at 2122 (stating that the Court's decision was "consistent with *Heller*"). To the contrary, Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to emphasize that the "presumptively lawful measures" identified in *Heller*—including "longstanding prohibitions on the possession of firearms by felons and the mentally ill"—remained constitutional, and that this was not an "exhaustive" list. *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626-627, 627 n.26). Justice Alito also wrote separately to make it clear that "[o]ur holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything that we said in *Heller* or *McDonald [v. City of Chicago*, 561 U.S. 742 (2010)]". *Id.* at 2157 (Alito, J., concurring).

5

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

In sum, *Bruen* does not abrogate or disapprove of *Vongxay*, *Van Der Hule*, *Phillips*, or similar decisions.

> **B.     Federal courts have concluded that "felons are categorically different from the individuals who have a fundamental right to bear arms." *Vongxay*, 594 F.3d at 1115; see also *Hamilton v. Pallozzi*, 848 F.3d 614, 636 (4th Cir. 2017) ("[C]onviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment."). Does this principle apply to the individual plaintiffs, and why or why not?**

The principle that "felons are categorically different from [] individuals who have a fundamental right to bear arms" applies to Plaintiffs Linton, Stewart, and Jones. *Vongxay*, 594 F.3d at 1115. There is no dispute that they are convicted felons. And the "presumptively lawful" "prohibitions on the possession of firearms by felons" applies to all felons, regardless of whether a particular felony is considered violent or non-violent. Felonies at the time of the Second Amendment's ratification, just like today, were comprised of the most serious crimes. *Folajtar v. Att'y Gen.*, 980 F.3d 897, 904 (3d Cir. 2020) (citations omitted). Many of those felonies were considered violent, such as burglary, rape, arson, murder, but others were not, such as unlawful hunting and repeated forgery. *Id*. (citing Francis Bacon, *Preparation for the Union of Laws of England and Scotland*, in 2 *The Works of Francis Bacon* 163–64 (Basil Montagu ed., Cary & Hart 1844); *see also id*. at 905 ("The widespread, continued condemnation of felons, including those who committed non-violent offenses, to death demonstrates that in 1791 Americans understood felons, as a group, to commit serious crimes). Thus, if the Supreme Court intended to carve out certain felonies from the presumption of lawfulness, then it would have done so. *See Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) ("Felonies encompass a wide variety of non-violent offenses, and we see no reason to think that the Court [in *Heller*] meant 'dangerous individuals' when it used the word felon"); *see also Hatfield v. Barr*, 925 F.3d 950, 952 (7th Cir. 2019) ("If we could know reliably who *will be* 'law-abiding, responsible citizens' despite felony convictions, the Supreme Court might include them among those protected by the Second Amendment").

Moreover, gun restrictions from the Founding Era were not limited to those deemed to be dangerous but were "directed at citizens who [were] not law-abiding and responsible." *United*

6

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

1   *States v. Bena*, 664 F.3d 1180, 1183 (8th Cir. 2011).  Many historical scholars have concluded
2   that "the right to bear arms was inextricably . . . tied to the concept of a virtuous citizenry" and
3   that, accordingly, the government could "disarm[] unvirtuous citizens." *Vongxay*, 594 F.3d at
4   1118 (citations and internal quotations omitted); *see also Binderup v. Att'y Gen.*, 836 F.3d 336,
5   348 (3d Cir. 2016) (identifying historical evidence supporting the concept of disarming
6   "unvirtuous citizens").  In fact, "there is every reason to believe that the Founding Fathers would
7   have deemed persons convicted of any of the common law felonies not to be among 'the
8   [virtuous] people' to whom they were guaranteeing the right to arms."  Don B. Kates & Clayton
9   E. Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J.
10  1339, 1360 (2009) (internal citations and footnotes omitted); *see also Bena*, 664 F.3d at 1183 ("in
11  classical republican philosophy, the concept of a right to arms was inextricably and multifariously
12  tied to that of the virtuous citizen, such that the right to arms does not preclude laws disarming the
13  unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, are deemed
14  incapable of virtue") (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue, Law &
15  Comtemp. Probs.*, Winter 1986, at 146 (1986)) (internal quotations omitted).  As one court noted,
16  "[p]erhaps the most accurate way to describe the dominant understanding of the right to bear arms
17  in the Founding era is as . . . limited to those members of the polity who were deemed capable of
18  exercising it in a virtuous manner."  *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009)
19  (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second
20  Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 679 (2002)); *see also id.* at 16 ("the view of late-
21  seventeenth century republicanism [is] that '[t]he right to arms was to be limited to virtuous
22  citizens only'") (quoting Robert E. Shalhope, *The Armed Citizen in the Early Republic*, 49 Law &
23  Contemp. Probs. 125, 130 (1986)).
24       "The category of 'unvirtuous citizens' is [] broader than violent criminals, it covers any
25  person who has committed a serious criminal offense, violent or nonviolent." *Binderup*, 836 F.3d
26  at 348 (citations omitted); *see also id.* at 349 ("The view that anyone who commits a serious
27  crime [—violent or not—] loses the right to keep and bear arms dates back to our founding era.")
28  (citations omitted); *Medina*, 913 F.3d at 159 (after considering historical evidence, the court

