1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

8
9
10
11
12
13

| | |
|---|---|
| CHAD JAY LINTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, et al., <br><br> Defendants. | Case No.  18-cv-07653-JD <br><br> **ORDER RE SUMMARY JUDGMENT** |

14      California Penal Code Section 29800 prohibits individuals who have been convicted of

15   felonies from owning or possessing firearms.  Plaintiffs Chad Linton, Paul McKinley Stewart, and

16   Kendall Jones were convicted of felonies in other states several decades ago.  None of the

17   convictions involved a weapon, drugs, or violence, in the ordinary meaning of the word.  Each of

18   the plaintiffs had their conviction vacated, set aside, or dismissed, and their right to possess

19   firearms restored, by the jurisdiction in which they were convicted.  Linton legally acquired

20   firearms in California on prior occasions, and Jones was a career law enforcement officer in

21   California with special training and certification as a firearms instructor.  Even so, California has

22   acted to permanently deny Linton, Stewart, and Jones the right to possess or own firearms, solely

23   on the basis of their original convictions.

24      Plaintiffs ask for summary judgment on the grounds that California has violated (1) the

25   Second Amendment, (2) the Full Faith and Credit Clause, and (3) the right to travel protected by

26   Article IV and the Fourteenth Amendment of the United States Constitution.  *See* Dkt. No. 62-1.

27   These are as-applied challenges, and plaintiffs seek declaratory and injunctive relief for

28   themselves individually.  *Id*. at 1.

After multiple hearings and several rounds of briefing, and in light of the guidance provided by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Court concludes that California has violated the Second Amendment rights of the individual plaintiffs. Consequently, summary judgment is granted in favor of Linton, Stewart, and Jones on their as-applied Second Amendment claim. The Court need not reach plaintiffs' other constitutional claims.

**BACKGROUND**

The ensuing facts are drawn from declarations and other evidence in the record. They are not in dispute.

## I.   THE PARTIES

### A.   Plaintiff Chad Linton

Plaintiff Chad Linton was born and raised in California. Dkt. No. 62-2 ¶ 6. He moved to Nevada in 2020 but continues to own a cabin in California and maintains "close ties to family and friends in California." *Id.* ¶¶ 3-5.

In 1987, when he was serving in the United States Navy at a base in the state of Washington, Linton sped past a police car on his motorcycle. When the officer pursued him to issue a ticket, Linton briefly accelerated with the thought of outrunning the officer, but changed his mind and pulled over. *Id.* ¶ 7. Linton pleaded guilty to attempting to evade a police vehicle, which was a Class C felony under Washington state law, and the misdemeanor of driving under the influence. *Id.* ¶¶ 8, 9.

Linton spent seven days in jail and was sentenced to time served and probation. *Id.* ¶ 9. Upon completion of probation in 1988, he received a certificate of discharge which provided that "the defendant's civil rights lost by operation of law upon conviction be HEREBY RESTORED." *Id.*

Linton was discharged from the Navy and returned to California in 1988. *Id.* ¶ 10. He stated in a declaration that since 1988, he "successfully and legally purchased several firearms, all with the approval of the State of California having passed all state and federal background

checks." *Id.* ¶ 11.  He avers that he has been a law-abiding citizen since the 1987 conviction, *id.* ¶ 12, and the record before the Court does not indicate any subsequent criminal charges.

In December 2015, Linton tried to buy a handgun in California.  *Id.* ¶ 13.  The purchase was denied, and he was advised by the California Department of Justice (DOJ), which determines eligibility for firearm permits, that he was prohibited from possessing the handgun under California law due to the 1987 felony conviction in Washington.  *Id.*

In response to the DOJ's advisory, Linton re-opened his criminal proceedings in Washington with the goal of clarifying his firearm ownership status.  *Id.*  In March 2016, the Superior Court of Washington granted Linton's motion to vacate the record of his 1987 felony conviction.  *Id.* ¶ 14 & Ex. A ¶ 3.1.  The court ordered that Linton's guilty plea be "withdrawn and that a not guilty plea [be] entered," and/or that the "guilty verdict for the offense" be "set aside." *Id.*, Ex. A ¶ 3.2.  The court also ordered that Linton "be released from all penalties and disabilities resulting from the offense" and that "the conviction of that offense shall not be included in the defendant's criminal history for purposes of determining a sentence in any subsequent conviction," but could "be used in a later criminal prosecution."  *Id.*, Ex. A ¶ 3.4.  In April 2016, the court granted Linton's petition for an order restoring his right to possess firearms pursuant to Section 9.41.040(4) of the Revised Washington Code.  *Id.*, Ex. B.

In November 2016, Linton tried to buy a rifle in California.  The DOJ again denied the purchase in light of the 1987 conviction in Washington.  *Id.*, Ex. D.  Linton gave the DOJ the Washington court orders that vacated the 1987 felony conviction and restored his firearm rights. *Id.* ¶ 19 & Ex. E.  The DOJ responded rather obliquely by stating that "the entry in question cannot be found on your California criminal history record, therefore, no further investigation is required."  *Id.* ¶ 20 & Ex. F.

In March 2018, Linton was denied the purchase of a revolver in California for self-defense in the home.  *Id.* ¶ 21.  The DOJ repeated the same prior conviction grounds for the denial.  *Id.*  In April 2018, DOJ agents came to Linton's home and seized several firearms from him that he had legally acquired and owned for years, including an "antique, family-heirloom shotgun." *Id.* ¶ 22.

The reasons for the DOJ raid are not stated in the record.  The DOJ continues to classify Linton as a "prohibited person" under Penal Code Section 29800.  Dkt. No. 63 at 5.

