George M. Lee (SBN 172982)
    gml@seilerepstein.com
**SEILER EPSTEIN LLP**
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:   (415) 979-0511

Attorneys for Plaintiffs
PAUL MCKINLEY STEWART, KENDALL JONES,
FPC ACTION FOUNDATION, FIREARMS POLICY
COALITION, SECOND AMENDMENT FOUNDATION,
CALIFORNIA GUN RIGHTS FOUNDATION and MADISON
SOCIETY FOUNDATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD LINTON, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ROB BONTA, in his official capacity as Attorney General of California, et al.,<br><br>    Defendants. | Case No. 3:18-cv-07653-JD<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**[FRCP 54; 42 U.S.C. § 1988; L.R. 54-5]**<br><br>Date:      September 19, 2024<br>Time:      10:00 a.m.<br>Courtroom 11, 19th Floor<br>Judge:    Hon. James Donato |

TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................................1

II. FACTS AND PROCEDURAL HISTORY .........................................................................................1

    A. BACKGROUND ...............................................................................................................1

    B. PROCEDURAL HISTORY..................................................................................................2

III. ARGUMENT...............................................................................................................................4

    A. STANDARD......................................................................................................................4

    B. PLAINTIFFS ARE THE PREVAILING PARTIES IN THIS MATTER. ........................................5

    C. PLAINTIFFS ARE ENTITLED TO AN AWARD OF FEES IN THE AMOUNT OF $282,000.............5

        1. The lodestar hours of 376.0 hours were reasonably expended in pursuit of the Plaintiffs' claims in this matter........................................................................6

        2. The lodestar rate of $750/hr. is a reasonable blended rate. .....................................8

    D. PLAINTIFFS ARE ENTITLED COSTS IN THE AMOUNT OF $2,149.76..................................12

IV. CONCLUSION ..........................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*American Broadcasting Companies, Inc. v. Miller*, 550 F.3d 786 (9th Cir. 2008) ...............................4

*Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013)...........................................................................4

*Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541 (1984) ....................................................................8, 9

*Carson v. Billings Police Dep't*, 470 F.3d 889 (9th Cir. 2006)............................................................6

*Caudle v. Bristow Optical Co.*, 224 F.3d 1014 (9th Cir. 2000).............................................................5

*Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council Inc.*,
　No. 12-cv-01830-JCS, 2018 WL 5791869 (N.D. Cal. Nov. 5, 2018) ................................................9

*Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020)..............................................................................3

*Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) .................................................................................3

*Eksouzian v. Albanese*, 2015 WL 12765585 (C.D. Cal. Oct. 23, 2015)..............................................10

*Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566 (1992) ........................................................................5

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992).................................................................7, 8, 9

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983)............................................................5, 6

*Hicks v. Toys 'R' US-Del., Inc.*, 2014 WL 4670896 (C.D. Cal. Sept. 2, 2014)..................................10

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir. 1993)..............................................................6

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) .......................................................8, 9

*Kries v. City of San Diego*, 2021 WL 120830 (S.D. Cal. Jan. 13, 2021) ...........................................10

*Lefemine v. Wideman*, 568 U.S. 1, 133 S.Ct. 9, 11 (2012) ..................................................................5

*Lolley v. Campbell* (2002) 28 Cal.4th 367, 121 Cal.Rptr.2d 571 (2002) ..............................................9

*Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008) .................................................4

*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 109 S. Ct. 2463 (1989)...............................................8, 9

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir.1996).................................................................5

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008).......................................................8, 12

*New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111 (2022) ..................3, 6

*Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964 (1968) .................................... 4

*Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010) ........................................................................ 8

*PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 95 Cal.Rptr.2d 198 (2000) ........................................ 9

*Quesada v. Thomason*, 850 F.2d 537 (9th Cir.1988) ........................................................................... 8

*Red v. Kraft Foods Inc.*, 680 F. App'x 597 (9th Cir. 2017) .................................................................. 11