7

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

concluded that "the public in the founding era understood that the right to bear arms could exclude at least some nonviolent persons"). And because felons "were deemed unvirtuous," they were excluded from the right to arms. *See United States v. Carpio–Leon*, 701 F.3d 974, 979-80 (4th Cir. 2012) (internal quotation marks omitted); *see also Binderup*, 836 F.3d at 348 (identifying sister circuits that endorsed "the 'virtuous citizen' justification for excluding felons and felon-equivalents from the Second Amendment's ambit") (citations omitted).

Finally, a "felon cannot be returned to the category of 'law-abiding, responsible citizens' for purposes of the Second Amendment . . . ." *Hamilton*, 848 F.3d at 626. There is no precedent requiring that felons be returned to that category, even if some (but not all) states allow them to be returned to that category within their own borders. Indeed, "the Second Amendment does not require that those who commit serious crimes be given an opportunity to regain their right to keep and bear arms . . . ." *Binderup*, 836 F.3d at 350. And "[t]here is no historical support for the view that the passage of time or rehabilitation can restore Second Amendment rights that were forfeited" or that individualized assessments are required to assess a person's risk. *Binderup*, 836 F.3d at 350. In short, as convicted felons, the Plaintiffs Linton, Stewart, and Jones "are categorically different from the individuals who have a fundamental right to bear arms." *Vongxay*, 594 F.3d at 1115.[5]

---

[5] This approach comports with the limitations of the Second Amendment right set forth in *Heller*, *McDonald*, and *Bruen*. As one federal district court recently explained, "*Bruen*'s constant qualification that its analysis operates within the context of 'law-abiding, responsible citizens'" confirms that *Heller* and *McDonald* "still define the outer bounds of 'the people' who may enjoy an uninhibited right to bear arms under the Second and Fourteenth Amendments." (*United States v. Riley*, ___ F.3d ___, 2022 WL 7610264, *10 (E.D. Va. Oct. 13, 2022); *see also id.* ["A plain reading of the text demonstrates that 'the people' remains limited to those within the political community and not those classified as felons"]; *United States v. Robinson-Davis*, 2023 WL 2495805, *2 (W.D. Va. Mar. 14, 2023) ["Indeed, as of March 14, 2023, at least one circuit court—the Seventh Circuit in *United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074 (7th Cir. Sept. 22, 2022)—and, by the government's count, over 100 district courts have held that the federal law prohibiting felons from possessing firearms remains valid even after *Bruen*"]; *United States v. Kilgore*, 2023 WL 2505012, *3 (E.D. Cal. Mar. 14, 2023); *United States v. King*, 2022 WL 5240928, *5 (S.D.N.Y. Oct. 6, 2022); *United States v. Carpenter*, 2022 WL 16855533, *3-4 (D. Utah Nov. 10, 2022); *United States v. Minter*, 2022 WL 10662252, *1-7 (M.D. Pa. Oct. 18, 2022); *United States v. Daniels*, 2022 WL 5027574, *4 (W.D.N.C. Oct. 4, 2022); *United States v. Jackson*, 2022 WL 4226229, *1-*2 (D. Minn. Sept. 13, 2022); *United States v. Cockerham*, 2022 WL 4229314, *2 (S.D. Miss. Sept. 13, 2022); *United States v. Siddoway*, 2022 WL 4482739, *1-2 (D. Idaho Sept. 27, 2022); *United States v. Burrell*, 2022 WL 4096865, *3 (E.D. Mich. Sept. 7, 2022).