Linton moved to Nevada in 2020, in part because of the restrictions California has imposed on his possession of firearms.  Dkt. No. 62-2 ¶ 3.  He states that he continues to own a cabin in California and feels "unsafe and unprotected" there "without at least the option of having appropriate firearms available or at hand if needed."  *Id.* ¶ 4.  He also states that he "would like to be able to possess or handle firearms or ammunition for recreational purposes, such as target shooting," while visiting his family and friends in California.  *Id.* ¶ 5.

### B.    Plaintiff Paul McKinley Stewart

Plaintiff Paul McKinley Stewart lived in California for more than thirty years before moving to Arizona in 2022.  Dkt. No. 62-3 ¶ 2; Dkt. No. 73-1 ¶ 3.  He purchased property in California in September 2022, where he intends to build a "primary residence."  Dkt. No. 73-1 ¶ 3.

In 1976, when Stewart was 18 years old and living in Arizona, he stole some tools from an unlocked truck in a commercial yard.  Dkt. No. 62-3 ¶ 4.  A police report stated that the offense did not involve any weapons or violence, Dkt. No. 73-1, Ex. D, and Stewart avers that he "gave up the tools and offered no resistance" to arrest when the police came to investigate.  Dkt. No. 62-3 ¶ 4.  Stewart was found guilty of first degree burglary, a felony, and sentenced to three years of probation.  Dkt. No. 62-3 ¶ 5.  The Arizona state court sentence expressly provided that, "[i]f in all respects you obey this order[,] at the end of three years, or sooner upon the recommendation of your probation officer[,] the judgment of guilty as well as this order may be vacated an[d] the case dismissed.  This action will restore to you all rights lost by this conviction except that notwithstanding such dismissal the conviction may be considered if you are again convicted of another offense."  *Id.* ¶ 5.

Stewart successfully completed probation in 1978 and was told by his probation officer that his felony conviction was dismissed.  *Id.* ¶ 6.  Stewart moved to California in 1988.  *Id.* ¶ 7.  The record does not indicate any criminal charges against Stewart since the 1976 conviction.

Although the narrative of events in Stewart's declaration is a bit convoluted, California does not dispute that he tried to buy a pistol and "additional firearms" in California in 2014 or

4

2015.  *Id.* ¶ 9.  The DOJ advised him that he was "disqualified" from purchasing or possessing firearms "due to the presence of a prior felony conviction."  *Id.* ¶ 9.  Stewart requested a copy of his FBI criminal records, which listed a prior conviction in Arizona "but did not indicate whether it was classified as a felony or not."  *Id.* ¶ 10.

In 2016, Stewart filed in the Arizona Superior Court an application to restore his firearm rights and set aside his judgment of guilt.  *Id.* ¶ 11.  On August 11, 2016, the Arizona Superior Court ordered "that the civil rights lost at the time of sentencing are now restored," "set[] aside [the] judgment of guilt," ordered the "dismissal of the Information/Indictment," and expressly held that the restored rights "shall include the right to possess weapons as defined in A.R.S. §§ 13-604 and 13-3101."  *Id.*, Ex. A.  Stewart states that he received "additional documentation" from the Arizona Department of Public Safety in 2018 "showing that the felony conviction had been set aside."  *Id.* ¶ 12.

Stewart tried to buy a firearm in California on February 10, 2018.  Dkt. No. 62-3 ¶ 13.  The DOJ again denied the firearm purchase on the basis of a prior conviction.  *Id.* ¶¶ 13-14 & Ex. B; *see also* Dkt. No. 62-6, Ex A. at 91:6-24.  The DOJ advised Stewart that the 1976 felony conviction in Arizona disqualified him from owning or possessing firearms in California, notwithstanding the Arizona court order setting aside the conviction.  Dkt. No. 62-3 ¶ 15.

During the pendency of the litigation, Stewart purchased land in Salton City, California.  Dkt. No. 73-1 ¶ 3.  He intends to build on this land and use that property as his home.  *Id.*

### C.    Plaintiff Kendall Jones

Plaintiff Kendall Jones has lived in California for nearly 40 years.  Dkt. No. 62-4 ¶ 1.  He served as a correctional officer in the California Department of Corrections and Rehabilitation (CDCR) from 1984 to 2013.  *Id.* ¶ 3.  For approximately 19 years of his law enforcement career, Jones was also a Primary Armory Officer at the California State Prison Solano facility, where he specialized in "firearms, chemical agents, batons and use of deadly force training."  *Id.* ¶ 3.  He has continued to work as a law enforcement firearms and use-of-force trainer since retiring from CDCR.  *Id.* ¶ 12.  Jones holds a number of firearms instructor certifications, and he has personally trained thousands of law enforcement officers and private citizens in the proper use of firearms

United States District Court
Northern District of California

1    and other weapons.  *Id.* ¶¶ 5-7.  Jones was listed on the DOJ's website as a certified firearms

2    safety instructor as recently as 2019.  *Id.*, Ex B.

3         In 1980, at age 19, Jones was arrested in Houston, Texas, and charged with credit card

4    fraud.  *Id.* ¶¶ 8-9.  Jones avers that he "mistakenly used a credit card under false pretenses"

5    because someone had told him he could use their credit card "when, in fact, he did not have

6    authorization to use it himself in the first place."  *Id.* ¶ 8.  According to Jones, the prosecutor

7    "offered that the charges would be set aside and dismissed" following probation if he pleaded

8    guilty to the third degree felony of credit card abuse.  *Id.* ¶ 9.  Jones accepted the deal and pleaded

9    guilty.  *Id.*  After Jones completed probation in 1983, a Texas state court permitted him to

10   withdraw his guilty plea, dismissed the indictment, and "set aside" the judgment of conviction.  *Id.*

11   ¶ 10 & Ex. A.