*Sethy v. Alameda County Water Dist.*, 602 F.2d 894 (9th Cir. 1979) ................................................... 4

*Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001) ................................................................................ 7

*Vargas v. Howell*, 949 F.3d 1188 (9th Cir. 2020) ................................................................................ 6

*Wit v. United Behav. Health*, 578 F. Supp.3d 1060 (N.D. Cal. 2022) ................................................ 12

**Statutes**

28 U.S.C. § 1738 .................................................................................................................................... 2

42 U.S.C. § 1983 ................................................................................................................................ 2, 4

42 U.S.C. § 1988 ............................................................................................................................ *passim*

Cal. Pen. Code § 26710 ......................................................................................................................... 5

Cal. Pen. Code § 29800 ..................................................................................................................... 2, 5

Cal. Pen. Code § 30305 ..................................................................................................................... 2, 5

**Rules**

FRCP 54(d)(1) ..................................................................................................................................... 12

FRCP 54(d)(2) ....................................................................................................................................... 1

**Constitutional Provisions**

U.S. Const., Amend. II ................................................................................................................. 2, 3, 11

U.S. Const., Amend. XIV, § 1 .......................................................................................................... 2, 11

U.S. Const., Art. IV, § 2 ......................................................................................................................... 2

U.S. Constitution, Art. IV, § 1 .......................................................................................................... 2, 11

## I. INTRODUCTION

Following the Court's entry of judgment in Plaintiffs' favor on June 17, 2024 (Dkt. 81), Plaintiffs Paul McKinley Stewart and Kendall Jones ("Plaintiffs"), now move this Court for an order granting an award of attorneys' fees, pursuant to Fed. R. Civ. Pro. 54(d)(2), 42 U.S.C. § 1988, and Northern District of California Civ. L.R. 54-5, against Defendants Rob Bonta, in his official capacity as Attorney General of California, and Allison Mendoza, in her official capacity as Director of the California Department of Justice Bureau of Firearms ("Defendants").

This motion is made on the grounds that Plaintiffs are the prevailing parties in this matter, that they succeeded on a significant issue in being granted the injunctive relief they requested, and that they are entitled to an award of reasonable attorneys' fees as a part of the costs in this action, pursuant to 42 U.S.C. § 1988. As set forth more fully in the supporting declarations of George M. Lee ("Lee Decl.") and Kenneth M. Moscaret ("Moscaret Decl."), Plaintiffs seek an award of $282,000.00 as the reasonable fees awardable to Plaintiffs under section 1988, subdiv. (b). Plaintiffs also seek costs in the amount of $2,149.76, as documented in their Bill of Costs.

The relief that the Plaintiffs obtained—the right to possess firearms in this State, as opposed by the State—is a substantial and important constitutional right that was finally won after six years of litigation. Plaintiffs should now recover their fees that were required to vindicate this substantial and important right.

## II. FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND

Plaintiffs brought this action to force the State of California to recognize the restoration of their right to own firearms. Individual plaintiffs Linton, Stewart, and Jones alleged that they were law-abiding citizens who had older felony convictions which were suffered in other states, and which have been vacated, set aside, or dismissed in those states. The courts in those respective states where the convictions were vacated also expressly restored the plaintiffs' right to own firearms to them. However, when the plaintiffs attempted to purchase, obtain or keep firearms in California, the California Department of Justice, which conducts background checks on all firearms

transferees and must approve each transfer, denied plaintiffs' firearm purchases and/or COE on the grounds that their out-of-state felony convictions disqualified them from owning or possessing firearms or ammunition, notwithstanding any post-conviction proceedings in those matters.