8

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

    **C.**    **Is expert evidence necessary to determine whether prohibitions on the possession of firearms by felons similarly situated to the individual plaintiffs are "consistent with the Nation's historical tradition of firearm regulation"?** *Bruen*, 142 S.Ct. at 2130; *see also Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) ("Felonies encompass a wide variety of non-violent offenses, and we see no reason to think that the Court meant 'dangerous individuals' when it used the word felon."). **If so, what type of expert would be appropriate, and how should the Court weigh and evaluate the expert opinions?**

Other courts, including the Ninth Circuit, have already considered ample historical evidence and upheld prohibitions on the possession of firearms by felons. *See, e.g., Vongxay*, 594 F.3d at 1114-16; *Folajtar*, 980 F.3d at 904-05; *Binderup*, 836 F.3d at 348-49; *Medina*, 913 F.3d at 158-159. This is enough to reach the conclusion that California's statutes prohibiting firearms possession by a person convicted of a felony, whether violent or nonviolent, and even if that conviction has been vacated by an out-of-state order, is consistent with the Nation's historical tradition of firearm regulation. To the extent the Court determines that this record is insufficient to reach that conclusion, then the parties should be afforded a reasonable amount of time to offer additional historical expert evidence on these issues, which the court can consider when deciding whether the challenged statutes are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

    **D.**    **Should the case be stayed pending a decision in *Range v. Attorney General United States*, 53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023)?**

Given the binding precedent of *Vongxay*, Defendants' position is that a stay is unnecessary in this case. However, Defendants acknowledge that an en banc decision in *Range* may provide the Court with additional guidance. Although the facts in *Range* differ from the facts in this case, there is the common issue of whether the historical evidence places felons, including non-violent felons, outside of the "people" protected by the Second Amendment. *See Range*, 53 F.4th at 282-285.

9

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

### IV. FULL FAITH AND CREDIT CLAUSE

**A. May violations of the Full Faith and Credit Clause and its enabling statute be raised in an action against a non-judicial state actor under 42 U.S.C. § 1983?** *See Adar v. Smith*, 639 F.3d 146, 154 (5th Cir. 2011) ("[S]ince the duty of affording full faith and credit *to a judgment* falls on courts, it is incoherent to speak of vindicating full faith and credit rights against non-judicial state actors.") (en banc) (emphasis in original).

The Full Faith and Credit Clause and its enabling statute – 28 U.S.C. § 1783 – cannot be raised against a non-judicial state actor under 42 U.S.C. § 1983. *Adar*, 639 F.3d at 153 (holding that the obligation on state courts to give sister-state judgments the same effect does not "give rise to a right vindicable in a §1983 action"), *cert. denied*, 565 U.S. 942 (2011). In reaching this conclusion, the Fifth Circuit noted that the clause "confers on a litigant [the right] to have a sister state judgment recognized *in courts* of the subsequent forum state." *Id*. at 151 (emphasis added). The Fifth Circuit also observed that "[u]nder the common law, the concept of 'full faith and credit' related *solely to judicial proceedings*" and that the Supreme Court "still maintains that the clause essentially imposes a *duty on state courts* to give a sister-state judgment the same effect that the issuing court would give it." *Id*. at 152, 153 (emphasis added). In addition, the Fifth Circuit summarized several Supreme Court cases and how they "couple the individual right with the *duty of courts* and tether the right to res judicata principles." *Id*. at 154 (emphasis in original).

The Ninth Circuit has also stated that the "ultimate question in full faith and credit analysis is one of res judicata." *United Farm Workers v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1255 (9th Cir. 1982). And res judicata involves judicial proceedings, such that "the judgment of a court in one State is conclusive upon the merits *in a court* in another State." *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Asss'n*, 455 U.S. 691, 704 (1982) (citation omitted) (emphasis added); *see also, e.g., Shaw v. State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986) (stating that "[i]n a section 1983 action we are required to give state 'judicial proceedings' precisely the same preclusive effect they would have in the courts of California") (citations omitted). Accordingly, full faith and credit violations cannot be asserted against non-judicial state actors.