12        Jones moved to California in or around 1984 and began his career in law enforcement.  *Id.*

13   ¶ 11.  In 2010, he obtained a Certificate of Eligibility (COE) from the DOJ, which confirmed his

14   eligibility to possess and purchase firearms and ammunition under state and federal law.  *Id.* ¶ 13.

15   Jones says, without dispute by California, that the COE is a necessary requirement to work as a

16   certified firearms instructor under current DOJ policy.  *Id.*

17        Jones applied to renew his COE in 2018.  *Id.* ¶ 14.  The DOJ checked Jones' state and

18   federal criminal records, and noticed a changed entry for his 1980 conviction in Texas that called

19   into question his eligibility to possess firearms in California.  Dkt. No. 63-1, Ex. B at 8.  On

20   February 23, 2019, the DOJ denied Jones' application to renew his COE because its review of

21   state and federal records revealed that Jones had been convicted of a felony.  Dkt. No. 62-4 ¶ 14 &

22   Ex. C; *see also* Dkt. 62-6, Ex. A at 99:22-24, 100:11-19.  As a result, despite a 30-year career as

23   an armed law enforcement officer and trainer, Jones can no longer work as a firearms instructor.

24   Dkt. No. 62-4 ¶ 16.

25        **D.    Organizational Plaintiffs**

26        Several firearm rights advocacy groups are named as plaintiffs and have joined the

27   summary judgment motion.  The organizational plaintiffs are the Firearms Policy Foundation, the

28   FPC Action Foundation, the Second Amendment Foundation, the California Gun Rights

United States District Court
Northern District of California

Foundation, and the Madison Society Foundation.  *See* Dkt. No. 62-1 at 1; Dkt. No. 65.  The organizational plaintiffs say they "are moving on behalf of plaintiffs Linton, Stewart and Jones, each of whom are members."  Dkt. No. 62-1 at 1.  There is no evidence in the record that Linton, Stewart, or Jones are members of any of the organizations.

### E.   Defendants

Defendants are the California Attorney General, the Chief of the DOJ's Bureau of Firearms, and a Deputy Attorney General for the DOJ and its Bureau of Firearms.  Dkt. No. 36 ¶¶ 12-14.  All are sued in their official capacities on the basis that they are responsible for "issuing, implementing, or enforcing" California's laws and policies that prohibit Linton, Stewart, and Jones from possessing firearms.  *Id.* ¶ 15.

## II.   THE REGULATORY FRAMEWORK

### A.   California Penal Code Sections 29800 and 30305

Like most jurisdictions, California prohibits the ownership or possession of firearms by convicted felons.  As Penal Code Section 29800 states, "[a]ny person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country" is prohibited from owning or possessing firearms.  Cal. Penal Code § 29800(a)(1). Penal Code Section 30305 criminalizes the possession of ammunition by anyone who is prohibited from owning or possessing firearms under Section 29800.  *Id.* § 30305(a)(1).

Section 29800 does not define what constitutes a felony conviction under the laws of "any other state."  *Id.* § 29800(a)(1).  Unlike its federal law counterpart in 18 U.S.C. Section 922(g)(1), which makes possession of a firearm or ammunition unlawful for any person convicted of a crime punishable by a term exceeding one year, Section 29800 does not provide any exceptions for felony convictions that have been set aside, vacated, or dismissed.  *Compare* Cal. Penal Code § 29800 *with* 18 U.S.C. § 921(a)(20) ("Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a

conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.").[1]

### B.        The Firearm Acquisition Process

As a rule, legal acquisition of a firearm in California requires a criminal background check. The process begins with identification.  The prospective purchaser must present "clear evidence" of his or her identity and age to the firearms dealer, and the dealer must send the identifying information to the DOJ.  Cal. Penal Code §§ 28215(a)(1), (d).  The DOJ uses the information to search state and federal criminal records to determine whether the purchaser "is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm."  *Id.* § 28220(a)(1).  If the purchaser is prohibited, the DOJ must immediately notify the firearms dealer and prospective purchaser.  *Id.* § 28220(c).

Analysts in the DOJ's background clearance unit search several databases "for possible prohibiting records."  Dkt. No. 62-6, Ex. C at ECF p. 84 (DOJ training document describing procedures for a Basic Firearms Eligibility Check); *see also* Dkt. No. 62-6, Ex. A at 26:9-19, 31:3-8 (testimony of the DOJ's representative confirming that Dkt. No. 62-6, Ex. C is used for training the DOJ's background clearance unit).  Specifically, the DOJ analysts review California criminal records, as well as federal and out-of-state criminal records compiled by the National Instant Criminal Background Check System (NICS).  *See* Dkt. No. 62-6, Ex. C at ECF p. 84; *see also* Cal. Penal Code § 28220(b) (requiring the DOJ to participate in NICS).

If a search shows that a prospective purchaser has a felony conviction in another state, the DOJ might do a limited amount of follow-up.  The DOJ may contact the officials there to determine if the conviction was reduced to a misdemeanor or subject to some other post-

---

[1] Districts courts are quite familiar with Section 922(g)(1).  According to the United States Sentencing Commission, it is one of the most frequently charged federal crimes.  In FY22, which is the most current data year, Section 922(g)(1) offenses comprised 13.5% of all federal crimes charged in the United States.  *See* U.S. Sentencing Comm'n, *QuickFacts: 18 U.S.C. § 922(g) Firearms Offenses* (July 2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY22.pdf.  Section 922(g)(1) offenses have at times been approximately 25% of the Court's criminal docket.

conviction action.  *See* Dkt. No. 62-6, Ex. A at 36:20-37:10, 38:3-18; *see also*, *e.g.*, Dkt. No. 63-1, Ex. B (emails between DOJ personnel and the Texas Department of Public Safety about the meaning of a note in Jones' Texas criminal record).  The DOJ may also consult a binder of terminology maintained by the Federal Bureau of Investigation (FBI) to interpret the meaning of criminal proceedings in other states.  *See* Dkt. No. 62-6, Ex. A at 37:6-10, 44:5-21; *see also id.*, Ex. J (Arizona terminology page from FBI binder); *id.*, Ex. K (Texas terminology page); *id.*, Ex. L (Washington terminology page).