**B.  PROCEDURAL HISTORY**

Plaintiffs Linton and Stewart filed suit on December 20, 2018. Their original complaint sought to challenge the Defendants' laws, policies, practices, and customs which refuse to honor the judgments of other states that vacated or otherwise exonerated their disqualifying felony convictions, and which policies otherwise refuse to honor the out-of-state restoration of an individual's firearms rights. Plaintiffs specifically sought to enjoin the enforcement of California Pen. Code §§ 29800 and 30305, as applied to them. Plaintiffs' complaint contended that Defendants' policies in refusing to honor those out-of-state judgments violated the Second Amendment, the Full Faith and Credit Clause of the U.S. Constitution (Art. IV, § 1) and its enabling statute, 28 U.S.C. § 1738, the Privileges and Immunities Clause of the Constitution (Art. IV, § 2), and the Privileges or Immunities Clause of the Fourteenth Amendment (Amend. XIV, § 1). Plaintiffs sought relief pursuant to 42 U.S.C. § 1983, and requested fees pursuant to section 1988.

Defendants filed a motion to dismiss on February 22, 2019. (Dkt. 12.) After a hearing, on August 23, 2019 this Court terminated the motion to dismiss on the grounds that the motion "raises issues best addressed in summary judgment proceedings," and directed Plaintiffs to file this motion by June 22, 2020. (Dkt. 26.)

On November 15, 2019, Plaintiffs filed their motion to file an amended complaint, to add plaintiff Kendall Jones to these proceedings, asserting a similar claim. (Dkt. 30.) Plaintiffs filed their First Amended Complaint on December 2, 2019. (Dkt. 36.)

On December 19, 2019, Plaintiffs filed a motion for preliminary injunction, to enjoin enforcement of Cal. Pen. Code §§ 29800 and 30305 against the individual plaintiffs, pending disposition of this matter. On May 21, 2020, this Court denied plaintiffs' motion. (Dkt. 46.)

After conducting some discovery, on June 20, 2020, Plaintiffs filed their motion for summary judgment, or in the alternative, for partial summary judgment of their claims. (Dkt. 47.) Defendants

1   opposed the motion on August 21, 2020. (Dkt. 48.) Plaintiffs filed their reply memorandum on
2   September 21, 2020. (Dkt. 49.)
3         Both Defendants' opposition and Plaintiffs' reply cited the Ninth Circuit's panel decision in
4   *Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020). However, following the panel decision, the
5   Ninth Circuit vacated the opinion and voted to re-hear the case *en banc*.
6         On March 5, 2021, this Court ordered the motion for summary judgment to be
7   administratively terminated, and to stay the case pending the Ninth Circuit's *en banc* opinion in
8   *Duncan*. (Dkt. 53.)
9         On November 30, 2021, the Ninth Circuit issued its *en banc* decision in *Duncan v. Bonta*, 19
10  F.4th 1087 (9th Cir. 2021). This case continued to remain stayed pending final disposition of the
11  petition of the writ of certiorari in *Duncan*. (Dkt. 56.)
12        On June 23, 2022, the Supreme Court issued its decision in *New York State Rifle & Pistol*
13  *Ass'n Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111 (2022), which restated the standard to be used in
14  Second Amendment cases, eliminating means-end scrutiny. Further to this opinion, *Duncan* was
15  vacated and remanded. 142 S.Ct. 2895. Accordingly, Plaintiffs filed a motion to lift the
16  administrative stay in this case (Dkt. 57.) On June 30, 2022, this Court lifted the stay, and directed
17  the parties to file new summary judgment motion papers in lieu of supplemental briefs. (Dkt. 58.)
18  Thereafter, the parties stipulated to a briefing schedule (Dkt. 60), which the Court adopted. (Dkt.
19  61.)
20        Plaintiffs refiled their motion for summary judgment on August 26, 2022 (Dkt. 62), which
21  the Defendants opposed. (Dkt. 63.) Plaintiffs filed their reply memorandum on October 11, 2022.
22  (Dkt. 64.)
23        On March 24, 2023, this Court scheduled a hearing on the new motion for summary
24  judgment, and requested briefing on 13 specific questions thereto. (Dkt. 68.) The parties submitted
25  additional briefing, addressing the Court's questions, on April 18, 2023. (Dkt. 69, 70.) On April 25,
26  2023, the Court held a hearing on the motion for summary judgment and supplemental questions
27  and briefing, and the matter was submitted. (Dkt. 72.)
28        On February 28, 2024, this Court issued its order granting summary judgment to the