10

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

**B.    If convicted felons are outside the scope of the Second Amendment, is California bound by another state's statutes or judicial orders when determining whether an individual is a felon within the meaning of Cal. Penal Code § 29800?**

California is not required to recognize another state's statutes or judicial orders when determining whether an individual is a "felon" under California law.  As a sovereign state, California "is responsible for 'the administration of [its own] criminal justice syste[m].'"  *Setser v. United States*, 566 U.S. 231, 241 (2012) (alterations in original; citations omitted) (quoting *Oregon v. Ice*, 555 U.S. 160, 168 (2009)).  Thus, California is not required to subordinate its criminal justice system and Penal Code based on the criminal justice laws of sister states.  *See, e.g.*, *Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond the jurisdiction of the state which enacts them, and can have extraterritorial effect only by the comity of other states.").  "Crimes and offenses against the laws of any state can only be defined, prosecuted, and pardoned by the sovereign authority of that state; and the authorities . . . of other states take no action with regard to them . . . ."  *Id.*

Just as other states retained the right to dismiss or vacate felony convictions without input from California, California acts lawfully in choosing to recognize the convictions while not recognizing out-of-state orders or judgments setting aside or vacating the convictions.  *Cf. Nelson v. George*, 399 U.S. 224 (1970) ("the Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment. . . California is free to consider what effect, if any, it will give to the North Carolina detainer . . . .'") (citations omitted); *Groseclose v. Plummer*, 106 F.2d 311, 313 (9th Cir. 1939) (rejecting petitioner's claim that California refused to give full faith and credit to the pardons he received for his felony convictions in Texas and that he "may be adjudged a prior offender and given increased punishment as such"); *White v. Thomas*, 660 F.3d 680, 684 (5th Cir. 1981) (finding that a Texas sheriff was not required to recognize a California court order expunging the plaintiff's juvenile record).

The California Supreme Court has considered and rejected a similar argument that the state should give full faith and credit to an Arizona court's judgment of dismissal, and not use a defendant's guilty plea to enhance a sentence in a subsequent proceeding.  *People v. Laino*, 32

11

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

Cal.4th 878, 887 (2004).  The *Laino* court held "that the full faith and credit clause does not preclude a state from determining under its own laws whether a guilty plea in another jurisdiction constitutes a prior conviction for purposes of its habitual criminal statute."  *Id.* at 888; *see also id.* ("If California need not give full faith and credit to penal judgments of another state, then it is free to determine under its own laws whether defendant's Arizona plea constitutes a conviction for purposes of the three strikes law, notwithstanding the subsequent Arizona judgment discharging defendant from probation and dismissing the proceedings.").

At bottom, there is no authority requiring California to recognize another state's statutes or judicial orders when determining whether an individual is a felon within the meaning of Cal. Penal Code section 29800.

Dated: April 18, 2023                           Respectfully submitted,

                                                ROB BONTA
                                                Attorney General of California
                                                ANTHONY R. HAKL
                                                Supervising Deputy Attorney General


                                                */s/ Jerry T. Yen*

                                                JERRY T. YEN
                                                Deputy Attorney General
                                                *Attorneys for Rob Bonta, in his official capacity as Attorney General of California, Allison Mendoza, in her official capacity as Director of the California Department of Justice Bureau of Firearms, and Robert D. Wilson, in his official capacity as Deputy Attorney General*

12

Defs.' Resp. to Order Requesting Briefing (3:18-cv-07653-JD)

# CERTIFICATE OF SERVICE

| Case Name: | **Linton, Chad, et al v. Xavier Becerra** | No. | **3:18-cv-07653-JD** |
|---|---|---|---|

I hereby certify that on <u>April 18, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' MEMORANDUM IN RESPONSE TO ORDER REQUESTING BRIEFING**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 18, 2023</u>, at Sacramento, California.

| Ksenia Lavrushchak | */s/ Ksenia Lavrushchak* |
|---|---|
| Declarant | Signature |

SA2019100119
37087373.docx