The record establishes, without dispute by California, that the DOJ does not consider a person's firearm rights to be restored in California even if the out-of-state court dismissed, set aside, or vacated the felony conviction, or the out-of-state court restored the person's firearm rights.  Dkt. No. 62-6, Ex. A at 41:20-42:2, 55:17-56:9; *see also id.*, Ex. C at ECF p. 88 ("A person convicted of a felony in another state whose civil disabilities were removed under the laws of that state (similar to PC Section 12023.4 [sic]) is prohibited from possessing handguns in California").  The DOJ will permit a person with an out-of-state conviction to acquire or possess a firearm in California only if the conviction was reduced to a misdemeanor, or the person obtained a presidential or governor's pardon that expressly restores their right to possess firearms.  Dkt. No. 62-6, Ex. A at 33:9-34:1, 42:9-22; 43:15-18; *see also* Dkt. No. 62-2, Ex. C at ECF p. 88.

The DOJ's treatment of felony convictions in California is conceptually similar.  Under Penal Code Section 1203.4, a California state court may allow a defendant to withdraw a guilty plea, or may dismiss the conviction and release the defendant "from all penalties and disabilities resulting from the offense of which they have been convicted."  Cal. Penal Code § 1203.4(a)(1).  But a Section 1203.4 dismissal "does not permit a person to own, possess, or have custody or control of a firearm or . . . prevent conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6."  *Id.* § 1203.4(a)(2).  *See* Dkt. No. 62-6, Ex. C at ECF p. 87; *see also Sannmann v. Dept. of Justice*, 47 Cal. App. 5th 676, 686 (2020) (defendant whose felony conviction was dismissed pursuant to Section 1203.4 prohibited from possessing firearms).  As with out-of-state felony convictions, a restoration of firearm rights requires a reduction of the California felony conviction to a misdemeanor, or a presidential pardon or governor's pardon with

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   an express restoration of firearm rights.  *See* Dkt. No. 62-6 at ECF pp. 87-88; *see also Bradford v.*

2   *Cardoza*, 195 Cal. App. 3d 361, 364 (1987) (presidential pardons); Cal. Penal Code §§ 4852.17,

3   4854 (governor's pardons).

4   **III.    THE LAWSUIT**

5           Linton, Stewart, and the organizational plaintiffs filed suit in December 2018 seeking a

6   declaration that Penal Code Sections 29800 and 30305 were unconstitutional as applied to Linton

7   and Jones and "others similarly-situated to them" under the Second Amendment.  Dkt. No. 1,

8   Prayer for Relief ¶ 1.  They also sought a declaration that a state "policy of refusing to honor the

9   set-aside and vacation of felony convictions, and restoration of firearms rights by the courts of the

10  other states, is unconstitutional as applied to [Linton and Jones] and others similarly-situated to

11  them" under the Second Amendment, the Full Faith and Credit Clause, the Privileges and

12  Immunities Clause of Article IV, and the Privileges or Immunities Clause of the Fourteenth

13  Amendment.  *Id.* ¶¶ 1-3.  They asked for an injunction to prohibit California from "refusing to

14  honor the set-aside and vacation of felony convictions, and restoration of firearm rights by the

15  courts of other states."  *Id.* ¶ 4.

16          California moved to dismiss the complaint.  Dkt. No. 12.  The Court terminated the motion

17  to dismiss without prejudice because it raised factual questions about plaintiffs' criminal histories.

18  Dkt. No. 26.  Plaintiffs filed an amended complaint that added Jones as a plaintiff, Dkt. No. 36,

19  and moved for a preliminary injunction to bar California from enforcing Penal Code Sections

20  29800 and 30305 against Linton, Stewart, and Jones.  Dkt. No. 38.  An injunction was denied

21  because plaintiffs had delayed the request for almost a full year, which sharply undercut an

22  imminent threat of irreparable harm.  Dkt. No. 46.

23          Plaintiffs filed a summary judgment motion in June 2020.  Dkt. No. 47.  The case was

24  stayed in 2021 pending the Ninth Circuit's decision in *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir.

25  2021) (en banc), *vacated and remanded*, 49 F.4th 1228 (9th Cir. 2022).  Dkt. No. 53.  The stay

26  was lifted in June 2022 after the Supreme Court decided *Bruen*, 597 U.S. 1.  Dkt. No. 58.

27  Plaintiffs filed a renewed motion for summary judgment in August 2022, Dkt. No. 62-1, which

28

1    California opposed.  Dkt. No. 63.  The Court called for supplemental briefing and held a hearing

2    on the renewed summary judgment motion.  Dkt. Nos. 68, 72.