1  individual plaintiffs in this matter, granting them the relief being sought. (Dkt. 76.) After the Court
2  issued its order, Plaintiff's counsel undersigned learned that Plaintiff Chad Linton had passed away,
3  and filed a Statement of Fact of Death (Dkt. No. 77). (Decl. George M. Lee ("Lee Decl."), ¶ 5.)

4  On June 17, 2024, this Court entered a Permanent Injunction (Dkt. 80) and Judgment (Dkt.
5  81) in favor of plaintiffs Paul McKinley Stewart and Kendall Jones.

### III. ARGUMENT

#### A. STANDARD

The Civil Rights Attorney's Fees Award Act of 1976, codified at 42 U.S.C. § 1988(b), states that in any action or proceeding to enforce a provision of section 1983 "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction." Absent "special circumstances [that] would render the award unjust," a prevailing plaintiff should be awarded § 1988 fees as a matter of course. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401-402, 88 S.Ct. 964, 966 (1968); *American Broadcasting Companies, Inc. v. Miller*, 550 F.3d 786, 787 (9th Cir. 2008) (per curiam) ("In most situations, a prevailing party under § 1983 should be awarded attorneys' fees.") "Consequently, 'a court's discretion to deny fees under § 1988 is very narrow and ... fee awards should be the rule rather than the exception.'" *Barnard v. Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013) (citing *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008)).

If a district court decides that special circumstances exist, "it 'must issue findings of fact and conclusions of law identifying the 'special circumstances' and explaining why they render an award unjust." *Miller*, 550 F.3d at 787-788 (citing *Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979)).

### B. PLAINTIFFS ARE THE PREVAILING PARTIES IN THIS MATTER.

Plaintiffs are "prevailing parties" under § 1988 "if they succeed on any significant issue in their litigation which achieves some of the benefit sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983). To "qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of [the] claim." *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566 (1992). This includes either "an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Id*. (citations omitted).

In the present case, there can be little question that the moving Plaintiffs are prevailing parties in this matter. The relief that the individual plaintiffs sought was the restoration of their right to purchase and possess firearms in the State of California. The remedy that they sought to obtain that relief was an injunction that prohibited the State's enforcement of Penal Code sections 29800 (possession of firearms by former felon) and 30305 (ammunition), as applied to them. And the relief that Plaintiffs obtained was a permanent injunction, enjoining Defendants' enforcement of those sections on the basis of their prior felony convictions that had been dismissed, vacated, or set aside. (Permanent Injunction, Dkt. 80). In addition, Plaintiff Jones specifically sought and obtained injunctive relief preventing Defendants from denying him a Certificate of Eligibility (COE) pursuant to California Pen. Code § 26710 on the basis of his prior felony conviction. (Id.) As advanced in Plaintiffs' motion for summary judgment, the COE was necessary to the continuation of Jones's livelihood as a law enforcement firearms trainer. (See Decl. of Plaintiff Kendall Jones in Support of Motion for Summary Judgment, Dkt. 62-4, at ¶¶ 12-16.)

The issuance of a permanent injunction will usually satisfy the "prevailing party" test for purposes of determining entitlement to fees under section 1988. *Lefemine v. Wideman*, 568 U.S. 1, 4, 133 S.Ct. 9, 11 (2012). Accordingly, Plaintiffs are "prevailing parties" within the meaning of the statute.