3                              **SUMMARY JUDGMENT STANDARDS**

4            Summary judgment, or more aptly judgment without a trial, may be granted under Federal

5    Rule of Civil Procedure 56 when there is "'no genuine dispute as to any issue of material fact, and

6    the moving party is entitled to judgment as a matter of law.'"  *Brickman v. Fitbit, Inc.*, No. 15-cv-

7    02077-JD, 2017 WL 6209307, at *2 (N.D. Cal. Dec. 8, 2017) (quoting Fed. R. Civ. P. 56(a)); *see*

8    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are facts that may affect the

9    outcome of the case, and a dispute over a material fact is genuine if there is sufficient evidence for

10   a reasonable jury to return a verdict for either party.  *Brickman*, 2017 WL 6209307, at *2 (citing

11   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  To determine if there is a genuine

12   dispute as to any material fact, the Court will view the evidence in the light most favorable to the

13   nonmoving party and draw "all justifiable inferences" in that party's favor.  *Anderson*, 447 U.S. at

14   255.  The Court will not independently "scour the record in search of a genuine issue of triable

15   fact," and will rely on the nonmoving party to "identify with reasonable particularity the evidence

16   that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal

17   quotations omitted).

18                                        **DISCUSSION**

19   **I.     STANDING**

20           Before getting to the merits of the constitutional claims, standing questions must be

21   answered.  The "case or controversy" requirement of Article III of the Constitution "limits federal

22   courts' subject matter jurisdiction, by requiring, inter alia, that plaintiffs have standing."  *Chandler*

23   *v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  A "plaintiff must demonstrate

24   standing to sue by alleging the 'irreducible constitutional minimum' of (1) an 'injury in fact'

25   (2) that is 'fairly traceable to the challenged conduct of the defendants' and (3) 'likely to be

26   redressed by a favorable judicial decision.'"  *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 952

27   (N.D. Cal. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  An injury in fact is

28   demonstrated when the plaintiff has "suffered 'an invasion of a legally protected interest' that is

1    'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*,

2    578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

3            "Standing is an ongoing inquiry, and '[t]he need to satisfy these three [Article III standing]

4    requirements persists throughout the life of the lawsuit.'" *Trump v. Twitter*, *Inc*., 602 F. Supp. 3d

5    1213, 1225 (N.D. Cal. 2022) (quoting *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016)).

6    "The Court has an independent duty to be vigilant about standing," *id.*, and "[a] plaintiff must

7    establish standing with the 'manner and degree of evidence required at the successive stages of the

8    litigation.'" *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011)

9    (quoting *Lujan*, 504 U.S. at 561).

10            California initially did not challenge the standing of the individual plaintiffs to bring this

11    case. *See* Dkt. No. 63. That changed when facts emerged indicating that Linton and Stewart had

12    moved out of California while the case was pending. California now contends that these plaintiffs

13    do not have standing to pursue the claims in the complaint because only California residents may

14    purchase firearms or ammunition in California. *See* Dkt. No. 70 at 3. The standing of plaintiff

15    Jones, who still resides in California, is not contested. *Id.* at 3-4.

16            California's objections are not well taken. The gravamen of the complaint is that plaintiffs

17    have a Second Amendment right to possess firearms and ammunition in California and but for the

18    application of Sections 29800 and 30305, they would do so. California does not dispute that

19    denial of the right to keep and bear arms is a concrete and particularized constitutional injury. Its

20    suggestion that only a resident physically present in California may bring a claim for that injury is

21    misdirected. Even if Linton and Stewart may not purchase firearms without a state ID, *see* Dkt.

22    No. 70 at 3, it is beyond dispute that they may still be arrested and charged with illegal possession

23    of a firearm whenever they are in California and armed. Linton and Stewart each filed

24    declarations stating that they continue to own property in California and would like to possess

25    firearms for lawful purposes when they are visiting their properties, families, and friends in the

26    state. *See* Dkt. No. 62-2 ¶¶ 4-5; Dkt. No. 62-3 ¶ 16. Stewart intends to relocate here. Dkt.

27    No. 73-1 ¶ 3. Consequently, they face a specific and non-hypothetical threat from the

28    enforcement of Penal Code Section 29800 when present in California. Overall, these

United States District Court
Northern District of California

1  circumstances establish Article III standing.  *See Jackson v. City & Cnty. of San Francisco*, 746

2  F.3d 953, 967 (9th Cir. 2014), *abrogated on other grounds by Bruen*, 597 U.S. 1.

3     The standing of the organizational plaintiffs is a different matter.  California says that the

4  organizational plaintiffs lack standing because there is no evidence in the record that any of the

5  individual plaintiffs are members.  Dkt. No. 63 at 24-25.  Associations "have standing to sue on

6  behalf of their members only if (a) their members would otherwise have standing to sue in their

7  own right; (b) the interests that the organizations seek to protect are germane to their purpose; and

8  (c) neither the claim asserted nor the relief requested requires the participation of individual

9  members in the lawsuit."  *San Diego Cnty. Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1130-31

10  (9th Cir. 1996), *abrogated in part on other grounds by District of Columbia v. Heller*, 554 U.S.

11  570 (2008) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

12  Although "the presence of one party with standing is sufficient to satisfy Article III's case or

13  controversy requirement," *Rumsfeld v. Forum for Acad. & Inst. Rights*, 547 U.S. 47, 52 n.2

14  (2006), plaintiffs still must show that the organizational plaintiffs have standing with "the manner

15  and degree of evidence required" at summary judgment in order to obtain relief, *Carrico*, 656 F.3d

16  at 1006.

17     This was not done.  No evidence was provided to establish that Linton, Stewart, and Jones

18  are members of the organizational plaintiffs.  No evidence was provided to demonstrate that any

19  members of the organizations might have standing to sue on the claims pending before the Court.

20  Consequently, the organizational plaintiffs are dismissed for lack of standing.

21  **II.  ELEVENTH AMENDMENT IMMUNITY**

22     California contends that defendant Deputy Attorney General Wilson is entitled to Eleventh

23  Amendment immunity because he only provides legal counsel to the DOJ's Bureau of Firearms,

24  and there is no evidence that he has a direct connection with the challenged laws and alleged

25  policies.  Dkt. No. 63 at 23.[2]  Although the Eleventh Amendment of the Constitution generally

26

27    [2] California made a passing comment to the effect that each individual defendant has Eleventh
Amendment immunity, but actually made that argument only for Wilson.  Dkt. No. 63 at 24.