### C. PLAINTIFFS ARE ENTITLED TO AN AWARD OF FEES IN THE AMOUNT OF **$282,000**.

District courts within this circuit are required to calculate an award of attorneys' fees by first

calculating the "lodestar." *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.1996)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433; *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020). A party seeking attorneys' fees bears the burden of "submitting evidence of the hours worked," the rate charged, and that "the rate charged is in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation omitted). If the moving party in a fee motion "satisfies its burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622-23 (9th Cir. 1993).

### 1. The lodestar hours of 376.0 hours were reasonably expended in pursuit of the Plaintiffs' claims in this matter.

The billing records of counsel undersigned show a total of 394.4 hours spent in pursuit of Plaintiffs' claims in this matter. (Lee Decl., ¶ 11; Exhibit A.) Of that total time spent, 376.0 hours were charged as billable hours and are being sought here. (Id.) This total number of hours is appropriate, given the six-year history of this case, originally filed in 2018. As summarized in counsel's declaration, the history of this case involved, *inter alia*: (1) the preparation of initial pleadings, and a motion to amend (Dkt. 30); (2) opposing the defendants' motion to dismiss (Dkt. 12); (3) filing and arguing a motion for preliminary injunction (Dkt. 38); (4) taking depositions and written discovery; (5) filing and then re-filing a motion for summary judgment following the Supreme Court's decision in *Bruen*, 142 S.Ct. 2111 (2022) (Dkt. Nos. 47, 62), and (6) supplemental briefing and argument that was required after the *Bruen* decision, and other authorities (Dkt. 69). (Lee Decl., ¶ 10.)

As noted in the time records, counsel undersigned was the sole attorney performing all of the attorney tasks in this matter. (Lee Decl., ¶ 11; Exhibit A.) Thus, there were no redundancies for tasks performed by other attorneys in this matter, such as office conferences to discuss the matter, or overlapping/duplicative work. Further, at all times, counsel undersigned endeavored to proceed

6

with this case in an orderly and efficient manner. Some examples of these efficiencies include an amendment to include Plaintiff Jones as a plaintiff in this case, rather than filing an entirely new action—which would have created an entirely new case. (Lee Decl., ¶ 15.) As stated in counsel's declaration in support of Plaintiff's Motion to Amend: "Although Mr. Jones's claims might be brought in a separate action, and related to and consolidated with the instant case as they arise from the same DOJ policies at issue, in order to promote the efficiency of actions in one unified proceeding, and to allow us to represent plaintiffs in an economical and affordable manner, disposition of this action in one proceeding by amendment of the complaint is favored and requested." (Decl. of George M. Lee, in Support of Motion to Amend, Dkt. 31, at ¶ 5).

Other examples include an agreement to proceed with "informal" discovery, and the voluntary exchange of materials in an attempt to avoid the court's involvement in setting a discovery schedule before ruling on a motion to dismiss. (Lee Decl., ¶ 15; Exhibits C and D.) Furthermore, the parties engaged, wherever possible, in reasonable stipulations to promote economy in this matter, including a stipulation to vacate pretrial dates pending resolution of Plaintiff's motion for summary judgment. (Lee Decl., ¶ 15; Dkt. 50.)

And throughout the course of this case, counsel undersigned endeavored to exercise billing judgment by not charging for routine matters, such as short phone calls, matters that were extraneous to the advancement of the case, and matters that were not strictly attorney tasks. (Lee Decl., ¶ 14.) These items amounted to 18.4 hours spent that were not charged to the clients. (Id., Exhibit B.) The value represented by these no-charge hours is not being sought in this fee motion. (Id.)

In sum, the total of 376.0 billable hours is a reasonable expenditure of time in prosecuting an important and novel civil rights claims over the six-year history of this case which involved a motion to amend, a motion to dismiss, depositions and discovery, two motions for summary judgment, and supplemental briefing. Any reduction of a plaintiff's fee request based upon the hours spent must be explained to provide meaningful review of a reduction of the fees awarded. *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001) (remanding to the district court to provide greater detail regarding the number of hours that were inadequately documented). It has generally

1  been held that any reduction in the amount of hours beyond a 10% reduction of the fee request
2  requires specific explanation. *Id* (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992);
3  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("the district court can impose
4  a small reduction, no greater than 10 percent—a "haircut"—based on its exercise of discretion and
5  without a more specific explanation.")