28  Consequently, the Court addresses only Wilson's immunity claim.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    bars suits against state officials, state officials acting in their official capacity may be sued for

2    injunctive or declaratory relief when the official has "some connection with the enforcement" of

3    the challenged law or policy. *Ex Parte Young*, 209 U.S. 123, 157 (1908). The connection "must

4    be fairly direct; a generalized duty to enforce state law or general supervisory power of the persons

5    responsible for enforcing the challenged provision will not subject an official to suit." *L.A. Cnty.*

6    *Bar Ass'n v. Eu*, 979 F.3d 697, 704 (9th Cir. 1992) (citation omitted).

7         Wilson is not entitled to immunity. Plaintiffs submitted evidence that Wilson was directly

8    involved in the denial of Linton's firearm purchases. The attorney who represented Linton in

9    contesting the denial of his firearm purchases with the DOJ stated in a sworn declaration that he

10   spoke with Wilson in September 2018. Dkt. No. 62-5 ¶ 5. Wilson said that he had reviewed

11   Linton's criminal records and "that this was routinely how the Department handled out-of-state

12   felony convictions that have been set aside or vacated," and that only a "presidential pardon"

13   would restore Linton's firearm rights in California. *Id.* Linton also submitted a letter that his

14   attorney addressed to Wilson. *Id.*, Ex. B. In addition, Linton stated in his declaration that his wife

15   showed the DOJ agents who seized his firearms from his home the Washington state court orders

16   that vacated his conviction and restored his firearm rights. Dkt. No. 62-2 ¶ 22. Linton says he

17   was "informed by the DOJ agents that they had sought approval from Deputy Attorney General

18   Robert Wilson to return the firearms to me, but Wilson denied this request." *Id.*

19        California does not contest the substance of this evidence. Its main response is a hearsay

20   objection. *See* Dkt. No. 63 at 24. The objection is overruled. The statements by Wilson are

21   admissible as non-hearsay statements of a party opponent. Fed. R. Evid 801(d)(2); *Sandoval v.*

22   *Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). Consequently, the evidence establishes

23   that Wilson was involved with the decisions that denied plaintiffs the right to possess firearms,

24   and so is not entitled to immunity from plaintiffs' claims for declaratory and injunctive relief.

25   **III.    CONSTITUTIONAL CLAIMS**

26        Plaintiffs were convicted of non-violent felonies decades ago when they were in the

27

28

14

earliest years of adulthood.[3]  Each conviction was set aside or dismissed by the jurisdiction in which the offense occurred, and the record indicates that all three plaintiffs have been law-abiding citizens in every respect other than the youthful misconduct.  Even so, California has acted to permanently deny plaintiffs the right to possess or own firearms solely on the basis of the original convictions.

Plaintiffs bring an as-applied constitutional challenge to Penal Code Sections 29800 and 30305, and to California's policy of "refusing to honor the set-aside and vacation of felony convictions, and restoration of firearm rights by the courts of the other states."  *See* Dkt. No. 36, Prayer For Relief ¶¶ 1-3.  An as-applied challenge "focuses on the statute's application to the plaintiff and requires the court to only assess the circumstances of the case at hand."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (internal citation and quotation marks omitted).  The difference between a facial and as-applied challenge goes to the "breadth of the remedy employed by the Court."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).  A successful facial challenge will invalidate "the law itself," while a successful as-applied challenge "invalidates only the particular application of the law."  *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1175 (9th Cir. 2018) (internal citations and quotation marks omitted); *see also Isaacson v. Horne*, 716 F.3d 1213, 1231 (9th Cir. 2013) (as-applied challenge appropriate when the "claimed statutory defect applies to a sub-category of the people affected by the law.").

These principles are emphasized because plaintiffs are not asking to set aside all firearm restrictions imposed by California on felons, or even on all individuals whose felony convictions have been set aside or dismissed.  They challenge only the application of those restrictions to themselves as three individuals.  That is all the Court addresses in this order.

### A.     The Second Amendment and *Bruen*

Plaintiffs' primary claim is that California violated the Second and Fourteenth Amendments by barring Linton, Stewart, and Jones from purchasing or possessing firearms based

---

[3] To be clear, "non-violent" refers to the facts of plaintiffs' convictions as discussed in this order, and is not a categorical characterization of the criminal statutes under which plaintiffs were adjudged guilty.

on decades-old felony convictions that have been vacated or set aside.  Resolution of this claim turns on the plain meaning of the Second Amendment as illuminated by the methods taught in *Bruen*, which was published midway in this litigation, and which the parties briefed.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In *Bruen*, the Supreme Court clarified the legal standard that applies to Second Amendment challenges to firearm restrictions.  *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 19 (2022).  Prior to *Bruen*, courts had "coalesced around a 'two-step' framework" for assessing Second Amendment claims that "combine[d] history with means-end scrutiny."  *Id.* at 17.  *Bruen* concluded that this approach was "one step too many," and that means-end scrutiny does not apply in the Second Amendment context.  *Id.* at 19.  As the Court stated, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *Id.* at 24.  When an individual's conduct is presumptively protected by the Second Amendment, the burden shifts to the government to demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation."  *Id.* at 24.