### 2. The lodestar rate of $750/hr. is a reasonable blended rate.

The second part of the lodestar analysis requires determination of counsel's reasonable hourly rate. "Our cases have repeatedly stressed that attorney's fees awarded under this statute [§ 1988] are to be based on market rates for the services rendered." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283, 109 S. Ct. 2463, 2469 (1989). Reasonable fees under § 1988 are calculated according to the prevailing market rates in the relevant legal community, and the general rule is that the rates of attorneys practicing in the forum district are used. *Gates*, 987 F.2d at 1405 (citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541 (1984) (district courts should generally use the "prevailing market rates in the relevant community" in determining the reasonable hourly rate.)

"This Circuit requires that courts reach attorneys' fee decisions by considering some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir.1988). The *Kerr* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

At the outset, we note that counsel undersigned's present ordinary hourly rate for civil litigation matters is $550/hr. (Lee Decl., ¶ 9.) Although the rates for counsel's representation of plaintiffs was originally set at then-existing rates in 2018 (Id., ¶ 12), attorneys' fee awards are typically set based on rates existing at the time the award is sought, not when the fees are incurred.

*See*, *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 556 (2010); *Jenkins*, 491 U.S. at 282-83. In *Gates*, the Ninth Circuit upheld the district court's award of attorneys' fees at counsel's then-current rate. "A fee award at current rates is intended to compensate prevailing attorneys for lost income they might have received through missed investment opportunities as well as lost interest." 987 F.3d at 1406 (citing *Jenkins*, 491 U.S. at 283 n.6). And in this case, counsel undersigned has not been paid since January 2020. (Lee Decl., ¶ 13.)

But of course, it is not counsel's charged rate that applies, but the "prevailing market rates in the relevant community" that must be used in determining the reasonable hourly rate. *Blum*, 465 U.S. at 895. The courts have already rejected the contention that awardable attorneys' fees "means only fees a litigant actually pays or becomes liable to pay from his own assets." *See Lolley v. Campbell* (2002) 28 Cal.4th 367, 374, 121 Cal.Rptr.2d 571 (2002) (state appellate courts have "repeatedly affirmed awards of attorney fees under various fee-shifting provisions for legal services provided at no personal expense to the client") (citing *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 95 Cal.Rptr.2d 198 (2000)). *See also*, *Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council Inc.*, No. 12-cv-01830-JCS, 2018 WL 5791869, at *3 (N.D. Cal. Nov. 5, 2018) (noting that in *PLCM*, the court held that a lodestar method based on prevailing market rates was "presumably reasonable," and that prevailing market rates are appropriate even for in-house counsel whose services may not have been provided at those rates.)

Here, Plaintiffs are requesting the rate of $750/hr. as the reasonable value of counsel's services in this matter. This fee request based upon the requested hourly rate is supported by the Declaration of Plaintiff's fee expert, Mr. Moscaret, who opines, in summary, that: (a) this action involves an issue of genuine public interest, and Plaintiffs have demonstrated successful results obtained in this case; (2) counsel undersigned possessed the requisite skill, experience, and reputation to litigate this matter successfully for Plaintiffs; (3) this firm's non-hourly fee arrangement with Plaintiffs shifted a high degree of financial risk to counsel's firm in the current action; and (4) the hourly rates sought in Plaintiffs' fee motion are below market compared to other well-regarded attorneys handling complex litigation in the San Francisco market in 2024. (Moscaret Decl., ¶ 17.)