Our circuit has construed *Bruen* to impose a "two-part test" for Second Amendment challenges.  *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023).  *Bruen* step one demands "a textual analysis" to determine "whether the challenger is part of 'the people' whom the Second Amendment protects, whether the weapon at issue is 'in common use' today for self-defense, and whether the proposed course of conduct falls within the Second Amendment."  *Id.* (cleaned up) (quoting *Bruen*, 597 U.S. at 31-32).  If the answers are yes, "we proceed to *Bruen* step two, at which 'the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'"  *Id.* at 1128 (quoting *Bruen*, 597 U.S. at 24).  To carry its burden at step two, "the government must produce representative analogues to demonstrate that the challenged law is consistent with a historical tradition of regulation."  *Id.*  The analogue "need not be a 'historical *twin*,'" but it must be "'relevantly similar'" to the challenged regulation "as judged by 'at least two metrics: how and why the regulations burden a law-abiding

United States District Court
Northern District of California

1   citizen's right to armed self-defense.'" *Id.* (quoting *Bruen*, 597 U.S. at 30, 29) (emphasis in

2   *Bruen*).

3          "The job of judges is not to resolve historical questions in the abstract; it is to resolve *legal*

4   questions presented in particular cases or controversies." *Bruen*, 597 U.S. at 25 n.6 (emphasis in

5   original).  Courts consequently are "entitled to decide a case based on the historical record

6   compiled by the parties," *id.*, and "are not obliged to sift the historical materials for evidence to

7   sustain" a challenged regulation.  *Id.* at 60.

8                  1.      **"The People"**

9          The first question is whether plaintiffs are within the "the people" for purposes of the

10   Second Amendment.  The Supreme Court has determined that "the people," as used throughout

11   the Constitution, "unambiguously refers to all members of the political community, not an

12   unspecified subset," and includes the entire "'class of persons who are part of [the] national

13   community or who have otherwise developed sufficient connection with this country to be

14   considered part of that community.'"  *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)

15   (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)).  Consequently, the

16   analysis starts "with a strong presumption that the Second Amendment right is exercised

17   individually and belongs to *all* Americans."  *Id*. at 581 (emphasis added).

18          California ignores this strong presumption to suggest that "the party challenging a

19   restriction under the Second Amendment must first demonstrate" that they are within the Second

20   Amendment's protection.  Dkt. No. 63 at 11.  Not so.  Plaintiffs are plainly among "all

21   Americans" who are presumptively granted rights under the Second Amendment.  The

22   government cannot posit that a citizen is excluded from the Bill of Rights until he or she proves

23   otherwise.  It is the government's burden to demonstrate that the presumption of a constitutional

24   right may be overcome.

25          California's sole argument that plaintiffs are not among "the people" is the theory that the

26   Second Amendment "codifies" only "'the right of law-abiding, responsible citizens to use arms for

27   self-defense.'"  Dkt. No. 63 at 9 (emphasis omitted) (quoting *Bruen*, 597 U.S. at 26); *see also id.*

28   at 11 ("*Bruen* consistently refers to 'the people' as 'law-abiding, responsible citizens.'").  As

United States District Court
Northern District of California

California would have it, a single felony conviction permanently disqualifies an individual from being a "law-abiding, responsible citizen" within the ambit of the Second Amendment.

Two flaws vitiate this contention.  To start, it is premised upon an incomplete and highly selective reading of the record.  Consider plaintiff Jones.  California employed him as a correctional officer for 29 years, and as a firearms and use-of-force trainer for 19 years.  Jones holds multiple firearms instructor certifications, has trained scores of law enforcement officers and private citizens, and in 2010, was granted a Certificate of Eligibility by the DOJ, confirming his eligibility to possess and purchase firearms and ammunition under state and federal law.  It is safe to say that California entrusted Jones with the authority of a sworn peace officer, and with the special role of training other officers in the use of force, precisely because it deemed him to be a "law-abiding, responsible citizen."  The undisputed facts indicate that Linton and Stewart are also fairly described as law-abiding citizens.  Linton is a veteran of the United States Navy with a clean criminal record for the past 37 years.  Stewart has had a clean criminal record for the past 48 years.  California simply turned a blind eye to these circumstances, and did not account for them in any meaningful way in its discussion of the constitutional right to keep and bear arms.

The other serious flaw in California's argument is the absence of case law supporting its position.  California did not identify any authority for the proposition that the plaintiffs' prior convictions categorically and permanently disqualify them from Second Amendment rights irrespective of the subsequent judicial orders that vacated or set aside those convictions.

The best California offers for case law is *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which pre-dates *Bruen* and is of scant help to the state.  Vongxay was charged and convicted of being a felon in possession of a firearm in violation of 18 U.S.C. Section 922(g)(1). He had "three previous, non-violent felony convictions: two for car burglary and one for drug possession."  594 F.3d at 1114.  He filed a motion to dismiss the indictment on the ground that Section 922(g)(1) violates the Second Amendment, which the district court denied.  The circuit affirmed the judgment of the district court, and stated that "felons are categorically different from the individuals who have a fundamental right to bear arms."  *Id*. at 1115.  The circuit's ultimate

1   conclusion was "that § 922(g)(1) does not violate the Second Amendment as it applies to

2   Vongxay, a convicted felon." *Id*. at 1118.

3        The problem for California is that *Vongxay* is distinguishable from this case in every

4   material respect.  Vongxay had three prior felony convictions, all of which were still on the books

5   when he was convicted under Section 922(g)(1).  The felony convictions of each of the plaintiffs

6   here were taken off the books after being vacated or set aside.  In addition, plaintiffs are not

7   "felons" as that term is used in *Vongxay* because, as discussed, 18 U.S.C. Section 921(a)(20)

8   expressly states that a conviction that has been set aside may not be used as a predicate for