Mr. Moscaret analyzed the fee request specifically under the commonly-relied upon *Kerr* factors listed above. (Moscaret Decl., ¶ 25.) Four of these *Kerr* factors that Mr. Moscaret examined in particular were: (i) the experience, reputation, and ability of the attorneys; (ii) the amount involved and the results obtained; (iii) whether the fee is fixed or contingent; and (iv) the customary fee. (Id., ¶ 26.) Examining each of these factors, Mr. Moscaret concludes that counsel's fee request is reasonable.

With regard to the prevailing market rate requested, Mr. Moscaret examined published hourly rate survey data showing that counsel's rates in the current action were "more than reasonable in relation to other attorneys and law firms of comparable skill, experience, and reputation in the San Francisco market where the current action is venued. They were, in fact, below market, according to that survey evidence." (Moscaret Decl., ¶ 44.) Mr. Moscaret also relied upon his personal knowledge of and experience with prevailing market rates charged by well-regarded attorneys in the San Francisco market. (Id., ¶ 45.) The published rate data was found in the latest edition of the Wolter Kluwer Real Rate Report. The Real Rate Report is a recognized, judicially-accepted source of prevailing market rate data for partners and associates in different law practice specialties in dozens of geographical legal markets across the United States, including the San Francisco market. (Id., ¶ 47.) District courts and courts in California have found the Real Rate Report to be a reliable, admissible tool for determining reasonable rates. (Id., ¶ 48). *See, e.g.*, *Eksouzian v. Albanese*, 2015 WL 12765585, at *3 (C.D. Cal. Oct. 23, 2015) (collecting cases); *Hicks v. Toys 'R' US-Del., Inc.*, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) (relying on Real Rate Report); *Kries v. City of San Diego*, 2021 WL 120830, at *2–4 (S.D. Cal. Jan. 13, 2021) (Real Rate Report was part of sufficient evidentiary foundation for fee expert to opine on reasonable hourly rates).

First, Mr. Moscaret concludes that counsel undersigned is an experienced and well-credentialed civil litigator with 30 years of experience in the San Francisco market. (Moscaret Decl., ¶ 52.) Counsel would qualify as a senior litigation partner at any major law firm in this market. (Id., ¶ 53.)

Examining the Real Rate Report data shows that the median rate for a "Litigation Partner "in

San Francisco (using 2023 rate data) is $750/hr., with the third quartile being $1,124. (Moscaret Decl., ¶ 56; Exhibit D). For a "Commercial Litigation Partner" in San Francisco, the third quartile rate would be $1,003. (Id.) Mr. Moscaret opines that counsel undersigned would qualify for third quartile partner rates as shown in both of these charts. (Id., ¶ 58.)

Here, counsel undersigned, "at all times throughout, [has] been solely responsible for the prosecution and management of this action." (Lee Decl., ¶ 11.) "Because this was a case of first impression, involving novel issues as to whether the right to purchase and possess firearms extends to persons whose prior convictions in other states were set aside, vacated or dismissed, under the Second Amendment, the Full Faith & Credit Clause, and the right to travel under the Fourteenth Amendment, this case required, at the least, legal work by a senior-level associate and a partner familiar with litigating complex and novel constitutional issues." (Id., ¶ 17.)

And had counsel undersigned been assisted by a senior associate on this case, Mr. Moscaret would have assigned the Third Quartile associate rates listed in the two charts attached to Mr. Moscaret's declaration (Moscaret Decl. ¶ 59). These rates would also be in the "same ballpark with one another, namely, $718 (first chart) and $655 (second chart)." (Id.)

Counsel's billing records (Lee Decl. Exhibit A) contain some tasks which Mr. Moscaret would consider to be more partner-appropriate, and other tasks to be more associate-appropriate in terms of skill, ability, and experience." (Moscaret Decl., ¶ 60.) Accordingly, Plaintiffs' fee request has "compensated for the mix of partner-level and associate-level tasks performed by Mr. Lee by requesting a "blended" rate of $750 for all of Mr. Lee's work on the case, which I consider reasonable and in line with certain customs and practices that I have seen in the legal marketplace." (Id.)