9   Section 922(g)(1).  Consequently, the statement in *Vongxay* that "felons are categorically

10   different" does not answer the question of whether Linton, Stewart, and Jones, whose felony

11   convictions were set aside, are outside "the people" for purposes of the Second Amendment.  This

12   shortcoming is devastating to California because it has no argument to that end other than such

13   statements in *Vongxay* and other cases.[4]

14        The fact that other courts have rejected the categorical exclusion that California urges here

15   underscores the weakness of its position.  Most recently, the Third Circuit published *Range v.*

16   *Attorney General United States of America*, 69 F.4th 96 (3d Cir. 2023) (en banc), which applied

17   *Bruen* in a Second Amendment action conceptually similar to this case.  Plaintiff Range had a

18   conviction under Pennsylvania state law for making a false statement to obtain food stamps, for

19   which he served a non-custodial term of probation, and paid restitution and fines.  *Id*. at 98.  When

20   Range tried to purchase firearms a few years later, his application was denied on the basis of the

21   conviction.  Range sued for a declaration that 18 U.S.C. Section 922(g)(1) violated the Second

22   Amendment as applied to him.  *Id*. at 98-99.

23        The Third Circuit reversed the district court's grant of summary judgment to the

24   government.  Applying *Bruen*, the circuit court expressly rejected "the Government's contention

25   that only 'law-abiding, responsible citizens' are counted among 'the people' protected by the

26

27       [4] California did not contend that *Vongxay* might be read to foreclose an as-applied challenge by

28   felons under the Second Amendment, and did not otherwise object to the as-applied challenge
    brought by plaintiffs.

United States District Court
Northern District of California

1    Second Amendment," and held that "*Heller* and its progeny lead us to conclude that Bryan Range

2    remains among 'the people' despite his 1995 false statement conviction." *Id*. at 103.  As the Third

3    Circuit aptly noted, "the Supreme Court's references to 'law-abiding, responsible citizens' do not

4    mean that every American who gets a traffic ticket is no longer among 'the people' protected by

5    the Second Amendment." *Id*. at 102.

6         So too, here.  California has not rebutted the strong presumption that plaintiffs are among

7    "the people" protected by the Second Amendment.

8              **2.      "The Nation's Historical Tradition"**

9         Because plaintiffs are not excluded from "the people," and the parties do not dispute that

10   the regulated conduct here is the type of conduct protected by the Second Amendment, California

11   "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits

12   the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.  Put more directly,

13   California bears the burden of showing that permanently disarming plaintiffs is "consistent with

14   this Nation's historical tradition of firearm regulation." *Id.* at 34.

15        California did not come close to meeting its burden.  It did little more than recycle

16   *Vongxay* to say that history shows "'the right to bear arms was inextricably . . . tied to the concept

17   of a virtuous citizenry' and that, accordingly, the government could 'disarm[] unvirtuous

18   citizens.'" Dkt. No. 63 at 13-14 (quoting *Vongxay*, 594 F.3d at 1118).  California neglects to

19   mention that *Vongxay* went on to "recognize, however, that the historical question has not been

20   definitively resolved." *Vongxay*, 594 F.3d at 1118.  In addition, for the reasons detailed above,

21   *Vongxay* is of no help in explaining why plaintiffs are anything other than members of a "virtuous

22   citizenry."

23        California otherwise presented nothing in the way of historical evidence in support of the

24   conduct challenged here.  It did not identify even one "representative analogue[]" that could be

25   said to come close to speaking to firearms regulations for individuals in circumstances akin to

26   plaintiffs'.  *Alaniz*, 69 F.4th at 1128.  That will not do under *Bruen*.

27        California's suggestion that it might have tried harder if the Court had asked, *see* Dkt.

28   No. 63 at 1 & Dkt. No. 70 at 9, is poorly taken.  The Supreme Court made clear that the

United States District Court
Northern District of California

United States District Court
Northern District of California

government bears the burden of proving the element of a national historical tradition.  *Bruen*, 597 U.S. at 19, 24.  California had every opportunity to present any historical evidence it believed would carry its burden.  It chose not to do so.

It also bears emphasis that the Court is not a helicopter parent.  It is manifestly not the Court's job to poke and prod litigants to live up to their burdens of proof.  *See In re Google Play Store Antitrust Litig.*, 556 F. Supp. 3d 1106, 1108 (N.D. Cal. 2021) ("The Court does not review a party's motion papers and offer coaching pointers for a second round of briefs.  The burden is on the party to make its case in the first instance, as it sees fit.").  California's request that the Court "order additional expert discovery and briefing," Dkt. No. 63 at 15, is consequently denied.

Overall, California did not demonstrate that permanently denying firearms to these plaintiffs accords with the "unqualified command" in the Second Amendment of the right to bear arms.  *Bruen*, 597 U.S. at 24 (internal citation and quotation marks omitted).  Summary judgment is granted in favor of plaintiffs on the Second Amendment claim.  The Court need not take up the other claims, which are terminated without prejudice.

## IV.    REMEDY

The closing question concerns the remedy to be awarded.  Plaintiffs originally requested declaratory and injunctive relief for "others similarly-situated to them."  Dkt. No. 36, Prayer for Relief ¶ 1.  In the summary judgment motion, plaintiffs scaled that back to a "judgment that would provide relief to individual plaintiffs Linton, Stewart and Jones."  Dkt. No. 62-1 at 1.  This is consonant with the as-applied challenge plaintiffs brought.  Rather than imposing a remedy without the parties' input, the Court directs the parties to meet and confer on an injunction or similar remedy consistent with this order.  The parties will file a joint proposal by March 22, 2024.

**IT IS SO ORDERED.**

Dated:  February 28, 2024

JAMES DONATO
United States District Judge