The use of blended rates for law firm partners and associates is appropriate for both complex and routine litigation matters. (Moscaret Decl., ¶¶ 61-63.) *See, e.g.*, *Red v. Kraft Foods Inc.*, 680 F. App'x 597, 599 (9th Cir. 2017) ("[t]he blended rates used were reasonable averages consistent with the prevailing market rates charged in similar cases within the Central District of California.") In the present case, applying the Third Quartile rates for San Francisco litigation partners and associates shown in Mr. Moscaret's declaration, by averaging the two rates would result in a

1  blended rate calculation of $921 per hour. (Id.) If Mr. Moscaret were to apply the Third Quartile
2  rates using the San Francisco "commercial" practice data for partners and associates, the blended
3  rate calculation would be $829 per hour. (Id., ¶ 64.)

4        In the present case, Plaintiffs are requesting a blended rate of only $750 in support of this fee
5  motion. Mr. Moscaret opines that the "$750 blened rate is significantly less than both $921 and
6  $829 per hour, and is clearly reasonable[.]" (Moscaret Decl., ¶ 65.)

7        The defense may quibble with whether the case should have been staffed by an associate.
8  Plaintiffs have already accounted for that by requesting a blended rate here. But ultimately, "[i]n
9  determining whether Plaintiffs' request for attorneys' fees is reasonable, the Court's inquiry "must
10 be limited to determining whether the fees requested by this particular legal team are justified for
11 the particular work performed and the results achieved in this particular case." *Wit v. United Behav.*
12 *Health*, 578 F. Supp.3d 1060, 1082–83 (N.D. Cal. 2022), vacated and remanded on unopposed
13 request, No. 22-15184, 2023 WL 8723695 (9th Cir. Dec. 15, 2023) (citing *Moreno*, 534 F.3d at
14 1115). "It is generally improper for the court to 'impose its own judgment regarding the best way to
15 operate a law firm, [or] to determine if different staffing decisions might have led to different fee
16 requests.' […] It is the 'difficulty and skill level of the work performed, and the result achieved—
17 not whether it would have been cheaper to delegate the work to other attorneys—[that] must drive
18 the district court's decision.'" *Wit*, 578 F. Supp.3d at 1083 (quoting *Moreno*, 534 F.3d at 1115.)

19       Plaintiff's blended hourly rate of $750 in support of their fee request is reasonable. (Moscaret
20 Decl., ¶ 65.) The lodestar fee request of $282,000, based thereon, is therefore reasonable and
21 appropriate.

22 **D.    PLAINTIFFS ARE ENTITLED COSTS IN THE AMOUNT OF $2,149.76.**

23       Finally, Plaintiffs are also submitting herewith a cost bill showing recoverable costs in the
24 amount of $2,149.76, pursuant to N.D. Civ. L.R. 54-1. This includes the filing fee of $400.00 and
25 deposition costs in the amount of $1.749.76, both of which are supported by documentation of the
26 same. At present, we do not anticipate that the defense will oppose this cost memorandum by filing
27 a motion to challenge such costs pursuant to Fed. Rule Civ. Pro. 54(d)(1), or objections pursuant to
28 L.R. 54-2. Assuming they do not, these costs should be taxed pursuant to Rule 54(d)(1).

**SEILER EPSTEIN LLP**

## IV. CONCLUSION

Following the vindication of their rights, and for the foregoing reasons, and as set forth in the supporting declarations, Plaintiffs respectfully request a fee award of $282,000.00, together with recoverable costs in the amount of $2,149.76 as set forth in Plaintiffs' cost memorandum.

Dated: August 1, 2024               **SEILER EPSTEIN LLP**

/s/ George M. Lee
George M. Lee

Attorneys for Plaintiffs